UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS (BOSTON)

| | |
|---|---|
| DENNIS DIMON<br>    Plaintiff<br><br>v.<br><br>MICHAEL B. LATTI, LATTI<br>ASSOCIATES, LATTI & ANDERSON<br>LLP, METROPOLITAN LIFE<br>INSURANCE COMPANY, KEMPER<br>INSURANCE COMPANY, and<br>MORGAN STANLEY DW, INC.,<br>    Defendants | Civil Action No. 05-11073-MEL |

**STATEMENT OF UNDISPUTED FACTS OF DEFENDANT KEMPER INSURANCE COMPANY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

1. In January 1981, Plaintiff was injured while serving as a crew member of the Jenny C. Inc. See Plaintiff's Complaint ("Compl.") at ¶ 10 (attached to supporting Memorandum of Law as Exhibit A).

2. Plaintiff subsequently commenced a personal injury lawsuit styled <u>Dennis Jay Dimon v. Jenny C., Inc.</u>, No. 81-0063, in the United States District Court for the District of Rhode Island (the "Underlying Action"). See Transcript of Guardian Ad Litem Hearing ("Guardian Hrg.") (attached to supporting Memorandum of Law as Exhibit B).

3. As his legal counsel in the Underlying Action, Plaintiff retained and was represented by the law firm of Latti Associates. See Compl. at ¶ 12; Deposition Transcript of Michael B. Latti ("Latti Dep.") at 24:23-25:14, 26:16-18, 31:7-22 (attached to supporting Memorandum of Law as Exhibit C). Michael Latti, Esq. ("Mr. Latti") of Latti Associates, and Roger Hughes, Esq. ("Mr. Hughes"), formerly of Latti Associates, acted as Plaintiff's lawyers in

the Underlying Action.  See Latti Dep. at 24:23-25:14.  (Latti Associates, Mr. Latti, and Mr. Hughes are referred to collectively herein as "Plaintiff's lawyers.")

4. The Underlying Action ultimately proceeded to trial, where Plaintiff was awarded a verdict in the amount of $710,000.  See Compl. at ¶ 11.

5. Following the verdict in the Underlying Action, Plaintiff's lawyers agreed to a settlement of the Underlying Action with the defendant, the defendant's primary insurer, and Kemper, which was the defendant's excess insurer.  See Guardian Hrg. at 1:20-23, 9:3-14; Deposition Transcript of William Mensie ("Mensie Dep.") at ex. 5 (attached to supporting Memorandum of Law as Exhibit D).

6. The terms of the settlement agreement were negotiated with Plaintiff's lawyers in April, 1983.  See Guardian Hrg. at 7:11-8:14, 13:14-14:20, 16:19-23; Mensie Dep. at ex. 5.

7. The settlement agreement provided that the primary insurer and Kemper would pay to Plaintiff a lump sum in the amount of $250,000.  The settlement agreement further provided, upon Plaintiff's lawyers' insistence, that Kemper would pay an additional lump sum in the amount of $175,000 so that Plaintiff's lawyers could purchase an annuity to fund a stream of future periodic payments for Plaintiff.  See Guardian Hrg. at 6:19-20, 7:23-8:4; Mensie Dep. at 79:18-80:11 and at ex. 5.

8. Specifically, Plaintiff's lawyers advised that they were able to purchase, for a premium of $175,000, an annuity that would pay out a stream of periodic payments as follows: $1,450 per month for life, with a 3 % increase compounded annually, and 20 years certain.  See Guardian Hrg. at 6:20-23, 7:23-8:4; Mensie Dep. at ex. 5.  Plaintiff's lawyers stated that they had obtained this annuity quote from Charter Security Life Insurance Company ("Charter Security

Life") through Plaintiff's lawyers' broker, Dean Witter, Inc. ("Dean Witter"). See Latti Dep. at 71:2-11; Mensie Dep. at ex. 6.

9. On or about April 19, 1983, Plaintiff signed a "General Release" memorializing the terms of the settlement and the payments due to Plaintiff, specifically, a lump sum payment of $250,000, and $1,450 per month for life, with a 3 % increase compounded annually, and 20 years certain. See Mensie Dep. at 220:13-221-9, and at ex. 10.

10. The "General "Release" provided that the monthly payments would be paid from a "fully paid annuity contract for [Plaintiff's] benefit with Charter [Security] Life [.]" See Mensie Dep. at ex. 10.

11. Plaintiff's lawyers prepared a "settlement sheet" detailing the total amount of the cash payment that Plaintiff would receive following deductions for fees and costs, and also noting that the cost of the annuity was $175,000. See Latti Dep. at ex. 1.

