**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| DENNIS DIMON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| VS. ) | |
| ) | C. A. No: 05-11073 MEL |
| METROPOLITAN LIFE ) | |
| INSURANCE COMPANY, KEMPER ) | |
| INSURANCE COMPANY, ) | |
| MORGAN STANLEY DW, INC., ) | |
| MICHAEL B. LATTI, LATTI ) | |
| ASSOCIATES, and LATTI & ) | |
| ANDERSON LLP, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT METROPOLITAN LIFE INSURANCE COMPANY'S**
**L.R. 56.1 STATEMENT OF DISPUTED FACTS**
**AND**
**OPPOSITION TO PLAINTIFF DENNIS DIMON'S MOTION FOR SUMMARY**
**JUDGMENT AND MEMORANDUM IN SUPPORT OF OPPOSITION**

**I.   INTRODUCTION**

Defendant, Metropolitan Life Insurance Company (hereinafter "MetLife"), opposes Plaintiff Dennis Dimon's (hereinafter "Mr. Dimon") Motion for Summary Judgment. Summary Judgment in Mr. Dimon's favor is inappropriate because there are both genuine issues of material fact and he is not entitled to judgment as a matter of law. MetLife respectfully requests the Court deny Mr. Dimon's Motion for Summary Judgment.

Mr. Dimon's Motion for Summary Judgment attempts to misdirect the Court's attention from the real contract issues presented by asserting that Mr. Dimon is a "ward

of the admiralty" and, as such, should be entitled to special treatment by the Court. This is simply incorrect. For the reasons stated below, this is neither an admiralty nor a Jones Act case. MetLife urges the Court to not be distracted by this blatant attempt to impose an inappropriate standard of review.

Further, Mr. Dimon attempts to support his Motion by employing false and unsupported assertions. As discussed more fully below, Mr. Dimon falsely asserts that MetLife committed fraud, changed the settlement agreement and failed to inform him of the correction to the Annuity. MetLife did not commit fraud on Mr. Dimon. The "settlement agreement" that Dimon asserts MetLife changed <u>was an agreement to which MetLife was not even a party</u>. Lastly, MetLife informed Mr. Dimon multiple times over a 20 year period that his Annuity provided for payments for 20 years certain and that payments would end in May 2003. In 1983, MetLife informed Mr. Dimon, through counsel, that the payment term was 20 years certain. Next, in September, 1999, MetLife informed Mr. Dimon's wife that the his payments would stop in May, 2003. <u>See</u> EXHIBIT "Q" to MetLife's Statement of Undisputed Facts at 10:3-18. In follow up to that telephone conversation, MetLife wrote Mr. Dimon and informed him in absolutely unequivocal terms that his final payment would be on May 5, 2003. <u>See</u> EXHIBIT "R" to MetLife's Statement of Undisputed Facts. Thus, the statute of limitations period for Plaintiff's claims expired years ago even if Plaintiff's claims are not barred by the statute of Repose. <u>See</u> MetLife's Memorandum in Support of its Motion for Summary Judgment, at §III(B)(2) and (C).

## II. <u>L.R. 56.1 STATEMENT OF DISPUTED FACTS</u>

MetLife disputes several of the material facts asserted by Mr. Dimon.  Those facts that present a genuine issue for trial are listed below.  For clarity sake, the disputed facts are referred to using the "Statement" numbers employed by Mr. Dimon in his Statement of Undisputed Material Facts.

Statements 12, 13 and 14

MetLife disputes that it or Charter prepared the document used to support this statement.  In fact, it is pretty clear that neither MetLife nor Charter prepared this document.

First, the document is printed on Dean Witter Reynolds, Inc. stationary and not on Charter Security Life Insurance Company (hereinafter "Charter") Stationary.  See EXHIBIT "C" to Plaintiff's Statement of Undisputed Facts.  Second, the document incorrectly identifies Charter as "Charter Security Life Insurance Company of New Jersey."  Id.  (emphasis added).  There is no dispute that Charter's full name was "Charter Security Life Insurance Company of New York."  Third, no party has been able to produce any evidence that could identify the author of the document in question.  Simply put, it is unknown who authored this document.  However, because the document was printed on Dean Witter Reynolds, Inc. stationary and Charter was misidentified as being of "New Jersey," the only logical conclusion is that Morgan Stanly, and not Charter or MetLife prepared this document.  The identity of the author of this document is a disputed question and cannot form the basis of a decision to grant summary judgment.

