UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DENNIS DIMON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 05-11073 |
| | ) |
| METROPOLITAN LIFE INSURANCE CO., | ) |
| KEMPER INSURANCE CO., MORGAN | ) |
| STANLEY DW, INC., MICHAEL B. LATTI, | ) |
| LATTI ASSOCIATES, and LATTI & ANDERSON | ) |
| LLP, | ) |
| | ) |
| Defendants. | ) |

## MICHAEL B. LATTI, LATTI ASSOCIATES, AND LATTI & ANDERSON LLP'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Dennis Dimon's Motion for Summary Judgment should be denied because the plaintiff has failed to establish, as a matter of law, any of the essential elements of a legal malpractice claim. Specifically, Mr. Dimon has not proven (a) that Latti Associates' failed to exercise reasonable skill in the matter for which they were retained; and (b) that this alleged negligence proximately caused the plaintiff an identifiable loss. To the contrary, as argued in Latti Associates' Motion for Summary Judgment and further below, it is Latti Associates who are entitled to summary judgment on the plaintiff's claims because the evidence is that Latti Associates' conduct has not caused the plaintiff any actual damages. Michael Latti and Latti Associates represented Mr. Dimon in the 1983 trial and settlement and did not hear from him again until this current dispute.

The plaintiff's lawsuit is simple. He entered into a personal injury settlement in 1983 which provided, among other things, monthly payments to him for life. Those payments ceased in 2003, and he now seeks to prove that they should not have. The only possible scenario under which Dimon can even allege that Latti Associates has caused him harm is if he is unable to enforce the 1983 settlement agreement due to the negligence of Latti Associates. This scenario is purely hypothetical, however, because the evidence establishes that Dimon is entitled to enforce the 1983 settlement agreement against the settling insurance company, Kemper Insurance Co. Since nothing Latti Associates did or did not do precludes the plaintiff from enforcing that settlement, Latti Associates has not caused a legally cognizable loss, and an action against them cannot be sustained.

Further, and perhaps more importantly at summary judgment, while the underlying dispute concerning the enforceability of 1983 settlement agreement (and the annuity purchased by Kemper from MetLife to fund its settlement obligations) remains pending, Latti Associates' alleged negligence <u>cannot</u> have caused Mr. Dimon any loss. The overwhelming case law on this issue, and, quite frankly, common sense, dictate that before Latti Associates can be blamed for Mr. Dimon's inability to enforce the 1983 settlement, this Court must first determine that Mr. Dimon is <u>in fact</u> unable to enforce that agreement. (<u>See</u>, infra, pp. 10-12 for cited case law). Presently, it is an act of pure speculation by the plaintiff to attribute the loss of his lifetime payments to Latti Associates when he has not yet lost his legal claim to those payments against the entities with whom he contracted to provide them. Actions for legal malpractice cannot be sustained on speculative scenarios about what might happen in the future. An <u>actual loss caused by the defendant's negligence</u> is an essential element of Mr. Dimon's case against Latti Associates. Since there is no evidence that Mr. Dimon has suffered an actual loss caused by

Latti Associates, he cannot prove this essential element, and his claim for legal malpractice is premature as a matter of law. Therefore, summary judgment in Mr. Dimon's favor should be denied, and summary judgment should enter for Latti Associates.

## **RESPONSIVE STATEMENT OF FACTS**

In the interests of judicial economy, rather than set forth their rendition of the facts of this case again, Latti Associates refers this Court to, and incorporates by reference herein, the statement of material facts set forth in their Motion for Summary Judgment previously filed with this Court. Therefore, any assertion of fact contained in the plaintiff's statement of material facts that is inconsistent with a material fact set forth in Latti Associates' statement of material facts is disputed. In addition, Latti Associates explicitly disputes the following statements contained in plaintiff's Statement of Undisputed Material Facts:

Statement 36   On or about August 12, 1983 representatives of American Motorist/Kemper and Latti Associates were on notice that Charter Security/Metropolitan was attempting to change the agreed upon and approved settlement from 240 months certain (20 years), and life thereafter to 240 months (20 years) only. (See August 12, 1983 letter from John Noe to Dean Witter Reynolds, attached as "Exhibit J" to Plaintiff's Statement of Facts).

