UNITES STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| DENNIS DIMON,<br>    Plaintiff,<br><br>vs.<br><br>METROPOLITAN LIFE<br>INSURANCE COMPANY, KEMPER<br>INSURANCE COMPANY, and<br>MICHAEL B. LATTI, LATTI<br>ASSOCIATES, LATTI & ANDERSON<br>LLP,<br>    Defendants. | CIVIL ACTION NO. 05-11073 MEL |

**PLAINTIFF, DENNIS DIMON'S, OPPOSITION TO DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff, Dennis Dimon ("Dimon"), respectfully requests this court deny Defendants' motions for summary judgment and instead, grant the summary judgment requested by Dimon. *See* Document No.s 54 and 55 – each of which is incorporated herein by reference.

As reasons therefore, Dimon states as follows:

NOTE: For the court's convenience, Dimon submits this single Memorandum of Law in support of his opposition to all three motions for summary judgment waged against his rights.

**CORPORATE BACKGROUND INFORMATION**

A significant portion of the events leading to this litigation took place in the 1981 – 1983. At that time, the corporate parties were known by other corporate names. The following is a list of what the parties were known as in 1981 – 1983 and what they are referred to now:

1

| BEFORE | NOW |
|---|---|
| **Charter Security Life Insurance Company** | **Metropolitan Life Insurance Company ("Metropolitan")** |
| **American Motorists Insurance Company** | **Kemper Insurance Company ("Kemper")** |
| **Latti Associates and Michael B. Latti** | **Latti & Anderson ("Latti")** |

**I.    FACTS**

Dimon has filed his Statement of Undisputed Material Facts separately (Document No. 55) and has incorporated the same *supra*. Dimon has also responded to each of the Defendants' Statements of Fact and incorporates each by reference. *See* Document No.s XX, XX, XX. In an effort against unnecessary redundancy, Dimon directs this court's attention to the brief summary of facts set forth in Dimon's motion at Document No. 54, pp. 2-5.

**II.   LAW AND ARGUMENT**

Unfortunately, none of the Defendants recognize or bring to this court's attention the fact that Dimon is a Jones Act seaman nor do they frame the appropriate and unique context by which this court should chart its analysis of those facts and the proper and applicable law that strongly suggest summary judgment in Dimon's favor.

DIMON IS A "WARD OF THE ADMIRALTY"

At pp. 6-7 of his motion (Document No. 54), Dimon concisely set forth both the historical and the immediate importance of Dimon's status and the treatment that Congress and the courts have established and upheld from day one of the Jones Act's implementation. Since Dimon again hopes to avoid redundancy by choosing not to reiterate what has been expressly incorporated by reference *supra*, Dimon stresses the importance of the prism through which this court's analysis should be viewed and respectfully requests that this court review the reasons that

"[T]he maritime law by inveterate tradition has made the ordinary seaman a member of a favored class. He is a 'ward of the admiralty.'" *See* Doyle v. Huntress, 419 F.3d 3, 9 (1st Cir. 2005) *quoting* Isbrandtsen Co. v. Johnson, 343 U.S. 779, 782-783 (1952) ("Whenever congressional legislation in aid of seamen has been considered here since 1872, the Court has emphasized that such legislation is largely remedial and calls for liberal interpretation in favor of the seamen.").

Pursuant to Congress and the U.S. Supreme Court, this court has a duty to consider the law applicable to these matters in Dimon's favor. This court should take interest in the fact that counsel for Attorney Latti and Latti Associates, a well-known Proctor in Admiralty and Admiralty Firm respectively, has been permitted by his clients to avoid this fact and argue that "land-based common law" apply. Where Metropolitan and Kemper may be said to have a small measure of excuse and might possible be permitted to blame a "lack of research", it is inconceivable that anyone should be permitted, on Latti's behalf, to urge this court to follow the two non-admiralty cases cited at page 8 of their motion. As Latti himself, and his firm are well aware, seamen deserve better. Dimon did when Latti represented him in 1983 and he still does. It is on this basis that Dimon hopes this court finds similar outrage at counsel's effort to guide this court away from the law.

