UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DENNIS DIMON,<br>　　Plaintiff,<br><br>VS.<br><br>METROPOLITAN LIFE INSURANCE<br>COMPANY, KEMPER INSURANCE<br>COMPANY, MORGAN STANLEY DW, INC.,<br>MICHAEL B. LATTI, LATTI ASSOCIATES,<br>and LATLT & ANDERSON LLP,<br>　　Defendants. | )<br>)<br>)<br>)<br>)<br>)  C. A. NO: 05-1 1073 MEL<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF'S RESPONSE TO THE DEFENDANT, METROPOLITAN LIFE
INSURANCE COMPANY'S L.R. 56.1 STATEMENT OF UNDISPUTED
MATERIAL FACTS**

1. Plaintiff, Dennis Dimon ("Dimon"), was injured in 1981 while serving as a member of the crew aboard the **F/V JENNY C.** See EXHIBIT "A" at ¶ 10.

Response 1.

　　Plaintiff does not contest this fact.

2. At the time of the injury, Dimon was employed by Jenny C. Inc., a company organized under the laws of the State of Rhode Island. See EXHIBIT "B" at Count I, ¶2 and ¶ 3.

Response 2

　　Plaintiff does not contest this fact.

3. At the time of Dimon's injury, Jenny C., Inc., owned, operated and controlled the F/V JENNY C. See EXHIBIT "B" at Count I, ¶ 2.

Response 3

　　Plaintiff does not contest this fact.

4. In 1981, Dimon brought a personal injury action against Jenny C., Inc. seeking compensation for his injuries. See EXHIBIT "B".

Response 4

    Plaintiff does not contest this fact.

5. American Motorists Insurance Company ("American Motorists") was the excess insurance carrier for Jenny C., Inc. when Dimon was injured. <u>See</u> Exhibit # 8 and # 9 to W. Mensie Dep**.** Tr.; W. Mensie Dep. Tr. at 68:2-8 attached hereto and collectively referred to as EXHIBIT "U".

Response 5

    Plaintiff does not contest this fact

6. American Motorists was part of the Kemper Group, and is now Kemper Insurance Company. <u>See</u> EXHIBIT "A" at ¶ 17; <u>See also</u> EXHIBIT "F".

Response 6

    Plaintiff does not contest this fact.

7. The case wherein Dimon sued the vessel's owner was captioned: <u>Dimon v. Jenny C., Inc</u>., C.A. 81-0063; and was filed in the United States District Court for the District of Rhode Island. <u>See</u> EXHIBIT "B".

Response 7

    Plaintiff does not contest this fact.

8. In <u>Dimon v. JENNY C., Inc</u>., Dimon was represented by counsel from the firm of Latti Associates. <u>See</u> EXHIBIT "N" at 25:6-2 1.

Response 8

    Plaintiff does not contest this fact.

9. From 1982 through 1984, Michael Latti and Roger Hughes were partners at Latti Associates. Joseph Flannery also worked at Latti Associates. <u>See</u> EXHIBIT "N" at 6:23 - 7:7; <u>See also</u> EXHIBIT "O" at 7: 10-1 2.

Response 9

    Plaintiff does not contest this fact.

10. Joseph Flannery was primarily responsible for handling the <u>Dimon v. Jenny C., Inc</u>., litigation on behalf of Latti Associates. <u>See</u> EXHIBIT "N" at 26:4-9; 31:7-22.

Response 10

    Testimony in this matter indicates that Joseph Flannery, Roger Hughes and Michael Latti worked on the <u>Dimon v. Jenny C., Inc.</u> litigation.

11. After jury verdict was rendered in February of 1983, <u>Dimon v. Jenny C. Inc.</u> was reassigned within Latti Associates to Roger Hughes. <u>See</u> EXHIBIT "N" at 31:21-22.

Response 11

    Testimony in this matter indicates that Joseph Flannery, Roger Hughes and Michael Latti worked on the <u>Dimon v. Jenny C. Inc.</u> litigation.

12. Roger Hughes was Dimon's counsel of record in 1983. Michael B. Latti, Latti Associates, and Latti & Anderson LLP's Initial Disclosures at ¶ 3, attached hereto as EXHIBIT **"V";** <u>See also</u> Stipulation and Release, attached hereto and referred collectively as EXHIBIT "W".

