# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

---

DENNIS DIMON, )
)
       **Plaintiff,** )
)
VS. )
)     **C. A. No:  05-11073 MEL**
METROPOLITAN LIFE )
INSURANCE COMPANY, KEMPER )
INSURANCE COMPANY, )
MORGAN STANLEY DW, INC., )
MICHAEL B. LATTI, LATTI )
ASSOCIATES, and LATTI & )
ANDERSON  LLP, )
)
       **Defendants.** )

---

## DEFENDANT METROPOLITAN LIFE INSURANCE COMPANY'S OPPOSITION TO PLAINTIFF DENNIS DIMON'S <u>MOTION TO AMEND COMPLAINT</u>

      Defendant, Metropolitan Life Insurance Company (hereinafter "MetLife") hereby opposes Plaintiff Dennis Dimon's (hereinafter "Dimon") Motion to Amend Complaint. Dimon's Motion to Amend his Complaint pursuant to F.R.C.P. 15(a) to include claims against MetLife is untimely, unduly prejudicial to MetLife and futile.

      Dimon's reliance on F.R.C.P. 15(b) is misplaced and premature.  F.R.C.P. 15(b) controls amendments to conform to evidence presented at <u>trial</u>, not putative evidence generally.  Therefore, F.R.C.P. 15(b) cannot form a basis for amendment prior to trial as the rule specifically provides that amendment may be allowed "[w]hen issues not raised by the pleadings are **<u>tried</u>** … ." (Emphasis added).

More importantly, Dimon fails to assert any tenable or rational reason why he waited until the eve of oral argument on dispositive motions and just weeks before trial to bring these new claims against MetLife.  Nor could he:  Dimon asserts that he conducted due diligence in bringing these claims.  However, the facts that underlie the newly asserted claims have been known to Dimon for months (and in most instances for years) prior to the filing of his Motion to Amend.

Dimon seeks to file new claims after all discovery was concluded, long after the deadline for amendments to pleadings, and after motions for summary judgment were filed (on the eve of oral argument on those motions) based upon M.G.L. ch. 93A and ch. 176D.  MetLife respectfully requests that this Court deny Dimon's Motion to Amend Complaint.

## ARGUMENT

Dimon's Motion to Amend Complaint should be denied.  Dimon moves this Court to allow him leave to file an amended Complaint approximately <u>two</u> <u>years</u> after he filed his original Complaint on May 5, 2005, one year and three months after the deadline for amendment of the pleadings, six months after the close of discovery, and two months after dispositive motions were filed.  Most importantly, Dimon moves to amend nearly 23 years after the events that gave rise to this suit occurred.

Although Dimon refers the Court to the correct legal standard for amendment of pleadings, it should be noted that F.R.C.P. 15(a) provides that leave to amend should be "freely granted," not absolutely and unquestioningly granted.  It is within the Court's discretion to deny the requested amendment, especially where, as here, the prejudice to the other parties is great, the discovery has passed and it is the eve of trial.  MetLife urges

the Court to exercise its discretion to deny Dimon's Motion to Amend Complaint.

      a.      AMENDMENT PURSUANT TO F.R.C.P. 15(b) IS PREMATURE

F.R.C.P. 15(b)'s purpose is to allow parties to amend pleadings based upon the presentation of evidence at trial. It is not designed to allow parties to amend pleadings prior to trial. To the extent that Dimon's request to amend is based upon F.R.C.P. 15(b), it should be denied.

"First Circuit precedent permits a cause of action to arise pursuant to Fed. R. Civ. P. 15(b) 'if, **during the trial**, a party acquiesces in the introduction of evidence which is relevant only to that issue.'" Mauser v. Raytheon Co. Pension Plan for Salaried Emples., 46 F. Supp. 2d 98, 101 (D. Mass. 1999) (citing Rodriguez v. Doral Mortgage Corp., 57 F.3d 1168, 1172 (1st Cir. 1995) (quoting DCPB, Inc. v. City of Lebanon, 957 F.2d 913, 917 [1st Cir. 1992]) (Emphasis added). Here, we are not at trial and the parties do not acquiesce as to the evidence.

Dimon's reliance on F.R.C.P. 15(b) is misplaced and cannot form a basis for his proposed pretrial amendment. MetLife respectfully requests that the Court deny Dimon's Motion as premature.

      b.      AMENDMENT PURSUANT TO F.R.C.P. 15(a) IS UNTIMELY, PREJUDICIAL AND FUTILE

Dimon's Motion also should be denied because, at this late date, it is the product of undue delay, it would be unduly prejudicial to MetLife, and, even if the amendment were allowed, the claims are futile in that they were not brought within the applicable repose and limitations periods.

i.     UNDUE DELAY

The law is clear that a motion to amend the pleadings can and <u>should be denied</u> in circumstances where there is undue delay in seeking the amendment or where there would be prejudice to the opposing party.  See <u>Grant v. News Group Boston, Inc.</u>, 55 F.3d 1 (1st Cir. 1995); <u>Tiernan v. Blyth, Eastman, Dillon & Co.</u>, 719 F.2d 1 (1st Cir. 1983). That there has been undue delay in the filing of Dimon's Motion to Amend Complaint is beyond question.  As noted above, Dimon attempts to bring claims after the close of discovery, after the agreed to deadline for amendments to the pleadings and after all parties filed and opposed motions for summary judgment.  It is clear, after review of the following timeline of events, that Dimon failed to carry his burden to "exercise due diligence" in bringing the proposed amended claims.  See <u>Quaker State Oil Refining Corp. v. Garrity Oil Co.</u> 884 F.2d 1510, 1517 (1st Cir. 1989) (citing <u>Foman v. Davis</u>, 371 U.S. 178, 182, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962); <u>Imperial Enterprises, Inc. v. Fireman's Fund Ins. Co.</u>, 535 F.2d 287, 293 (5th Cir. 1976).  The timeline as to the critical events that allegedly give rise to Plaintiff's claims <u>against</u> <u>MetLife</u>, is as follows:

| | |
|---|---|
| <u>May – October 1983</u> | Dimon and Kemper apply for an annuity from MetLife[1] and the parties to this action, including Morgan Stanley's predecessor, engage in correspondence regarding a dispute over the terms of the Annuity in question. |
| <u>September, 1999</u> | Dimon's wife called MetLife regarding the terms of the Annuity and MetLife wrote Dimon a letter setting out the terms of the Annuity, a letter Dimon admitted he received. |
| <u>June, 2003</u> | Dimon received his 240th Annuity check, concluding MetLife's obligation to make monthly payments per the terms of the Annuity Application. |

