## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

DENNIS DIMON )
        Plaintiff )
  )
v. )     Civil Action No. 05-11073-MEL
  )
METROPOLITAN LIFE )
INSURANCE COMPANY, KEMPER )
INSURANCE COMPANY, )
MORGAN STANLEY DW, INC., )
MICHAEL B. LATTI, LATTI )
ASSOCIATES, and LATTI & ANDERSON )
LLP, )
        Defendants )

### MEMORANDUM OF LAW OF DEFENDANT
### KEMPER INSURANCE COMPANY IN OPPOSITION TO
### PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

## I.    INTRODUCTION

Plaintiff seeks leave to amend his complaint at the eleventh hour, notwithstanding all of the following facts:

- Plaintiff initiated this matter nearly two years ago;

- the deadline to amend pleadings expired over fifteen months ago;

- discovery has been closed for over six months;

- the dispositive motion deadline expired over two months ago; and

- all parties have filed motions for summary judgment and oral argument has been scheduled on the motions.

Plaintiff does not and cannot offer any excuse for the undue delay in filing his motion for leave to amend. Furthermore, amendment at this late hour would unfairly prejudice the defendants, and ultimately would be futile. For these reasons, Plaintiff's motion should be denied.

## II.    FACTS [1]

On May 23, 2005, Plaintiff filed the instant lawsuit, naming as defendants the Michael B. Latti, Latti Associates, Latti & Anderson, LLP (collectively, the "Latti Defendants"), Metropolitan Life Insurance Company ("Metropolitan Life"), Morgan Stanley DW Inc., and Kemper Insurance Company ("Kemper").

The Court imposed deadline for the amendment of pleadings expired on December 1, 2005. The Court's initial pre-trial deadline for the completion of non-expert discovery was set for May 15, 2006. Upon Plaintiff's motion, however, discovery was extended until July 15, 2006. The discovery period was subsequently extended once more, for the purpose of conducting previously noticed depositions, and discovery ultimately closed on September 8, 2006.

On December 7, 2006, Plaintiff's counsel sent Kemper's counsel a letter constituting a purported demand under Mass. G.L. c. 93A. On December 18, 2006, counsel for Kemper timely responded to Plaintiff's demand letter.

On January 2, 2007 - the dispositive motion deadline fixed by the Court - Plaintiff, Kemper, Metropolitan Life and the Latti Defendants each filed a motion for summary judgment. The Court originally scheduled the parties' respective motions for oral argument to take place on February 15, 2007. Subsequently, on February 28, 2007, the Court rescheduled oral argument to take place on March 29, 2007. On February 28, 2007, the Court also granted the parties' joint motion to extend the trial date, and set this matter for trial on June 11, 2007.

---

[1]    For the sake of brevity, in addition to the facts set forth below, Kemper hereby incorporates by reference, as if set forth fully herein, the "Facts" Section of Kemper's Memorandum of Law in Support of Its Motion for Summary Judgment, and the exhibits cited therein and attached thereto (at pp. 1 through 8). (A copy of Kemper's Memorandum of Law in Support of Its Motion for Summary Judgment is attached hereto as Exhibit "A.")

On March 15, 2007, Plaintiff filed the instant motion seeking leave to amend the complaint (the "Motion to Amend"). Specifically, Plaintiff seeks leave of the Court to amend the Complaint to add two counts each against Metropolitan Life and Kemper: namely, claims under M.G.L. c. 93A, § 9, and under M.G.L. c. 176D.

## III.    LEGAL ARGUMENT

### A.    Legal Standard

Once a responsive pleading has been filed, a plaintiff may amend his complaint "only by leave of court." See Fed. R. Civ. P. 15(a). "An amendment need not be granted in the face of 'undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party . . . , [or] futility of amendment. . . .'" Espinosa v. Sisters of Providence Health Sys., 227 F.R.D. 24, 26 (D. Mass. 2005) (citing Forman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 277 (1962)). A motion for leave to amend "should be made as soon as the necessity for altering the pleadings becomes apparent." Id. at 27. (citing Charles Wright, et al., Federal Practice and Procedure, § 1488 (2003)). The court must examine the "totality of the circumstances and exercise sound discretion in light of the pertinent balance of equitable considerations" when a party makes a "belated attempt" to amend its pleadings. Quaker State Oil Refining Corp. v. Garrity Oil. Co., Inc., 884 F.2d 1510, 1517 (1st Cir. 1989) (citations omitted).

Furthermore, the court may properly deny leave to amend where the amendment would be futile. Debreceni v. Bru-Jell Leasing Corp., 710 F. Supp. 15, 18 (D. Mass. 1989).

### B.    Plaintiff's Motion to Amend Should Be Denied On The Grounds Of Undue Delay.

Plaintiff did not file his Motion to Amend until March 15, 2007, which was:

- nearly two years after Plaintiff filed the complaint;

- over fifteen months after expiration of the deadline to amend pleadings;

- over six months after the discovery period ended;

- over two months after the expiration of the dispositive motion deadline and all parties had filed motions for summary judgment;

- on the eve of oral argument on the motions for summary judgment;

- and less than three months before the commencement of trial.

The First Circuit has consistently held that undue delay is a basis for denying amendment of the pleadings, and under circumstances less compelling than those present here. See, e.g., Grant v. News Group Boston, Inc., 55 F.3d 1, 5 (1st Cir. 1995) (motion to amend unduly delayed where discovery had closed and opposing party had nearly completed its motion for summary judgment); Hayes v. New England Millwork Distribs., Inc., 602 F.2d 15, 19-20 (1st Cir. 1979) (finding a motion to amend served ten days prior to the close of discovery to be unduly delayed); Tiernan v. Blyth, Eastman, Dillon & Co., 719 F.2d 1, 4 (1st Cir. 1983) (motion to amend filed one and one-half months before trial date was untimely even if no further discovery would be necessary).

Further, where there has been delay, as in the instant case, the party moving to amend has the burden of showing some valid reason or justification for the delay. See Grant, supra, 55 F. 3d at 5-6 ("Under this circuit authority, it is incumbent upon [the moving party] to give a valid reason for having waited so long to file his motion."); Stepanischen v. Merchants Dispatch Transp. Corp., 722 F.2d 922, 933 (1st Cir. 1983) ("Where … considerable time has elapsed between the filing of the complaint and the motion to amend, the movant has the burden of showing some 'valid reason for his neglect and delay.'") (quoting Hayes, supra, 602 F.2d at 19-20)).

Here, Plaintiff has offered no reason whatsoever for his delay. Instead, the Motion to Amend baldly asserts that Plaintiff "learned through the discovery the extent to which [Metropolitan Life] and Kemper have acted in bad faith." See Plaintiff's Motion at p. 6. Even if this completely unsupported (and unsupportable) assertion were taken at face value, the discovery period closed more than six months ago, and Plaintiff has failed to offer any explanation as to why he delayed filing the Motion to Amend until the eve of trial, and with dispositive motions pending by all parties. As such, the Motion to Amend should be denied. See, e.g., Quaker State Oil Refining Corp., supra, 884 F.2d at 1517-1518 (denying leave to amend answer in light of various considerations, including: only two months remained in an "already extended discovery period;" plaintiff was obligated to move for summary judgment within three weeks; discovery had taken place without reference to the defendant's theory; and defendant failed to offer a satisfactory explanation for delay); Espinosa, supra, 227 F.R.D. at 27 (denying leave to amend answer in part where no satisfactory reason was offered in request to amend, when significant time had passed since original filing, and the court had granted parties extensions of discovery period).

### C.    Plaintiff's Motion to Amend Should Be Denied On The Grounds Of Undue Prejudice To The Defendants.

The prejudice to Kemper would be substantial if Plaintiff were permitted to assert his proposed new claims at this stage of the litigation. Discovery closed nearly six months ago; the deadline for filing summary judgment motions has long passed; and the case is scheduled to begin trial in approximate two months. If Plaintiff is permitted to amend his complaint to assert his newly proposed claims, Kemper will have been denied the opportunity take discovery or to submit a motion for summary judgment on those claims, and will be required simply to defend itself at trial on claims first asserted on the eve of trial. The First Circuit has found that undue

prejudice supports the denial of a motion for leave to amend, even where a claimant has belatedly sought to assert additional claims that were factually similar to claims he already had asserted. See, e.g., Tiernan, supra, 719 F.2d at 4 (holding that plaintiff's belated request to add claims one and a half months before trial, even if factually similar to existing claims, would be unduly prejudicial in that they were legally distinct theories and might well affect defendant's planned trial strategy).

**D.    Plaintiff's Motion to Amend Should Be Denied Because It Would Be Futile.**

Furthermore, Plaintiff's Motion to Amend should be denied because Plaintiff's proposed new claims against Kemper would be futile. See Debreceni, supra, 710 F. Supp. at 23 (denying leave to amend where amendment would be futile). This is true for at least the following independent reasons:

- Plaintiff's claims are plainly time-barred by the applicable statute of repose and/or statute of limitation; and

- in any event, Plaintiff cannot establish that Kemper breached any contract with or duty to Plaintiff, much less engaged in "unfair competition" or "unfair acts or deceptive practices" in violation of chapter 93A or chapter 176D, where Kemper: (1) unquestionably fulfilled its settlement obligations; (2) refused to agree to Metropolitan Life's subsequent attempt to change the terms of the Annuity; and (3) even advised Plaintiff himself of Metropolitan Life's subsequent (and refused) attempt.

