**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| DENNIS DIMON                    ) | |
|      Plaintiff                    ) | |
|                         ) | |
|      v.                    ) | Civil Action No. 05-11073-NG |
|                         ) | |
| METROPOLITAN LIFE                    ) | |
| INSURANCE COMPANY, KEMPER            ) | |
| INSURANCE COMPANY,                   ) | |
| MORGAN STANLEY DW, INC.,             ) | |
| MICHAEL B. LATTI, LATTI              ) | |
| ASSOCIATES, LATTI & ANDERSON         ) | |
| LLP,                                 ) | |
|      Defendants                    ) | |
|                         ) | |

**SUPPLEMENTAL BRIEF**
**IN SUPPORT OF DEFENDANT KEMPER INSURANCE COMPANY'S**
**MOTION FOR SUMMARY JUDGMENT**

## I.    INTRODUCTION

Kemper files this supplemental brief in support of its motion for summary judgment and as directed by the Court in its Order entered on September 26, 2007 (the "Order").

In the Order, the Court granted the motions of Kemper and MetLife as to Plaintiff's negligent misrepresentation counts, and directed that "[f]urther briefing is required on the following legal issues: (1) what Kemper's responsibilities to Dimon were under the original contract between Kemper (then Charter Security) [sic][1] and The Jenny C. Co., and (2) whether those responsibilities were entirely discharged by the issuing of the $175,000 check. In evaluating this claim, the parties should consider the appropriate choice of law, the nature of the

---

[1] Kemper and Charter Security were never affiliated with each other in any way. It is <u>MetLife</u> that was formerly known as Charter Security.

contractual relationships between Kemper and The Jenny C. Co. and between Kemper and MetLife, and whether Dimon is most appropriately characterized as a third party beneficiary of the Kemper-MetLife contract." See Order.

The Court denied MetLife's motion as to Plaintiff's contract count, pending further briefing, stating that "[b]ecause the claim against MetLife is arguably characterized as a claim of anticipatory breach under the law of Rhode Island or New York, Dimon was not required to file suit until after an actual breach had occurred.  Further briefing is required on this issue ('anticipatory breach') as well as the choice of law question on the contract issue, whether Rhode Island or New York under the same schedule as above." Id.  The Court also denied Kemper's motion as to Plaintiff's contract count, pending further briefing, "for the reasons described above." See id.

As set forth below by way of Kemper's responses to the Court's queries, Kemper is plainly entitled to summary judgment on Plaintiff's breach of contract claim against it, for two separate and independent reasons:  (1) by paying the $175,000 premium and obtaining the lifetime Annuity, Kemper indisputably complied with its obligations as The Jenny C.'s excess insurer; and (2) on statute of limitations grounds, because any alleged breach of contract by Kemper could only have occurred in 1983.

## II.    FACTS[2]

### A.    Settlement Of The Underlying Personal Injury Action.

In January 1981, Plaintiff was injured while serving as a crew member of The Jenny C. Inc. ("The Jenny C."). See Compl. at ¶ 10. Plaintiff subsequently commenced the Underlying Action. See Guardian Hrg. The Underlying Action ultimately proceeded to trial, where Plaintiff was awarded a verdict in the amount of $710,000. See Compl. at ¶ 11.

Following the verdict in the Underlying Action, Plaintiff's lawyers agreed to a settlement of the Underlying Action with The Jenny C., Home Insurance Company (which was The Jenny C.'s primary insurer), and Kemper (which was The Jenny C.'s excess insurer). See Guardian Hrg. at 1:20-23, 9:3-14; Mensie Dep. at ex. 5. The terms of the settlement were negotiated with Plaintiff's lawyers in April, 1983. See Guardian Hrg. at 7:11-8:14, 13:14-14:20, 16:19-23; Mensie Dep. at ex. 5. The settlement agreement provided that the primary insurer and Kemper would pay to Plaintiff a lump sum in the amount of $250,000. See Guardian Hrg. at 6:19-20; Mensie Dep. at ex. 5. The settlement agreement further provided, upon Plaintiff's lawyers' insistence, that Kemper (as The Jenny C.'s excess insurer) would pay an additional lump sum in the amount of $175,000 so that Plaintiff's lawyers could purchase an annuity to fund a stream of future periodic payments for Plaintiff. See Guardian Hrg. at 7:20-8:4; Mensie Dep. at 79:18-80:11 and at ex. 5.

