# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| **DENNIS DIMON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **VS.** ) | |
| ) | **C. A. No: 05-11073-NG** |
| **METROPOLITAN LIFE** ) | |
| **INSURANCE COMPANY, KEMPER** ) | |
| **INSURANCE COMPANY,** ) | |
| **MORGAN STANLEY DW, INC.,** ) | |
| **MICHAEL B. LATTI, LATTI** ) | |
| **ASSOCIATES, and LATTI &** ) | |
| **ANDERSON LLP,** ) | |
| ) | |
| **Defendants.** ) | |

### SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANT METROPOLITAN LIFE INSURANCE COMPANY'S
### MOTION FOR SUMMARY JUDGMENT

### REQUEST FOR ORAL ARGUMENT

Pursuant to this Court's Order dated September 26, 2007, Defendant,

Metropolitan Life Insurance Company (hereinafter "MetLife"), hereby submits its

Supplemental Brief In Support of its Motion for Summary Judgment.

### 1.    MetLife Was Not a Party to the DIMON V. JENNY "C.", INC. Case

This Court's September 26, 2007 Order indicates a misunderstanding of the

relationship between Charter Security Life Insurance Company (hereinafter "Charter

Security"), and Kemper Insurance Company (hereinafter "Kemper").  Charter Security is

not a predecessor, or in any way related to Kemper.  Neither MetLife nor Charter

Security participated in the <u>Dimon v. Jenny "C.", Inc.</u> case, nor was either involved in the negotiations of the settlement of that case. There is no evidence that Charter Security knew, at the time the Annuity was issued, what the terms of the <u>Dimon v. Jenny "C.", Inc.</u> settlement were. After the settlement was reached, Charter Security was contracted with and provided a 20 year certain Annuity for the benefit of Dennis Dimon ("Mr. Dimon"). Charter Security is now MetLife.[1]

**2.    <u>Kemper's Responsibility to Jenny "C.", Inc.</u>**

Kemper was involved in the <u>Dimon v. Jenny "C.", Inc.</u> as the excess insurance carrier for the Jenny "C.", Inc., the owner of the fishing vessel Mr. Dimon was working on when he was injured in 1981. Home Insurance Company was the primary carrier of insurance for the Jenny "C.", Inc. As the excess insurer, it was Kemper's responsibility to ensure that the settlement reached by the parties to <u>Dimon v. Jenny "C.", Inc.</u> was effectuated.[2] As noted below, this responsibility may have included that Kemper obtain an Annuity for payment of monthly sums to Mr. Dimon for life, with a guaranty of 20 years. If it was Kemper's duty to secure a 20 year, plus life Annuity for Mr. Dimon, then Kemper did not meet its obligation to Mr. Dimon.

**3.    <u>Kemper's Responsibility Was Not Discharged</u>**

Kemper apparently failed in its duty to Dimon, and to Jenny "C.", Inc., when it failed to secure an Annuity that provided for monthly payments for 20 years certain, and for life thereafter. <u>The Annuity that was applied for and issued by Charter Security was for payments for 20 years certain, with no lifetime component.</u> Kemper knew in 1983 that the Annuity that was issued was for 20 years certain and that this was all the

---

[1] The names "Charter Security" and "MetLife" are used interchangeable herein.
[2] It is undisputed that Charter Security did not participate in the <u>Dimon v. Jenny "C.", Inc.</u> case, nor was it involved in the negotiations of the settlement of that case.

payments that Mr. Dimon would receive. Charter Security made it clear and unambiguous that a typographical error was made in the Annuity face sheet that was issued to Kemper and that Charter Security would honor its obligation to make payments for 20 years only. The 20 year product was exactly what Kemper applied for an paid for.

