# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| DENNIS DIMON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| VS. ) | |
| ) | C. A. No: 05-11073-NG |
| METROPOLITAN LIFE ) | |
| INSURANCE COMPANY, KEMPER ) | |
| INSURANCE COMPANY, ) | |
| MORGAN STANLEY DW, INC., ) | |
| MICHAEL B. LATTI, LATTI ) | |
| ASSOCIATES, and LATTI & ) | |
| ANDERSON LLP, ) | |
| ) | |
| Defendants. ) | |

## LEAVE TO FILE GRANTED ON NOVEMBER 27, 2007

### DEFENDANT METROPOLITAN LIFE INSURANCE COMPANY'S SUR-REPLY TO KEMPER INSURANCE COMPANY'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant Metropolitan Life Insurance Company ("MetLife") hereby responds to Defendant Kemper Insurance Company ("Kemper")'s Supplemental Brief.[1]

---

[1] This Brief is submitted pursuant to two Orders entered by the Court. In the September 26, 2007 Order on Summary Judgment, the Court included the following request: "Further briefing is required on the following legal issues: (1) what Kemper's responsibilities to Dimon were under the original contract between Kemper (then Charter Security) and The Jenny C. Co., and (2) whether those responsibilities were entirely discharged by the issuing of the $175,000.00 check. In evaluating this claim, the parties should consider the appropriate choice of law, the nature of the contractual relationships between Kemper and The Jenny C. Co. and between Kemper and MetLife, and whether Dimon is most appropriately characterized as a third party beneficiary of the Kemper-MetLife contract." Plaintiff, Kemper and MetLife all provided Supplemental Briefs in support of their respective Summary Judgment Motions in response to the request. Kemper then filed a Response to MetLife's Supplemental Brief on October 31, 2007. Finally, on November 27, 2007, the Court entered an Order on MetLife's Motion for Reconsideration and included the following: "MetLife may file a sur-reply to Kemper's Supplemental Brief; should they choose to do so, it must be filed with the Court no later than 12/10/07." The time for filing was extended to 12/12/07.

The determination of liability in this case will require the Court to examine several events and transactions that occurred between different parties in multiple locations. The law of one jurisdiction may apply to one such occurrence, but may not be appropriate to another. There are three relationships involved in Plaintiff's claims: 1.) The General Release between Plaintiff Dimon and Jenny "C", Inc. that settled the original bodily injury claim; 2.) Kemper's insurance policy covering Jenny "C", Inc.; and 3.) the Annuity Kemper sought from MetLife, which appears to have been brokered in Massachusetts. This brief addresses each agreement *seriatim*. However, before turning to that analysis, MetLife notes that this Court already has indicated that Plaintiff's position as a Jones Act seaman does not control the standards this Court must apply in determining MetLife's duties to him (it is an open question whether the Jones Act applies to any of the Defendants who were parties to the original action.) MetLife's duty to Mr. Dimon arises <u>solely</u> as a result of the Annuity purchased by Kemper. MetLife played no part in Mr. Dimon's claim against the Jenny "C", Inc., was not a party to the Jenny "C", Inc. suit, and was not involved in the settlement negotiations or the General Release approved by the Rhode Island District Court. Therefore, the Court ought not focus on Dimon's status, or any alleged relationship to MetLife, but instead focus on Kemper's duties and responsibilities as to Dimon under its policy to its insured (Jenny "C"). Specifically: what were Kemper's duties as the insurer, did Kemper carry out its duties, and did Kemper absolve itself by the purchase of a twenty-year Annuity?

As set forth below, the Court need not reach these questions until it has determined the liability of Jenny "C", Inc. and Kemper.

---

Although this Brief is filed as a Sur-Reply to Kemper's Supplemental Brief, the arguments are equally relevant to Kemper's subsequent Response brief.

### A. Jenny "C", Inc. remains primarily liable under the General Release with Mr. Dimon.

Dimon entered into a General Release with Jenny "C", Inc. (Kemper's insured) that was approved by the United State District Court for the District of Rhode Island. Under the circumstances presented in the record below, Rhode Island law must be applied to interpret and enforce the settlement terms between Plaintiff and Kemper.