12. On or about April 22, 1983, in order to ensure that Plaintiff had a full understanding of the terms of this settlement, the court in the Underlying Action appointed one Leonard DeCof ("Mr. Decof") as guardian ad litem for Plaintiff. See Guardian Hrg. at 1:15-18, 2:24-25, 3:3-5.

13. On May 3, 1983, Mr. DeCof appeared before the court in the Underlying Action in order to testify as to the background and terms of the settlement. Id. at 1:1, 1:6-7, 1:15-2:12, 6:19-23, 7:21-8:25, 13:16-18, 14:2-15:9, 16:19-23.

14. Mr. Decof testified that the settlement provided, at the insistence of Plaintiff's lawyers, that the defendants would pay Plaintiff's lawyers the sum of $175,000 so that Plaintiff's lawyers could purchase an annuity of their choice. Id. at 7:11-8:20. The court approved the settlement. Id. at 21:9-16.

15. On or about May 4, 1983, an annuity application from Charter Security Life was signed by Kemper. See Mensie Dep. at ex. 2.

16. The annuity application required an annuity premium in the amount of $175,000. See Mensie Dep. at ex. 2.

17. As payment for the annuity premium and in settlement of the Underlying Action, Kemper issued check number 250-0-008-585, made payable to Charter Security Life in the amount of $175,000 (the "Settlement Check"), and Kemper's counsel delivered the Settlement Check to Plaintiff's lawyer. See the Settlement Check (attached to supporting Memorandum of Law as Exhibit E); Correspondence to Kemper dated May 3, 1983 (attached to supporting Memorandum of Law as Exhibit F).

18. On or about June 17, 1983, Charter Security Life signed and issued a single premium deferred annuity contract (the "Annuity"). See Mensie Dep. at ex. 11. The Annuity provides that the "Single Premium payment for this contract was paid in advance." Id. at ex. 11, p. 5.

19. As the annuity issuer, Charter Security Life became obligated to make the Annuity payments to Plaintiff (i.e., the annuitant). Id. at ex. 11, pp. 1, 5.

20. The Annuity provides that it is a "Lifetime Annuity" and that "[Charter Security Life] will pay a lifetime monthly income to the Annuitant if living on the Annuity Date." Id. at ex. 11, p. 1.

21. The Annuity also included a "Supplementary Agreement" further specifying that Plaintiff would receive monthly payments of "$1,450.45 each, increasing 3% annually, commencing June 6, 1983, for a period of 240 months certain and life thereafter." Id. at ex. 11.

- 4 -

22.     On July 14, 1983 - approximately one month after Charter Security Life issued the Annuity and began making payments to Plaintiff in accordance therewith – Barbara Boehm of Charter Security Life sent correspondence to Kurt Snyder of Dean Witter, claiming that "due to a clerical error the option indicated on the above supplementary contract for [Plaintiff] was incorrectly typed as 240 months certain and life thereafter instead of 240 months only.  Enclosed is a new contract...."  See Deposition Transcript of Barbara Fasman ("Fasman Dep.") at ex. 3 (attached to supporting Memorandum of Law as Exhibit G).

23.     Mr. Snyder forwarded a copy of this correspondence to John Noe of Kemper, and on August 12, 1983, by correspondence to Robert Foley of Dean Witter, Mr. Noe responded to Charter Security Life's attempt to change the terms of the Annuity, as follows:

> "I received the replacement policy issued by Charter Security Life Insurance (New York) changing the terms of the annuity from 240 months certain and life thereafter to 240 months certain only.
>
> I am advised by Mr. Hughes of Lattie [sic] Associates that your quotation was to provide an annuity which would pay $1,450.45 per month for the first year increasing annually at a rate of 3% compounded annually for 240 months certain and life thereafter for a singe premium of $175,000.00.  This was the benefit to be provided under the terms of a general release and settlement agreement approved by Judge Pettine of the United States District Court for the District of Rhode Island.
>
> The agreed upon premium was paid and a policy issued which is now in the files of the contract owner, [Kemper], providing benefits required by the release, settlement agreement and court order.  I consider the original annuity contract valid and enforceable and will retain it in our files....

See Fasman Dep. at ex. 4.  Mr. Noe sent copies of this correspondence to Plaintiff's lawyer, Mr. Hughes, and to Ms. Boehm at Charter Security Life.  Id.

24.     On September 26, 1983, Robert Ligouri of Charter Security Life sent correspondence to Mr. Noe, claiming that the Annuity was "incorrectly typed" for "240 month certain and life thereafter...instead of 240 months only", and that "the original supplementary

contract" was "null and void." See Fasman Dep. at ex. 5. Plaintiff's lawyer, Mr. Hughes, was sent a copy of this correspondence as well (as was Mr. Foley of Dean Witter). Id.