Statement 18

Without any support in the record and without any factual basis, Mr. Dimon asserts that Mr. Noe of Kemper Insurance signed the "original" Annuity Application.

There is no evidence that the document listed as EXHIBIT "D" to Plaintiff's Statement of Undisputed Facts is the "original" Application.

Statement 23

Mr. Dimon asserts that Mr. Mensie, the designated representative of Kemper at its 30(b)(6) deposition, "indicated a suspicion as the to signatures of Mr. Noe." This suspicion should be viewed in the light of Mr. Mensie's very next statement during the deposition, which was "…I'm not a handwriting expert or anything…" See EXHIBIT "G" to Plaintiff's Statement of Undisputed Facts. If the witness cannot even testify as to the signature, how can the Court allow this fact to be "undisputed" and thus form the basis for supporting any decision on summary judgment?

Statement 24

Mr. Dimon implies that the Annuity applied for and the settlement approved by Judge Pettine were the same thing. This is patently false. The Annuity product applied for is defined by what is on the Application submitted to the Annuity issuer. The product applied for here was a 20 year certain annuity. See EXHIBIT "E" to Plaintiff's Statement of Undisputed Facts. That Application identifies an immediate annuity for 20 years certain with increases of 3% per year. Nowhere on that Application, or on any other draft or prior version of the Application, does it indicate that a lifetime annuity was being applied for or that any payment would be received after the conclusion of the 20 year certain period.

Plaintiff's misrepresentation of this fact is particularly troubling in light of the fact that, at the time the application was submitted, there is no evidence that Charter was aware that there was a on-going litigation in the Jenny C., Inc. matter nor that a

4

settlement was reached between the parties to that suit.  Again, Charter was not a party nor was it in anyway involved in the <u>Jenny C, Inc</u>. litigation.

<u>Statement 26</u>

Mr. Dimon mischaracterizes the state of the evidence and the nature of the document attached as EXHIBIT "E" to Plaintiff's Statement of Undisputed Facts.  There is no evidence that a "new" application was produced, only that additions may have been made after Mr. Noe's signature was made on the document.

<u>Statements 27, 28, 29, 30, 31 and 32</u>

These statements all refer to an incomplete version of the original document, i.e. pages 3 and 4 are not attached and miscellaneous pages are attached that do not follow, and may not be part of, the original document.  The Table of Contents refers to a Schedule Page, which should be found on page 3 of the document, and a Table of Guaranteed Contract Values, which should be found on page 4 of the documents.  <u>See</u> EXHIBIT "H" to Plaintiff's Statement of Undisputed Facts, at 2.  Of the remaining seven pages of the documents, not one refers to Dennis Dimon.

Perhaps more problematic, Mr. Dimon refers to a document that is not listed on the Table of Contents as being "[a]ttached to the Deferred Annuity."  There is no evidence that Supplementary Agreement referenced in Statement 31 was ever attached to the document that has been designated as EXHIBIT "H."

These above noted disputed facts preclude entry of summary judgment in Mr. Dimon's favor as they are both genuine and material.  An issue is "genuine" if the pertinent evidence is such that a rational fact finder could resolve the issue in favor of either party, and a fact is "material" if it "has the capacity to sway the outcome of the

litigation under the applicable law." Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir.1995). Mr. Dimon has failed to present evidence demonstrating that there are no genuine issues of material facts, therefore summary judgment cannot enter in his favor.

### III.    ARGUMENT

#### A.    THIS IS A CONTRACT ACTION

Mr. Dimon comes before this Court as a party to a contract, and nothing more. He is not entitled to any special status that might be due seamen in admiralty actions. This is not an admiralty case. The only claims brought against MetLife are based on negligent misrepresentation and breach of contract. MetLife does not expressly or impliedly consent to the inclusion of any additional claims or any evidence not relevant to the claims pled by Mr. Dimon. MetLife's attempt to address these superfluous and unpled claims should not be taken as a comment on the validity or viability of these additional, unpled claims.