Response   Latti Associates admits that Roger Hughes was listed in the letter as a carbon copy recipient, but Latti Associates disputes Statement 36 in so far as "on notice" constitutes a conclusion of law, which is not the assertion of a material fact. Further, Latti Associates disputes that MetLife was "attempting to change the agreed upon and approved settlement." MetLife did claim that a clerical error had been made in the annuity that Kemper purchased for Mr. Dimon's benefit, and that payments would not be made for life but for 20 years only. See July 14, 1983

3

letter to Kurt Snyder from Barbara Boehm, attached as <u>Exhibit G</u> to Latti Associates' Motion for Summary Judgment. However, MetLife never indicated that it was "attempting to change the agreed upon and approved settlement", and, in fact, MetLife could not affect such a change because it was not a party to the underlying settlement agreement. Altering the terms of the annuity that was to fund Kemper's settlement obligations does not alter the underlying settlement agreement.

<u>Statement 42</u>   At no time after May 3, 1983 did Charter Security/Metropolitan seek approval of the United States District Court District of Rhode Island for their proposed change to the settlement agreement.

<u>Response</u>    Latti Associates disputes this statement in so far as it is based on the false premise that MetLife was capable of altering the underlying settlement agreement. MetLife was not a party to the underlying settlement agreement, and therefore, any actions it took did not alter the obligations of the parties to that settlement agreement.

<u>Statement 43</u>   At no time after May 3, 1983 did Charter Security/Metropolitan seek approval of Judge Pettine for their proposed change to the settlement agreement.

<u>Response</u>    Latti Associates disputes this statement in so far as it is based on the false premise that MetLife was capable of altering the underlying settlement agreement. MetLife was not a party to the underlying settlement agreement, and therefore, any actions it took did not alter the obligations of the parties to that settlement agreement.

4

Statement 46   At no time after May 3, 1983 did American Motorist/Kemper seek to enforce the agreement that was approved by Judge Pettine of the United States District Court District of Rhode Island even after they were aware that Charter Security/Metropolitan was attempting to and did in fact change the agreement.

Response   Latti does not dispute the fact that Kemper has not sought to enforce the terms of the lifetime annuity it purchased from MetLife for Mr. Dimon's benefit. However, Latti Associates disputes this statement on the grounds that it is based on the false premise that MetLife was capable of altering the underlying settlement agreement. MetLife was not a party to the underlying settlement agreement, and therefore, any actions it took did not alter the obligations of the parties to that settlement agreement.

Statement 47   At no time after May 3, 1983 did Latti Associates attempt to enforce the settlement agreement in the United States District Court District of Rhode Island even though they were copied on four letters regarding Charter Security/Metropolitan's intention so severely change the agreement.

Response   Latti Associates disputes this statement on the grounds that it is based on the false premise that MetLife was capable of altering the underlying settlement agreement. MetLife was not a party to the underlying settlement agreement, and therefore, any actions it took did not alter the obligations of the parties to that settlement agreement. Further, though Latti Associates will concede for the purposes of summary judgment that they were aware that there was a dispute concerning the terms of the annuity purchased by Kemper from MetLife, there is no evidence whatsoever that Latti Associates was ever on notice that Kemper did not intend to honor its obligations under the settlement agreement. To the contrary, the fact that, in the final letter

exchanged between Kemper and MetLife concerning the dispute over the terms of the annuity, Kemper indicated that the original annuity for lifetime payments was valid and enforceable, is an acknowledgement that it understood its settlement obligations to include lifetime payments to Dimon.

Statement 48    At no time after May 3, 1983 did Latti Associates attempt to enforce the settlement agreement by appearing before Judge Pettine in the United States District Court District of Rhode Island even though they were copied on four letters regarding Charter Security/Metropolitan's intention so severely change the agreement.