As stated at 8 of Dimon's motion (Document No. 54), **the Standard for Summary Judgment applicable to Jones Act seamen is different than the common law standard**. Therefore, Dimon respectfully requests this court apply this correct and appropriate law as Congress and the courts have intended.

BRIEF RE-INTRODUCTION[1]

The matter brought to the court for summary judgment is quite simple:

- A jury awarded $710,000.00 to Dimon

- Subsequent to the jury award and on May 4, 1983, the parties agreed to $250,000.00 cash and an annuity for life with twenty years guaranteed to be paid at a rate of $1,450.45 per month with a guaranteed increase of 3 percent per *annum*.

- The agreement was approved by:

    o Dimon,
    o The court-appointed Guardian Ad Litem ("GAL"), and
    o The court;

- More than two months later, on July 14, 1983, Metropolitan, without Plaintiff's, GAL's, or the court's consent, unilaterally altered the agreement <u>grossly</u> in their favor;

- The Defendants allowed twenty years to pass and then <u>surprised</u> Plaintiff by enforcing the unilaterally-altered agreement.

Where the Defendants' negligence is easily identified, the math involved is *even simpler*:

- The Jury awarded:                 $710,000.00.

- The parties subsequently agreed to:   $250,000.00 cash and an annuity for life with twenty years guaranteed to be paid at a rate of $1,450.45 per month with a guaranteed increase of 3 percent per *annum* for 596.4 months.

- The alteration forced:            A cap of 240 months certain – NOT LIFE.

Clearly, 240 months is more favorable to the Defendants than the 596.4 months originally agreed to. And just as clearly, 240 months could not be *more contrary* to Dimon's

---

[1] Though the following section was set forth at 8-10 of Dimon's Motion (Document No. 54), it is brief and bears restatement herein so that this court may have the proper context of the issue involved readily at hand.

4

interests.[2]  Therefore, <u>NO</u> collection of eight reasonable individuals will weigh the evidence now before the court towards <u>any</u> outcome other than:

1. The Defendants' each had actual notice of Metropolitan's improper alteration.

2. The Defendants' did not approach Dimon, GAL, or the court because <u>none</u> would have assented.

3. Because 240 months ≠ 596.4 months (@ 3% compounded annually), 240 months is <u>not</u> the agreement that was prepared, presented to and approved by Dimon, GAL and the court.

4. 240 months is <u>grossly</u> contrary to Dimon's interests and would rob him of 356.4 months (@ 3% compounded annually).

5. Because Dimon, GAL and the court did not consent to the revised agreement, it is unenforceable as a matter of fact and law and Dimon is entitled to the lump sum present value payment of all future shortfalls and attorneys fees and either double or treble damages, as this court may find, pursuant to M.G.L. Ch. 176D and 93A.

<u>APPLICABLE LAW</u>

<u>DIMON'S ACTION IS GOVERNED BY FEDERAL GENERAL MARITIME LAW</u>

Kemper wrongfully misguides this court toward the application of New York state law. It is a well-entrenched federal practice that maritime contracts are settled within the framework of the General Maritime Law.  As so aptly stated by Justice Story in his much-acclaimed decision in <u>DeLovio v. Boit</u>:

---

[2] It should be noted that Dimon took the settlement in lieu of the full and superior jury award out of concern for the vessel owner's livelihood.  Where the vessel's policy may have been limited to the value of the vessel, the vessel could have been seized from the owner and sold at action.  *See* May 3, 1983 Hearing Transcript at 18, Exhibit A.

5

> On the whole, I am, without the slightest hesitation, ready to pronounce, that the delegation of cognizance of 'all civil cases of admiralty and maritime jurisdiction' to the courts of the United States comprehends all maritime contracts, torts, and injuries. The latter branch is necessarily bounded by locality; the former extends over all contracts, (wheresoever they may be made or executed, or whatsoever may be the form of the stipulations,) which relate to the navigation, business or commerce of the sea. *See* 2 Gall. 398, 7 F.Cas. 418, 444 (C.C.Mass. 1815) (*overruled on other grounds*) *see also* Nacirema Operating Co. v. Johnson, 396 U.S. 212, 216 (1969) (*quoting* DeLovio at 444).