Response 12

    Testimony in this matter indicates that Joseph Flannery, Roger Hughes and Michael Latti worked on the <u>Dimon v. Jenny C. Inc.</u> litigation.

13. There is no evidence that Latti Associates, Michael Latti or Roger Hughes ever withdrew as Dimon's counsel of record.

Response 13

    Plaintiff does not contest this fact.

14. On or about April 19, 1983, after the verdict was rendered, the parties to <u>Dimon v. Jenny C., Inc</u>. reached a settlement. ***See*** EXHIBIT "C".

Response 14

    Plaintiff does not contest this fact.

15. As the result of the settlement Dimon received a lump sum payment and applied for an annuity entitling him to monthly payments for twenty years.<u>See</u> EXHIBIT "D"; <u>See also</u> Correspondence from MetLife to Dimon dated June 9,2003 attached hereto as EXHIBIT "E"**.**

Response 15

> The settlement agreement reached by the parites consisted of a total settlement of $425,000.00 consisting of a lump sum payment of $250,000.00. The remaining $175,000.00 was used to fund an annuity which was guaranteed for 20 years and would continue for the life of the plaintiff. (Copy of May 3, 1983 Hearing before Judge Raymond J. Petine, attached as Plaintiff's Exhibit "A" to its material statements of fact).

16. Charter Security Life Insurance Company ("Charter") issued the annuity contract to Dimon. The corrected contract was lost. See EXHIBIT "F".

Response 16

> Charter Security Life Insurance Company did issue the annuity contract to Dimon. There is a dispute as to what happened to what is purported to be a corrected contract.

17. Charter was neither a party to, nor involved in the trial, settlement or post-trial proceedings of Dimon v. Jenny C., Inc.

Response 17

> Charter was notified on all correspondence concerning the post-trial proceedings.

18. Charter is now Metropolitan Life Insurance Company ("MetLife"). See EXHIBIT "A".

Response 18

> Plaintiff does not contest this fact.

19. MetLife was neither a party to, nor involved in the trial, settlement or post-trial proceedings of Dimon v. Jenny C., Inc.

Response 19

> MetLife through its predecessor in interest, Charter Security and Life Insurance Company, was involved in all correspondence regarding settlement or post-trial proceedings.

20. Dean Witter Reynolds, Inc. ("Dean Witter") was the agency that took the application for Dimon's annuity. See EXHIBIT "D".

Response 20

> Plaintiff does not contest this fact.

21. Dean Witter is now Morgan Stanley DW, Inc. <u>See</u> EXHIBIT "A" at ¶ 18.

Response 21

    Plaintiff does not contest this fact.

22. Annuity Application was submitted to Charter dated May 4, 1983. <u>See</u> EXHIBIT "D".

Response 22

    Plaintiff does not contest this fact.

23. American Motorists was the Applicant on the Annuity Application submitted to Dean Witter Reynolds. <u>See</u> EXHIBIT "D".

Response 23

    Plaintiff does not contest this fact.

24. The Annuity Application was signed by Dimon as the Annuitant. <u>See</u> EXHIBIT "D".

Response 24

    Mr. Dimon did sign an Annuity Application; however, there is a dispute as to what was filled in on the Application that Mr. Dimon signed.

25. The Annuity Application was signed by John Noe on behalf of American Motorists as the Owner of the annuity. <u>See</u> EXHIBIT "D".

Response 25

    Mr. Noe did sign and Annuity Application; however there is a dispute as to what was filled in on the Application with Mr. Noe signed.

26. The Annuity Application was signed by Kurt Snyder on behalf of Dean Witter as the agent. <u>See</u> EXHIBIT "D".

Response 26

    Mr. Snyder did sign the Annuity Application; however, it is disputed as to what was filled in on the Application when Mr. Snyder signed.

27. Roger Hughes of Latti Associates was identified in letters exchanged between Charter, American Motorists and Dean Witter as the person who provided

information regarding the terms of the annuity. See EXHIBIT "F"; See also EXHIBIT "G" and "H".