---

[1] The Application in question was submitted to Charter Security Life Insurance Company, but for clarity sake, MetLife is the name used herein.

| | |
|---|---|
| <u>May 5, 2005</u> | Dimon files his law suit in this Court. |
| <u>November, 2005</u> | MetLife serves its Initial Disclosures, including copies of the letters cited by Dimon in his Motion to Amend Complaint. |
| <u>December 1, 2005</u> | By agreement of the parties, <u>including Dimon</u>, December 1, 2005 was the deadline for filing amendments to the pleadings. |
| <u>September, 2006</u> | Discovery closed. |
| <u>December 7, 2006</u> | Dimon served a purported M.G.L ch. 93A demand letter. |
| <u>January 2, 2007</u> | All parties, including Dimon and MetLife, filed Motions for Summary Judgment pursuant to the agreed-to and Court approved deadline for filing dispositive motions. |
| <u>January 4, 2007</u> | MetLife timely responded to the purported M.G.L ch. 93A demand letter. |
| <u>March 15, 2007</u> | Dimon filed and served his Motion to Amend Complaint. |

Dimon knew, or should have known, about his asserted M.G.L. ch. 93A and ch. 176D claims months, if not years, prior to attempting to bring them through amendment of his Complaint.  Dimon failed to bring his claims in a timely manner, and as such, should be barred from bringing them now.

Dimon had all of the information he needed to form the basis for his new claims in 1983, through the imputed knowledge of his then attorneys at Latti Associates.  Dimon <u>admits</u> in the "Facts" section of his Motion that MetLife informed Kemper of a clerical error made in producing the Annuity and that that letter was copied to Latti Associates.  Dimon cannot now argue that his attorneys did not know about the error, and by extension and operation of the doctrine of imputation of knowledge, that he did not know of the error in 1983.

Further, he knew in September, 1999, that MetLife intended to pay him for 20

years only and that his final payment would be on June 5, 2003.  In November, 2005
MetLife disclosed all non-privileged documents in its possession as part of its Initial
Disclosures.  Included in those documents were the letters cited to by Dimon in his
Motion.  Discovery in this matter closed in September, 2006.  Dimon does not cite to a
single new document, new fact, or other new evidence that he discovered after
September, 2006.  However, Dimon waited until the eve of trial before he attempted to
amend his Complaint.

      The only justification Dimon asserts is that he "learned through the discovery the
extent to which [MetLife and Kemper] have acted in bad faith."  In making this
statement, Dimon admitted that he learned of his asserted claims, at the latest, in
September, 2006.  However, all of the evidence, with the exception of the baseless
assertion made by Kemper's 30(b)(6) designee, was in Dimon's possession no later then
November, 2005.  Dimon does not and cannot point to any new evidence that he learned
after September, 2006 to support his requested amendment.  Dimon offers no explanation
why he waited so long in bringing his putative claims.

      The First Circuit has consistently held that undue delay is a basis for denying
amendment of the pleadings.  See, *e.g.*, Grant v. News Group Boston, Inc., 55 F.3d at
5)(motion to amend unduly delayed where discovery had closed and opposing party had
nearly completed its motion for summary judgment); Hayes v. New England Millwork
Distribs., Inc., 602 F.2d 15, 19-20 (1st Cir. 1979) (finding a motion to amend served ten
days prior to the close of discovery to be unduly delayed); Tiernan v. Blyth, Eastman,
Dillon & Co., 719 F.2d at 4)(motion to amend filed one and one-half months before trial
date was untimely even if no further discovery would be necessary).

Further, where there has been delay, such as here, the party moving to amend has the burden of showing some valid reason or justification for the delay. As stated by the First Circuit in Grant v. News Group Boston, Inc.: "Under this circuit authority, it is incumbent upon [the moving party] to give a valid reason for having waited so long to file his motion." 55 F. 3d at 5-6. See also Stepanischen v. Merchants Despatch Transp. Corp., 722 F.2d 922, 933 (1st Cir. 1983) ("Where … considerable time has elapsed between the filing of the complaint and the motion to amend, the movant has the burden of showing some 'valid reason for his neglect and delay.'" (quoting Hayes v. New England Millwork Distribs., Inc., 602 F.2d at 19-20).

Dimon offers no reason whatsoever for his delay. Perhaps because there is no valid reason or justification. It is clear the Dimon delayed seeking this amendment and that his delay was not justified for any reason.

> ii.    UNDUE PREJUDICE TO METLIFE

The prejudice to MetLife would be substantial if Dimon were permitted to assert these new claims at this stage of the litigation. Discovery closed nearly six months ago. The deadline for filing summary judgment motions has passed. The case is scheduled to begin trial in three months. If Dimon is permitted to amend his pleading to assert these new claims, MetLife will have been denied any opportunity for discovery on these claims, will have been denied the opportunity to develop and present a motion for summary judgment on these claims, and will be required to prepare to defend itself at trial on claims first asserted on the eve of trial. Amendment in this case is not what was intended by the liberality of the Rules of Civil Procedure. The First Circuit has found undue prejudice supporting denial of motions to amend even where a claimant has

belatedly sought to assert additional claims that were factually similar to claims he already had asserted. See, *e.g.*, <u>Tiernan v. Blyth, Eastman, Dillon & Co.</u>, 719 F.2d at 4 (holding that plaintiff's belated request to add claims one and a half months before trial, even if factually similar to existing claims, would be unduly prejudicial in that they were legally distinct theories and might well affect defendant's planned trial strategy). Here, Dimon does not seek merely to add claims based on new legal theories to existing claims that it previously has asserted; he seeks to assert for the first time entirely new claims. The prejudice to MetLife is significant and clear, and there is absolutely no valid justification for Dimon's waiting until now to seek to assert such claims.

iii.    FUTILITY OF CLAIMS

As noted by Dimon, amendment can be denied where the proposed claims would be futile. Such is the case here. Both of the newly asserted claims are barred by M.G.L. ch. 175, §181. As noted in MetLife's Memorandum in Support of its Motion for Summary Judgment, a copy of which is attached hereto as Exhibit "A", M.G.L. ch. 175, §181 can be viewed as either a statute of repose or a statute of limitations. Under either theory, Dimon's claims are time barred.