These reasons are set forth at length in Kemper's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment, a copy of which is attached hereto as Exhibit "B" (at pp. 2 through 12). For these reasons, Plaintiff's sought-after amendment would be futile, and the Motion to Amend therefore should be denied.

**E.** **Plaintiff's Motion to Amend Should Not Be Permitted Under Fed. R. Civ. P. 15(b).**

Finally, Plaintiff's argument that the Motion to Amend should be granted under Fed. R. Civ. P. 15(b) is also without merit. The purpose of F.R.C.P. 15(b) is to allow parties to amend pleadings based upon the presentation of evidence at trial; it is not designed to allow parties to amend pleadings prior to trial. "First Circuit precedent permits a cause of action to arise pursuant to Fed. R. Civ. P. 15(b) 'if, <u>during the trial</u>, a party acquiesces in the introduction of evidence which is relevant only to that issue.'" <u>Mauser v. Raytheon Co. Pension Plan for Salaried Emples.</u>, 46 F. Supp. 2d 98, 101 (D. Mass. 1999) (<u>citing Rodriguez v. Doral Mortgage Corp.</u>, 57 F.3d 1168, 1172 (1st Cir. 1995) (<u>quoting DCPB, Inc. v. City of Lebanon</u>, 957 F.2d 913, 917 (1st Cir. 1992)) (emphasis added).

Here, the parties are not on trial, and the parties have not acquiesced as to the evidence. Therefore, Plaintiff's reliance on F.R.C.P. 15(b) is entirely misplaced, and cannot form a basis for granting Plaintiff leave to amend his complaint at this late stage. Plaintiff's proposed pretrial amendment.

IV.    **CONCLUSION**

For the foregoing reasons, Defendant Kemper Insurance Company respectfully requests

that this Honorable Court deny Plaintiff's Motion for Leave to File Amended Complaint.

Respectfully submitted,

KEMPER INSURANCE COMPANY

by its, attorneys,

_____/s/ Kevin L. Golden_____
DRINKER BIDDLE & REATH LLP
Timothy O'Driscoll (Admitted Pro Hac Vice)
Kevin L. Golden (Admitted Pro Hac Vice)
DRINKER BIDDLE & REATH LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103-6996
(215) 988-2700

Local Counsel
Kevin Murphy (BBO # 638335)
Anthony B. Fioravanti (BBO # 664823)
YURKO & SALVESEN, P.C.
One Washington Mall, 11th Floor
Boston, MA 02108-2603
(617) 723-6900

Dated: March 29, 2007

### Request For Hearing

Above-signed counsel believes that pursuant to Local R. Civ. P. 7.1(D), oral argument may
assist the Court in determining the motion herein opposed and hereby requests such oral
argument.

### Certification of Service

I hereby certify that a true and accurate copy of the foregoing document was filed via
the ECF system and will be served electronically through that system upon Counsel of Record
on March 29, 2007.

_____/s/ Kevin L. Golden_____
Kevin L. Golden

- 8 -

<div align="center">

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

</div>

| | | |
|---|---|---|
| DENNIS DIMON | ) | |
|      Plaintiff | ) | |
| | ) | |
|    v. | ) | Civil Action No. 05-11073-MEL |
| | ) | |
| METROPOLITAN LIFE | ) | |
| INSURANCE COMPANY, KEMPER | ) | |
| INSURANCE COMPANY, | ) | |
| MORGAN STANLEY DW, INC., | ) | |
| MICHAEL B. LATTI, LATTI | ) | |
| ASSOCIATES, and LATTI & ANDERSON | ) | |
| LLP, | ) | |
|      Defendants | ) | |

<div align="center">

**(DRAFT) O R D E R**

</div>

AND NOW, this _____ day of _____, 2007, upon consideration of Plaintiff Dennis Dimon's Motion for Leave to File an Amended Complaint, and any opposition thereto, including that of Defendant, Kemper Insurance Company, it is hereby ORDERED that Plaintiff's motion is DENIED.


                                            _____

                                            Morris E. Lasker, U.S.D.J.

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS (BOSTON)

|  |  |  |
|---|---|---|
| DENNIS DIMON | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-11073-MEL |
| | ) | |
| MICHAEL B. LATTI, LATTI | ) | |
| ASSOCIATES, LATTI & ANDERSON | ) | |
| LLP, METROPOLITAN LIFE | ) | |
| INSURANCE COMPANY, KEMPER | ) | |
| INSURANCE COMPANY, and | ) | |
| MORGAN STANLEY DW, INC., | ) | |
| Defendants | ) | |

## MEMORANDUM OF LAW OF
## DEFENDANT KEMPER INSURANCE COMPANY IN SUPPORT OF
## ITS MOTION FOR SUMMARY JUDGMENT

Timothy O'Driscoll (Admitted Pro Hac Vice)
Kevin L. Golden (Admitted Pro Hac Vice)
DRINKER BIDDLE & REATH LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103-6996
(215) 988-2700

Local Counsel
Kevin Murphy
Anthony B. Fioravanti
YURKO & SALVESEN, P.C.
One Washington Mall, 11th Floor
Boston, MA 02108-2603
(617) 723-6900

Attorneys for Defendant,
Kemper Insurance Company

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... ii

I.      INTRODUCTION .............................................................................................. 1

II.     FACTS ................................................................................................................ 1

        A.      Settlement Of The Underlying Personal Injury Action ......................... 1

        B.      The Purchase And Issuance Of The Annuity.......................................... 4

        C.      Charter Security's Subsequent Attempt To Change The Terms Of The
                Annuity ...................................................................................................... 5

        D.      Plaintiff Files The Instant Lawsuit.......................................................... 7

III.    LEGAL ARGUMENT ........................................................................................ 8

        A.      Legal Standard ......................................................................................... 8

        B.      Choice Of Law ......................................................................................... 9

        C.      Plaintiff's Claims Against Kemper Are Time-Barred .......................... 10

                1.      Plaintiff's Claim Against Kemper For Breach of Contract Is Time-
                        Barred............................................................................................ 10

                2.      Plaintiff's Claim Against Kemper For Negligent Misrepresentation
                        Is Time-Barred .............................................................................. 11

        D.      Plaintiff Cannot Establish The Requisite Elements Of His Claims Against
                Kemper..................................................................................................... 12

                1.      Plaintiff Cannot Establish The Requisite Elements Of A Claim
                        Against Kemper For Breach Of Contract ..................................... 12

                2.      Plaintiff Cannot Establish The Requisite Elements Of A Claim
                        Against Kemper For Negligent Misrepresentation ...................... 14

IV.     CONCLUSION.................................................................................................. 15

i

## TABLE OF AUTHORITIES

### CASES

**Page**

*Anderson v. Liberty Lobby,*
477 U.S. 242 (1986)............................................................................9

*Barbour v. Dynamics Research Corp.,*
63 F.3d 32 (1st Cir. 1995)..................................................................8

*Brennan v. Hendrigran,*
888 F.2d 189 (1st Cir. 1989)..............................................................8

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986)............................................................................8

*Cleveland v. Policy Mgmt. Sys. Corp.,*
526 U.S. 795 (1999)............................................................................9

*Constructive Hands, Inc. v. Baker,*
446 F. Supp. 2d 88 (N.D.N.Y. 2006)................................................12

*Doyle v. Hasbro, Inc.,,*
103 F.3d 186 (1st Cir.1996)..............................................................14

*Ely-Cruikshank Co., Inc. v. Bank of Montreal,*
615 N.E.2d 985 (N.Y. Ct. App. 1993).........................................10, 11

*Espie v. Murphy,*
No. 2005-07034, 2006 N.Y. App. Div. LEXIS 14544 (N.Y. App. Div.
Dec. 5, 2006)....................................................................................12

*Fandy Corp. v. Lung-Fong Chen,*
691 N.Y.S.2d 572 (N.Y. App. Div. 1999) .......................................11

*Hydro Investors, Inc. v. Trafalgar Power, Inc.,*
227 F.3d 8 (2d Cir. 2000)..................................................................14

*Levin v. Berley,*
728 F.2d 551 (1st Cir. 1984).............................................................11

*Millipore Corp. v. Travelers Indem. Co.,*
115 F.3d 21 (1st Cir. 1997)................................................................9

*Nota Const. Corp. v. Keyes Assocs., Inc.*,
    694 N.E.2d 401 (Mass. Ct. App. 1998) ........................................................15

*Patsos v. First Albany Corporation*,
    741 N.E.2d 841 (Mass. 2001) ....................................................................11

*Reicher v. Berkshire Life Ins. Co. of Am.*,
    360 F.3d 1 (1st Cir. 2004)...........................................................................9

*Rogers v. Fair*,
    902 F.2d 140 (1st Cir. 1990).....................................................................8, 9

*Sampson v. MacDougall*,
    802 N.E.2d 602 (Mass. Ct. App. 2004) .......................................................15

*Singarella v. Boston*,
    173 N.E.2d 290 (Mass. 1961) ................................................................ 13-14

*Sitkiewicz v. County of Sullivan*,
    681 N.Y.S.2d 677 (N.Y. App. Div. 1998) ...................................................10

*St. George Hotel Assocs. v. Shurkin*,
    786 N.Y.S.2d 56 (N.Y. App. Div. 2004) ................................................ 10-11

*The Travelers Indem. Co. of Illinois v. Wolverine Corp.*,
    No. 03-10164, 2005 U.S. Dist. LEXIS 31651 (D. Mass. Dec. 8, 2005).....................9

*Veal v. Geraci*,
    23 F.3d 722 (2nd Cir. 1994)......................................................................11

### STATUTES AND RULES

Fed. R. Civ. P. 56(c) .....................................................................................8

Mass. Gen. Laws ch. 260, § 2 (2006) ...............................................................11

Mass. Gen. Laws ch. 260, § 2A (2006) .............................................................11

N.Y. C.P.L.R. 213(2006) ...............................................................................12

## I.    INTRODUCTION

This lawsuit centers on a dispute involving the terms of an annuity policy funding the settlement of an underlying personal injury action that concluded in 1983. Plaintiff has filed suit against four defendants, and has made purported claims against Kemper for breach of contract and negligent misrepresentation. Plaintiff's claims against Kemper cannot be sustained for two separate and independent reasons: (1) both claims are barred by the applicable statutes of limitations; and (2) in any event, Plaintiff cannot establish the essential elements of his claims. For each of these reasons, Kemper is entitled to summary judgment.