Specifically, Plaintiff's lawyers advised that they were able to purchase, for a premium of $175,000, an annuity that would pay out a stream of periodic payments as follows: $1,450 per

---

[2] In this section , Kemper endeavors to set forth only those facts that are most pertinent to the issues identified by the Court in the Order. For the sake of brevity, Kemper incorporates herein, by reference only, the entire "Facts" section of Kemper's memorandum of law in support of its motion for summary judgment, including the short-cites indicated therein and exhibits attached thereto.

month for life, with a 3 % increase compounded annually, and 20 years certain. See Guardian Hrg. at 6:20-23, 7:23-8:4, Mensie Dep. at ex. 5. Plaintiff's lawyers stated that they had obtained this annuity quote from Charter Security (which is now known as MetLife). See Latti Dep. at 71:2-11; Mensie Dep. at ex. 6. Specifically, on April 8, 1983, Charter Security had prepared a proposal of a "life annuity 20 year certain" that provided for "$1,450.45 per month for the first year [to] increase 3% per year[.]" See Latti Dep. at ex. 3, p. 3.

On or about April 19, 1983, Plaintiff signed a "General Release" memorializing the terms of the settlement. See Mensie Dep. at 220:13-221-9, and at ex. 10. The only parties to the General Release were Plaintiff and The Jenny C. See Mensie Dep. at ex. 10. The General Release provided that Plaintiff would release The Jenny C. in consideration of the payment of $250,000, and "the establishment of a fully paid annuity contract for [Plaintiff's] benefit with Charter [Security] Life Insurance Company to pay [Plaintiff] One Thousand Four Hundred Fifty and No/100 ($1,450.00) Dollars per month for one year following the execution of that contract and thereafter, such monthly sum increased at the rate of three (3%) percent per year, compounded annually, to be paid to [Plaintiff] during the term of [Plaintiff's] life, and in no event for less than twenty (20) years, the receipt whereof is hereby acknowledged...." Id. at ex. 10. Plaintiff's lawyers prepared a "settlement sheet" that provided, inter alia, that the cost of the annuity was $175,000. See Latti Dep. at ex. 1.

On May 3, 1983, Plaintiff's guardian ad litem, Mr. DeCof, appeared before the court in the Underlying Action in order to testify as to the background and terms of the settlement. See Guardian Hrg. at 1:1, 1:6-7, 1:15-2:12, 6:19-23, 7:21-8:25, 13:16-18, 14:2-15:9, 16:19-23. Mr. DeCof testified that the settlement provided, at the insistence of Plaintiff's lawyers, that the

defendants would pay Plaintiff's lawyers the sum of $175,000 so that Plaintiff's lawyers could purchase an annuity of their choice. Id. at 7:11-8:20.

**B.      The Purchase And Issuance Of The Lifetime Annuity.**

On or about May 4, 1983, an annuity application from Charter Security was signed by Kemper; the annuity application required an annuity premium in the amount of $175,000. See Mensie Dep. at ex. 2. As payment for the annuity premium and in settlement of the Underlying Action, Kemper issued the Settlement Check, made payable to Charter Security in the amount of $175,000, and Kemper's counsel delivered the Settlement Check to Plaintiff's lawyer. See the Settlement Check; May 3, 1983 Correspondence.

Charter Security accepted the annuity premium, and on or about June 17, 1983, Charter Security signed, issued, and delivered the lifetime Annuity. See Mensie Dep. at ex. 11. The Annuity provides that the "Single Premium payment for this contract was paid in advance." Id. at ex. 11, p. 5. As the annuity issuer, Charter Security became obligated to make the Annuity payments to Plaintiff (i.e., the annuitant). Id. at ex. 11, pp. 1, 5. The Annuity expressly provides that it is a "Lifetime Annuity" and that "[Charter Security] will pay a lifetime monthly income to the Annuitant if living on the Annuity Date." Id. at ex. 11, p. 1 (emphasis added). The lifetime Annuity also included a "Supplementary Agreement" further specifying that Charter Security would pay make monthly payments to Plaintiff in the amount of "$1,450.45 each, increasing 3% annually, commencing June 6, 1983, for a period of 240 months certain and life thereafter." Id. at ex. 11, Supplementary Agreement (emphasis added).

After paying the premium in May 1983, Kemper had no further contractual obligations to fulfill in connection with the lifetime Annuity. See id. at ex. 11. Indeed, under the terms of the lifetime Annuity, the only material obligation to be fulfilled after 1983 was Charter Security's

obligation to make the required lifetime monthly payments to Plaintiff.  See id. at ex. 11.