Charter Security and Kemper entered into a contract for monthly payments to Mr. Dimon for 20 years certain. The only notation regarding the payment terms of the Annuity on the Application submitted by Kemper to the broker at Dean Witter Reynolds was for 20 years certain. *See* Exhibit "A". Kemper's obligation to Mr. Dimon was not discharged by its payment of $175,000.00 for the Annuity from Charter Security. The Annuity was the vehicle that was chosen by the parties to Dimon v. Jenny "C.", Inc. to secure an income stream for Mr. Dimon because it was anticipated that he did not have the financial acumen to handle a large, lump sum payment. One of the goals of the settlement was to provide some financial security for Mr. Dimon over time, not just at the time of payment of the settlement proceeds. It should be noted that, at the time the Annuity was issued, Charter Security has no knowledge of the "20 year certain life thereafter" provision of the settlement discussed between the parties to Dimon v. Jenny "C.", Inc. action.

The nature of the contractual relationship between Kemper and MetLife was that Kemper applied for an immediate Annuity that provided for payments for 20 years certain only. Kemper was the applicant for the Annuity. Charter Security was the issuing company.

**4.      Third Party Beneficiary**

Dimon was a contracting party within the context of the Annuity in this case. He signed the Application as "Annuitant." It was intended that he receive the benefit of the monthly payments to secure his financial future.[3] It is MetLife's opinion that the facts of the this case do not raise issues of Mr. Dimon's status as a third party beneficiary of a contract to which he was a signing party.

**5.      Choice of Law**

MetLife asserts that there is no choice of law issue before the Court. Mr. Dimon signed the Annuity Application in Massachusetts and he filed his Complaint in Massachusetts, thus the forum state is Massachusetts. The law of Massachusetts has been applied to this action since the Complaint was filed. All discovery was conducted and all pleadings were filed pursuant to Massachusetts law. The Plaintiff has not asserted that the law of another jurisdiction applies to his claims. The Plaintiff chose this jurisdiction and no defendant objected to Plaintiff's choice of forum or choice of Massachusetts law. Further, Plaintiff has affirmatively stated that Massachusetts' law applies to this action. *See* Plaintiff's Motion for Summary Judgment and Supporting Memorandum of Law, at 10.

In the event that the Court determines that either the laws of New York or Rhode Island apply to this case, MetLife asserts that the remaining claim against it should be dismissed as the laws of those states would impose time limitations that render the remaining claim time-barred as against MetLife.

**A.      MASSACHUSETTS LAW CONTROLS THIS ACTION**

---

[3] The monthly payments were only one of the benefits of the contract, as Kemper also received benefits from the Annuity as it was a vehicle for meeting Kemper's obligation as the Jenny "C.", Inc.'s excess insurance insurer.

Massachusetts law dictates that the remaining claim against MetLife be dismissed on Summary Judgment as there are no remaining material questions of fact and MetLife is entitled to judgment as a matter of law.[4]

Pursuant to Massachusetts law, MetLife is entitled to Summary Judgment on Count X of the Plaintiff's Complaint, which Plaintiff denominated as a Breach of Contract claim, as the *gravamen* of this claim is an alleged misrepresentation. Massachusetts law is clear that it is the basis for the claim and not the label used by the party that dictates the Court's decision on the claim. *See* Grande v. PFL Life Ins. Co., 2000 Mass. App. Div. 261.

Additionally, MetLife completely fulfilled the terms of the Annuity as issued by making 240 monthly payments as required by the Annuity issued by Charter Security Life Insurance Company. As such, it met its obligations under the terms of the Annuity, as corrected in 1983, and owes nothing further to Mr. Dimon.