Under Rhode Island Law, a breach of a settlement agreement is enforceable in two ways. If the settlement agreement was made a part of the Court's disposition of the case and carries the force of an Order, the issuing Court may use its contempt power to enforce it. Bucci v. Anthony, 2004 R.I. Super, LEXIS 143, 9-10 (R.I. Super. Ct. 2004). There is some support for the argument that the Dimon v. Jenny "C", Inc. General Release was entered as a Court Order: Before approving settlement of the case, the Rhode Island District Court took the extraordinary precaution of appointing a Guardian *Ad Litem* to advise the Court as to the effect of the settlement on Mr. Dimon. Whether it was entered as a Court Order or not, it remains enforceable as a contract.

Rhode Island law provides that the limitations period on actions to enforce a contract like the Dimon v. Jenny "C", Inc. General Release is ten years. Rhode Island General Law § 9.1.13. If this Court holds that the Statute of Limitations on Mr. Dimon's contract claim did not begin to run until he was *personally* informed that the Annuity was for twenty years date certain (even though Plaintiff's attorney's and Kemper knew it was a twenty-year instrument from its inception), the limitations period for his claim against Jenny "C", Inc. and its insurer, Kemper, began on September 24, 1999, the date of MetLife's letter to Dimon confirming that he would receive "monthly payments until the final payment on 5/5/2003."

Kemper has argued that its duty with regard to providing Mr. Dimon a lifetime Annuity ended when it paid the purchase price of $175,000.00. However, the General Release approved by the Court in <u>Dimon v. Jenny "C", Inc.</u> contained no such <u>dollar limitation on Jenny "C"s liability or the liability of its insurer, Kemper</u>. Instead, it provided that it was Jenny "C", Inc.'s duty to establish:

> a fully paid annuity contract for [Dimon's] benefit with Charter Life Insurance Company, to pay [Dimon] One Thousand Four Hundred Fifty and No/100 ($1,450.00) Dollars per month for one year following the execution of that contract and thereafter, such monthly sum increase at the rate of three (3%) percent per year, compounded annually, to be paid to [him] during the term of [his] life, and in no event for less than twenty (20) years. . . .

Thus, the duty of Kemper as the insurer of the Jenny "C", Inc. to secure a lifetime Annuity <u>did not end with Kemper's payment of $175,000.00 to Charter for a twenty-year annuity.</u> Because Kemper's duty as insurer for Jenny "C", Inc. was to buy a twenty-year <u>plus life</u> Annuity, Kemper was not discharged by the payment of $175,000.00. Kemper's duty to indemnify Jenny "C", Inc. under the excess insurance policy likewise was never discharged.

> **B.    If Jenny "C", Inc. is liable to Dimon for breaching the General Release, Kemper, as Jenny "C", Inc.'s insurer, is contractually obligated to indemnify it.**

Kemper has argued that it has no liability in this matter because it allegedly discharged its duties and any liability to Dimon by paying the $175,000.00 to MetLife. Kemper has argued that its only obligation was to pay $175,000.00 toward the purchase of the Annuity and, having done that, it cannot be held liable in this case. <u>Yet the underlying settlement agreement says nothing about $175,000.00. It merely states that Jenny "C" will purchase a *lifetime* Annuity</u> for Dimon with twenty years certain. No where does the underlying General Release state that payment to Charter Life Insurance

- 4 -

Company, *regardless of what it purchased for that price*, will absolve Kemper or its insured from any liability. If Kemper had purchased a disability policy instead of an Annuity with its $175,000.00, would it have no liability to Dimon? No. Kemper's duty was to purchased a lifetime Annuity that was guaranteed for 20 years. It did not do so.

Jenny "C", Inc.'s excess insurance policy with Kemper obligated Kemper to discharge its duties under the General Release. That is, Kemper was obligated to obtain a *twenty-year plus life Annuity*, not just pay $175,000.00. Kemper was acting in accordance with this duty when it negotiated the terms of the General Release with Dimon. Further, Kemper admits in its pleadings that, as Jenny "C", Inc.'s excess insurer, it was <u>solely</u> responsible for funding the Annuity portion of the structured settlement. (<u>See</u>, Kemper's Statement of Undisputed Facts, paragraph 7.)