25.    On October 10, 1983, Mr. Noe replied to Mr. Ligouri, and again refused to change the terms of the Annuity. See Fasman Dep. at ex. 6. Specifically, Mr. Noe advised that Kemper "intend[s] to retain the original policy in [its] files and consider[s] it to be valid and enforceable." Id. Mr. Noe also sent a copy of this correspondence to Plaintiff's lawyer, Mr. Hughes (as well as to Mr. Foley). Id.

26.    On October 14, 1983, Ms. Boehm sent correspondence to Mr. Noe enclosing a "corrected" supplementary agreement to "reflect monthly payments for a period of 240 months only." See Fasman Dep. at Ex. 8. By reply correspondence, Mr. Noe again refused to change the terms of the Annuity, and stated as follows:

> "In response to your October 14, 1983 I reject and return herewith the Supplementary Agreement and General Provisions attached thereto. The original annuity policy will be retained in the files of [Kemper] and considered valid and enforceable."

See Fasman Dep. Ex. 7. Kemper also sent a copy of this correspondence to Plaintiff's lawyer, Mr. Hughes (as well as to Mr. Foley). Id.

27.    In 1983, Plaintiff himself had no contact whatsoever with Kemper. See Deposition Transcript of Dennis J. Dimon ("Dimon Dep.") at 117:20-118:11 (attached to supporting Memorandum of Law as Exhibit H). Of the parties to the instant lawsuit, the only parties with which Plaintiff had any contact in 1983 were Plaintiff's lawyers. Id.[1]

---

[1]    It is noted that, in September 1999, Plaintiff's wife had inquired with Metropolitan Life (Charter Security Life's successor) as to the terms of the Annuity. Id. at ex. 11. On September 24, 1999, Metropolitan Life sent correspondence to Plaintiff stating that "[y]ou receive monthly payments until 5/5/2003." Id.

- 7 -

28.     On May 23, 2005, Plaintiff filed the instant lawsuit, naming as defendants Mr. Latti, Latti Associates, Latti & Anderson LLP, Metropolitan Life, Morgan Stanley, and Kemper. See Compl.

29.     Kemper did not receive any communications from Plaintiff, Plaintiff's lawyers, Metropolitan Life, or any other person or entity, relating to the Annuity, from 1983 until the filing of this lawsuit on May 23, 2005.

30.     Plaintiff alleges Breach of Contact against Kemper (Count Twelve). Id. Specifically, the Complaint avers that "[Kemper] was to provide a lifetime annuity guaranteed for twenty (20) years… but breached this contract by altering the terms of the agreement after the contract was signed and approved by the court and for failing to perform the contract." Id. at ¶¶ 72, 73.

31.     Plaintiff also alleges Negligent Misrepresentation against Kemper (Count Thirteen). Id. Specifically, the Complaint avers that "[Kemper] negligently misrepresented the terms of contract, stating that the contract was for life, guaranteed for twenty years," and that Plaintiff "relied on the representation of counsel and [Kemper] as manifested in the original contract approved by the court and suffered financial losses as a result of [Kemper's] negligent misrepresentation in altering the contract." Id. at ¶¶ 77, 78.

32. On November 22, 2006, Plaintiff proffered an expert report in this matter which purports to allocate liability among the defendants. See Plaintiff's proffered Expert Report ("Plaintiff's Expert Report") (attached to supporting Memorandum of Law as Exhibit I). Plaintiff's Expert Report does not reference Kemper. See id. Plaintiff's Expert Report asserts that the alleged breach of the Annuity occurred in 1983. Id. at p. 7.

        Respectfully submitted,

        KEMPER INSURANCE COMPANY

        by its, attorneys,

        /s/ Kevin L. Golden
        DRINKER BIDDLE & REATH LLP
        Timothy O'Driscoll (Admitted Pro Hac Vice)
        Kevin L. Golden (Admitted Pro Hac Vice)
        DRINKER BIDDLE & REATH LLP
        One Logan Square
        18th & Cherry Streets
        Philadelphia, PA 19103-6996
        (215) 988-2700

        Local Counsel
        Kevin Murphy
        Anthony B. Fioravanti
        YURKO & SALVESEN, P.C.
        One Washington Mall, 11th Floor
        Boston, MA 02108-2603
        (617) 723-6900

Dated: January 2, 2007

## Certification of Service

I hereby certify that a true and accurate copy of the foregoing document was filed via the ECF system and will be served electronically through that system upon Counsel of Record on January 2, 2007.

/s/ Kevin L. Golden
Kevin L. Golden