#### B.    THIS IS NOT A JONES ACT OR ADMIRALTY CASE

This case is neither a Jones Act nor an admiralty case. As asserted by the Plaintiff, "[t]his is a contract and malpractice action for monetary relief …." See Plaintiff's Complaint, at ¶1. In fact, the Plaintiff's Complaint is completely bereft of any mention of either the Jones Act or that Mr. Dimon was pleading his case based upon principles of admiralty. In Doyle v. Huntress, Inc., a case cited by Mr. Dimon in support of his being a "ward of the admiralty", the United States Appeals Court, First Circuit, addressed the issue of what constitutes an admiralty case. See 419 F.3d 3, 7 (1st Cir. 2005). "Whether a case is an admiralty case turns on whether the plaintiff properly

6

designated the action as an admiralty case." Id. Mr. Dimon never designated this action as an admiralty case. In fact, Mr. Dimon has taken great pains to frame this case in terms of contractual obligations and breaches of those obligations. Mr. Dimon's past or present vocation has no bearing on this action.

Further, the Jones Act only applies to actions <u>against employers</u> of seamen. Dimon's former employer, Jenny C., Inc., is not a party to this case. MetLife is not now, nor has it ever been, an "employer" of Mr. Dimon. As such, MetLife cannot be held liable under any provision of the Jones Act.

The Jones Act provides a very specific class of people who can be sued under its provisions. "The Jones Act provides a cause of action against <u>the employer of a seaman</u> injured in the course of his employment." <u>Patrick C. Ryan v. United States</u>, 331 F. Supp. 2d 371, 376 (D. Md. 2004) <u>citing</u> <u>generally</u> <u>Wheatley v. Gladden</u>, 660 F.2d 1024, 1026 (4th Cir. 1981). "Jones Act actions may be maintained only against a seaman's employer…." <u>Id.</u> (internal citations omitted).

It is undisputed that MetLife is not, and never was, Mr. Dimon's employer. Nor can it be challenged that Mr. Dimon failed to allege a claim based on admiralty or the Jones Act. Therefore, this matter is a contract action and the principles and protections applicable to seamen in admiralty cases do not apply to MetLife.

### C.  MR. DIMON'S CLAIMS FOR BREACH OF CONTRACT AND NEGLIGENT MISREPRESENTATION FAIL AS A MATTER OF LAW

Mr. Dimon's claims for Breach of Contract and Negligent Misrepresentation fail as a matter of law. First, the claims are untimely and are thus barred by the applicable statutes of repose and limitation. Second, the contract Mr. Dimon asserts was breached

7

was the result of a mutual mistake and MetLife is entitled to void the contract. Finally, the Breach of Contract claim does not meet all of the elements of a breach claim in Massachusetts, therefore Mr. Dimon cannot prevail.

### i. Mr. Dimon's claims are time barred.

As argued in MetLife's Memorandum in Support of its Motions for Summary Judgment, Mr. Dimon's claims for breach of contract and negligent misrepresentation are barred by M.G.L. 175, §181 ("§181"). Whether the two year time period in §181 is applied as a repose or a limitations period, Mr. Dimon is barred from bringing both his breach of contract and negligent misrepresentation claims.

Under the repose theory, the date that triggers the running of the repose period is May 5, 1983, the date that MetLife issued the Annuity in question.[1] Mr. Dimon's causes of action sounding in contract or misrepresentation relating to the Annuity expired on May 5, 1985. §181 presents a "bright line" rule, i.e. an aggrieved party must bring its claim within two years or it will be barred. See M.G.L. 175, §181. It should be noted that, even though Mr. Dimon had actual knowledge of the facts and circumstances that form the basis of his allegations, such knowledge is not required for application of the repose period contained in §181. See Nett v. Bellucci, 437 Mass. 630, 635 (2002), citing McGuinness v. Cotter, 412 Mass. 617, 622 (1992), citing Klein v. Catalano, 386 Mass. 701, 702 (1982). Even absent any knowledge, unlike the instant case, the statute of repose presents an absolute time bar to Mr. Dimon's claims against MetLife.

Even if §181 is applied as a statute of limitation, Mr. Dimon's claims are time barred. At the very latest, Mr. Dimon personally knew all of the facts that might give rise

---

[1] This is also the date that Plaintiff cites as the date the contract claim "accrued." See §III(C)(ii) Infra.