Response    Latti Associates disputes this statement on the grounds that it is based on the false premise that MetLife was capable of altering the underlying settlement agreement. MetLife was not a party to the underlying settlement agreement, and therefore, any actions it took did not alter the obligations of the parties to that settlement agreement. Further, though Latti Associates will concede for the purposes of summary judgment that they were aware that there was a dispute concerning the terms of the annuity purchased by Kemper from MetLife, there is no evidence whatsoever that Latti Associates was ever on notice that Kemper did not intend to honor its obligations under the settlement agreement. To the contrary, the fact that, in the final letter exchanged between Kemper and MetLife concerning the dispute over the terms of the annuity, Kemper indicated that the original annuity for lifetime payments was valid and enforceable, is an acknowledgement that it understood its settlement obligations to include lifetime payments to Dimon.

<u>Statement 48 [sic]</u>     At no time after the May 3, 1983 hearing did Charter Security/Metropolitan inform Mr. Dimon of the attempted changes to his settlement agreement.

<u>Response</u>     Latti Associates disputes this statement in so far as it is based on the false premise that MetLife was capable of altering the underlying settlement agreement. MetLife was not a party to the underlying settlement agreement, and therefore, any actions it took did not alter the obligations of the parties to that settlement agreement. However, MetLife did inform Mr. Dimon via letter in September of 1999 that payments pursuant to the annuity would cease after May of 2003. See September 24, 1999 letter from Teresa Thorp to Dennis Dimon, attached as Exhibit P to Latti Associates' Motion for Summary Judgment.

<u>Statement 48 [sic]</u>     At no time after the May 3, 1983 hearing did American Motorist/Kemper inform Mr. Dimon of the attempted changes to his settlement agreement.

<u>Response</u>     Latti Associates disputes this statement in so far as it is based on the false premise that MetLife was capable of altering the underlying settlement agreement. MetLife was not a party to the underlying settlement agreement, and therefore, any actions it took did not alter the obligations of the parties to that settlement agreement.

<u>Statement 48 [sic]</u>     At no time after the May 3, 1983 hearing did Lattie [sic] Associates inform Mr. Dimon of the attempted changes to his settlement agreement.

<u>Response</u>     Latti Associates disputes this statement in so far as it is based on the false premise that MetLife was capable of altering the underlying settlement agreement. MetLife was not a party to the underlying settlement agreement, and therefore, any actions it took did not alter the obligations of the parties to that settlement agreement.

# ARGUMENT

## I. Latti Associates Is Entitled To Summary Judgment

Latti Associates' Motion for Summary Judgment should be granted because the plaintiff is entitled to enforce the 1983 settlement agreement against the defendant Kemper, and therefore, there can be no claim against Latti Associates as a matter of law. In order to sustain an action for legal malpractice, the plaintiff has "the burden of establishing by competent evidence the fact of negligence or want of reasonable skill on the part of the defendant, **and the actual loss or damages resulting therefrom**." McLellan v. Fuller, 226 Mass. 374, 377-378 (1917), citing, Whitney v. Abbott, 191 Mass. 59, 64, 77 N. E. 524 (emphasis added). In this instance, Mr. Dimon is required to establish that Latti Associates' negligence has caused him to lose his right to lifetime payments pursuant to the 1983 settlement agreement and resulting annuity. The evidence is, however, that Mr. Dimon is entitled to enforce the terms of the 1983 settlement agreement, and therefore, any alleged failure on the part of Latti Associates during the course of their representation of him has not caused him actual harm. Moreover, the relevant case law makes clear that prior to the resolution of the plaintiff's claims against Kemper and MetLife concerning the enforceability of the 1983 settlement agreement and annuity, Latti Associates alleged negligent representation cannot have caused the plaintiff harm, making an action for legal malpractice against Latti Associates premature as a matter of law.