Notwithstanding the U.S. Supreme Court's reaffirmation of Justice Story's words, they are still very much alive and well in more recent cases such as Nehring v. Steamship M/V Point Vail, where the Eleventh Circuit, in a well-written opinion that is on-point, recognized that "[t]he test we apply in deciding whether the subject matter of a contract is necessary to the operation, navigation, or management of a ship afloat is a test of reasonableness, not of absolute necessity." *See* 901 F.2d 1044, 1048 (11th Cir. 1990) *citing to* 7A Moore's Federal Practice ¶ .230[2], at 2762 (1988) *and*, *generally*, Id. ¶ [4], at 2781-2872, *and* 1 Benedict on Admiralty § 184, at 12-11 to -22 (1989). In Nehring, the court disagreed with the appellant's contention that "an obligation to make contributions to union plans does not give rise to any in personam right that is recognizable in a court of admiralty." *See* Nehring, at 1048. The Nehring court's analysis follows:

> We have found no cases directly on point holding that agreements such as those upon which the Seafarers Trust Funds rely in bringing their claims for contribution relate to the operation, navigation or management of a ship and therefore are within the court's admiralty jurisdiction . . . One author has noted that when courts have extended admiralty jurisdiction beyond its traditional parameters, they have done so in two basic ways, of which the first applies here. "[W]here a party has contractually undertaken some activity which, standing alone, would not be an admiralty matter, but has undertaken that activity in conjunction with an indisputable maritime contract, the Courts have included the ordinarily non-maritime activity in admiralty jurisdiction." [*citing to* Bridwell, Admiralty Contract Jurisdiction and Contract Liens under American Law 6, reprinted in 1988 Southeastern Admiralty Law Institute Program Materials]. This statement accurately describes our determination that admiralty jurisdiction exists in this case. Standing alone, [appellant's] obligation to make trust fund

6

contributions is not an admiralty matter. Taken in conjunction with the employment of the represented crewmembers, however, the obligation becomes subject to admiralty jurisdiction.

Like <u>Nehring</u>, "[defendants' obligation to make [annuity payments] is not an admiralty matter. Taken in conjunction with the employment of the represented crewmember, [Dimon,] however, the obligation becomes subject to admiralty jurisdiction."

<u>LATTI COMMITTED LEGAL MALPRACTICE</u>

Latti cannot side-step his responsibilities to Dimon by hiding behind a strategy of "no harm, no foul." Had Latti done his duty as Dimon's counsel and fought, <u>or in the least</u> *notified* him that Metropolitan was unilaterally altering his agreement and effectively setting the stage to rob him of 356.4 months of the settlement that had become his livelihood and/or that Kemper was going along with it, Dimon would not have been forced to face the shock, emotional distress and legal battle that he is currently involved in. Dimon also would not have been without funds since the Defendants' June 2003 breach.

Notwithstanding the fact that Dimon has already suffered *monetary* and *emotional* <u>damages</u> that WOULD have been avoided had Latti done his duty, it is wrongful to suggest that the "chicken must precede the egg." There has never been a case that even suggests that a plaintiff must successfully sue each successive link in a chain of defendants – each before the other may be joined. Such a post flies in the face of joinder and a plaintiff's duty to bring all claims at the time they are known or face the possibility of estoppel and/or *res judicata*.

In fact, had Latti continued his quote from the matter of <u>Colucci v. Rosen, Goldberg, Slavet, Levenson & Wekstein, P.C.</u>, he would defeated his attempt to misguide this court through a wrongfully placed "<u>Palsgraf</u>" analysis. "If the attorney acts with a proper degree of attention, with reasonable care, and to the best of his skill and knowledge, he will not be held responsible.