Response 27

    Plaintiff does not contest this fact.

28. On May 5, 1983, Charter issued the Annuity Contract. See EXHIBIT "E".

Response 28

    On May 5, 1983, Charter issued an Annuity Contract, it is disputed what the terms of the Annuity Contract were.

29. In a letter dated July 14, 1983, Barbara Boehm of Charter wrote to Kurt Snyder of Dean Witter asserting that a clerical error had been made in that the term of the annuity had been "incorrectly typed as 240 months certain and life thereafter instead of 240 months only." See EXHIBIT "I".

Response 29

    Plaintiff does not contest that the letter written by Barbara Boehm on July 14, 1983 to Kurt Synder exists, the Plaintiff does contest that clerical error. See Single Premium Deferred Annuity attached as Exhibit "H" to Plaintiff's Statements of Fact.

30. The July 14, 1983 letter from Barbara Boehm to Kurt Snyder states that "[a]s outlined in our telephone conversation . . ." indicating that there was at least one communication regarding the clerical error prior to July 14, 1983. Id.

Response 30

    The plaintiff does not contest the contents of the July 14, 1983 letter.

31. On August 12, 1983, John Noe, on behalf of American Motorists, sent a letter to Robert Foley of Dean Witter. See EXHIBIT "F".

Response 31

    Plaintiff does not contest this fact

32. John Noe's August 12, 1983 letter was carbon copied to Barbara Boehm of Charter and Roger Hughes of Latti Associates. Id.

Response 32

>Plaintiff does not contest this fact

33. The address used on the various correspondences between Charter, American Motorists and Dean Witter between July 14, 1983 and October 14, 1983 was the correct address for Latti Associates during the relevant time period. See EXHIBIT "N" at 32:16-1 8); See also EXHIBIT "O" at 42:22 - 43:1.

Response 33

>Plaintiff does not contest this fact.

34. Latti Associates did not experience any problems with mail delivery between July 14, 1983 and October 14, 1983. See EXHIBIT "N" at 32:19 - 33:14; See also EXHIBIT "O" at 43.2-11.

Response 34

>Plaintiff does not contest this fact.

35. Neither Michael Latti nor Roger Hughes have a specific memory regarding receiving the letters regarding the dispute as to the terms of the Annuity.

Response 35

>Plaintiff does not contest this fact.

36. In September of 1999, Katherine Dimon ("Mrs. Dimon"), on behalf of her husband, Dimon, contacted MetLife seeking information on the terms of the Annuity. See EXHIBIT "Q" at 10:3 -18.

Response 36

>Plaintiff does not contest this fact.

37. On September 24, 1999, MetLife wrote a letter to Dimon in response to Mrs. Dimon's inquiry confirming that Dimon would receive "monthly payments until the final payment on 5/5/2003." See EXHIBIT "R".

Response 37

>There is no indication that the letter referred to as a September 24, 1999 communication was sent from MetLife. The letter contained in Plaintiff's file does not have a letterhead, nor does it indicate what company sent the letter.

38. In 1999, Dimon's bank notified him and Mrs. Dimon that the Annuity was only for twenty years certain, not for life. See EXHIBIT "Q" at 67:24 - 68:2.

Response 38

    Mrs. Dimon did have a conversation with bank; however, her memory as with regard to the length of the Annuity is disputed.

39. All annuity payments were paid to Dimon for the term of 240 months. <u>See</u> EXHIBIT "E" and "M" at 10:7-14.

Response 39

    Annuity payments were paid to Mr. Dimon for a period of 240 months in violation of the agreement to pay for life thereafter.

40. MetLife paid Dimon the final payment on the Annuity on or about May 5, 2003. <u>See</u> EXHIBIT "E".

Response 40

    A payment was made to Mr. Dimon on May 5, 2003. This payment was not the last payment and should not have been the last payment pursuant to the agreement between the parties in 1983.

                        Plaintiff,
                        By his attorney,


                        __/s/ Brian Keane_____
                        BRIAN KEANE, BBO #656717
                        The Kaplan/Bond Group
                        88 Black Falcon Avenue, Ste. 301
                        Boston, MA 02210
                        (617) 261-0080