When applied as a statute of repose, M.G.L. ch. 175, §181 creates a clear and certain period of time in which an aggrieved party can bring an action based upon misrepresentation regarding an annuity. The starting point is the date the annuity was issued, in this case May 5, 1983. The end point is two years after issuance, in this case May 5, 1985. Because there is no tolling of a statute of repose, any and all claims related to the alleged misrepresentation must have been brought by May 5, 1985. Dimon did not bring the recently asserted claims before the expiration of the repose period. Therefore,

his claims are barred and amendment would be futile.

If the Court applies the period provided for in M.G.L. ch. 175, §181 as a limitations period, the result is the same. The latest possible date that Dimon knew or should have known that he had any claims was September, 1999. It was during this month that Dimon was informed, through a telephone call with his wife and a letter that he admits he received, that MetLife would only make payments through May 5, 2003. Because he knew all of the information that would have alerted him that he might have a claim, at the latest, by September, 1999, he was required to bring his recent claims by September, 2001. He did not do that and, therefore, his recent claims are barred even if the Court views M.G.L. ch. 175, §181 as a statue of limitations.

The First Circuit has held that where the proposed amendment would be futile because the claim would be barred under a statute of limitations it is proper to deny amendment of the pleadings. See Adorno v. Crowley Towing & Transp. Co., 443 F.3d 122, 127 (1st Cir. 2006). In the instant case, the recently asserted claims would be futile based on application of M.G.L. ch. 175, §181. The requested amendment should be denied based upon this manifest futility.

## CONCLUSION

There is no basis for allowing Dimon's Motion to Amend Complaint on the eve of trial. The amendment is untimely and would impose a substantial prejudice on MetLife. Additionally, the claims Dimon seeks to add by amendment are barred by the applicable limitations or repose period. As such, the requested amendment is futile.

MetLife respectfully requests that the Court deny Dimon's Motion to Amend Complaint.

## REQUEST FOR ORAL ARGUMENT

MetLife respectfully requests that, pursuant to Local Rule 7.1(D), the Court schedule this matter for Oral Argument. Oral Argument will assist the Court in making its decision on Plaintiff's Motion to Amend Complaint.

Respectfully submitted by,
METROPOLITAN LIFE INSURANCE
COMPANY,
By its Attorneys,

  /s/ James J. Ciapciak
James J. Ciapciak, BBO #: 552328
Peter M. LeBlanc, BBO # 645302
CIAPCIAK & ASSOCIATES, P.C.
99 Access Road
Norwood, MA  02062
Tel:  (781) 255-7401
Fax:  (781) 255-7402

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing document was filed via the ECF system and will be served electronically through that system upon Counsel of Record on March 28, 2007.

  /s/ James J. Ciapciak
James J. Ciapciak

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| DENNIS DIMON, )<br><br>        Plaintiff, )<br><br>VS. )<br><br>METROPOLITAN LIFE )<br>INSURANCE COMPANY, KEMPER )<br>INSURANCE COMPANY, )<br>MORGAN STANLEY DW, INC., )<br>MICHAEL B. LATTI, LATTI )<br>ASSOCIATES, and LATTI & )<br>ANDERSON LLP, )<br><br>        Defendants. )<br> ) | C. A. No:  05-11073 MEL |

**DEFENDANT, METROPOLITAN LIFE INSURANCE COMPANY'S MEMORANDUM
OF LAW IN SUPPORT OF ITS
<u>MOTION FOR SUMMARY JUDGMENT PURSUANT TO F.R.C.P. 56</u>**

## I.        <u>INTRODUCTION</u>

Defendant, Metropolitan Life Insurance Company ("MetLife"), hereby moves for

Summary Judgment pursuant to Fed. R. Civ. P. 56.  As grounds therefore MetLife states that

Summary Judgment is appropriate in this case because there are no genuine issues of material

fact to be tried, and MetLife is entitled to judgment as a matter of law on Count X and Count XI

of Plaintiff's Complaint, which are all claims against MetLife.

MetLife seeks Summary Judgment based upon M.G.L. c. 175, §181, under both Statute

of Repose and Statute of Limitation theories.  Further, MetLife seeks Summary Judgment based

upon the separate Statutes of Limitation provided for in M.G.L. c. 260, §2 and M.G.L. c. 260, §2A.

## II.    <u>RELEVANT FACTS</u>

This case stems from a personal injury lawsuit that was filed over twenty-five years ago in 1981.  In that underlying action Plaintiff, Denis Dimon ("Mr. Dimon"), was a commercial fisherman who had been engaged on a fishing vessel named "Jenny C" when he suffered injuries that led to the loss of an eye.  <u>See</u> Plaintiff's Complaint, ¶ 10, attached hereto as EXHIBIT "A". Mr. Dimon, through his attorneys, Latti Associates (Co-Defendants in the case at bar), sued the owner of the vessel, Jenny C., Inc. in Federal District Court for the District of Rhode Island in 1981.  <u>See</u> Complaint of <u>Dennis Jay Dimon v. Jenny C., Inc.</u> attached hereto as EXHIBIT "B". <u>Dimon v. Jenny C., Inc.</u> made its way through the litigation process, and at trial Mr. Dimon obtained a verdict in his favor for $710,000.00.  <u>See</u> EXHIBIT "A" at ¶ 11.

The parties to <u>Dimon v. Jenny C., Inc.</u>, both actual litigants as well as interested entities not named in the litigation[1], settled the case post-verdict.  <u>See</u> EXHIBIT "A" at ¶ 12 and ¶ 14; <u>See also</u> Settlement Sheet, attached hereto as EXHIBIT "C".    After the settlement was reached, an application was submitted to Charter Security Life Insurance Company ("Charter").    The application sought an annuity that would provide Mr. Dimon with monthly payments for twenty years certain.  <u>See</u> Annuity Application of Denis Dimon dated May 4, 1983, attached hereto as EXHIBIT "D"; <u>See also</u> Correspondence from MetLife to Dimon dated June 9, 2003, attached hereto as EXHIBIT "E".

Since 1983 when the settlement was reached, many of the parties involved have either changed their name or have merged with other entities.  Dean Witter Reynolds, Inc. ("Dean

---

[1] American Motorists Insurance Company was the excess insurer of the vessel, "Jenny C.", when Mr. Dimon was injured, and was involved in the post-verdict settlement negotiations.

Witter"), the agency that took the Application for Mr. Dimon's annuity, merged with Morgan

Stanley DW, Inc.  See EXHIBIT "A" at ¶ 18.  Charter, who issued the Annuity Contract for Mr.