## II.    FACTS

### A.    Settlement Of The Underlying Personal Injury Action.

In January 1981, Plaintiff was injured while serving as a crew member of the Jenny C. Inc. See Plaintiff's Complaint ("Compl.") at ¶ 10 (attached hereto as Exhibit A). Plaintiff subsequently commenced a personal injury lawsuit styled Dennis Jay Dimon v. Jenny C., Inc., No. 81-0063, in the United States District Court for the District of Rhode Island (the "Underlying Action"). See Transcript of Guardian Ad Litem Hearing ("Guardian Hrg.") (attached hereto as Exhibit B). As his legal counsel in the Underlying Action, Plaintiff retained and was represented by the law firm of Latti Associates.[1] See Compl. at ¶ 12; Deposition Transcript of Michael B. Latti ("Latti Dep.") at 24:23-25:14 (attached hereto as Exhibit C). The Underlying Action ultimately proceeded to trial, where Plaintiff was awarded a verdict in the amount of $710,000. See Compl. at ¶ 11.

---

[1]    Michael Latti, Esq. ("Mr. Latti") of Latti Associates, and Roger Hughes, Esq. ("Mr. Hughes"), formerly of Latti Associates, acted as Plaintiff's lawyers in the Underlying Action. See Latti Dep. at 24:23-25:14, 26:16-18, 31:7-22. Latti Associates, Mr. Latti, and Mr. Hughes are referred to collectively herein as "Plaintiff's lawyers."

Following the verdict in the Underlying Action, Plaintiff's lawyers agreed to a settlement of the Underlying Action with the defendant, the defendant's primary insurer, and Kemper, which was the defendant's excess insurer.[2]  See Guardian Hrg. at 1:20-23, 9:3-14; Deposition Transcript of William Mensie ("Mensie Dep.") at ex. 5 (attached hereto as Exhibit D).[3]   The terms of the settlement were negotiated with Plaintiff's lawyers in April, 1983.  See Guardian Hrg. at 7:11-8:14, 13:14-14:20, 16:19-23; Mensie Dep. at at ex. 5.  The settlement agreement provided that the primary insurer and Kemper would pay to Plaintiff a lump sum in the amount of $250,000.  See Guardian Hrg. at 6:19-20; Mensie Dep. at ex. 5.  The settlement agreement further provided, upon Plaintiff's lawyers' insistence, that Kemper would pay an additional lump sum in the amount of $175,000 so that Plaintiff's lawyers could purchase an annuity to fund a stream of future periodic payments for Plaintiff.   See Guardian Hrg. at 7:20-8:4; Mensie Dep. at 79:18-80:11 and at ex. 5.

Specifically, Plaintiff's lawyers advised that they were able to purchase, for a premium of $175,000, an annuity that would pay out a stream of periodic payments as follows:  $1,450 per month for life, with a 3 % increase compounded annually, and 20 years certain.  See Guardian Hrg. at 6:20-23, 7:23-8:4, Mensie Dep. at ex. 5.  Plaintiff's lawyers stated that they had obtained this annuity quote from Charter Security Life Insurance Company ("Charter Security Life")

---

[2]     Several companies traded under the name of Kemper, including "American Motorists Insurance Company."  For the purposes of the instant Motion, references in the supporting exhibits to "American Motorists Insurance Company" may be considered references to Kemper.  For the Court's ease of reference, wherever possible, the instant Motion will make reference only to Kemper, rather than to "American Motorists Insurance Company."

[3]     Mr. Mensie was the witness designated by Kemper in the instant lawsuit for the purposes of its Fed. R. Civ. P. 30(b)(6) deposition.

through Plaintiff's lawyers' broker, Dean Witter, Inc. ("Dean Witter").[4]  See Latti Dep. at 71:2-11; Mensie Dep. at ex. 6.[5]

On or about April 19, 1983, Plaintiff signed a "General Release" memorializing the terms of the settlement and the payments due to Plaintiff, specifically, a lump sum payment of $250,000, and $1,450 per month for life, with a 3 % increase compounded annually, and 20 years certain.  See Mensie Dep. at 220:13-221-9, and at ex. 10.  The "General "Release" provided that the monthly payments would be paid from a "fully paid annuity contract for [Plaintiff's] benefit with Charter [Security] Life[.]"  See Mensie Dep. at ex. 10.  Plaintiff's lawyers prepared a "settlement sheet" detailing the total amount of the cash payment that Plaintiff would receive following deductions for fees and costs, and also noting that the cost of the annuity was $175,000.  See Latti Dep. at ex. 1.

On or about April 22, 1983, in order to ensure that Plaintiff had a full understanding of the terms of this settlement, the court in the Underlying Action appointed one Leonard DeCof ("Mr. Decof") as guardian ad litem for Plaintiff.  See Guardian Hrg. at 1:15-18, 2:24-25, 3:3-5. On May 3, 1983, Mr. DeCof appeared before the court in the Underlying Action in order to testify as to the background and terms of the settlement.  Id. at 1:1, 1:6-7, 1:15-2:12, 6:19-23, 7:21-8:25, 13:16-18, 14:2-15:9, 16:19-23.  Mr. Decof testified that the settlement provided, at the insistence of Plaintiff's lawyers, that the defendants would pay Plaintiff's lawyers the sum of

---

[4]      Charter Security Life is now known as Metropolitan Life Insurance Company ("Metropolitan Life"), which has been named as a defendant in this lawsuit. Dean Witter is now known as Morgan Stanley, DW, Inc. ("Morgan Stanley"), which also has been named as a defendant in this lawsuit.

[5]      Specifically, on April 8, 1983, Charter Security Life had prepared a proposal of a "life annuity 20 year certain" that provided for "$1,450.45 per month for the first year [to] increase 3% per year[.]"  See Latti Dep. at ex. 3, p. 3.

$175,000 so that Plaintiff's lawyers could purchase an annuity of their choice. Id. at 7:11-8:20. The court approved the settlement. Id. at 21:9-16.

### B.    The Purchase And Issuance Of The Annuity.

On or about May 4, 1983, an annuity application from Charter Security Life was signed by Kemper. See Mensie Dep. at ex. 2. The annuity application required an annuity premium in the amount of $175,000. See Mensie Dep. at ex. 2. As payment for the annuity premium and in settlement of the Underlying Action, Kemper issued check number 250-0-008-585, made payable to Charter Security Life in the amount of $175,000 (the "Settlement Check"), and Kemper's counsel delivered the Settlement Check to Plaintiff's lawyer. See the Settlement Check (attached hereto as Exhibit E); Correspondence to Kemper dated May 3, 1983 ("May 3, 1983 Correspondence") (attached hereto as Exhibit F).

On or about June 17, 1983, Charter Security Life signed and issued a single premium deferred annuity contract (the "Annuity"). See Mensie Dep. at ex. 11. The Annuity provides that the "Single Premium payment for this contract was paid in advance." Id. at ex. 11, p. 5. As the annuity issuer, Charter Security Life became obligated to make the Annuity payments to Plaintiff (i.e., the annuitant). Id. at ex. 11, pp. 1, 5. The Annuity provides that it is a "Lifetime Annuity" and that "[Charter Security Life] will pay a lifetime monthly income to the Annuitant if living on the Annuity Date." Id. at ex. 11, p. 1. The Annuity also included a "Supplementary Agreement" further specifying that Plaintiff would receive monthly payments of "$1,450.45 each, increasing 3% annually, commencing June 6, 1983, for a period of 240 months certain and life thereafter." Id. at ex. 11.