Beginning on or about June 6, 1983, Charter Security began making monthly payments in

accordance with the terms of the lifetime Annuity.

### C.      Charter Security Life's Subsequent Attempt To Change The Terms Of The Lifetime Annuity.

On July 14, 1983 - after Charter Security had issued the lifetime Annuity and had begun

making payments to Plaintiff in accordance therewith – Barbara Boehm of Charter Security sent

correspondence to Kurt Snyder of Dean Witter (which was Plaintiff's lawyers' broker), claiming

that "due to a clerical error the option indicated on the above supplementary contract for

[Plaintiff] was incorrectly typed as 240 months certain and life thereafter instead of 240 months

only.  Enclosed is a new contract...."  See Fasman Dep. at ex. 3.  Mr. Snyder forwarded a copy

of this correspondence to John Noe of Kemper, and on August 12, 1983, by correspondence to

Robert Foley of Dean Witter, Mr. Noe refused Charter Security's attempt to alter the terms of the

lifetime Annuity.  See Fasman Dep. at ex. 4.  Mr. Noe sent copies of his correspondence to

Plaintiff's lawyer and to Ms. Boehm at Charter Security.  Id.

On September 26, 1983, Robert Ligouri of Charter Security sent correspondence to Mr.

Noe, again seeking to alter the terms of the lifetime Annuity.  See Fasman Dep. at ex. 5.

However, on October 10, 1983, Mr. Noe replied to Mr. Ligouri, and again refused to alter the

terms of the lifetime Annuity.  See Fasman Dep. at ex. 6.  Mr. Noe also sent a copy of his

correspondence to Plaintiff's lawyer.  Id.

On October 14, 1983, Ms. Boehm sent correspondence to Mr. Noe again attempting to

alter the terms of the lifetime Annuity.  See Fasman Dep. at Ex. 8.[3]  By reply correspondence,

---

[3] It is noted that Charter Security did not attempt to return any premium to Plaintiff's lawyers, Kemper, or any other party.

Mr. Noe again refused to change the terms of the Annuity. See Fasman Dep. ex. at 7. Mr. Noe also sent a copy of his correspondence to Plaintiff's lawyer. Id.

**D.      Events Occurring Post-1983.**

Kemper did not receive any communications from Plaintiff, Plaintiff's lawyers, Charter Security, or any other person or entity, relating to the lifetime Annuity, from October 1983 until the filing of this lawsuit on May 23, 2005.   This is not surprising, since Kemper had no contractual obligations to fulfill in connection with the lifetime Annuity after 1983. See Mensie Dep. at ex. 11.

After having made monthly payments to Plaintiff under the lifetime Annuity every month for twenty years, MetLife stopped making the lifetime Annuity payments on May 5, 2003. See Fasman Dep. at ex. 20.

**III.    LEGAL ARGUMENT**

**A.      Choice of Law.**

In the Order, the Court states that "[f]urther briefing is required on...the choice of law question on the contract issue, whether Rhode Island or New York...." See Order.[4]

In determining which state's laws applies, the question is resolved by using the choice of law analysis of the forum state. The Travelers Indem. Co. of Illinois v. Wolverine Corp., No. 03-10164, 2005 U.S. Dist. LEXIS 31651, at *2 (D. Mass. Dec. 8, 2005) (citing Reicher v. Berkshire Life Ins. Co. of Am., 360 F.3d 1, 4 (1st Cir. 2004)). Absent a contractual choice of law

---

[4] Kemper cited the law of both New York and Massachusetts in its motion for summary judgment. However, based upon the language in the Order, it appears that the Court has decided that the law of either New York or Rhode Island, and not the law of Massachusetts, applies to this action. Therefore, in accordance with the Court's directive, and without waiving any argument that the law of Massachusetts applies, Kemper will limit its choice of law discussion herein to the application of either New York or Rhode Island law.

provision, "Massachusetts' choice-of-law framework requires consideration of several factors in order to determine the appropriate forum state." Id. (citing Reicher, 360 F.3d at 4-6).