Allegations regarding misrepresentation regarding Annuities in Massachusetts are subject to the provisions of M.G.L. c. 175, §181 (hereinafter "§181"), in particular the two year limitations period. As MetLife is the only company that issued the Annuity, it is clear that only MetLife may avail itself of the Statute of Repose. None of the other Defendants are in the same position as MetLife: MetLife was not a party to and was not involved in the Dimon v. Jenny "C.", Inc. case; having made 240 monthly payments to Mr. Dimon, MetLife fulfilled its contractual obligations and has no remaining liability or duty to him; MetLife, as the "issuing" company of the annuity, is the only company entitled to the protection of §181's Statute of Repose, which provides an absolute bar to

---

[4] MetLife incorporates the facts and arguments in its Memorandum in Support of Its Motion for Summary Judgment as if set out fully herein.

any claims against MetLife after the two year limitation period; and MetLife is the only Defendant that did nothing wrong here. Kemper applied for and MetLife issued a 20 year annuity. Upon delivery of the 240th monthly payment, MetLife fully fulfilled its obligations under the Annuity and, as such, has no remaining duty to any party to this action.

Section 181 must apply as a Statute of Repose only to MetLife. The analysis requires only a determination of the date of issue and the date the Complaint was filed, neither of which is contested in this case. The Annuity was issued on May 5, 1983. *See* Metropolitan Life Insurance Company's L.R. 56.1 Statement Of Undisputed Material Facts In Support Of Its Motion For Summary Judgment at 3, ¶ 28; Plaintiff's Response to Defendant, Metropolitan Life Insurance Company's L.R. 56.1 Statement Of Undisputed Material Facts at 6, ¶ 28. Plaintiff filed his Complaint on May 23, 2005. Because Plaintiff did not bring his claim based upon misrepresentation within two years of the date of issue of the Annuity he claim is "abolished."

Even if §181 is applied as a Statute of Limitations, the result does not change. The only difference would be that, unlike Statutes of Repose, the running of the limitations period may be tolled. The Court's holding that "the receipt of the 1983 letters gave Dimon's lawyer's notice of the potential misrepresentation" resolves the issue of when Plaintiff knew of his potential claims. Under the theory that §181 is a Statute of Limitation Mr. Dimon was required to file his claim by 1985. It is undisputed that he did not file his claim by 1985, therefore his claim is time-barred.

Application of Massachusetts' law renders Count X time-barred and, as such, Summary Judgment should be granted to MetLife on this claim.

**B.** **IF NEW YORK LAW APPLIES TO THIS ACTION**

As noted above, MetLife asserts that there is no choice of law issue presented by the facts of this case.  If, however, the Court deems that New York law applies to this action, MetLife would still be entitled to Summary Judgment on Plaintiff's claim for Breach of Contract.  Although New York recognizes the doctrine of anticipatory breach, anticipatory breach is not applicable to the case at hand because actual breach of the alleged contract could not have occurred after October 1983.

Under New York laws, the Statute of Limitations for a Breach of Contract claim is six years from the date of the breach.  *See* N.Y. C.P.L.R. 213(2) (2006); *see also* Sitkiewicz v. County of Sullivan, 681 N.Y.S.2d 678 (N.Y. App. Div. 1998).  The statute of limitations begins to run at the time of the breach, even if damages do not occur until later.  Ely-Cruikshank Co., Inc. v. Bank of Montreal, 615 N.E.2d 985, 986 (N.Y. Ct. App. 1993).

It is undisputed that MetLife complied with the terms of the contract that it entered in 1983 for the payment of 240 monthly payments for the benefit of Mr. Dimon.  Therefore, even assuming – all facts and law to the contrary – that MetLife breached a contract with Plaintiff, any such breach would have occurred as the result of MetLife's alleged misrepresentations regarding the terms of the Annuity and such breach could not have occurred later than October 1983.[5]  *See* St. George Hotel Assocs. v. Shurkin, 786 N.Y.S 2d 56 (N.Y. App. Div. 2004) (breach of contract accrued at the time of insurance policy's procurement and issuance not when damages allegedly occurred, therefore, the Breach of Contract claim was barred by the Statute of Limitations.)  Because Plaintiff

---

[5] Plaintiff's own Expert Report asserts that the alleged breach of the Annuity occurred in 1983.

commenced this action twenty two years after the alleged breach, Plaintiff's Breach of

Contract claim is clearly barred by New York's six-year Statute of Limitations.