Kemper's arguments do not address its duties under the policy insuring Jenny "C", Inc., but instead focus on its duties under <u>the Annuity</u> it purchased from MetLife. Kemper asserts that Plaintiff's breach of contract claim against it is founded *only* upon Kemper's alleged breach of the Annuity contract it purchased, and has nothing to do with its obligations under the General Release to which it was a party. Such a reading of the Complaint is obtuse. Plaintiff's Complaint makes it clear that Kemper arranged for the Annuity contract as part of the General Release that was created to settle the case against Kemper's insured. There is no accusation in the Complaint that Kemper had any discretion with regard to the *performance* of the Annuity. Plaintiff's claims against Kemper's are based upon *Kemper's* failure to provide the Annuity that Plaintiff was entitled to, and the duty to provide the Annuity originated in the General Release and *Kemper's* insurance agreement with Jenny "C", Inc.

It is unnecessary for this Court to undergo a protracted comparison of the laws of different jurisdictions and their effect on the interpretation of Kemper's excess policy. Kemper has not identified a provision in its policy with Jenny "C", Inc. that would allow it to arbitrarily limit the amount it was obligated to pay towards the settlement to $175,000. Kemper's duty to indemnify its insured, Jenny "C", extends to the policy limits, and once those limits are exhausted, any unpaid amount remains the liability of the insured. Therefore, if Jenny "C", Inc.'s duty to provide a lifetime Annuity has not been discharged, Kemper must indemnify Jenny "C", Inc. for the cost of continuing the Annuity payments. Though it may have been Kemper's hope at that time of settlement that the Annuity could be purchased for only $175,000.00, <u>the terms of the General Release do not set forth this price and do not relieve the Jenny "C", Inc. of its duty to provide the Annuity if the cost exceeded $175,000.00.</u>

If the Court finds that Kemper or Jenny 'C", Inc. breached their duties to provide for the Annuity bargained for, and *then* finds that Kemper had a duty to indemnify Jenny "C", Inc. for the damages it must pay as a result of that breach, *<u>only then</u>* does the analysis turn to the issue of MetLife's alleged liability for alleged misrepresentations regarding the terms of the Annuity Contract. Those misrepresentation claims against MetLife <u>were already addressed by this Court</u> when it allowed MetLife's Motion for Summary Judgment on Plaintiff's claims for misrepresentation. Further, the gravamen of Plaintiff's breach of contract claim against MetLife ***is the alleged misrepresentations by MetLife to Kemper in 1983***. Pursuant to M.G.L. c. 175 § 181, any claims against MetLife are time barred by application of the two-year statute of repose and limitations

period.  (See MetLife's Memorandum of Law in Support of its Motion for Summary Judgment, pages 10-12.)

Plaintiff has attempted to fit a square peg into a round hole by recasting his misrepresentation claim against MetLife as a breach of contract claim.  As such, the onus is on Mr. Dimon to establish that MetLife and Kemper's miscommunications resulted in a binding contract.

> **C.   Because there was no "meeting of the minds" between MetLife and Kemper, equitable principals should be applied to reform the contract.**

The evidence shows that there was no meeting of the minds when Kemper purchased the subject Annuity from MetLife.  Kemper may have *intended* to purchase a lifetime annuity for Mr. Dimon at some point in time, but Kemper only submitted an application for a twenty-year date certain Annuity.  MetLife intended to issue an Annuity for twenty years date certain.  *Regardless of whether it applies the law of Rhode Island, Massachusetts or New York, this Court may use its equitable powers to reform the contract and prevent either party from being unjustly enriched.*

Here, MetLife was never involved in the litigation or settlement of Mr. Dimon's claims against Jenny "C", Inc[2]  Instead, the Annuity was brokered between two sophisticated insurance companies in an arm's-length transaction.  The nature of the transaction creates a multi-jurisdictional choice of law question.  The evidence shows that

---

[2] There is no evidence in the Summary Judgment record that MetLife was even aware that there was a case involving Mr. Dimon or that the Annuity that was purchased was part of a settlement of any legal controversy.  There is no evidence that MetLife was aware that the Annuity that was purchased (i.e. a 20 year certain Annuity) did not conform with the expectations of the settling parties in Dimon v. Jenny "C," Inc.  There is no fact supporting any assertion that, at the time that the Annuity was being negotiated and issued, MetLife knew the history of the Dimon v. Jenny "C," Inc. case or that the Annuity Kemper sought was intended to satisfy any legal obligations.