8

to a claim in September, 1999. He was informed by his bank that MetLife had told them that the Annuity was for twenty years, which contradicted what he had told the bank. Prompted by the information from the bank, Mr. Dimon's wife called MetLife and was told that the annuity would only be for 20 years and then the payments would stop. Then, MetLife sent Mr. Dimon a letter stating in completely plain terms that his final payment would be on May 5, 2003.

Tolling is not appropriate under the circumstances of this case. Assuming *arguendo*, that the limitations period should be tolled, it can only be tolled until September, 1999. At that point the clock starts running on Mr. Dimon's claims. The clock ran out on or before September, 2001, over three years before Mr. Dimon brought his claim.

In Massachusetts, there are only three circumstances that may give rise to tolling of the limitations period:

1. Where a misrepresentation concerns a fact that was "inherently unknowable";

2. Where a wrongdoer breached some duty of disclosure; or

3. Where a wrongdoer concealed the existence of a cause of action through some affirmative act done with the intent to deceive.

See Loguidice v. Metropolitan Life Insurance Company *et al*, 336 F.3d 1, 6 (1st Cir. 2003); citing Patsos v. First Albany Corp., 433 Mass. 323 (2001) (citations omitted). None of the above circumstances apply to the case at bar.

The ongoing dispute in 1983 over the terms of the Annuity, and Charter's position that a clerical error had been made, was known to Mr. Dimon not only through his attorney in 1983, but also through his direct communication with MetLife in 1999. Mr.

9

Dimon cannot now claim that the facts upon which he uses to support his Complaint against MetLife were "inherently unknowable." Mr. Dimon has <u>not</u> asserted in his Complaint, and cannot now assert, that MetLife breached any duty to disclose something that was not disclosed in 1983.

In fact, MetLife <u>did</u> disclose facts that should have alerted Mr. Dimon (and/or his attorneys) that he might have a cause of action. Charter, in 1983, and MetLife, in 1999, both took affirmative actions, i.e. put Mr. Dimon on notice <u>in writing</u> either through counsel or directly, of the terms of the Annuity that was purchased on his behalf. As such, Mr. Dimon had sufficient information on each of those occasions to decide if he had a cause of action on which to proceed. Moreover, Mr. Dimon's attorneys, whose duty it was to protect him in procuring his settlement proceeds, had <u>actual</u> knowledge that there was a dispute regarding the terms of the Annuity. Based on the above, there is no basis to toll the statutes of limitation on Mr. Dimon's claims.

Mr. Dimon's assertion that his failure to bring his claim for 22 years equates to a "mere lapse of time" is a severe misstatement of the evidence before this Court. In the intervening years between 1983, the year the Annuity was issued, and 2005, the year Mr. Dimon brought his Complaint, a drastic toll has been taken on the parties, witnesses and documents related to this issue. Witnesses have been lost or have died, documents were destroyed (both purposefully and by an act of terrorism) and memories have faded. It is cases like this one that the statute of limitations is intended.

  **ii.**  **<u>Mr. Dimon cannot establish when the alleged breach occurred</u>.**

Mr. Dimon cannot definitively state when the breach in this case occurred. He has offered three different dates when the breach alleged to have been committed by

MetLife occurred. In light of Mr. Dimon's inability to assert a date certain for the breach, the Court cannot find either that there are no disputed facts preventing entry of summary judgment nor that Mr. Dimon is entitled to judgment as a matter of law.

Mr. Dimon's expert, Attorney Hans Hailey, in his expert report, states unequivocally that the breach Mr. Dimon complains about occurred in 1983: Attorney Hans Hailey testified that, "[m]ore concretely, the controversy [regarding the terms of the annuity] involved an actual breach of the contract in 1983." See Hans Hailey Report dated November 10, 2006, at page 6, attached as EXHIBIT "T" to MetLife's Memorandum in Support of its Motion for Summary Judgment. Thus, Mr. Dimon agrees "that breach was enforceable in 1983." Id.