### A.   The 1983 settlement agreement is enforceable.

The plaintiff is entitled to be made whole by enforcing the terms of the 1983 settlement agreement against Kemper. There is no dispute that the 1983 settlement agreement between Mr. Dimon and defendant Kemper required monthly payments to Mr. Dimon for the term of his life. Those terms were explicitly stated in the General Release executed by Mr. Dimon, and were read

into the record at the settlement approval hearing in the District of Rhode Island. See General Release, attached to Latti Associates Motion for Summary Judgment as Exhibit D; May 3, 1983 Hearing Transcript, pp. 6, attached to Latti Associates Motion for Summary Judgment as Exhibit B. It is further undisputed that Kemper applied for and purchased an annuity from defendant MetLife to fund the settlement payments to Mr. Dimon. Deposition of William Mensie on behalf of Kemper ("Mensie Dep."), pp. 223-25, (Exhibit E to Latti Associates' Motion for Summary Judgment); The June 17, 1983 Single Premium Deferred Annuity (Exhibit F to Latti Associates' Motion for Summary Judgment). Though Kemper purchased an annuity to fund the payments to Dimon, purchasing such an annuity did not absolve it of its obligations to Dimon under the settlement agreement. Kemper has acknowledged its obligations to Mr. Dimon, stating in a 1983 letter to MetLife that monthly payments to Dimon for 20 years certain and then life thereafter was "the benefit to be provided **under the terms of a general release and settlement agreement** approved by Judge Pettine of the United States District Court for the District of Rhode Island." August 12, 1983 letter to Robert A. Foley from John L. Noe, (Exhibit H to Latti Associates' Motion for Summary Judgment) (emphasis added). There is no evidence to support that Kemper obligations have changed in any manner.

The settlement agreement was breached in June of 2003 when the monthly payments to the plaintiff ceased. Until the payments actually ceased, Mr. Dimon had not been damaged. Once he was damaged and a cause of action created, Mr. Dimon promptly filed suit in 2005 to enforce the settlement agreement, which was well within the 6 year statute of limitations for actions sounding in breach of contract. There is simply no evidence on this record to prevent Mr. Dimon from now enforcing the terms of that settlement agreement against Kemper as a

9

matter of law.[1] Since Mr. Dimon is entitled to be made whole by recovering the full value of his 1983 settlement agreement from Kemper, Latti Associates has no role to play in this litigation, and their Motion for Summary Judgment should be granted.

> **B.    The plaintiff's claim against Latti Associates is premature as a matter of law because the underlying dispute between Dimon and the defendant insurance companies has not yet been resolved.**

As indicated above, the plaintiff is entitled to enforce the terms of the 1983 settlement agreement against Kemper, and therefore, Latti Associates alleged negligence did not cause the plaintiff actual damages. Further, until the plaintiff's claims against Kemper and MetLife concerning the 1983 settlement agreement and resulting annuity are resolved, the plaintiff's claim against Latti Associates is speculative and cannot be maintained as a matter of law. Until the plaintiff is actually precluded from enforcing the settlement agreement, the plaintiff's lawsuit blaming Latti Associates for that preclusion is premature. Since the harm the plaintiff wishes to attribute to Latti Associates does not yet (and most likely never will) exist, it cannot be the basis of a legal malpractice claim.

This issue often arises in the legal malpractice arena because clients bring actions against their lawyers related to underlying disputes that have not yet been resolved. Courts consistently dismiss these claims as premature. Latti Associates discussed several cases in its Motion for Summary Judgment in which state and federal courts applying Massachusetts law held that, when a lawyer is accused of malpractice related to his/her representation of a client in a dispute, that dispute must be resolved before the malpractice claim can proceed. See Latti Associates' Motion for Summary Judgment, pp. 9-13; Wehringer v. Powers & Hall, P.C., 874 F.Supp. 425, 427 (D. Mass. 1995) (holding that a plaintiff's claim for malpractice related to his attorney's

---

[1] It certainly also appears from the evidence that Kemper would have a viable claim against MetLife to enforce the terms of the annuity it purchased from MetLife to fund its settlement obligations to Dimon. That dispute, however, does not need to be resolved for Dimon to be able to enforce the settlement agreement itself.