7

Some allowance must always be made for the imperfection of human judgment." *See* <u>Colucci</u>, 25 Mass.App.Ct. 107, 111, 515 N.E.2d 891 (1987) *quoting* <u>Stevens v. Walker & Dexter</u>, 55 Ill. 151, 153 (1870) *see also* <u>Gilbert v. Williams</u>, 8 Mass. 51, 56 (1811). Where Latti's failure to read and/or act upon several month's worth of mail and failure to defend and/or contact his client cannot be considered "the imperfection of human judgment" neither can his failed duty be granted a perverse "sanctuary" within the allegation that Dimon has not yet been damaged.

The remaining case law relied upon by Latti is even more inapposite than those distinguished *supra*. Where Latti properly cites to <u>Wehringer v. Powers & Hall, P.C.</u> (at page 9) for the notion that a legal malpractice action cannot be brought until the underlying dispute has been fully adjudicated (*see* 874 F.Supp. 425, 428 (D.Mass. 1995)), his own Statement of Material Facts (at page 2) states that there had been "a favorable jury verdict in February of 1983" and a "subsequent[] settle[ment] for a lump sum payment and a lifetime annuity." This court should not be misguided by a *pro se* litigant's attempt to sue his lawyer before he was done doing his job. *See* <u>Id</u>. at 427-428. Here, Latti is presumed to have *thought* his job was finished upon receipt of his contingent fee so he ignored and/or failed to act upon the communications that bluntly spelled out the manner in which Metropolitan had decided to unilaterally alter the agreement that LATTI had put together with Kemper and Judge Petine.

There is no way that a jury comprised of eight reasonable individuals will be able to find anything less than but for Latti's failure, in combination with the acts and omissions of Metropolitan and Kemper, Dimon would not have been made to suffer and become damaged both emotionally and economically.

<u>DIMON'S CLAIMS ARE NOT TIME BARRED</u>

Where Latti correctly states that the statute of limitation is three years and where Dimon was made aware of the Defendants' negligence and/or breach in June 2003 and filed his Complaint on May 23, 2005, he was well within the time allotted for the filing of his claims.

> **May 23, 2005 – June 5, 2003 = 1 year, 13 days → <u>well within any of the applicable limitations</u>**

Further, Dimon directs this court's attention to his motion (Document No. 54) at pp. 13-18 wherein ALL of the applicable statutes of limitations were fully briefed and placed into the proper context of the Federal Doctrine of Fraudulent Concealment.

<u>METROPOLITAN AND THE APPLICABILITY OF M.G.L. Ch. 175, § 181</u>

Metropolitan's actions from which the instant action primarily arises were so egregious and distasteful that the feeling is only enhanced by their only strategy – attempting to hide behind statutes of limitations where it is clear that none have been violated. Plaintiff respectfully refers this court's attention to Dimon's motion (Document No. 54) at pages 13-18.

The Statute of Limitation for the Tort of Misrepresentation related to the fraudulently altered annuity is set forth by M.G.L. Ch. 175, § 181 which states that "the holder of an annuity . . . may recover . . . in an action brought within two years after the date of issue. . ."

> <u>See MASS.GEN.LAWS Ch. 175, § 181 which states in pertinent part</u>:
>
> No company, no officer or agent thereof . . . shall make, issue, circulate or use, or cause or permit to be made, issued, circulated or used, any written or oral statement misrepresenting the terms of any . . . annuity . . . issued or to be issued by any company, or the benefits or privileges promised thereunder. No company, no officer or agent thereof . . . shall make to any person . . . holding any annuity . . . any written or oral misrepresentation or misleading representation in respect to the terms, benefits or privileges of . . . any annuity . . . or any written or oral incomplete or misleading comparison of any such policy or contract or of any of the terms, benefits or privileges thereof with . . . any of the terms, benefits or privileges thereof, in order to induce or which tends to induce such person to lapse, forfeit or surrender the . . . contract held by him, or to alter or convert it into, or to exchange it for, any other such policy or contract. Whoever violates any provision of this section shall be punished by a fine of not more than one thousand dollars or by imprisonment for not more than six months.
> * * *

9

> [T]he holder of any annuity . . . who was induced to procure it by any action in violation of this section by an officer or agent of the company issuing or executing it may recover from such company . . . in an action brought within two years after the date of issue thereof.