Dimon in 1983, was subsequently purchased by MetLife.  See EXHIBIT "A" at ¶ 20.  Finally,

American Motorists Insurance Company ("American Motorists"), the insurance carrier for Jenny

C., Inc., was a subsidiary of the Kemper Group, and is no longer in existence as a separate entity

from Kemper.  See EXHIBIT "A" at ¶ 17; See also Correspondence from American Motorists to

Dean Witter dated August 12, 1983, attached hereto as EXHIBIT "F".

There is no dispute that Mr. Dimon and Latti Associates, his attorneys, received the lump

sum payment called for in the settlement.  Mr. Dimon filed this Complaint on May 23, 2005

based on the terms of the Annuity issued and whether a mistake was made.  It is important to

note that neither Charter, the Annuity issuer, nor MetLife who later purchased Charter, were

involved in the Dimon v. Jenny C., Inc. litigation or post-verdict settlement discussions.

Charter issued an Annuity on May 5, 1983 ("Annuity").[2]  That Annuity is the subject of

this litigation.  The Annuity was issued based upon an application that identified Mr. Dimon as

the annuitant, American Motorists as the applicant and Kurt Snyder[3] as the agent who took the

application.  See EXHIBIT "D".  Roger Hughes of Latti Associates had been identified in letters

exchanged between Charter and American Motorists as the person who provided information

regarding the terms of the annuity.  See EXHIBIT "F"; See also Correspondence from Charter to

American Motorists dated September 26, 1983, attached hereto as EXHIBIT "G"; and

Correspondence from American Motorists to Charter dated October 10, 1983, attached hereto as

EXHIBIT "H".

---

[2] The Annuity contract issued contained a clerical error regarding the term of the annuity payments.  The original
contract provided that the annuity would pay for 20 years certain then life thereafter.  This is the clerical error noted
by Charter in subsequent letters.  See below.
[3] Kurt Snyder was a representative of Dean Witter at the time the application for the Annuity was submitted.  See
EXHIBIT "L" L. Schmitt Dep. Tr. at 20:8-17.

The original Annuity contained a typographical error in the payment term, i.e. the length of time payments were to be made.  See Correspondence from Charter to Dean Witter dated July 14, 1983, attached hereto as EXHIBIT "I".  The typographical error was discovered by Charter a few weeks after the Annuity was issued.  Charter, by letter dated July 14, 1983 (from Barbara Boehm at Charter to Kurt Snyder at Dean Witter), alerted Dean Witter that the Annuity contained a clerical mistake.  Id.  Following the July 14th letter, several letters were exchanged between Charter, American Motorists and Dean Witter addressing the terms of the Annuity. These letters are as follows:

| | |
|---|---|
| August 12, 1983 | Letter from John Noe, of American Motorists to Robert Foley of Dean Witter.  See EXHIBIT "F"; |
| September 26, 1983 | Letter from Robert Liguori of Charter to John Noe of American Motorists.  See EXHIBIT "G"; |
| October 10, 1983 | Letter from John Noe of American Motorists to Robert Liguori of Charter.  See EXHIBIT "H"; |
| October 14, 1983 | Letter from Barbara Boehm of Charter to John Noe of American Motorists attached hereto as EXHIBIT "J"; and |
| October 12, 1983[4] | Letter from John Noe of American Motorists to Barbara Boehm of Charter attached hereto as EXHIBIT "K". |

These letters address the contentions of the parties regarding the terms of the Annuity and the negotiating process.  In Exhibit "F", John Noe of American Motorists wrote to Robert Foley of Dean Witter asserting that his understanding, apparently gained through a discussion with Roger Hughes of Latti Associates, was that Mr. Foley quoted the costs of an annuity that would provide annually increasing lifetime payments, guaranteed for twenty years.  See EXHIBIT "F". It is important to note that Mr. Noe does not assert that a lifetime annuity was applied for, or that

---

[4] This letter appears to be incorrectly dated, as it refers to the October 14, 1983 letter from Barbara Boehm but is dated October 12, 1983.

Charter was aware that the settlement of <u>Dimon v. Jenny C., Inc.</u> may have been a lifetime annuity with a guarantee period.

In follow up to Exhibit "G", Robert Liguori of Charter wrote to John Noe of American Motorists.  <u>See</u> EXHIBIT "G".  In Exhibit "H", Mr. Liguori corrected Mr. Noe and explained that the Application submitted by American Motorists was for "…a single premium immediate annuity with a 20 year (i.e. 240 months) certain period."  Mr. Noe responded by asserting that the sections describing the Annuity terms and listing the quote number were blank at the time he signed the Application.  <u>See</u> EXHIBIT "H".  For his part, Mr. Dimon has no recollection of what sections were filled out when he signed the Application at Latti Associates.  <u>See</u> D. Dimon Dep. Tr. at 110:14-16, attached hereto as EXHIBIT "M".

The series of correspondence contained in Exhibits "I", "J", "G", "H" and "K" can be viewed as a capsulation of the positions of American Motorists and Charter.  American Motorists refused to return the contract that contained the error regarding the terms of the payment.  <u>See</u> EXHIBIT "K".  Charter took the position that it would honor its obligations to pay Mr. Dimon for 20 years (i.e. 240 months), <u>but confirmed in 1983 that "[n]o payments will be made beyond the expiration of the 240 month period."</u>  <u>See</u> EXHIBIT "G".

Several of these letters were copied to Mr. Dimon's attorneys, Latti Associates.  <u>See</u> EXHIBITS "J", "F", "G", "H" and "K".  After the last of these letters, in October of 1983[5], there is no evidence of any further correspondence regarding the terms of the Annuity until September of 1999.

The law firm of Latti Associates represented Mr. Dimon in <u>Dimon v. Jenny C., Inc.</u>  <u>See</u> M. Latti Dep. Tr. at 25:6-21, attached hereto as EXHIBIT "N".  Specifically, a lawyer named

---

[5] Because of the apparent misdating of EXHIBIT "K", it is not clear exactly when this exchange of correspondence came to a close.

Joseph Flannery was the lead attorney responsible for the Dimon v. Jenny C., Inc. case. Attorney Flannery tried the case to verdict, and subsequently negotiated the settlement. Id. at 26:4-9 and 31:13-15. Attorney Flannery left Latti Associates shortly before the settlement was finalized. Id. at 26:11. Attorney Flannery has since passed away. See R. Hughes Dep. Tr. at 34:19-20, attached hereto as EXHIBIT "O". Roger Hughes, a partner at Latti Associates, oversaw Attorney Flannery's representation of Mr. Dimon and, in fact, actively represented Mr. Dimon during portions of the litigation. Michael Latti, the named partner at Latti Associates, personally persuaded Mr. Dimon to remain with Latti Associates as a client when Attorney Flannery left Latti Associates. See EXHIBIT "N" at 26:16-17.