**C.    Charter Security's Subsequent Attempt To Change The Terms Of The Annuity.**

On July 14, 1983 - approximately one month after Charter Security Life issued the Annuity and began making payments to Plaintiff in accordance therewith – Barbara Boehm of Charter Security Life sent correspondence to Kurt Snyder of Dean Witter, claiming that "due to a clerical error the option indicated on the above supplementary contract for [Plaintiff] was incorrectly typed as 240 months certain and life thereafter instead of 240 months only. Enclosed is a new contract...."   See Deposition Transcript of Barbara Fasman ("Fasman Dep.") at ex. 3 (attached hereto as Exhibit G).[6]   Mr. Snyder forwarded a copy of this correspondence to John Noe of Kemper, and on August 12, 1983, by correspondence to Robert Foley of Dean Witter, Mr. Noe responded to Charter Security Life's attempt to change the terms of the Annuity, as follows:

> "I received the replacement policy issued by Charter Security Life Insurance (New York) changing the terms of the annuity from 240 months certain and life thereafter to 240 months certain only.
>
> I am advised by Mr. Hughes of Lattie [sic] Associates that your quotation was to provide an annuity which would pay $1,450.45 per month for the first year increasing annually at a rate of 3% compounded annually for 240 months certain and life thereafter for a singe premium of $175,000.00. This was the benefit to be provided under the terms of a general release and settlement agreement approved by Judge Pettine of the United States District Court for the District of Rhode Island.
>
> The agreed upon premium was paid and a policy issued which is now in the files of the contract owner, [Kemper], providing benefits required by the release, settlement agreement and court order. I consider the original annuity contract valid and enforceable and will retain it in our files...."

---

[6]    Ms. Fasman was the witness designated by Metropolitan Life in the instant lawsuit for the purposes of its Fed. R. Civ. P. 30(b)(6) deposition.

See Fasman Dep. at ex. 4. Mr. Noe sent copies of this correspondence to Plaintiff's lawyer, Mr. Hughes, and to Ms. Boehm at Charter Security Life. Id.

On September 26, 1983, Robert Ligouri of Charter Security Life sent correspondence to Mr. Noe, claiming that the Annuity was "incorrectly typed" for "240 month certain and life thereafter…instead of 240 months only", and that "the original supplementary contract" was "null and void." See Fasman Dep. at ex. 5. Plaintiff's lawyer, Mr. Hughes, was sent a copy of this correspondence as well (as was Mr. Foley of Dean Witter). Id. On October 10, 1983, Mr. Noe replied to Mr. Ligouri, and again refused to change the terms of the Annuity. See Fasman Dep. at ex. 6. Specifically, Mr. Noe advised that Kemper "intend[s] to retain the original policy in [its] files and consider[s] it to be valid and enforceable." Id. Mr. Noe also sent a copy of this correspondence to Plaintiff's lawyer, Mr. Hughes (as well as to Mr. Foley). Id.

On October 14, 1983, Ms. Boehm sent correspondence to Mr. Noe enclosing a "corrected" supplementary agreement to "reflect monthly payments for a period of 240 months only." See Fasman Dep. at Ex. 8.[7] By reply correspondence, Mr. Noe again refused to change the terms of the Annuity, and stated as follows:

> "In response to your October 14, 1983 I reject and return herewith the Supplementary Agreement and General Provisions attached thereto. The original annuity policy will be retained in the files of [Kemper] and considered valid and enforceable."

See Fasman Dep. ex. at 7. Kemper also sent a copy of this correspondence to Plaintiff's lawyer, Mr. Hughes (as well as to Mr. Foley). Id.

In 1983, Plaintiff himself had no contact whatsoever with Kemper. See Deposition Transcript of Dennis J. Dimon ("Dimon Dep.") at 117:20-118:11 (attached hereto as Exhibit H).

---

[7]     It is noted that Charter Security Life did not attempt to return any premium to Plaintiff's lawyers, Kemper, or any other party.

Of the parties to the instant lawsuit, the only parties with which Plaintiff had any contact in 1983 were Plaintiff's lawyers. Id.[8]

After making the Annuity payment due on May 5, 2003, Metropolitan Life stopped making the Annuity payments to Plaintiff. See Fasman Dep. at ex. 20.

**D.    Plaintiff Files The Instant Lawsuit.**

On May 23, 2005, Plaintiff filed the instant lawsuit, naming as defendants Mr. Latti, Latti Associates, Latti & Anderson LLP,[9] Metropolitan Life, Morgan Stanley, and Kemper.  See Compl.[10]  Of the thirteen counts in the Complaint, only two counts are directed against Kemper. Those counts purport to assert causes of action for breach of contact (Count Twelve) and negligent misrepresentation (Count Thirteen). Id.  With respect to the purported claim for breach of contract, the Complaint alleges that "[Kemper] was to provide a lifetime annuity guaranteed for twenty (20) years… but breached this contract by altering the terms of the agreement after the contract was signed and approved by the court and for failing to perform the contract." Id. at ¶¶ 72, 73.  With respect to the purported claim for negligent misrepresentation, the Complaint alleges that "[Kemper] negligently misrepresented the terms of contract, stating that the contract was for life, guaranteed for twenty years," and that Plaintiff "relied on the representation of counsel and [Kemper] as manifested in the original contract approved by the court and suffered financial losses as a result of [Kemper's[ negligent misrepresentation in altering the contract." Id. at ¶¶ 77, 78.

---

[8]    It is noted that, in September 1999, Plaintiff's wife had inquired with Metropolitan Life (Charter Security Life's successor) as to the terms of the Annuity. Id. at ex. 11.  On September 24, 1999, Metropolitan Life sent correspondence to Plaintiff stating that "[y]ou receive monthly payments until 5/5/2003." Id.

[9]    Latti & Anderson LLP is the successor law firm to Latti Associates.

[10]    Kemper did not receive any communications from Plaintiff, Plaintiff's lawyers, Metropolitan Life, or any other person or entity, relating to the Annuity, from October 1983 until the filing of this lawsuit on May 23, 2005.

On November 22, 2006, Plaintiff proffered an expert report in this matter which purports to allocate liability among the defendants. See Plaintiff's proffered Expert Report ("Plaintiff's Expert Report") (attached hereto as Exhibit I). Plaintiff's Expert Report does not assert that Kemper breached any contract or made any negligent misrepresentation; indeed, Plaintiff's Expert Report does not reference Kemper at all. See id.[11]

## III.    LEGAL ARGUMENT

### A.    Legal Standard.

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Barbour v. Dynamics Research Corp., 63 F.3d 32, 36-37 (1st Cir. 1995) (quoting Fed. R. Civ. P. 56(c)). The movant has the initial burden of either offering evidence to disprove an element of the plaintiff's case or by demonstrating "an absence of evidence to support the nonmonving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

After the movant has met this burden, the nonmovant must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answer to interrogatories, and admissions on file, designate specific facts showing that there is some genuine issue for trial." Celtox, 477 U.S. at 324. The nonmovant cannot rely upon mere allegations, but must "adduce specific, provable facts demonstrating that there is a triable issue." Rogers v. Fair, 902 F.2d 140, 143 (1st Cir. 1990) (quoting Brennan v. Hendrigran, 888 F.2d 189, 191 (1st Cir. 1989). There must be "sufficient evidence" favoring the nonmoving party for a jury to find in its favor. Id. "If the

---

[11]    It is noted that Plaintiff's Expert Report asserts that the alleged breach of the Annuity occurred in 1983. Id. at p. 7.

evidence is merely colorable or not significantly probative, summary judgment may be granted."
Id. (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 249-50 (1986). And where, as here, the
plaintiff would bear the burden of proof at trial, summary judgment for the defendant is
appropriate when the plaintiff cannot establish the existence of an element essential to its case.
Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 805-06 (1999).

**B.    Choice Of Law.**

In determining which state's laws applies, the question is resolved by using the choice of
law analysis of the forum state. The Travelers Indem. Co. of Illinois v. Wolverine Corp., No. 03-
10164, 2005 U.S. Dist. LEXIS 31651, at *2 (D. Mass. Dec. 8, 2005) (citing Reicher v. Berkshire
Life Ins. Co. of Am., 360 F.3d 1, 4 (1st Cir. 2004)).  Absent a contractual choice of law
provision, "Massachusetts' choice-of-law framework requires consideration of several factors in
order to determine the appropriate forum state." Id. (citing Reicher, 360 F.3d at 4-6).

The first step in a choice of law analysis is to determine whether an actual conflict
actually exists between the laws of the interested jurisdictions.  Reicher, 360 F.3d at 4 (citing
Millipore Corp. v. Travelers Indem. Co., 115 F.3d 21, 29 (1st Cir. 1997)).  Assuming a conflict,
Massachusetts courts consider a "variety of factors" in order to determine which state has a more
"significant relationship" to the case.  The Travelers Indemnity Co., 2005 U.S. Dist. LEXIS
31651, at * 4 (citing Reicher, F.3d at 5).  The Massachusetts Supreme Court has stated that it
"feels free...to borrow from any of the various lists to help focus...attention on the
considerations particularly relevant to the case." Reicher, 360 F.3d at 5 (citations omitted).

In this case, Metropolitan Life – the issuer of the subject Annuity, and as such, the entity
that was responsible for making the subject Annuity payments – is located in New York.  It is

therefore submitted that New York has the most significant relationship to the case, and that New York law governs this action.[12]

**C.     Plaintiff's Claims Against Kemper Are Time-Barred.**

Plaintiff's claims against Kemper are plainly barred by the applicable statutes of limitations.