The first step in a choice of law analysis is to determine whether an actual conflict actually exists between the laws of the interested jurisdictions. Reicher, 360 F.3d at 4 (citing Millipore Corp. v. Travelers Indem. Co., 115 F.3d 21, 29 (1st Cir. 1997)). Assuming a conflict exists, Massachusetts courts consider a "variety of factors" in order to determine which state has a more "significant relationship" to the case. The Travelers Indemnity Co., 2005 U.S. Dist. LEXIS 31651, at * 4 (citing Reicher, F.3d at 5). The Massachusetts Supreme Court has stated that it "feels free...to borrow from any of the various lists to help focus...attention on the considerations particularly relevant to the case." Reicher, 360 F.3d at 5 (citations omitted).

In this case, it is submitted that New York law applies. Plaintiff's breach of contract claims against Kemper and MetLife presumably are premised on the argument that Plaintiff is a third party beneficiary of the lifetime Annuity, since Plaintiff himself did not have a contract with either Kemper or MetLife. MetLife (then known as Charter Security) was the issuer of the lifetime Annuity, and therefore the entity that was responsible for making the lifetime Annuity payments and for ceasing to make the lifetime Annuity payments. Because MetLife is located in New York, it is submitted that New York has the most significant relationship to the case, and that New York law therefore governs this action.

Nevertheless, Kemper also will address herein the relevant provisions of Rhode Island law. It is submitted that under the law of any potentially relevant jurisdiction, Kemper would be entitled to summary judgment.

**B.**    **Plaintiff Cannot Establish The Requisite Elements Of His Breach of Contract Claim Against Kemper.**[5]

In the Order, the Court states that further briefing is required on the issues of "(1) what Kemper's responsibilities to Dimon were under the original contract between Kemper (then Charter Security) [sic][6] and The Jenny C. Co., and (2) whether those responsibilities were entirely discharged by the issuing of the $175,000 check. In evaluating this claim, the parties should consider the appropriate choice of law, the nature of the contractual relationships between Kemper and The Jenny C. Co. and between Kemper and MetLife, and whether Dimon is most appropriately characterized as a third party beneficiary of the Kemper-MetLife contract." See Order.

Kemper was The Jenny C.'s excess insurer, and as such, owed its contractual responsibilities to its insured, The Jenny C. Kemper owed no contractual responsibilities to Plaintiff. Moreover, and in any event, it has never been and cannot be disputed that Kemper fully discharged its contractual responsibilities in connection with the settlement of the Underlying Action.

As the excess carrier for The Jenny C., Kemper (along with Home Insurance Company, The Jenny C.'s primary insurer) was obligated to indemnify The Jenny C. against losses incurred

---

[5] Under New York law, the essential elements of breach of contract claim are as follows: "(1) the formation of an agreement by an offer, acceptance, and consideration; (2) performance by one party; (3) breach of the agreement by the other party; and (4) damages." Constructive Hands, Inc. v. Baker, 446 F. Supp. 2d 88, 93 (N.D.N.Y. 2006) (citations omitted). Similarly, under Rhode Island law, Plaintiff must establish the following elements in order to recover on a breach of contract claim: (1) plaintiff must prove, by a fair preponderance of the evidence, that he complied with his portion of the contract; and, (2) that the defendant wrongfully breached the contract. Baris v. Steinlage, No. 99-1302, 2003 R.I. Super. LEXIS 154, at *15 (Super. Ct. R.I. Dec. 12, 2003) (citing Del Farno v. Aetna Cas. & Sur. Co., 673 A.2d. 71, 72, (R.I. 1996)). Regardless of whether New York law or Rhode Island law applies, Plaintiff's breach of contract claim against Kemper fails as a matter of law, for the reasons set forth below.

[6] As noted in footnote 1, supra, Kemper and Charter Security were never affiliated with each other in any way. It is MetLife that was formerly known as Charter Security.

as a result of the Underlying Action. Following the verdict in the Underlying Action, Plaintiff's lawyers agreed to a settlement of the Underlying Action with The Jenny C., Home Insurance Company, and Kemper. See Guardian Hrg. at 1:20-23, 9:3-14; Mensie Dep. at ex. 5. During settlement negotiations, Plaintiff's lawyers stated that they had secured from Charter Security a $175,000 premium quote for an annuity that would provide monthly payments in the amount of $1,450.45 each, increasing 3% annually, for a period of 20 years certain and life thereafter. See Mensie Dep. at 132:24-133:18, 195:18-20, 199:9-14, and at ex. 5 and 6. Specifically, on April 8, 1983, Charter Security had prepared a proposal of a "life annuity 20 year certain" that provided for "$1,450.45 per month for the first year [to] increase 3% per year[.]" See Latti Dep. at ex. 3, p. 3. As part of the settlement agreement, Plaintiff's lawyers insisted that Kemper pay them a lump sum in the amount of $175,000 so that Plaintiff's lawyers could obtain this annuity from Charter Security. See Guardian Hrg. at 7:11-8:20; Mensie Dep. at 80:4-8, 124:23-135:10, and at ex. 5.