In New York, knowledge of the occurrence of the wrong on the part of the

plaintiff is not necessary to start the Statute of Limitations running in a contract action.

Ely-Cruikshank Co., 615 N.E.2d at 987.  Nevertheless, this Court's Order states that Mr.

Dimon's lawyers had knowledge of the alleged breach in 1983.  As Mr. Dimon's agents,

Mr. Dimon's lawyer's knowledge is imputed to Mr. Dimon.  Veal v. Geraci, 23 F.3d 722,

725 (2nd Cir. 1994).  Therefore, tolling of the limitations period is not applicable to the

facts at hand.

### C.    IF RHODE ISLAND LAW APPLIES TO THIS ACTION

Rhode Island recognizes the doctrine of anticipatory breach as well.  *See* Winegar

v. Earle, 276 A.2d 468 (RI 1971).  The Annuity in question is a bilateral contract that

Plaintiff alleges was for "20 years certain, plus life thereafter."  A bilateral contract

requires performance by each party.  The performance owed by Dimon, based upon his

assertion that he was entitled to "life thereafter" benefits was to live longer then 240

months (e.g. 20 years).  There is no dispute that MetLife met the obligation to pay

monthly payments for 20 years.  Plaintiff asserts that MetLife was obligated to provide

him the benefit of payments for life, such payments to commence in June, 2003 on the

condition that Mr. Dimon was alive at that time.  His remaining performance under the

bilateral contract was to live until at least June, 2003 as a condition for his alleged

lifetime benefit to become activated.

> Except in the cases of a contract originally unilateral and not
> conditional on some future performance by the promisee, and of a
> contract originally bilateral that has become unilateral and
> similarly unconditional by full performance by one party, any of

the following acts, done without justification by a promisor in a contract before he has committed a breach under the rules stated in §§ 314-315, constitutes an anticipatory repudiation which is a total breach of contract: [ ]

(a) a positive statement to the promisee or other person having a right under [***8] the contract, indicating that the promisor will not or cannot substantially perform his contractual duties;

(b) [ ];

(c) any voluntary affirmative act which renders substantial performance of his contractual duties impossible, or apparently impossible.

Id. at 468-469. (*Emphasis added*)

The letters exchanged in 1983, particularly those from Charter Security, were "positive statements" to Dimon that Charter Security would not substantially perform what Dimon alleges were Charter Securities' contractual duties. Pursuant to R.I. Gen. Laws § 9-1-13(a) Dimon had 10 years from 1983 to bring his claim for Breach of Contract under Rhode Island law. He did not bring his claim by 1993, therefore his claim is barred under Rhode Island law.

## CONCLUSION

For the foregoing reasons, the Court should apply Massachusetts law to Mr. Dimon's Breach of Contract claim. Under Massachusetts law, the basis for the claim, as opposed to the label used by the Plaintiff, is controlling. The basis for Mr. Dimon's claim is an alleged misrepresentation as to the terms of the Annuity. MetLife respectfully requests that the Court grant Summary Judgment in favor of MetLife on Court X of Plaintiff's Complaint as it is time-barred pursuant to §181.

Alternatively, MetLife requests that the Court grant Summary Judgment to MetLife because, under the law of New York the alleges breach occurred in 1983 and, therefore, Plaintiff's claim is time-barred by New York's six year Statute of Limitations.  Further, under Rhode Island law the application of the doctrine of anticipatory breach mandates that Mr. Dimon's Breach of Contract claim is time-barred because he did not file his claim within the limitations period.

Defendant,
Metropolitan Life Insurance Company
By its Attorneys,


_____/s/ Peter LeBlanc_____
James J. Ciapciak, BBO # 552328
Peter LeBlanc, BBO # 645305
CIAPCIAK & ASSOCIATES, P.C.
99 Access Road
Norwood, MA 02062
(781) 255-7401

## REQUEST FOR ORAL ARGUMENT

Pursuant to L.R. 7.1(D) counsel for MetLife respectfully requests that Court allow oral argument on the issues presented in the Supplemental Brief's ordered by the Court. Counsel believes that oral argument will assist the Court in making its determination on the remaining issues.