MetLife (Charter),[3] a New York Company, was contacted by a Massachusetts' broker, Dean Witter (now Morgan Stanley DW, Inc., "a brokerage company with a principal place of business in New York, New York, and regularly conduct[ing] business in the Commonwealth of Massachusetts" [See Plaintiff's Complaint at Paragraph 9, and Morgan Stanley's corresponding admission]).  Morgan Stanley contacted MetLife <u>on behalf of Kemper</u> ("an insurance company with a principal place of business in Long Grove, Illinois, which regularly conducts business in the Commonwealth of Massachusetts." [See Plaintiff's Complaint, Paragraph 8 and Kemper's corresponding admission.])  Regardless of the jurisdictional law that this Court may choose to apply, MetLife asserts that the result will be the same because this Court must use its equitable powers to reform the contract between MetLife and Kemper as there was no meeting of the minds.  MetLife believes that it has complied with the terms of the contract for which Kemper applied and paid for:  a 20 year certain Annuity (not a lifetime Annuity).

Kemper makes several assumptions that are not in the record regarding the facts presented to the Court on the Summary Judgment record.  It incorrectly attributes authorship of the Annuity proposal in an attempt to magnify MetLife's involvement in the <u>Dimon v. Jenny "C," Inc.</u> case.  Kemper wrongly asserts that "…Charter Security had prepared a proposal of a "life annuity 20 year certain"…." *See* <u>Kemper's Supplemental Brief</u> at 4.  It already has been established that the "proposal" referenced by Kemper was *not* prepared by MetLife's predecessor.  The document was written <u>on Dean Witter Reynolds' stationary</u>.  Dean Witter Reynolds (now Morgan Stanley) acted as the Plaintiff's lawyers' broker for the purchase of the Annuity in the <u>Dimon v. Jenny "C,"</u>

---

[3] For clarity sake, unless the context requires otherwise, MetLife shall be used herein when referring to Charter Security Life Insurance Company of New York ("Charter"), with the caveat that all references to MetLife's actions during the 1983 period would have been taken by Charter personnel.

Inc. settlement. *See* Kemper's Supplemental Brief at 6. Further, MetLife's predecessor company is "Charter Security Life Insurance Company, New York" not "Charter Security Life Insurance Company of *New Jersey*", which, according to undisputed testimony in this case, was a separate company in existence at that time. Kemper's allegation that MetLife prepared the proposal not only does not stand up to facts that have already been set on the record, it is a glaring misrepresentation of fact made to the Court.

After the proposal from an entirely different company comes the equally controversial Annuity application. Though it is alleged that the document had not been completely filled out at the time it was signed, it is clearly an application for a twenty-year Annuity. It is not difficult to comprehend what may have led to the ambiguities in these documents. Although Kemper purchased the Annuity, it was Mr. Dimon's counsel (Latti) who conducted the search for it. Latti, in turn, relied on Morgan Stanley, the most likely author of the erroneous proposal as well as the application to MetLife for a twenty-year Annuity. With so many people involved in the communications, it is reasonably foreseeable that an error would follow, causing Kemper to apply for and to purchase the wrong Annuity.