Mr. Dimon's current counsel offers two additional dates for MetLife's alleged breach. Mr. Dimon's counsel asserts that "actual" breach occurred on June 5, 2003, the date that Mr. Dimon claims he became aware that he would not receive further payments from MetLife. See Plaintiff, Dennis Dimon's, Motion for Summary Judgment and Supporting Memorandum of Law at 13.[2] However, Mr. Dimon's counsel later asserts that Mr. Dimon's contract claim accrued, as against MetLife, on May 4, 1983. See Id. at 17. Mr. Dimon cites to the proposition that a claim accrues "at the time of the plaintiff's injury, or in the case of a breach of contract, at the time of breach." See Id. Where Mr. Dimon cannot decide which of several dates is the date of breach, the Court cannot find that there are no genuine issues of material fact such that summary judgment is appropriate in Mr. Dimon's favor.

---

[2] The assertion that Mr. Dimon first became aware that he would not receive payments after May 5, 2003 is false. Mr. Dimon's counsel received letters in 1983 and they took part in discussions regarding the dispute in 1983. Additionally, Mr. Dimon has acknowledged that he received a letter in September, 1999 informing him that he would not receive any payments after May 5, 2003.

11

### iii. The Mutual Mistake Prevents Enforcement of this Contract

A mistake need not be made by both parties to be "mutual" under Massachusetts' law. "A mistake made by one party to the knowledge of the other is equivalent to a mutual mistake." Mates v. Penn Mutual Life Insurance Company, 316 Mass. 303, 306 (1944); see also Torrao v. Cox, 26 Mass, App. Ct. 247 (1988). In Mates, Penn Mutual Life Insurance Company ("Penn") made a typographical error in drafting a table of surrender values. See Id. After the error was discovered by Penn, Penn contacted Mates' agent and requested a return of the policy in question. See Id. at 305. Mates, although he initially agreed to return the incorrect policy, failed to surrender the policy. See Id. at 305. Mates then attempted to capitalize on the error in the surrender table by surrendering the policy in the year that contained the incorrect value. See Id. at 304. The Mates court held that "the defendant [insurance company] had an equitable right to have the policy reformed, and that equitable right constituted unconditional and complete equitable defense to the plaintiff's claim." Id. at 306. (emphasis added)

In the instant case, there was a clerical error in the Annuity. Within weeks of issuing the Annuity, Charter alerted Morgan Stanley and Kemper of that error. Further, the clerical mistake was known to Mr. Dimon, through his attorneys at Latti Associates, within weeks of the issuance of the annuity in question. MetLife was entitled to void the Annuity in question based upon a mutual mistake, i.e. a mistake by one party known to the other party.

### iv. Dimon cannot meet all of the elements of breach

The elements for a breach of contract action in Massachusetts are as follows:

(1) that the parties had an agreement supported by valid consideration;

>   (2) that plaintiffs were ready, willing and able to perform;
>
>   (3) that defendant's breach has prevented them from performing; and
>
>   (4) that plaintiffs were damaged.

See Doyle v. Hasbro, Inc., 103 F.3d 186, 194-195 (1st Cir. 1996).

In the instant case, Mr. Dimon cannot show that the parties agreed to the same transaction. MetLife's position is that Mr. Dimon applied for, and was issued, a 20 year certain Annuity with payments for 240 months only. Mr. Dimon asserts that he was entitled to a lifetime annuity, with guaranteed payments for 20 years. However, there is no Application that supports that position. The duration term set out in the application is "20 years certain". See EXHIBIT "E" to Plaintiff's Statement of Undisputed Facts. It would not make sense that a person could apply for an Annuity for 20 years, only pay for a 20 year Annuity, wait 20 years and then sue for a lifetime Annuity.

Further, Mr. Dimon cannot prove that he was damaged by the alleged breach by Charter. He may be able to recover any and all damages from the other defendants. If he is successful in recovering from the other defendants, he will not be able to prove that a breach by MetLife caused him any damages at all.

>   v.  **Dimon's arguments based on fraud, forgery and deceit are without merit.**

Dimon asserts, for the first time in the case, that MetLife committed fraud, forgery and deceit in its issuance and correction of the Annuity in question.

>   a.  **Fraud**

Mr. Dimon's assertion that MetLife committed fraud, on the eve of trial nearly two years after filing his Complaint (and decades after the alleged fraud), is clearly

13

prohibited by the Fed. R. Civ. Pro. and, as such, does not entitle him to judgment as a matter of law.