10

representation of him in an underlying dispute must be dismissed because "[a]t the time the plaintiff filed his complaint in the instant case, his cause of action for legal malpractice had not yet accrued, as the underlying suit was still pending…"); Wehringer v. Power and Hall, P.C., 1995 WL 536047 (1st Cir.1995) (upholding the lower court's dismissal of the plaintiff's claim because "even if [defendant attorney] was negligent in failing to amend the complaint prior to the running of the statute of limitations, [the plaintiff] has suffered no loss therefrom unless the claim probably would have succeeded. Until the underlying lawsuit is completed, [the plaintiff] cannot offer such proof."); Derosier v. White, 1995 WL 809721, at *3 (Mass. Super. Feb. 10, 1995) (Rup, J.) (granting summary judgment in favor of a defendant attorney when plaintiff failed to show "that if he were to obtain a favorable judgment [in the underlying dispute], the defendant's acts or omission would prevent him from recovering on such judgment", making his claim of damages "speculative", and thus his malpractice claim "premature.") (citing Wheringer, supra.). This is not particular to Massachusetts law as courts in other jurisdictions routinely dismiss legal malpractice claims on the identical grounds. See, e.g., Bowman v. Abramson, 545 F.Supp. 227 (E.D. Pa. 1982) (holding that "[u]ntil the underlying medical malpractice cases are decided adversely to the plaintiff the case against his former attorneys is hypothetical and his damages are speculative."); Eddleman v. Dowd, 648 S.W.2d 632, 633 (Mo.Ct.App. 1983) (in granting summary judgment in favor of defendant attorney, the court stated that "so long as this underlying lawsuit [in which the attorney's negligence occurred] remains pending, plaintiff cannot show [the attorney's] professional negligence proximately caused damage."); Amfac Distrib. Corp. v. Miller, 673 P.2d 792, 794 (Sup. Ct. Az. 1983) (concluding that a claim for legal malpractice does not accrue until the underlying litigation is complete because "the injury or

damaging effect on the unsuccessful party is not ascertainable until the appellate process is completed or is waived by a failure to appeal.").

The overwhelming authority makes clear that, until the underlying dispute concerning the enforcement of the 1983 settlement agreement and resulting annuity is resolved, there are no damages to attribute to Latti Associates. Without damages caused by Latti Associates, the plaintiff cannot establish an essential element of his claim, and his legal malpractice action fails as a matter of law. Therefore, Latti Associates is entitled to summary judgment on all claims asserted by the plaintiff in this action.

## II. The Plaintiff's Motion for Summary Judgment Should Be Denied

The plaintiff's Motion for Summary Judgment against Latti Associates should be denied because the plaintiff cannot establish, as a matter of law, that (a) Latti Associates failed to exercise reasonable skill in the matter for which they were retained; and (b) any alleged negligence on Latti Associates' part proximately caused the plaintiff any identifiable loss. Specifically, the plaintiff cannot establish his claims as a matter of law in the absence of expert testimony on the issues of standard of care and causation.

### A. Standard of Review

1. The Jones Act standard at summary Judgment does not apply to Mr. Dimon's claims against Latti Associates.

As this Court is well aware, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). On the plaintiff's Motion for Summary Judgment, Mr. Dimon bears the burden of showing the Court that no genuine issue of material fact exists. See Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir.

12

1995). This Court, in considering Mr. Dimon's Motion, must "scrutinize the record in the light most flattering to [Latti Associates], indulging all reasonable inferences in [their] favor." Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 19 (1st Cir. 2003). Mr. Dimon argues in his Motion, however, that, due to his alleged status as a "Jones Act Seaman", the facts and reasonable inferences should be viewed by this Court in his favor. Plaintiff's Motion for Summary Judgment, pp. 6-8. This suggested reversal of the summary judgment standard is wholly without support.

The Jones Act applies to actions for personal injury brought by seaman injured in the course of their employment. 46 U.S.C. App. § 688 ("Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law..."). Mr. Dimon's claim against Latti Associates is for legal malpractice; not for personal injuries suffered in the course of his employment. The Jones Act simply does not apply to Mr. Dimon's action against Latti Associates, and any "preferences" at law that may be afforded by the Jones Act are irrelevant to this Court's consideration of Mr. Dimon's Motion for Summary Judgment. Therefore, the burden remains on Mr. Dimon to establish that there are no triable issues as to any of the essential elements of his claim against Latti Associates, and all facts and reasonable inferences are to be viewed in Latti Associates' favor.