Like all the other Statutes of Limitations, "The federal doctrine of fraudulent concealment operates to toll the statute of limitations '**where a plaintiff has been injured by fraud and 'remains in ignorance of it without any fault or want of diligence or care on his part**.'"  See Salois v. Dime Sav. Bank of New York, FSB, 128 F.3d 20, 25 (1st Cir. 1997) (emphasis added) *quoting* Holmberg v. Armbrecht, 327 U.S. 392, 397 (1946) *quoting* Bailey v. Glover, 88 U.S. (21 Wall.) 342, 348 (1874); *see also* Maggio v. Gerard Freezer & Ice Co., 824 F.2d 123, 127 (1st Cir. 1987).  As stated at 13 of Dimon's motion, even under state law, "[i]f a person liable to a personal action fraudulently conceals the cause of such action from the knowledge of the person entitled to bring it, the period prior to the discovery of his cause of action by the person so entitled shall be excluded in determining the time limited for the commencement of the action."  *See* Mass.Gen.Laws Ch. 260, § 12.  Therefore, Metropolitan's reliance upon M.G.L. Ch. 175, § 181 is not wise.

KEMPER BREACHED THEIR CONTRACT WITH DIMON

Kemper was notified by Metropolitan regarding their unilateral alteration of the court-approved settlement.  Kemper even grumbled about it.  What Kemper failed to do was contact Dimon and/or Latti and/or the court and notify and/or challenge Metropolitan's actions whereby they definitively altered a promise made by Kemper in settlement of a claim that Dimon had against their insured.  Kemper cannot dispute Metropolitan's actions over several month's correspondence and then hide its head in the sand in an effort to dodge the presumed legal costs it would have to incur if they had properly challenged Metropolitan's actions.  Kemper is attempting to capitalize upon the actions of a third party and insulate itself by claiming

"plausible deniability." The parties entered into a deal that was blessed by a United States District Court. NONE should be permitted to hide behind another or each other's deceit.

KEMPER'S ACTS AND/OR OMISSIONS SATISFY THE ELEMENTS OF NEGLIGENT MISREPRESENTATION

Though Dimon denies that New York law is applicable here, it is much the same as any other state's law regarding negligent misrepresentation. Therefore, even applying the law provided by Kemper, summary judgment for Dimon is warranted. I.e. taking Kemper's own words at page 14 of their motion:

1. [Kemper] had a duty, as a result of a special relationship [as a settling authority that entered into a court-approved settlement contract], to give correct information [i.e. alert the other parties to the agreement and/or the court that "the thing had changed" when Metropolitan had made their "edit"];
2. [Kemper's omission to act once notified by Metropolitan was] a false representation that he or she should have known was incorrect;
3. the [settlement agreement] was known by [Kemper] to be desired by [Dimon and the court] for a serious purpose;
4. [Dimon] relied upon it; and
5. [Dimon] reasonably relied upon it to his detriment.

Though state law may "supplement" areas where the federal maritime law is silent, it is more likely that Rhode Island law would apply in this regard. In Rhode Island, "a prima facie case of negligent misrepresentation requires that plaintiff "establish the following elements:

'(1) a misrepresentation of a material fact;
(2) the representor must either know of the misrepresentation, must make the misrepresentation without knowledge as to its truth or falsity or must make the representation under circumstances in which he ought to have known of its falsity;
(3) the representor must intend the representation to induce another to act on it; and

11

(4) injury must result to the party acting in justifiable reliance on the misrepresentation.'"

*See* Francis v. American Bankers Life Assur. Co. of Florida, 861 A.2d 1040, 1046 (D.R.I. 2004) *quoting* Zarrella v. Minnesota Mut. Life Ins. Co., 824 A.2d 1249, 1257 (D.R.I. 2003) *quoting* Mallette v. Children's Friend and Service, 661 A.2d 67, 69 (D.R.I. 1995). Just like the "New York" analysis proposed by Kemper, they KNEW of the falsity enacted by Metropolitan when they contacted Kemper back in 1983. Dimon didn't know until 2003. Therefore, Kemper's omission which they knew to be "false" (they disputed it with Metrpolitan) "induced" and "result[ed in Dimon's] justifiable reliance on the misrepresentation" that he had a "Life Annuity" – a misrepresentation that Kemper constructively admits to in its Statement of Facts at page 4 *compared to* page 5-6 where Kemper outlines their recognition of Metropolitan's deceit.