As set forth above, Latti Associates received carbon copies of the letters notifying Dean Witter and American Motorists of the terms of the Annuity that was purchased. See EXHIBITS "I", "F", "G", "H", and "K". Both Attorney Latti and Attorney Hughes confirmed that the address used for Latti Associates on the letters in question was the correct address. See EXHIBIT "N" at 32:16-18; See also EXHIBIT "O" at 42:22 – 43:1. Neither Attorney Latti nor Attorney Hughes could definitively recall at their depositions there being any problem with Latti Associates' ability to receive mail during the relevant period in 1983. See EXHIBIT "N" at 32:19 – 33:14; See also EXHIBIT "O" at 43:2-11.

Latti Associates, through Attorney Hughes, therefore had knowledge in 1983 that the typographical error made in the Annuity had been corrected. John Noe of American Motorists asserted in a letter dated August 12, 1983 that "I am advised by Mr. Hughes of Lattie [sic] Associates that your quotation was to provide…" a lifetime Annuity with a 20 year certain period. See EXHIBIT "G". Mr. Noe also confirmed that Attorney Hughes of Latti Associates had discussed in 1983 the possibility of bringing a Declaratory Judgment action to clarify the

terms of the Annuity if the dispute could not be resolved.  <u>See</u> Memorandum from John Noe to Klaus Lemhoffer dated 11/8/83, attached hereto as EXHIBIT "P".  Additionally, Mr. Noe made clear in his correspondence that Attorney Hughes had "threatened Mr. Foley (of Dean Witter) with an [E]rrors and [O]missions claim."  <u>Id.</u>  No timely action, however, was brought on behalf of Mr. Dimon by Latti Associates when the terms of the Annuity were clarified in 1983.

At his deposition, Attorney Hughes was unable to recall <u>any</u> details of the dispute regarding the terms of the Annuity.  Attorney Latti was likewise unable to recall any of the relevant events in 1983 at his deposition, but asserted that Attorney Hughes was primarily running the firm in 1983 as Attorney Latti was either ailing or recovering from back surgery for portions of 1982 and 1983.  <u>See</u> EXHIBIT "N" at 19:17 – 21:3.

In September of 1999, Katherine Dimon ("Mrs. Dimon"), on behalf of her husband, Mr. Dimon, contacted MetLife seeking information on the terms of the Annuity.  <u>See</u> K. Dimon Dep. Tr. at 10:3-18 attached hereto as EXHIBIT "Q".  Following Mrs. Dimon's telephone call, MetLife sent a letter to Mr. Dimon.  <u>See</u> September 24, 1999 Letter from Theresa Thorp to Dennis Dimon attached hereto as EXHIBIT "R".  This letter, *inter alia*, notified Mr. Dimon that his payments under the terms of the Annuity Contract that was issued on May 5, 1983 would cease on May 5, 2003.

At her deposition, Mrs. Dimon testified that she and her husband used the Annuity as an income source for purposes of securing a mortgage in 1999 to purchase a residence in Rhode Island.  <u>See</u> EXHIBIT "Q" at 71:16-20.   Mrs. Dimon further testified that she was notified by her bank that it had obtained information that was contradictory to what the Dimons had represented on their mortgage application.  <u>Id</u>.  More specifically, that the bank told her that they (the Dimons) had indicated as an income source on their mortgage application a lifetime benefit

(i.e., the Annuity) which was guaranteed for 20 years, but MetLife informed the bank that the Annuity was only for 20 years. See Id. at 67:24 – 68:2.  Neither Mr. nor Mrs. Dimon took any action after being notified by their bank, and again by MetLife in the September 24, 1999 correspondence, that there was a dispute regarding the terms of the Annuity.  It was not until 2003 when the payments stopped that the Dimons took action regarding the Annuity and filed this lawsuit.

Over twenty-two years have passed since the issuance of the involved Annuity in May of 1983, and the filing of the Complaint in this case.  Time and world events have taken a heavy toll on the evidence available.   Mr. Dimon summarized it best at his deposition: "[y]ou know, it's so long ago, it's hard to remember exactly what was going on at that time."  See EXHIBIT "M" at 44:10-11.

The attorney primarily responsible for handling Mr. Dimon's case has passed away.  See EXHIBIT "O" at 34:19-20.  It has been represented that all of the documents that were in the possession of Latti Associates relative to this case were destroyed pursuant to its document retention policy.   See EXHIBIT "N" at 74:17 – 75:16.  The records held by Dean Witter (now Morgan Stanley DW, Inc.) were lost in the World Trade Center tragedy on September 11, 2001. See EXHIBIT "L" at 27:5-18.  Roger Hughes, the attorney who handled finalizing the Dimon v. Jenny C., Inc. settlement, has no independent recollection of the settlement, and could not even identify his client, Mr. Dimon, if he walked in the same room.[6]  So much time passed between 1983, when the underlying settlement was completed and the Annuity in question was issued,

---

[6] Attorney Hughes testified at his deposition that "[i]f [Mr. Dimon] walked into the room today, I wouldn't know." See EXHIBIT "O" at 19:4-5.  Moreover, Attorney Hughes testified that he had "no independent recollection" of the terms of the settlement in Dimon v. Jenny C., Inc.  Id. at 20:6.

and the time of his deposition that Attorney Hughes could not even definitively identify the name

of the firm at which he was then a partner.[7]  Id. at 43:18-19.

The intervening twenty-two years between when the Annuity was contracted and Mr.

Dimon filed the Complaint in this action have caused most of the salient evidence in this case to

be lost, destroyed or unavailable due to faded memories and unattainable witnesses.


## III.    ARGUMENT

### A.  SUMMARY JUDGMENT IS APPROPRIATE AS THERE ARE NO GENUINE ISSUES OF MATERIAL FACT AND METLIFE IS ENTITLED TO JUDGMENT AS A MATTER OF LAW.

Summary Judgment is appropriate when "pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue of material fact and that the moving party is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(C).  "When a party fails to make a showing sufficient to establish the

existence of an element essential to that party's case, and on which that party bears the burden of

proof at trial, there can no longer be a genuine issue as to any material fact ... and the moving

party is entitled to judgment as a matter of law."  Smith v. Stratus Computer, Inc., 40 F.3d 11, 12

(lst Cir. 1994), cert. denied, 115 S. Ct. 1958 (1995) (citation omitted).