**1.     Plaintiff's Claim Against Kemper For Breach of Contract Is Time-Barred.**

Under New York law, the statute of limitations for a breach of contract claim is six years from the date of breach.  See N.Y. C.P.L.R. 213(2) (2006); see also Sitkiewicz v. County of Sullivan, 681 N.Y.S.2d 677, 678 (N.Y. App. Div. 1998) (citations omitted).  The statute of limitations begins to run at the time of the breach, even if damages do not occur until later.  Ely-Cruikshank Co., Inc. v. Bank of Montreal, 615 N.E.2d 985, 986 (N.Y. Ct. App. 1993) (citations omitted).

The last time that Kemper had any involvement with Plaintiff's lawyers, or any other person or entity, relating to the Underlying Action or the Annuity was in October 1983.  Therefore, even assuming – all facts and law to the contrary – that Kemper breached a contract with Plaintiff, any such breach necessarily could have occurred no later than October 1983.[13]  See St. George Hotel Assocs. v. Shurkin, 786 N.Y.S.2d 56 (N.Y. App. Div. 2004) (ruling that

---

[12]     In addition to New York law, Kemper also will apply in this Memorandum of Law the relevant provisions of Massachusetts law.  It is further noted that, under the law of any potentially relevant jurisdiction, Kemper would be entitled to summary judgment.

[13]     As noted above, Plaintiff's own Expert Report asserts that the alleged breach of the Annuity occurred in 1983.  See Plaintiff's Expert Report at p. 7.

breach of contract action accrued at time of insurance policy's procurement and issuance not when damages allegedly occurred and was therefore barred by statute of limitations).[14]

Because Plaintiff commenced this action on May 23, 2005 – approximately twenty-two years after the alleged breach – Plaintiff's breach of contract claim is clearly barred by New York's six-year statute of limitations.  N.Y. C.P.L.R. 213(2) (2006).[15]

> ### 2.    Plaintiff's Claim Against Kemper For Negligent Misrepresentation Is Time-Barred.

Under New York law, the statute of limitations for a negligent misrepresentation claim is six years from the date of accrual.  See N.Y. C.P.L.R. 213(1) (2006); see also Fandy Corp. v. Lung-Fong Chen, 691 N.Y.S.2d 572, 572-73 (N.Y. App. Div. 1999) (citations omitted).  A cause of action for negligent misrepresentation accrues "on the date of the alleged misrepresentation which is relied upon by the plaintiff."  Id. at 573 (citations omitted).

As explained above, the last time that Kemper had any involvement with Plaintiff's lawyers, or any other person or entity, relating to the Underlying Action or the Annuity was in October 1983.  Therefore, even assuming – all facts and law to the contrary – that Kemper had made a negligent misrepresentation to Plaintiff, any such misrepresentation necessarily could

---

[14]    "Knowledge of the occurrence of the wrong on the part of the plaintiff is not necessary to start the Statute of Limitations running in [a] contract [action]."  Ely-Cruikshank, 615 N.E.2d at 987 (citations omitted). Nevertheless, it is noted that Plaintiff was aware, in 1983, of Charter Security Life's unilateral attempt to change the terms of the Annuity, by virtue of no less than four (4) letters sent to Plaintiff's lawyer regarding said attempt between August and October 1983.  As Plaintiff's agent, Plaintiff's lawyer's knowledge is imputed to Plaintiff. Veal v. Geraci, 23 F.3d 722, 725 (2nd Cir. 1994) (applying New York law, court concludes that attorney's knowledge of conduct giving rise to claim was imputed to client).  It is noted that under Massachusetts law as well, a client is charged with the knowledge of his attorney.  Levin v. Berley, 728 F.2d 551 (1st Cir. 1984) (citations omitted) (applying Massachusetts law, court notes that knowledge of attorney is imputed to client for purposes of statute of limitations considerations).

[15]    Similarly, under Massachusetts law, the statute of limitations for a breach of contract claim is six years. Mass. Gen. Laws ch. 260, § 2 (2006); see also Patsos v. First Albany Corporation, 741 N.E.2d 841, 846 (Mass. 2001) (discussing statutes of limitations on various actions, including breach of contract).  Therefore, assuming Massachusetts law governed this action, Plaintiff's breach of contract claim still would be barred by the applicable statute of limitations, for the reasons set forth above.

have been made no later than October 1983.  See Espie v. Murphy, No. 2005-07034, 2006 N.Y. App. Div. LEXIS 14544 (N.Y. App. Div. Dec. 5, 2006) (ruling that plaintiffs' cause of action for negligent misrepresentation began to run on date of closing agreement when misrepresentations from which fraud could have been inferred were made to plaintiffs).

Because Plaintiff commenced this action on May 23, 2005 - nearly twenty-two years after the alleged misrepresentation – Plaintiff's claim for negligent misrepresentation is clearly barred by New York's six-year statute of limitations.  See N.Y. C.P.L.R. 213(1) (2006).[16]

### D.   Plaintiff Cannot Establish The Requisite Elements Of His Claims Against Kemper.

In addition, Kemper is entitled to summary judgment on the separate and independent grounds that Plaintiff cannot establish the substantive elements of his claims for breach of contract and negligent misrepresentation.

#### 1.   Plaintiff Cannot Establish The Requisite Elements Of A Claim Against Kemper For Breach Of Contract.

Under New York law, the essential elements of breach of contract claim are as follows: "(1) the formation of an agreement by an offer, acceptance, and consideration; (2) performance by one party; (3) breach of the agreement by the other party; and (4) damages." Constructive Hands, Inc. v. Baker, 446 F. Supp. 2d 88, 93 (N.D.N.Y. 2006) (citations omitted).

In support of his breach of contract claims, Plaintiff alleges that "[Kemper] was to provide a lifetime annuity guaranteed for twenty (20) years... but breached this contract by altering the terms of the agreement after the contract was signed and approved by the court and

---

[16]      Under Massachusetts law, the statute of limitations for a negligent misrepresentation claim is three years. Mass. Gen. Laws. ch. 260, § 2A (2006).  Therefore, assuming Massachusetts law governed this action, Plaintiff's negligent misrepresentation claim still would be barred by the applicable statute of limitations, for the reasons set forth above.

for failing to perform the contract." See Compl. at ¶¶ 72, 73. Plaintiff has adduced no evidence

to support these allegations. Indeed, the evidence demonstrates that nothing could be further

from the truth: Kemper complied with all of its obligations in connection with the settlement of

the Underlying Action, and, in fact, refused to alter the terms of the Annuity when Charter

Security Life subsequently attempted to do so. Specifically, the evidence demonstrates as

follows:

- Plaintiff's lawyers (or their broker) secured from Charter Security Life a $175,000 premium quote for an annuity that would provide monthly payments in the amount of $1,450.45 each, increasing 3% annually, for a period of 20 years certain and life thereafter. See Latti Dep. 71:2-11; Mensie Dep. at ex. 6. Plaintiff's lawyers requested that Kemper pay them a lump sum in the amount of $175,000 so that Plaintiff's lawyers could obtain this annuity. See Guardian Hrg. at 7:11-8:20; Mensie Dep. at ex. 5.

- Kemper completed Charter Security Life's annuity application, issued the Settlement Check in the amount of the $175,000 annuity premium, and delivered same to Plaintiff's lawyer, in fulfillment of Kemper's settlement obligations. See Mensie Dep. at ex. 2; Settlement Check; May 3, 1983 Correspondence.

- Charter Security Life issued the lifetime Annuity, which specified that Plaintiff would receive monthly payments of $1,450.45 each, increasing 3% annually, commencing June 6, 1983, for a period of 20 years certain and life thereafter. See Mensie Dep. at ex. 11.

- Metropolitan Life subsequently attempted to unilaterally change the terms of the Annuity, but Kemper refused to agree to this. See Fasman Dep. at ex. 3, 4, 5, 6, 7 and 8.

- Kemper further took the affirmative step of advising Plaintiff's lawyers of Charter Security Life's attempt to change the terms of the Annuity. See Fasman Dep. at ex. 4, 6, and 7.

In light of these facts, it is beyond cavil that Plaintiff's claim against Kemper for breach

of contract is simply unsupportable.[17]

---

[17]    Similarly, under Massachusetts law, Plaintiff must establish the following elements in order to recover on a breach of contract claim: "(1) an agreement was made between the plaintiffs and the defendant supported by valid consideration; (2) the plaintiffs have been ready, willing, and able to perform; (3) the defendant's breach has prevented them from performing; and (4) the plaintiffs have suffered damage. Singarella v. Boston, 173 N.E.2d 290, 291 (Mass. 1961) (citations omitted); see also Doyle v. Hasbro, Inc., 103 F.3d 186, 194-195 (1st Cir. 1996).
(continued...)

2.    **Plaintiff Cannot Establish The Requisite Elements Of A Claim Against Kemper For Negligent Misrepresentation.**

The elements of negligent misrepresentation under New York law are as follows: "(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." Hydro Investors, Inc. v. Trafalgar Power, Inc., 227 F.3d 8, 20 (2d Cir. 2000) (citations omitted). The alleged misrepresentation must be factual in nature and not promissory or relating to events in the future that may not come to a realization. Id. at 20-21.