In fulfillment of its obligations, Kemper completed Charter Security's annuity application, issued the Settlement Check in the amount of the $175,000 annuity premium, and delivered the Settlement Check to Plaintiff's lawyer. See Mensie Dep. at 258:14-20, and at ex. 2; Settlement Check; May 3, 1983 Correspondence. Charter Security accepted the annuity premium, and on or about June 17, 1983, Charter Security signed, issued, and delivered the lifetime Annuity. See Mensie Dep. at ex. 11. The lifetime Annuity expressly provided that Charter Security would make monthly payments to Plaintiff in the amount of $1,450.45 each, increasing 3% annually, commencing June 6, 1983, for a period of 20 years certain and life thereafter. See Mensie Dep. at ex. 11, p. 1 and Supplementary Agreement. Charter Security began making monthly payments in accordance with the lifetime Annuity.

Thus, Kemper indeed discharged its contractual responsibilities by paying the $175,000 premium to Charter Security. Charter Security accepted the premium, and issued and delivered the lifetime Annuity on the terms agreed upon between Charter Security and Plaintiff's lawyers. Charter Security began making monthly payments to Plaintiff in accordance with the lifetime Annuity. The lifetime Annuity having been established, Kemper had completely discharged its contractual responsibilities in connection with the Underlying Action.

After Charter Security had issued the lifetime Annuity and began making payments in accordance with its terms, Charter Security attempted to unilaterally change the terms of the lifetime Annuity. See Fasman Dep. at ex. 3, 5, and 8. However, Kemper refused to agree to any change in the terms of the lifetime Annuity, and even advised Plaintiff of Charter Security's attempts. See Fasman Dep. at ex. 4, 5, 6, and 7.[7]

The Court has asked the parties to consider whether Plaintiff "is most appropriately characterized as a third party beneficiary of the Kemper-MetLife contract." See Order. Plaintiff's breach of contract claims against both Kemper and MetLife would appear to presuppose that Plaintiff is a third party beneficiary of the lifetime Annuity, since Plaintiff did not have a contract with either Kemper or MetLife. Therefore, assuming for the sake of argument that Plaintiff is properly characterized as a third party beneficiary of the lifetime Annuity under the circumstances, such third party beneficiary status would permit Plaintiff to maintain a cause of action only if Plaintiff also could establish the elements of a breach of contract claim (and if his claim were not time-barred).

---

[7] See also Mensie Dep. at 131:16-19, and at ex. 6 (in October 1983, after learning of Charter Security's unilateral attempt to change the terms of the lifetime Annuity, Plaintiff's lawyer threatened to file a declaratory action against Dean Witter and Charter Security).

Here, Plaintiff cannot establish the elements of a breach of contract claim against Kemper, because Kemper did not breach the lifetime Annuity in any way. After paying the premium to establish the lifetime Annuity in 1983 (and, of course, refusing Charter Security's subsequent attempt to alter the terms of the lifetime Annuity), Kemper had no further obligations in connection with the lifetime Annuity; indeed, under the terms of the lifetime Annuity, the only material obligation to be fulfilled after 1983 was Charter Security's obligation to make the required lifetime monthly payments to Plaintiff.

For these reasons, Plaintiff's breach of contract claim against Kemper is unsupportable.

**C.      Plaintiff's Breach of Contract Claim Against Kemper Is Time-Barred.**

Under New York law, the statute of limitations for a breach of contract claim is six years from the date of breach. See N.Y. C.P.L.R. 213(2) (2006); see also Sitkiewicz v. County of Sullivan, 681 N.Y.S.2d 677, 678 (N.Y. App. Div. 1998) (citations omitted). The statute of limitations begins to run at the time of the breach, even if damages do not occur until later. Ely-Cruikshank Co., Inc. v. Bank of Montreal, 615 N.E.2d 985, 986 (N.Y. Ct. App. 1993) (citations omitted).