## CERTIFICATE OF SERVICE


I hereby certify that a true and accurate copy of the foregoing document was filed via the ECF system and will be served electronically through that system upon Counsel of Record on October 15, 2007.

_/s/ Peter LeBlanc_____
Peter LeBlanc

Black Ink

83A08153

CHARTER SECURITY LIFE INSURANCE COMPANY, NEW YORK , 720 FIFTH AVENUE, NEW YORK, N.Y. 10019

ANNUITY APPLICATION

Name of Annuitant (please print)    ☒ Male    ☐ Female

Dennis J. Dimon

Date and Place of Birth

12/9/59  So. Kingstown, RI

Residence (No., Street, City, State and Zip Code)

Laurel Lane, West Kingston, RI  02892

Business Address (Include Name of Employer)

Mail Notices to ☐ Residence    ☐ Business    ☐ Owner

Social Security No.    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

Owner (if other than Proposed Annuitant)

Name:  American Motorists Insurance Co.

Relationship:

Address:

Social Security Tax Payer I.D. No.  36-0727430

☐ Contingent Owner

Beneficiary and Relationship

Primary:    Katerine I. Dimon

Contingent:  Jessica I. Dimon - Daughter
             Rebecca Lee Dimon - Daughter

---

9. Type of Contract Single Premium Deferred Annuity

10. Single Premium Amount    $ 175,000.

11. Maturity Age    ☐ 65   ☐ 70½   ☒ Other: Immediate
    6/15/83

12. Will this annuity replace or change any existing life insurance or annuity contract? ☐ Yes   ☒ No
    (If yes, give name of company, policy number, and plan of life insurance or annuity.)

13. Is this contribution for a tax qualified plan? ☐ Yes   ☒ No
    If so, contract will be issued with a limitation on transferability to conform with IRS regulations. (Check appropriate box for type of qualified plan.)
    ☐ I.R.A. Rollover          ☐ Corporate pension
    ☐ T.S.A. Exchange             or profit sharing plan
    ☐ H.R. 10 Exchange         ☐ Terminal Funding
    ☐ H.R. 10                  ☐ Other

14. Special Requests    _Immediate Annuity_
    _20yr Certain - 3% increase_
    _$175,000 = 1450.45 per month_
    _first year_

15. Amendments and Corrections (For Home Office use only)

    _Quote Number S3113_

---

undersigned represent(s) to the best of his (her) knowledge belief, that the foregoing statements and answers are complete, true, and correctly recorded and agree(s) to be bound by statements and answers made or to be made in this application. The undersigned further expressly agree(s) as follows:
This application and any policy issued in consequence thereof shall constitute the entire contract. No agent is authorized to make or modify contracts, to waive any of the company's rights or requirements or to bind the Company by making or receiving any promise, representation or information, unless the same be in writing, submitted to the Company, and made a part of such policy.
2. Acceptance of any contract(s) issued on the basis of the application shall constitute a ratification and acceptance of any change, correction, addition or amendment noted by the "Company" in the "Amendments and Corrections" section above, except that in those jurisdictions where it is required any change in amount or benefits shall require a written consent by the Proposed Annuitant and by the Applicant if other than the Proposed Annuitant.

Dated at Syracuse NY this 4th day of May 1983

Agent Signature (1)                    621-61    Code

Please Print Name of Agent (1)

Agent Signature (2)                    Code

Please Print Name of Agent (2)

Signature of Annuitant  _Dennis J. Dimon_

Applicant if other than Annuitant  X _American M..._

By _____

Signature and Title

_Dean Witter Reynolds_
Please Print Name of General Agency