The evidence shows that there was no meeting of the minds at the time of the purchase. The question for the Court to decide then is: what is the appropriate remedy? The evidence at trial will show that at the time the Annuity was purchased, $175,000.00 was sufficient only to purchase the twenty-year certain Annuity that MetLife issued. A lifetime Annuity with the same benefits would have been much more costly. Kemper did not pay for an Annuity that made payments beyond 20 years. If MetLife were ordered to continue paying Mr. Dimon the Annuity payments for the remainder of his life, Kemper

will realize a substantial windfall. Fortunately, whether the Court applies the law of Rhode Island, Massachusetts or New York, it has the <u>equitable</u> authority to remake the contract to prevent Kemper from being unjustly enriched.

    a.    **Rhode Island Law**

Where, as here, there is no meeting of the minds, Rhode Island law dictates that the contract be reformed under its equitable powers. In the case of <u>Riley v. Stafford</u>, a new landlord notified a preexisting tenant that her rent was increasing to $825 per month. 896 A.2d 701 (RI 2006). The tenant instead paid $600 and informed the landlord that the higher amount would be justified only if he repaired all of the housing violations. At trial, the landlord claimed that the payment of the rent was an acknowledgement that the lease had been accepted and sought the deficiency. The trial court disagreed and the Supreme Court upheld it, ruling that "[i]n the absence of agreement, the tenant shall pay as rent the fair rental value for the use and occupancy of the dwelling unit." (<u>See also</u> <u>Superior Glass Co. Inc. v. East Greenwich Savings Fund & Loan</u>, 92 R.I. 409, 412-414 (1961) (Court upheld the trial court's finding that there was no express contract owing to there being no meeting of the minds and allowing plaintiff construction company to recover the cost of material and labor provided under an implied contract.)

    b.    **Massachusetts Law**

In Massachusetts, the Court also must exercise its equitable powers where there is no meeting of the minds, and the contract must be reformed. In <u>Nelson v. Rebello</u>, the plaintiff sought specific performance of a purchase and sale agreement for a home. 26 Mass. App. Ct. 270 (1988). The sellers had been told by the broker before they signed that the preliminary offer form that the buyer presented included an agreement to pay the

broker's commission and that the sellers would receive $95,000.00 net. The buyer had no such intention. The Court found that there was no meeting of the minds.

> At the time the parties signed the preliminary agreement, they had different understandings about the payment of the broker's commission. . . . The trial judge found that the matter of the broker's fee was not a pretext but was in fact the principal reason the sellers refused to sign the agreement. . . . Moreover, the sellers acted fairly and without delay in notifying the buyer and returning the deposit. Principles of equity, thus, do not require that the buyer receive specific performance.

(Id. at 274.)

### c. New York Law

Likewise, in New York, the Court has equitable authority to issue equitable remedies to a contract where there was no meeting of the minds. In the case of Paul F. Vitale, Inc. v. Parker's Grille, Inc., plaintiff construction contractor, commenced an action alleging that defendants, the owners of a commercial building failed to pay it for demolition work performed pursuant to an alleged oral contract. The trial court found that there was no meeting of the minds and awarded plaintiff damages on the theory of *quantum meruit*. The appeals court upheld the trial court's award of damages based upon the fair and reasonable value of plaintiff's services. 23 A.D.3d 1147, 803 N.Y.S.2d 872 (2005) (motion for leave to appeal denied); 23 A.D.3d 1147, 803 N.Y.S.2D 872 (2006).

## CONCLUSION

Dimon seeks to get what was bargained for many years ago. Kemper characterizes Dimon's claims as ones to enforce his rights as a third-party beneficiary of the contract between Kemper and MetLife. However, the evidence shows that *MetLife and Kemper were never in agreement as to the terms of the Annuity.* Plaintiff, standing in Kemper's shoes, may recover from MetLife only what Kemper purchased from it – a

twenty-year Annuity. To recover more, he must look to Kemper and its insured, who are not released from liability simply based upon the payment of the sum of money, ($175,000.00), a sum that does not appear in the General Release.

                                            Defendant,
                                            **Metropolitan Life Insurance Company,**
                                            By Its Attorneys,

                                            _-s- Peter LeBlanc_
                                            James J. Ciapciak, BBO # 552328
                                            Peter LeBlanc, BBO # 645305
                                            CIAPCIAK & ASSOCIATES, P.C.
                                            99 Access Road
                                            Norwood, MA 02062
                                            (781) 255-7401

### **CERTIFICATE OF SERVICE**

     I hereby certify that a true and accurate copy of the foregoing document was filed via the ECF system and will be served electronically through that system upon Counsel of Record on December 12, 2007.

                                            /s/ Peter LeBlanc
                                            Peter LeBlanc