Fed. R. Civ. Pro. 9 "imposes a heightened pleading requirement for allegations of fraud in order to give notice to defendants of the plaintiffs' claim, to protect defendants whose reputation may be harmed by meritless claims of fraud, to discourage 'strike suits,' and to prevent the filing of suits that simply hope to uncover relevant information during discovery." <u>Doyle v. Hasbro, Inc.</u>, 103 F.3d 186, 194 (1st Cir. 1996) (citing <u>McGinty v. Beranger Volkswagen, Inc.</u>, 633 F.2d 226, 228-29 & n.2 (1st Cir. 1980)).

"Mere allegations of fraud, corruption or conspiracy, averments to conditions of mind, or referrals to plans and schemes are too conclusional to satisfy the particularity requirement, no matter how many times such accusations are repeated." <u>Hayduk v. Lanna,</u> 775 F.2d 441, 444 (1st Cir. 1985) (citations omitted).

Mr. Dimon never raised the issue of fraud at any point in these proceedings, up to the filing of his Motions for Summary Judgment. He did not assert any such claim in his Complaint, he did not move to amend his Complaint, and he never raised it during the discovery period.

Because Mr. Dimon failed to timely assert a claim for fraud, he is not entitled to summary judgment based on a fraud theory.

      **b.**    <u>**Forgery**</u>

Mr. Dimon's frivolous and wholly unsupported allegation that Charter forged the Application should be dismissed by the Court as nonsense. Mr. Dimon's counsel's words do not even assert a belief that the forgery took place, or at any rate, that MetLife forged the document in question. In asserting that MetLife "forged" a document, Mr. Dimon

could not even come right out and boldly state that was the case.  Mr. Dimon instead only meekly noted "…[MetLife's] acts of …**allegedly** transferring Kemper's signature to that new document …[was a] clear exhibition of Fraud…."  See <u>Plaintiff, Dennis Dimon's, Motion for Summary Judgment and Supporting Memorandum of Law</u> at 12 (emphasis added).  Mr. Dimon cannot point to a shred of evidence that indicates that anyone forged the Application.  There was no deposition testimony from any deponent or any document produced that proves who, if anyone, altered the document in question.  Based on pure speculation, Mr. Dimon half-heartedly asserts that MetLife "allegedly" forged a document.  This argument should be dismissed without further consideration by the Court.

        c.     <u>**Deceit**</u>

Mr. Dimon's assertion that MetLife failed to notify him of the dispute regarding the terms of the Annuity is contradicted by the evidence, including much of the evidence relied upon by Mr. Dimon, before the Court.  Charter notified Mr. Dimon's attorneys within weeks of the discovery of the clerical error.  MetLife notified Mr. Dimon, during a 1999 telephone call with Mrs. Dimon that the final payment on the Annuity would be May 5, 2003.  MetLife again notified Mr. Dimon in clear and unequivocal language that his final payment would be in May, 2003.

There is no evidence that Charter had any knowledge that there was a Guardian Add Litem or a Court involved in the application for the Annuity.  Charter was not a party to the underlying case, <u>Dennis Jay Dimon v. Jenny C., Inc.</u>  There is no evidence that Charter was informed, at the time the application was made, that the Annuity was part of a settlement approved by a Court.  Charter cannot be saddled with the duty to

inform entities that it did not know existed or had involvement in the case. There was no deceit by Charter or MetLife, and therefore, Mr. Dimon's attempts to base his motion for summary judgment on this theory should be denied by the Court.

## IV. CONCLUSION

MetLife respectfully requests that the Court deny Dennis Dimon's Motion for Summary Judgment. There are disputed material facts, as noted above, that prevent summary judgment on Mr. Dimon's claims against MetLife.

Additionally, Mr. Dimon is not entitled to judgment as a mater of law. Mr. Dimon will not be able to prove that he has met the burden on his contract or misrepresentation claims. His claims were untimely filed, and he cannot prove all of the elements of his claims.

                                               Defendant,

                                               Metropolitan Life Insurance Company
                                               By its Attorneys,

                                               /s/ Peter LeBlanc
                                               James J. Ciapciak, BBO # 552328
                                               Peter LeBlanc, BBO # 645305
                                               CIAPCIAK & ASSOCIATES, P.C.
                                               99 Access Road
                                               Norwood, MA 02062
                                               (781) 255-7401

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing document was filed via the ECF system and will be served electronically through that system upon Counsel of Record on February 5th, 2007.

                                               /s/ Peter LeBlanc
                                               Peter LeBlanc