> **B.    The plaintiff has failed to cite expert testimony in support of his claim against Latti Associates, therefore, his Motion for Summary Judgment should be denied.**

"To prevail on a claim of negligence by an attorney, a client must demonstrate that the attorney failed to exercise reasonable care and skill in handling the matter for which the attorney was retained; that the client has incurred a loss; and that the attorney's negligence is the proximate cause of the loss." Colucci v. Rosen, Goldberg, Slavet, Levenson & Wekstein, P.C.,

13

25 Mass.App.Ct. 107, 111 (1987) (internal citations omitted). The plaintiff's entire theory of liability against Latti Associates, which occupies all of three paragraphs in his 28 page brief, amounts to nothing more than conclusory statements, unsupported by expert testimony. The plaintiff does not establish the standard of care owed by Latti Associates, does not establish that Latti Associates deviated from that standard of care, and does not even mention how any conduct of Latti Associates has caused the plaintiff damages. Since the plaintiff cannot establish a single essential element of his claim for legal malpractice as a matter of law, his Motion for Summary Judgment must be denied.

In Colucci v. Rosen, Goldbert, Slavet, Levenson & Wekstein, P.C. the Appeals Court reversed a jury verdict in favor of a plaintiff in a legal malpractice action on the grounds that the plaintiff failed to offer expert testimony concerning how the attorneys breached the standard of care and how that breach caused the plaintiff damages. The plaintiff alleged that the attorneys' missteps and inaction in handling an application for a temporary restraining order to prevent picketing outside the plaintiff's restaurant caused him harm. Colucci, supra, at 108-09. Though the plaintiff did not offer expert testimony concerning either the attorneys' alleged breach of duty, or how that breached caused any damages, the jury returned a verdict in favor of the plaintiff. Id. at 111. In reversing that verdict the court stated that "an allegation of malpractice is not self-proving. Expert testimony is generally necessary to establish that that an attorney failed to meet the standard of care owed in the particular circumstances." The court held that the plaintiff's failure to present expert testimony on the standard of care and his failure to present expert testimony on the issue of causation provided separate and independent grounds on which to reverse the jury's finding. Id. at 116 n.8.

Mr. Dimon appears to allege that Latti Associates was negligent by having him execute a "substandard" release and for failing to inform Mr. Dimon of the dispute between MetLife and Kemper over the terms of the annuity. The plaintiff does not, however, cite a shred of expert testimony in support of his allegations. This failure is fatal to the plaintiff's Motion for Summary Judgment. See Glidden v. Terranova, 12 Mass.App.Ct. 597, 598 (1981) ("Because the question whether an attorney has exercised sufficient legal care is one of fact for the jury to decide, expert testimony is generally necessary to establish the standard of care owed by an attorney in the particular circumstances and the defendant's alleged departure from it."), citing Nolan, Tort Law § 186, at 299 (1979); Barry, Legal Malpractice in Massachusetts, 63 Mass.L.Rev. 15, 17 (1978). Further, the plaintiff does not even articulate his theory concerning how Latti Associates' conduct has caused him harm, much less cite any expert testimony as to causation. Again, as Colucci makes clear, a plaintiff cannot establish a claim for legal malpractice in the absence of expert testimony concerning causation.

Since the plaintiff has failed to establish a single essential element of his claim against Latti Associates, his Motion for Summary Judgment should be denied.

## CONCLUSION

Based on the foregoing arguments, as well as the arguments contained in Latti Associates' Motion for Summary Judgment, the plaintiff's Motion for Summary Judgment should be denied, and summary judgment should enter in favor of Latti Associates.

MICHAEL B. LATTI, LATTI ASSOCIATES, and
LATTI & ANDERSON
LLP,

By their attorneys,


/s/ John E. DeWick
J. Owen Todd (BBO #499480)
John E. (Jed) DeWick (BBO #654723)
Todd & Weld LLP
28 State Street, 31st Floor
Boston, MA 02109
(617) 720-2626