**CONCLUSION**

As stated *supra*, our First Circuit has ruled that "[w]here the agreement is made, as here, under the eyes of the court, it is a most solemn undertaking, requiring the lawyers, as officers of the court, to make every reasonable effort to carry it through to a successful conclusion." *See* Warner, 513 F.2d at 682. NONE of the Defendants carried Dimon's court-sanctioned settlement annuity "through to a successful conclusion."

As made clear by the evidence presented both here and in Dimon's Statement of Undisputed Facts, the Defendants have individually, jointly and severally taken unfair advantage of Dimon, who, as a seaman, is this court's "ward." In accordance with our First Circuit's ruling in Doyle v. Huntress, this court has a duty to treat Dimon "with favor" for, in addition to his inclusion in the class deemed "ignorant and helpless, and so in need of protection against himself as well as others", this court must also take into account his "perceptual handicap" and

intellectual status of "dull normal." That such a ward, after being granted the protections of a court approval, was ever taken advantage of should cause any "reasonable person" <u>and this court</u> GREAT incense.

Through Fraud, Forgery, Deceit and a general failure to comply with any and all requisite duties be they legal, ethical, or human, the Defendants have caused Dimon to suffer a great financial loss, severe anxiety and have forced him into the present litigation in violation of M.G.L. Ch. 176D. In light of the evidence and law set forth herein and the M.G.L. Ch. 93A, § 9 letters Dimon sent Kemper and Metropolitan on December 7, 2006, by the time this motion is ripe for adjudication, this court will have all the tools necessary to rule on a plethora of violations, either on the pleadings or *sua sponte*.

Quite basically, and as set forth *supra*, since there are no genuine issues as to any material facts, Dimon is entitled to a judgment as a matter of law against all Defendants on all counts inclusive of those set forth *supra* that may be added by way of a Rule 15(b) amendment to conform to the evidence. See Fed.R.Civ.P. 15(b).[3]

Therefore, since the absence of evidentiary support for the Defendants' case would not lead reasonable persons presented with the same facts and inferences to differ as to their opinions, this matter, in its entirety, is a question for the judge. See <u>McDermott</u>, 498 U.S. at 356 *and* <u>Villanueva</u>, 930 F.2d at 128.

---

[3] "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings . . . as may be necessary to cause them to conform to the evidence . . ." *See* Fed.R.Civ.P. 15(b).

### III. DAMAGES

Where a Defendant has purchased a "settlement annuity" and then breaches that annuity, the injured party may be made whole, not by the purchase of yet another annuity, but by a lump sum present value payment of all future shortfalls along with payment of any reasonable attorneys' fees allowed by statute. *See* Massie v. U.S., 226 F.3d 1318, 1322 (Fed. Cir. 2000).

Therefore, Dimon may collect the lump sum present value payment of all future shortfalls and attorneys fees with either double or treble damages, as this court may find, pursuant to M.G.L. Ch. 176D and 93A. Upon satisfaction of the thirty-day rule associated with the above-referenced 93A Letters, Dimon shall seek to amend his Complaint to add a count under M.G.L. Ch. 93A and 176D. In addition, Dimon shall seek to include, pursuant to Fed.R.Civ.P. 15(b) *supra*, additional counts for claims raised here as well as a count for General Maritime Law Punitive Damages.

Respectfully submitted,

 /s/Brian Keane
DAVID B. KAPLAN, B.B.O. No. 258540
BRIAN KEANE, B.B.O. No. 656717
THE KAPLAN/BOND GROUP
88 Black Falcon Avenue, Suite 301
Boston, MA 02210
(617) 261-0080

Dated: February 5, 2007

> I hereby certify that a true copy of the above document was served upon each attorney of record by ECF on February 5, 2007.
>
>  /s/Brian Keane