Summary judgment is not "a disfavored procedural shortcut"; rather, it is an integral part

of the judicial system "designed 'to secure the just, speedy and inexpensive determination of

every action.'"  Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. F. Civ. P. 1);

See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

When, as in the present case, there is no genuine issue of material fact, summary

judgment should be granted to MetLife, as the moving party, to promote judicial economy.

---

[7] Attorney Hughes testified: "I think it was Latti & Associates.  I'm not sure anymore."

Here, the facts presented by Plaintiff's Complaint, as well as the undisputed facts gleaned from the depositions and documents in this case, are more than sufficient to grant Defendant, MetLife summary judgment.

**B.  COUNT X AND COUNT XI OF PLAINTIFF'S COMPLAINT AGAINST DEFENDANT, METLIFE, ARE BARRED BY M.G.L. C. 175, §181.**

Mr. Dimon's claims for breach of contract and misrepresentation are untimely and, therefore, barred by M.G.L. 175, §181 ("§181").

§181 provides, in pertinent part, that "[n]o company, no officer or agent thereof … shall make, issue, circulate or use, or cause or permit to be made, issued, circulated or used, any written or oral statement misrepresenting the terms of … any annuity … issued or to be issued by any company, or the benefits or privileges promised thereunder."  Further, §181 provides that "the holder of any annuity … who was induced to procure it by any action in violation of this section by an officer or agent of the company issuing or executing it may recover from such company all premiums paid on such policy or contract less any indebtedness to the company thereon or secured thereby and less any payments otherwise made by the company thereon, in an action brought <u>within two years after the date of issue</u> thereof."  *Emphasis added.*  The Annuity at issue in this case was issued on May 5, 1983; as such, a timely claim on this Annuity needed to be filed no later than May 5, 1985.

Mr. Dimon has asserted two claims against MetLife.  One based on an alleged negligent misrepresentation, and a second based on an alleged breach of contract.  The basis for both claims is the same set of facts: that Charter allegedly misrepresented the terms of the Annuity issued to Mr. Dimon.

For purposes of analyzing Plaintiff's claims pursuant to §181, the Court must look to the gravamen of the claims and not the labels used by Plaintiff in pleading his Complaint.  <u>Grande v.</u>

- 10 -

<u>PFL Life Ins. Co.</u>, 2000 Mass. App. Div. 261, attached hereto as EXHIBIT "S".  Plaintiff's

breach of contract and negligent misrepresentation claims are covered under the two-year

limitations period of §181 because Mr. Dimon's claims are grounded in misrepresentation.

In <u>Grande v. PFL Life Ins. Co.</u>, the plaintiff sought to recover from the defendant, PFL

Life Insurance Company ("PFL"), based on alleged deceptive acts in connection with its sale to

the plaintiff of a life insurance policy instead of the annuity policy plaintiff thought she was

purchasing.  2000 Mass. App. Div. 261.  PFL filed a motion for judgment on the pleadings,

which the Court treated as a motion for summary judgment, arguing that the plaintiff's claims

were barred by the applicable statute of limitations – M.G.L. c. 175, §181.  <u>Id.</u>  The lower court

in <u>Grande</u> granted the motion for summary judgment.  <u>Id.</u>  The Massachusetts Appeals Court

affirmed and held that the plaintiff's claims for breach of contract and conversion were time-

barred under the two-year statute of limitations set forth in §181 because "[a]lthough Grande's

first claim is for breach of contract, it is the 'gravamen' of [her] complaint [as one for

misrepresentation] which dictates the applicable statute of limitations."  <u>Id.</u>

There are two related interpretations of the limitations period contained in §181.  The

§181 limitations period has been applied as <u>both</u> a period of repose, as well as a period of

limitation.  For reasons more fully discussed below, under either the repose or limitations theory,

Mr. Dimon's claims in this case are barred by §181.

   1.   ***<u>M.G.L. c. 175, §181 is a Statute of Repose.</u>***

§181 contains a statute of repose, as opposed to a mere limitation on actions period.  It is

an absolute bar to claims not brought within two years of the date of issue of an annuity.  In

<u>Passatempo v. McMenimen</u>, 20 Mass. L. Rep. 593 (2006), the Court held that "this Court

concludes and rules that [M.]G.L. c. 175, sec.181, contains a statute of repose that is entirely

consistent with the Supreme Judicial Court's recent decisions in <u>Joslyn [v. Chang</u>], 445 Mass. 344, … and <u>Rudenauer [v. Zafiropoulos</u>], 445 Mass. 353…". Rudenauer only requires a triggering date. "A repose period begins to run from some 'definitely established event.'" <u>Rudenauer v. Zafiropoulos</u>, 445 Mass. 353, 358 (2005).

The purpose of a statute of repose is "to give particular types of defendants the benefit of a date certain on which their liability for past conduct will definitively come to an end." <u>Nett v. Bellucci</u>, 437 Mass. 630, 639 (2002). "There comes a time when [a defendant] ought to be secure in his reasonable expectation that the slate has been wiped clean of ancient obligations, and he ought not be called on to resist a claim 'when evidence has been lost, memories have faded, and witnesses have disappeared.'" <u>Id.</u>, citing <u>Klein v. Catalano</u>, 386 Mass. 701, 709 (1982), quoting <u>Rosenberg v. North Bergen</u>, 61 N.J. 190, 201 (1972).

In the instant case, the 'event' in §181 that triggered the running of the repose period was the issuance of the Annuity. The period of repose began to run on May 5, 1983, the date the Annuity was issued, and expired on May 5, 1985, two years later. <u>The "types" of defendants afforded the protection of the repose period are insurance companies like MetLife</u>.

As evidenced by the testimony of each of the witnesses (who could be found or who are still living) that were personally involved, namely Katherine Dimon, Dennis Dimon, Michael Latti and Roger Hughes, this case presents the perfect example of why a repose period is necessary and ought to be applied. Memories have faded, evidence has been lost, and witnesses have died or cannot be found. As stated by Mr. Dimon in response to a question regarding his meetings in 1983 with Mr. Decof, the Guardian *ad litem* appointed by the Federal District Court – Rhode Island, "[y]ou know, it's so long ago, it's hard to remember exactly what was going on at that time." <u>See</u> EXHIBIT "M" at 44:10-11.