In support of his negligent misrepresentation claim, Plaintiff alleges that "[Kemper] negligently misrepresented the terms of contract, stating that the contract was for life, guaranteed for twenty years," and that Plaintiff "relied on the representation of counsel and [Kemper] as manifested in the original contract approved by the court and suffered financial losses as a result of [Kemper's] negligent misrepresentation in altering the contract." See Compl. at ¶¶ 77, 78. Plaintiff has adduced no evidence to support these allegations. Indeed, the evidence demonstrates that Plaintiff cannot support a claim against Kemper for negligent misrepresentation for at least three separate and independent reasons:

- First, Plaintiff has failed to establish that Kemper made any representation to Plaintiff regarding the Annuity terms. Indeed, quite to the contrary, the evidence shows that it was Plaintiff's own lawyers who determined that $175,000 would purchase a lifetime annuity on the desired terms. See Mensie Dep. at ex. 5 and 6. To that end, Plaintiff's lawyers

---

(..continued)

Therefore, assuming Massachusetts law governed this action, Plaintiff's breach of contract claim still would fail as a matter of law, for the reasons set forth above.

demanded that Kemper provide a Settlement Check in the amount of the $175,000 Annuity premium, and Kemper did so. See Guardian Hrg. at 7:11-8:20; Mensie Dep. at ex. 5,6; Settlement Check, May 3, 1983 Correspondence.

- Second, even assuming (contrary to fact) that Kemper made a representation to Plaintiff regarding the Annuity terms, Plaintiff has not shown and cannot show that he relied upon such representation. Indeed, Plaintiff has testified that he had no contact whatsoever with Kemper, and that he was relying on the advice of his lawyers. See Dimon Dep. at 117:20-118:11.

- Third, even assuming (contrary to fact) that Kemper made a representation to Plaintiff regarding the Annuity terms, and that Plaintiff relied upon such representation, Plaintiff has not shown and cannot show that any such representation was false. To the contrary, it always has been and remains Kemper's position that the Annuity is clearly payable for life. Neither Charter Security Life's subsequent attempt to unilaterally alter the terms of the Annuity (to which attempt Kemper refused to agree), nor Metropolitan's Life cessation of Annuity payments in May 2003, can possibly operate to render "false" any previous representation by Kemper that the Annuity is payable for life.

Because Plaintiff cannot establish any of the elements of a claim against Kemper for negligent misrepresentation, Plaintiff's claim should be dismissed.[18]

## IV.   CONCLUSION

For the foregoing reasons, Kemper respectfully requests that this Court enter summary judgment in its favor.

<div style="margin-left:40%">

Respectfully submitted,

KEMPER INSURANCE COMPANY

by its, attorneys,

_____/s/ Kevin L. Golden_____
DRINKER BIDDLE & REATH LLP

</div>

---

[18]     Similarly, in order to recover for negligent misrepresentation under Massachusetts law, a "plaintiff must prove that the defendant (1) in the course of his business, (2) supplied false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those whom (5) by their justifiable reliance upon the information, and (6) with failure to exercise reasonable care or competence in obtaining or communicating the information." Sampson v. MacDougall, 802 N.E.2d 602, 608 (Mass. Ct. App. 2004) (quoting Nota Const. Corp. v. Keyes Assocs., Inc., 694 N.E.2d 401, 405 (Mass. Ct. App. 1998)). Therefore, assuming Massachusetts law governed this action, Plaintiff's breach of contract claim still would fail as a matter of law, for the reasons set forth above.

Timothy O'Driscoll (Admitted Pro Hac Vice)
Kevin L. Golden (Admitted Pro Hac Vice)
DRINKER BIDDLE & REATH LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103-6996
(215) 988-2700

<u>Local Counsel</u>
Kevin Murphy
Anthony B. Fioravanti
YURKO & SALVESEN, P.C.
One Washington Mall, 11th Floor
Boston, MA 02108-2603
(617) 723-6900

Dated: January 2, 2007


## Certification Pursuant To Local Rules 7.1 and 37.1

The above-signed certifies that the parties have conferred in good faith in attempts to resolve the issues raised herein but were unable to do so. Specifically, the parties conferred by correspondence dated December 21, 2006, and December 28, 2006, between Timothy J. O'Driscoll and Brian Keane.

### **Certification of Service**

I hereby certify that a true and accurate copy of the foregoing document was filed via the ECF system and will be served electronically through that system upon Counsel of Record on January 2, 2007.

/s/ Kevin L. Golden
Kevin L. Golden

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DENNIS DIMON )<br>　　　　Plaintiff )<br>　　　　　　　　　　 )<br>　v.　　　　　　　　 )<br>　　　　　　　　　　 )<br>METROPOLITAN LIFE )<br>INSURANCE COMPANY, KEMPER )<br>INSURANCE COMPANY, )<br>MORGAN STANLEY DW, INC., )<br>MICHAEL B. LATTI, LATTI )<br>ASSOCIATES, LATTI & ANDERSON )<br>LLP, )<br>　　　　Defendants )<br>　　　　　　　　　　 ) | Civil Action No. 05-11073-MEL |

---

## RESPONSE OF DEFENDANT KEMPER INSURANCE COMPANY
## TO PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
## MOTION FOR SUMMARY JUDGMENT

---

## I.    INTRODUCTION

This lawsuit centers on a dispute involving the terms of an annuity policy funding the settlement of an underlying personal injury action that concluded in 1983. Plaintiff has filed suit against four defendants, and has made purported claims against Kemper for breach of contract and negligent misrepresentation. Plaintiff's claims against Kemper cannot be sustained for two separate and independent reasons: (1) both claims are plainly time-barred; and (2) in any event, Plaintiff cannot establish the essential elements of his claims. For each of these reasons, Kemper is entitled to summary judgment, and has therefore filed a motion for summary judgment with this Court.

Plaintiff also has filed a motion for summary judgment as against all defendants (referred to herein for the sake of clarity as the "Motion"). However, not only does Plaintiff's Motion fail

to establish the essential elements of his claims (or even attempt to do so), but the admissions made by Plaintiff in his Motion in fact serve only to demonstrate further that Kemper is entitled to summary judgment in its favor.

## II.    FACTS

For the sake of brevity, Kemper hereby incorporates by reference, as if set forth fully herein, the "Facts" Section of Kemper's Memorandum of Law in Support of Its Motion for Summary Judgment, and the exhibits cited therein and attached thereto (at pp. 1 through 8).

## III.    LEGAL ARGUMENT

### A.    Legal Standard

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Barbour v. Dynamics Research Corp., 63 F.3d 32, 36-37 (1st Cir. 1995) (quoting Fed. R. Civ. P. 56(c)). The movant has the initial burden of either offering evidence to disprove an element of the plaintiff's case or by demonstrating "an absence of evidence to support the nonmonving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

After the movant has met this burden, the nonmovant must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answer to interrogatories, and admissions on file, designate specific facts showing that there is some genuine issue for trial." Celotex, 477 U.S. at 324. The nonmovant cannot rely upon mere allegations, but must "adduce specific, provable facts demonstrating that there is a triable issue." Rogers v. Fair, 902 F.2d 140, 143 (1st Cir. 1990) (quoting Brennan v. Hendrigran, 888 F.2d 189, 191 (1st Cir. 1989). There must be "sufficient evidence" favoring the nonmoving party for a jury to find in its favor. Id. "If the

evidence is merely colorable or not significantly probative, summary judgment may be granted."
Id. (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 249-50 (1986).  And where, as here, the
plaintiff would bear the burden of proof at trial, summary judgment for the defendant is
appropriate when the plaintiff cannot establish the existence of an element essential to its case.
Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 805-06 (1999).

In his Motion, Plaintiff incorrectly argues that this Court is to view the facts and the law
in his favor for purposes of the instant lawsuit, because Plaintiff sued his employer under the
Jones Act, 46 USCS § 30104, in the settled Underlying Action.  See Plaintiff's Motion at pp. 6-7.
Plaintiff does not and cannot cite any legal support for this argument.  It is true that, where the
question before the court is one of the statutory construction of the Jones Act itself, the Jones
Act's provisions are to be interpreted liberally in favor of the seaman.  See Doyle v. Huntress,
419 F.3d 3, 9 (1st Cir. 2005) (cited in Plaintiff's Motion at p. 6).  However, in the instant lawsuit,
unlike in Doyle, the issue is not, in any way, one of interpretation of the provisions of the Jones
Act.  Indeed, Plaintiff has not (and could not have) even filed the instant lawsuit under the Jones
Act.  Therefore, Plaintiff's argument that the facts or the law applicable to the instant lawsuit
may be viewed by the court in his favor is simply unsupportable.

**B.    Plaintiff's Claims Against Kemper Are Time-Barred.**

As is evident from the admissions made in Plaintiff's Motion itself, Plaintiff's claims
against Kemper are plainly time-barred.

1.    **Plaintiff's Claim Against Kemper For Negligent Misrepresentation Is Time-Barred.**

In his Motion, Plaintiff admits that M.G.L. ch. 175, § 181 applies to his purported cause of action for negligent misrepresentation.  See Plaintiff's Motion at p. 18.[1]  M.G.L. ch. 175, § 181, provides, in pertinent part, as follows:

§ 181.  Misrepresentations by insurer; penalty

No company, no officer or agent thereof and no insurance broker or insurance adviser shall make, issue, circulate or use, or cause or permit to be made, issued, circulated or used, any written or oral statement misrepresenting the terms of any policy of insurance or any annuity or pure endowment contract issued or to be issued by any company or the benefits or privileges promised thereunder....The insured under any policy of life or endowment insurance or the holder of any annuity or pure endowment contract who was induced to procure it by any action in violation of this section by an officer or agent of the company issuing or executing it may recover from such company...in an action brought within two years after the date of issue thereof.