The last time that Kemper had any involvement with Plaintiff's lawyers, or any other person or entity, relating to the Underlying Action or the lifetime Annuity, was in 1983. Therefore, even assuming – all facts and law to the contrary – that Kemper breached a contract with Plaintiff, any such breach necessarily could have occurred no later than 1983. See St. George Hotel Assocs. v. Shurkin, 786 N.Y.S.2d 56 (N.Y. App. Div. 2004) (ruling that breach of contract action accrued at time of insurance policy's procurement and issuance not when damages allegedly occurred and was therefore barred by statute of limitations).

After fulfilling its contractual duty by establishing the lifetime Annuity in 1983 (and, of course, refusing Charter Security's subsequent attempt to alter the terms of the lifetime Annuity), Kemper had no further obligations in connection with the lifetime Annuity, and in fact did not receive any communications relating to the lifetime Annuity until this lawsuit was filed 22 years later. Indeed, under the terms of the lifetime Annuity, the only material obligation to be fulfilled after 1983 was Charter Security's obligation to make the required lifetime monthly payments to Plaintiff.

In the Order, the Court raises the issue of "anticipatory breach," stating that "[b]ecause the claim against MetLife is arguably characterized as a claim of anticipatory breach under the law of Rhode Island or New York, Dimon was not required to file suit until after an actual breach had occurred." See Order. With respect to the question of anticipatory breach, it is noted that Plaintiff's own Expert Report opines that Charter Security's actual breach of contract occurred in 1983.[8] Nevertheless, it is possible that MetLife's (then Charter Security's) attempt to alter the terms of the lifetime Annuity in 1983 could be considered an anticipatory breach, and that MetLife's cessation of payments in 2003 could be considered the actual breach. The resolution of this issue, however, has no bearing whatsoever on the question of when Kemper's alleged breach occurred. Kemper's only obligation in connection with the lifetime Annuity was to pay the premium to establish the lifetime Annuity in 1983. Kemper in fact paid the premium, Charter Security issued and delivered the lifetime Annuity, and Charter Security began making monthly payments in accordance therewith. Kemper had no other obligations in connection with the lifetime Annuity after 1983. If Kemper somehow breached the lifetime Annuity – and

---

[8] See Plaintiff's Expert Report at p. 6. Significantly, Plaintiff's Expert Report does not allege any wrongdoing whatsoever on the part of Kemper. See id. at pp. 1-6.

Plaintiff has never offered any facts to suggest that Kemper did so – such alleged breach could only have occurred in 1983.

Indeed, Plaintiff <u>admits</u> that his alleged cause of action against Kemper accrued in April 1983 (although Plaintiff does not – and cannot - specify what actions constituted this alleged breach).  <u>See</u> Plaintiff's motion for summary judgment at p. 17.

Because Plaintiff commenced this action on May 23, 2005 – more than twenty-two years after his alleged cause of action accrued against Kemper – Plaintiff's breach of contract claim is clearly barred by New York's six-year statute of limitations applicable to breach of contract claims.[9]

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Kemper respectfully requests that this Court grant Kemper's motion for summary judgment on Plaintiff's breach of contract claim against it.

Respectfully submitted,

KEMPER INSURANCE COMPANY

by its attorneys,

_____/s/ Kevin L. Golden_____
DRINKER BIDDLE & REATH LLP
Timothy O'Driscoll (Admitted Pro Hac Vice)
Kevin L. Golden (Admitted Pro Hac Vice)
DRINKER BIDDLE & REATH LLP
One Logan Square
18th & Cherry Streets

---

[9] Similarly, under Rhode Island law, the statute of limitations for a breach of contract claim is ten years.  <u>See</u> R.I. Gen. Laws Section 9-1-13 (2006); <u>see also</u> <u>Desjarlais v. USAA Ins. Co.</u>, 824 A.2d 1272, 1276 (R.I. 2003) (discussing statute of limitations for breach of contract claim).  Therefore, assuming Rhode Island law governed this action, Plaintiff's breach of contract claim still would be barred by the applicable statute of limitations, for the reasons set forth above.

Philadelphia, PA 19103-6996
(215) 988-2700

<u>Local Counsel</u>
Kevin S. Murphy (BBO #638335)
Anthony B. Fioravanti (BBO #662843)
YURKO SALVESEN & REMZ, P.C.
One Washington Mall, 11th Floor
Boston, MA 02108-2603
(617) 723-6900

Dated: October 15, 2007

## Certification of Service

I hereby certify that a true and accurate copy of the foregoing document was filed via the ECF system and will be served electronically through that system upon Counsel of Record on October 15, 2007.

/s/ Kevin L. Golden
Kevin L. Golden