Mr. Dimon's statement sums up nicely the state of the testimonial evidence in this case. Mr. Hughes, one of the partners at Latti Associates in 1983 and the attorney who personally appeared on behalf of Mr. Dimon in Court, testified that "[i]f [Mr. Dimon] walked into the room today, I wouldn't know." See EXHIBIT "O" at 19:4-5. Further Mr. Hughes testified that he had "no independent recollection" of the terms of the settlement in Dimon v. Jenny C., Inc. Id. at 20:6. Given that over two decades have passed since Dimon v. Jenny C., Inc., Mr. Hughes could not even identify the proper name of the firm at which he was the managing partner at the time. Id. at 43:18-19.

"Like all statutes of repose, 'the effect [of these statutes] is to place an absolute time limit on the liability of those within [their] protection and to abolish a plaintiff's cause of action thereafter, even if the plaintiff's injury does not occur, or is not discovered, until after the statute's time limit has expired." Nett v. Bellucci, 437 Mass. 630, 635 (2002), citing McGuinness v. Cotter, 412 Mass. 617, 622 (1992), citing Klein v. Catalano, 386 Mass. 701, 702 (1982). *Emphasis added.* Statutes of repose, unlike statutes of limitation, cannot be tolled for any reason unless the statute contains within it a specific tolling provision. "[S]tatutes of repose may not be 'tolled' for any reason, as 'tolling' would deprive the defendant of the certainty of the repose deadline and thereby defeat the purpose of a statute of repose." Id. (internal citations omitted).

§181 has no tolling provision whatsoever. Therefore, as set forth above, the May 5, 1985 deadline cannot be tolled for any reason(s). Any claim Plaintiff had regarding his Annuity against MetLife expired at the end of the repose period. Moreover, Mr. Dimon's knowledge of the alleged misrepresentations or breach (when he knew or should have known of his cause of action) is irrelevant. He failed to commence his action on or before May 5, 1985 and, therefore, his causes of action are, to use the term quoted in Rudenauer, "abolished."

MetLife is entitled to Judgment as a matter of law based upon the application of the two-year repose period contained in §181.

##### 2.    *M.G.L. c. 175, §181 is a Statute of Limitations.*

If this Court finds that the statute of repose in §181 is not applicable, or that the prior decisional authority needs to be overturned, then MetLife alternatively is entitled to summary judgment because §181 is a statute of limitations that imposes a two-year limitations period to claims that arise from alleged misrepresentation by an insurance company with respect to Annuities.

Although the general statute of limitations period for misrepresentation is three years (as set forth at M.G.L. c. 260, § 2A), Massachusetts courts have recognized that §181 is a "special provision" that preempts the general statute.  See Grande v. PFL Life Ins. Co., 2000 Mass. App. Div. 261, (providing that "Section 19 of [M.]G.L.c. 260 provides, however, that 'if a special provision is otherwise made relative to the limitation of any action, any provision of this chapter inconsistent therewith shall not apply'); See also Slingsby v. Metropolitan Life Ins. Co., 2001 Mass. App. Div. 49 (2001).

Mr. Dimon's breach of contract claim is also covered under the two-year statute of limitations of §181 because Plaintiff's causes of action are grounded in misrepresentation.  In Grande, as noted above, Plaintiff brought claims for breach of contract and conversion.  Id.  The Massachusetts Court of Appeals affirmed and held that the plaintiff's claims for breach of contract and conversion were time-barred under the two-year statute of limitations set forth in §181.  The Grande court found plaintiff's breach of contract claim was really a misrepresentation claim because, "… it is the 'gravamen of [her] complaint [as one for misrepresentation] which dictates the applicable statute of limitations."  Id.  Both Mr. Dimon's breach of contract and

negligent misrepresentation claims are subject to the two-year limitations period contained in §181 as his claims, at least as they pertain to MetLife, are <u>solely</u> based on the alleged misrepresentation of the Annuity's terms.

### C. RUNNING OF THE STATUTE OF LIMITATIONS.

Several events occurred over the twenty-two years between the issuance of Annuity and the commencement of Mr. Dimon's Complaint. Each of these events when taken either individually, or *en toto*, compel the conclusion that Mr. Dimon knew or should have known of his causes of action many years ago and, therefore, his Complaint is untimely.

Two specific events would have triggered the running of a statute of limitations in this case:

1. Mr. Dimon's attorneys' Latti Associates, <u>knowledge</u> of the error that was corrected regarding the term of the Annuity in <u>1983</u>; and/or

2. Mr. Dimon's personal knowledge in September of <u>1999</u> that MetLife had, in 1983, corrected the typographic error and that his Annuity was for 20 years certain <u>rather than</u> for life with the first 20 years guaranteed.

In Massachusetts an attorney's knowledge is imputed to the client, even where the client denies that they had the same information as the attorney. "Levin [the client] denies knowledge of the letter, but a client is charged with the knowledge of his attorney." <u>Levin v. Berley</u>, 728 F.2d 551, 553 (1st Cir. 1984); <u>citing</u> <u>Continental Casualty Co. v. United States</u>, 337 F.2d 602, 603 (1st Cir. 1964); <u>Quinn v. Hintlian</u>, 4 Mass. App. Ct. 805, 805 (1976); cf. <u>Flynn v. Wallace</u>, 359 Mass. 711, 717 (1971). Based on this case law, Mr. Dimon is charged with knowledge of the dispute regarding the terms of the Annuity in 1983, twenty-two years before he filed his Complaint, when his attorneys corresponded with Charter and/or American Motorists.

Latti Associates' knowledge is imputed to Mr. Dimon. The undisputed facts of this case show that Latti Associates knew of the disagreement regarding the terms of the Annuity in the

- 15 -

Summer of 1983.  Latti Associates was carbon copied with letters between other entities setting forth the dispute and the positions that those entities took relative to that dispute.  Although Mr. Hughes has no recollection of the settlement in <u>Dimon v. Jenny C., Inc.</u> because of the two decades that have passed, Mr. Noe documented in both a letter (<u>see</u> EXHIBIT "G"), and a memorandum (<u>see</u> EXHIBIT "P"), that Attorney Hughes was aware of the dispute and that he took the position that Mr. Foley, of Dean Witter, had committed either an error or omission that would subject Mr. Foley to a claim.  It appears from Mr. Noe's documentation that Attorney Hughes also considered bringing a Declaratory Judgment action if the dispute was not resolved.  As Mr. Dimon's attorney and agent, Attorney Hughes did not protect Mr. Dimon within the limitations period.