See M.G.L. ch. 175, § 181 (emphasis added).  Thus, Section 181 provides that claims that arise from an alleged misrepresentation by an insurance company with respect to annuities must be brought within two years of the issuance of the annuity.  See id.  Since the Annuity was issued in June 1983, Plaintiff was required, under Section 181, to bring his purported cause of action for negligent misrepresentation no later than June 1985.  Because Plaintiff commenced this action on May 23, 2005 - nearly twenty years after the expiration of the statutory period - Plaintiff's claim for negligent misrepresentation is clearly barred.[2]

---

[1] Although Kemper cited both Massachusetts law and New York law in its motion for summary judgment, Kemper will cite only Massachusetts law herein, since Plaintiff, as well as Metropolitan Life and the Latti Defendants, cite only Massachusetts law in their respective motions for summary judgment.  Under the laws of either jurisdiction, however, Kemper is entitled to summary judgment.

[2] In addition, Plaintiff's claim for negligent misrepresentation is also barred under M.G.L. ch. 260, § 2A, the three year statute of limitations applicable to general torts.  In his Motion, Plaintiff plainly admits that his cause of action against Kemper accrued in April 1983.  See Plaintiff's Motion at p. 17.  Therefore, the three-year limitation period applicable to general torts expired in April 1986.  Because Plaintiff commenced this action on May 23, 2005,
(continued...)

Plaintiff vainly attempts to point to the equitable doctrine of "fraudulent concealment" in order to toll the statute of limitations. See Plaintiff's Motion at pp. 13-17.[3] However, the narrow doctrine of fraudulent concealment is totally inapplicable here, for several separate and independent reasons.[4]

First, Section 181 has been interpreted to be a statute of repose, rather than a statute of limitations. See Passatempo v. McMenimen, 20 Mass. L. Rep. 593, *5-10 (Mass. Super. Ct. 2006). As such, there can be no equitable tolling of Section 181's provisions. See Passatempo, 20 Mass. L. Rep. at *7 ("[e]nforcement of the statute of repose as a rigid prohibition of action is consistent with our cases, which are clear that statutes of repose are not subject to any form of equitable tolling...") (quoting Joslyn v. Chang, 445 Mass. 344, 350-51 (2005)).

Second, and in any event, in order for the doctrine of fraudulent concealment to operate to toll a statute of limitations, "a plaintiff [must] show an affirmative act of fraudulent concealment on the part of the defendants." Maggio, supra, 824 F.2d at 130. Here, there is no evidence, or even any allegation, of an "affirmative act of fraudulent concealment" on the part of Kemper. Indeed, nothing could be further from the truth. Far from having any information concealed from him, Plaintiff admits in his Motion that, between August and October 1983, his attorneys received no less than four letters (three of which were sent by Kemper) regarding

---

(..continued)

Plaintiff's claim for negligent misrepresentation is clearly barred by the three year statute of limitations applicable to general torts (as well as by Section 181).

[3] Under Massachusetts law, if a person "fraudulently conceals [a] cause of [] action from the knowledge of the person entitled to bring it, the period prior to the discovery of his cause of action by the person so entitled shall be excluded in determining the time limited for the commencement of the action." See M.G.L. ch. 260, § 12. While Plaintiff cites to both the federal and the state doctrines of fraudulent concealment, the federal doctrine applies only to claims premised on federal law, and thus could have no possible application in the instant lawsuit. See Maggio v. Gerard Freezer & Ice Co., 824 F.2d 123, 127-28 (1st Cir. 1987).

Charter Security Life's unilateral attempt to change the terms of the Annuity.  See Plaintiff's

Motion at pp. 19-20; Plaintiff's Statement of Undisputed Material Facts at ¶¶ 33, 34, 37, 39, 41,

47 and 48.[5]  Under Massachusetts law, Plaintiff is charged with the knowledge of his attorneys.

See Levin v. Berley, 728 F.2d 551 (1st Cir. 1984) (citations omitted) (holding that the knowledge

of an attorney is imputed to the client for statute of limitations purposes).

In addition, Plaintiff provides no legal or factual support for his bald assertion that a

"fiduciary relationship" existed between Plaintiff and "[e]ach of the [d]efendants" in the instant

lawsuit.  See Plaintiff's Motion at p. 17.  Certainly, Kemper had no such fiduciary relationship

with Plaintiff.  Rather, Kemper was merely the excess insurance carrier for the defendant that

plaintiff sued in the Underlying Action, and as such, plainly had no fiduciary relationship

whatsoever with Plaintiff (unlike, for example, Plaintiff's lawyers).  In any event, even assuming

– contrary to law and fact – that Kemper had a fiduciary relationship with Plaintiff, the doctrine

of fraudulent concealment still would be inapplicable.  This is so because, even where a fiduciary

relationship exists, in order for the doctrine of fraudulent concealment to apply, a defendant must

"fail[] to reveal information" to the plaintiff that "keeps from [the plaintiff] knowledge of the

facts giving rise to a cause of action *and the means of acquiring knowledge of such facts*."  See

Maggio, supra, 824 F.2d at 130-31 (emphasis in original).  Here, it is indisputable that, in 1983,

Kemper disclosed to Plaintiff all of the relevant information that Kemper had.  Indeed, as set

forth above, and as Plaintiff admits in his Motion, between August and October 1983, Plaintiff

---

(..continued)
[4] "[C]ourts have taken a narrow interpretation of equitable exceptions to limitations periods."  Salois. v. Dime
Savings Bank of New York, FSB, 128 F.3d 20, 25 (1st Cir. 1997).

[5] Of course, even if Plaintiff had not made this admission, the record is clear on this point.  See Fasman Dep. at ex.
4, 5, 6, and 7 (attached to Kemper's Memorandum of Law in Support of Its Motion for Summary Judgment as
Exhibit G).

(through his attorneys) received no less than four letters (three of which were sent by Kemper) revealing Charter Security Life's unilateral attempt to change the terms of the Annuity.

For these reasons, it is plain that the "fraudulent concealment" doctrine is inapplicable, and that Plaintiff's negligent misrepresentation claim against Kemper is time-barred.

### 2. Plaintiff's Claim Against Kemper For Breach of Contract Is Time-Barred.

Plaintiff's breach of contract claim is also subject to the provisions of M.G.L. ch. 175, § 181, since the gravamen of Plaintiff's complaint appears to be for misrepresentation. See Grande v. PFL Life Ins. Co., 2000 Mass. App. Div. 261, 262 (2000) (holding that the plaintiff's claims for breach of contract and conversion in connection with alleged annuity misrepresentations were time-barred under Section 181, because the plaintiff's complaint arose out of misrepresentation, and "it is the 'gravamen of [the] complaint' which dictates the applicable statute of limitations") (citing Pagliuca v. Boston, 35 Mass. App. Ct. 820, 823 (1994)). As such, because Plaintiff commenced this action on May 23, 2005 - nearly twenty years after the expiration of the statutory period - Plaintiff's breach of contract claim is time-barred under Section 181.

In addition, Plaintiff's claim is also barred under the six-year statute of limitations applicable to breach of contract claims. See Mass. Gen. Laws ch. 260, § 2 (2006); see also Patsos v. First Albany Corporation, 433 Mass. 323, 327 (2001) (discussing statutes of limitations on various actions, including breach of contract). As set forth above, Plaintiff admits that his cause of action against Kemper accrued in April 1983. See Plaintiff's Motion at p. 17.[6] Because Plaintiff commenced this action on May 23, 2005 – more than twenty-two years after his cause

---

[6] Further, Plaintiff's own Expert Report asserts that the alleged breach of contract occurred in 1983. See Plaintiff's Expert Report at p. 7 (attached to Kemper's Memorandum of Law in Support of Its Motion for Summary Judgment as Exhibit I).

of action admittedly accrued – Plaintiff's breach of contract claim is clearly barred by Massachusetts' six-year statute of limitations applicable to breach of contract claims.[7]

For these reasons, it is plain that Plaintiff's breach of contract claim against Kemper is time-barred.

### C.    Plaintiff Cannot Establish The Requisite Elements Of His Claims Against Kemper.

In addition, Kemper is entitled to summary judgment on the separate and independent grounds that Plaintiff cannot establish the substantive elements of his claims for negligent misrepresentation and breach of contract. Indeed, in his Motion, Plaintiff does not even attempt to establish the elements of his claims against Kemper.

### 1.    Plaintiff Cannot Establish The Requisite Elements Of A Claim Against Kemper For Negligent Misrepresentation.

In order to recover for negligent misrepresentation under Massachusetts law, a "plaintiff must prove that the defendant (1) in the course of his business, (2) supplied false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance upon the information, and (6) with failure to exercise reasonable care or competence in obtaining or communicating the information." Sampson v. MacDougall, 60 Mass. App. Ct. 394, 400 (2004) (quoting Nota Const. Corp. v. Keyes Assocs., Inc., 45 Mass. App. Ct. 15, 19-20 (1998)).