Assuming *arguendo* that there was a breach or misrepresentation, it occurred, if at all, in <u>1983</u>.  Because Mr. Dimon's attorneys' knowledge is imputed to him as noted above, Mr. Dimon had <u>actual</u> knowledge of his claim.  In fact, Mr. Dimon agrees that the misrepresentation or breach occurred in 1983: Mr. Dimon's expert in <u>this</u> case, Attorney Hans Hailey, testified that "[m]ore concretely, the controversy [regarding the terms of the annuity] involved an actual breach of the contract in 1983."  <u>See</u> <u>Hans Hailey Report</u> dated November 10, 2006, at 6, attached hereto as EXHIBIT "T".   Thus, Mr. Dimon <u>agrees</u> "that breach was enforceable in 1983."  <u>Id.</u>  As such, there are no disputed facts that could preclude this Court from issuing Judgment to MetLife.

### D.    THE STATUTES OF LIMITATIONS SHOULD NOT BE TOLLED.

There is no reason to toll the statutes of limitations in this matter.  In Massachusetts, there are only three circumstances that may give rise to tolling of the limitations period:

1.    Where a misrepresentation concerns a fact that was "inherently unknowable";

2.      Where a wrongdoer breached some duty of disclosure; or

3.      Where a wrongdoer concealed the existence of a cause of action through some affirmative act done with the intent to deceive.

See Loguidice v. Metropolitan Life Insurance Company _et al_, 336 F.3d 1, 6 (1st Cir. 2003); citing Patsos v. First Albany Corp., 433 Mass. 323 (2001) (citations omitted). None of the above circumstances apply to the case at bar.

The ongoing dispute in 1983 over the terms of the Annuity, and Charter's position that a clerical error had been made, was known to Mr. Dimon not only through his attorney in 1983, but also through his direct communication with MetLife in 1999. Mr. Dimon cannot now claim that the facts upon which he uses to support his Complaint against MetLife were "inherently unknowable." Mr. Dimon has not asserted in his Complaint, and cannot now assert, that MetLife breached any duty to disclose something that was not disclosed in 1983.

In fact, MetLife did disclose facts that should have alerted Mr. Dimon (and/or his attorneys) that he might have a cause of action. Charter, in 1983, and MetLife, in 1999, both took affirmative actions, i.e. put Mr. Dimon on notice in writing either through counsel or directly, of the terms of the Annuity that was purchased on his behalf. As such, Mr. Dimon had sufficient information on each of those occasions to decide if he had a cause of action on which to proceed. Moreover, Mr. Dimon's attorneys, whose duty it was to protect him in procuring his settlement proceeds, had actual knowledge that there was a dispute regarding the terms of the Annuity. Based on the above, there is no basis to toll the statutes of limitation on Mr. Dimon's claims.

E.   **The Negligent Misrepresentation Count Alleged by Plaintiff Against MetLife is Barred Pursuant to the Three-Year Limitation of Action Period Prescribed by Massachusetts Law.**

Even if §181 did not exist, based upon the three-year limitations period contained in M.G.L. c. 260, §2A, Mr. Dimon should have brought his claim for negligent misrepresentation by May 5, 1986, three years after his attorney was informed of the error in the Annuity. Alternatively, Mr. Dimon should have brought his claim for negligent misrepresentation by September 24, 2002, three years after he was informed by MetLife that his annuity payments were going to cease on May 5, 2003.

Mr. Dimon is barred from pursuing his claim for negligent misrepresentation because he failed to bring his claim within the applicable statute of limitations. Mr. Dimon, at the latest, could have brought a claim before September 24, 2002. He did not file his complaint until May, 2005, therefore his claim for negligent misrepresentation is barred by M.G.L. c. 260, §2A.

F. **THE BREACH OF CONTRACT COUNT ALLEGED BY PLAINTIFF AGAINST METLIFE IS BARRED PURSUANT TO THE SIX-YEAR LIMITATION OF ACTION PERIOD PRESCRIBED BY MASSACHUSETTS LAW.**

The six-year limitation of action period in M.G.L. c. 260, §2, precludes recovery in this action because Mr. Dimon and his attorneys failed to bring suit against MetLife within the limitations period. Even though Mr. Dimon's claims against MetLife are based on misrepresentations of the terms of the Annuity, as noted above, by May of 1983 Mr. Dimon's attorneys' knew that a dispute had occurred regarding the terms of the Annuity issued by Charter. Because their knowledge is imputed to Mr. Dimon, he should have brought his claim by mid-1989. Because he did not bring his claim until May, 2005, sixteen years after the limitations period expired, he is barred from pursuing the claim for breach of contract.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, MetLife's Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 should be granted.

WHEREFORE, Defendant, Metropolitan Life Insurance Company, respectfully requests that this Honorable Court grant its Motion for Summary Judgment on all Counts of Plaintiff's Complaint against Metropolitan Life Insurance Company based on the fact that the Statute of Repose contained in M.G.L. 175, §181 barred any claim regarding Plaintiff's Annuity that issued in 1983. Alternatively, the limitations period contained in M.G.L. 175, §181, if treated as a Statute of Limitation, would result in the running of the statute, and the expiration of the time within which Plaintiff could file a cause of action. If the Court determines that Plaintiff's claims are not subject to M.G.L. 175, §181, then the three year Statute of Limitation period for torts and six year Statute of Limitation period for contracts still bars Plaintiff's claims against Defendant, Metropolitan Life Insurance Company.

Respectfully submitted,
METROPOLITAN LIFE INSURANCE
COMPANY,
By its Attorneys,


/s/ James J. Ciapciak
James J. Ciapciak, BBO #: 552328
Peter M. LeBlanc, BBO # 645302
CIAPCIAK & ASSOCIATES, P.C.
99 Access Road
Norwood, MA  02062
Tel:  (781) 255-7401
Fax:  (781) 255-7402


## LOCAL RULE 7.1(A)(2) CERTIFICATION

I hereby certify that on December 29, 2006, I contacted Plaintiff's counsel and we conferred and attempted in good faith to resolve or narrow the issues pursuant to L.R. 7.1(A)(2).

/s/ James J. Ciapciak
James J. Ciapciak

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that a true and accurate copy of the foregoing document was filed via the ECF system and will be served electronically through that system upon Counsel of Record on – January 2, 2007.

                                 _/s/ James J. Ciapciak_____
                                 James J. Ciapciak