In support of his negligent misrepresentation claim, Plaintiff alleges that "[Kemper] negligently misrepresented the terms of contract, stating that the contract was for life, guaranteed for twenty years," and that Plaintiff "relied on the representation of counsel and [Kemper] as

---

[7] For the reasons set forth above, the "fraudulent concealment" doctrine is inapplicable, and does not operate to toll the statute of limitations on Plaintiff's breach of contract claim.

manifested in the original contract approved by the court and suffered financial losses as a result of [Kemper's] negligent misrepresentation in altering the contract." See Compl. at ¶¶ 77, 78.  In his Motion, Plaintiff adduces no evidence whatsoever to support the allegations contained in his Complaint.  Indeed, the evidence demonstrates that Plaintiff cannot support a claim against Kemper for negligent misrepresentation for at least three separate and independent reasons.

First, Plaintiff has failed to establish that Kemper made any representation to Plaintiff regarding the Annuity terms.[8]  Indeed, quite to the contrary, the evidence shows that it was Plaintiff's own lawyers who determined that $175,000 would purchase a lifetime annuity on the desired terms, and that Kemper had no role in securing the Annuity quote or negotiating the Annuity with Charter Security Life.  See Mensie Dep. at 132:24-133:18, 195:18-20, 199:9-14, and at ex. 5 and 6 (attached to Kemper's Memorandum of Law in Support of Its Motion for Summary Judgment as Exhibit D).  To the end of purchasing the Annuity, Plaintiff's lawyers demanded that Kemper provide a Settlement Check in the amount of the $175,000 Annuity premium, and Kemper did so.  See Guardian Hrg. at 7:11-8:20 (attached to Kemper's Memorandum of Law in Support of Its Motion for Summary Judgment as Exhibit B); Mensie Dep. at 181:7-183:4, and at ex. 5 and 6; Settlement Check (attached to Kemper's Memorandum of Law in Support of Its Motion for Summary Judgment as Exhibit E); May 3, 1983 Correspondence (attached to Kemper's Memorandum of Law in Support of Its Motion for Summary Judgment as Exhibit F).

Second, even assuming (contrary to fact) that Kemper made a representation to Plaintiff regarding the Annuity terms, Plaintiff has not shown and cannot show that he relied upon such

---

[8] Of course, Kemper never had any contact whatsoever with Plaintiff himself; since Plaintiff was represented by counsel in the Underlying Action, Kemper's only contact was with Plaintiff's lawyers. See Mensie Dep. at 141:18-22.

representation.  Indeed, Plaintiff has testified that he was relying solely on the advice of his lawyers.  See Dimon Dep. at 117:20-118:11 (attached to Kemper's Memorandum of Law in Support of Its Motion for Summary Judgment as Exhibit H).

Third, even assuming (contrary to fact) that Kemper made a representation to Plaintiff regarding the Annuity terms, and that Plaintiff relied upon such representation, Plaintiff has not shown and cannot show that any such representation was false.  To the contrary, it always has been and remains Kemper's position that the Annuity is clearly payable for life.  See, e.g., Mensie Dep. at 240:1-9.  Neither Charter Security Life's subsequent unilateral attempt to alter the terms of the Annuity (to which Kemper refused to agree), nor Metropolitan's Life cessation of Annuity payments in May 2003, can possibly operate to render "false" any previous representation by Kemper that the Annuity is payable for life.

Because Plaintiff cannot establish any of the elements of a claim against Kemper for negligent misrepresentation, Plaintiff's claim should be dismissed.

### 2.     Plaintiff Cannot Establish The Requisite Elements Of A Claim Against Kemper For Breach Of Contract.

Under Massachusetts law, Plaintiff must establish the following elements in order to recover on a breach of contract claim:  "(1) an agreement was made between the plaintiffs and the defendant supported by valid consideration; (2) the plaintiffs have been ready, willing, and able to perform; (3) the defendant's breach has prevented them from performing; and (4) the plaintiffs have suffered damage.  Singarella v. Boston, 342 Mass. 385, 387 (1961) (citations omitted); see also Doyle v. Hasbro, Inc., 103 F.3d 186, 194-195 (1st Cir. 1996).

In support of his breach of contract claim, Plaintiff alleges that "[Kemper] was to provide a lifetime annuity guaranteed for twenty (20) years... but breached this contract by altering the terms of the agreement after the contract was signed and approved by the court and

for failing to perform the contract."    See Compl. at ¶¶ 72, 73 (attached to Kemper's

Memorandum of Law in Support of Its Motion for Summary Judgment as Exhibit A).

In his Motion, Plaintiff adduces no evidence whatsoever to support the allegations

contained in his Complaint.    Indeed, the evidence demonstrates that nothing could be further

from the truth: Kemper complied with all of its obligations in connection with the settlement of

the Underlying Action, and, in fact, refused to alter the terms of the Annuity when Charter

Security Life subsequently attempted to do so.    Specifically, the evidence demonstrates as

follows:

- Plaintiff's lawyers (through their broker, Dean Witter) secured from Charter Security Life
  a $175,000 premium quote for an annuity that would provide monthly payments in the
  amount of $1,450.45 each, increasing 3% annually, for a period of 20 years certain and
  life thereafter.    See Mensie Dep. at 132:24-133:18, 195:18-20, 199:9-14, and at ex. 5 and
  6.    Plaintiff's lawyers requested that Kemper pay them a lump sum in the amount of
  $175,000 so that Plaintiff's lawyers could obtain this annuity.    See Guardian Hrg. at 7:11-
  8:20; Mensie Dep. at 80:4-8, 124:23-135:10, and at ex. 5.

- Kemper completed Charter Security Life's annuity application, issued the Settlement
  Check in the amount of the $175,000 annuity premium, and delivered same to Plaintiff's
  lawyer, in fulfillment of Kemper's settlement obligations.    See Mensie Dep. at 258:14-20,
  and at ex. 2; Settlement Check; May 3, 1983 Correspondence.

- Charter Security Life issued the lifetime Annuity, which specified that Plaintiff would
  receive monthly payments of $1,450.45 each, increasing 3% annually, commencing June
  6, 1983, for a period of 20 years certain and life thereafter.    See Mensie Dep. at ex. 11.

- Metropolitan Life subsequently attempted to unilaterally change the terms of the Annuity,
  but Kemper refused to agree to this.    See Fasman Dep. at ex. 3, 4, 5, 6, 7 and 8.

- Kemper further took the affirmative step of advising Plaintiff of Charter Security Life's
  unilateral attempt to change the terms of the Annuity.    See Fasman Dep. at ex. 4, 5, 6, and
  7.[9]

---

[9] See also Mensie Dep. at 131:16-19, and at ex. 6 (in October 1983, after learning of Charter Security Life's
unilateral attempt to change the terms of the Annuity, Plaintiff's lawyer, Mr. Hughes, threatened to file a declaratory
action against Dean Witter and Charter Security Life).

In his Motion, Plaintiff suggests that Kemper was under an obligation to seek court "approval" of Charter Security Life's unilateral attempt to change the terms of the Annuity. See Plaintiff's Statement of Undisputed Facts at ¶¶ 44 and 45. This makes no sense, as a matter of fact or law. In fact, after complying with all of its obligations under the settlement agreement, Kemper rejected Charter Security Life's unilateral attempt to change the terms of the Annuity, and even advised Plaintiff of Charter Security Life's attempt. In addition, and not surprisingly, Plaintiff cites no legal authority that supports his suggestion that Kemper had a "duty" to somehow seek court approval of Charter Security Life's rejected unilateral attempt to change the terms of the Annuity.[10]

In light of these facts, it is beyond cavil that Plaintiff's claim against Kemper for breach of contract is simply unsupportable.

## IV.    CONCLUSION

For the foregoing reasons, Kemper respectfully requests that this Court deny Plaintiff's motion for summary judgment, and grant Kemper's motion for summary judgment.

Respectfully submitted,

KEMPER INSURANCE COMPANY

by its attorneys,

            /s/ Kevin L. Golden
DRINKER BIDDLE & REATH LLP

---

[10] At page 18 of his Motion, Plaintiff appears to cite to Warner v. Rossignol, 513 F.2d 678 (1st Cir. 1975) in purported support of this argument; Warner, however, does not avail Plaintiff. In Warner, after the plaintiff and defendant had entered into an oral settlement agreement, the plaintiff sought to rescind, and argued that he was free to revoke the settlement. See Warner, 513 F.2d at 680-82. The Warner court rejected the plaintiff's argument as to this point, observing that the parties' lawyers must "make every reasonable effort to carry [a settlement agreement] though to a successful conclusion." Id. at 682. Warner is wholly inapposite here, where Kemper indisputably complied with all of its obligations under the settlement agreement.

Timothy O'Driscoll (Admitted Pro Hac Vice)
Kevin L. Golden (Admitted Pro Hac Vice)
DRINKER BIDDLE & REATH LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103-6996
(215) 988-2700

<u>Local Counsel</u>
Kevin S. Murphy (BBO #638335)
Anthony B. Fioravanti (BBO #662843)
YURKO SALVESEN & REMZ, P.C.
One Washington Mall, 11th Floor
Boston, MA 02108-2603
(617) 723-6900

Dated: February 5, 2007

**<u>Certification of Service</u>**

I hereby certify that a true and accurate copy of the foregoing document was filed via the ECF system and will be served electronically through that system upon Counsel of Record on February 5, 2007.

<u>        /s/ Kevin L. Golden        </u>
Kevin L. Golden