UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| DENNIS DIMON,   )<br>   )<br>    Plaintiff,   )<br>   )<br>VS.   )<br>   )<br>METROPOLITAN LIFE   )<br>INSURANCE COMPANY, KEMPER   )<br>INSURANCE COMPANY,   )<br>MORGAN STANLEY DW, INC.,   )<br>MICHAEL B. LATTI, LATTI   )<br>ASSOCIATES, and LATTI &   )<br>ANDERSON LLP,   )<br>   )<br>    Defendants.   )   | C. A. No:  05-11073 NG |

**DEFENDANT METROPOLITAN LIFE INSURANCE COMPANY'S
MOTION TO BIFURCATE THE TRIAL**

**ORAL ARGUMENT REQUESTED**

Defendant Metropolitan Life Insurance Company ("MetLife") moves, pursuant to Federal Civil Procedure Rule 42(b), for an Order to bifurcate the trial in this matter as Plaintiff's indirect claims against MetLife are entirely different and separate from Plaintiff's claims against the other defendants. MetLife cannot be held liable unless Plaintiff has first established Kemper Insurance Company's ("Kemper") liability.

### I.    FACTS

Liability in this case, at least as far as the allegation against MetLife is concerned, arises from a contract dispute between MetLife and Kemper.[1] MetLife's duty to Dennis Dimon ("Mr. Dimon"), if any, arises *solely* as a result of Mr. Dimon being named as an annuitant of the Annuity purchased by Kemper on his behalf. The purchase of the Annuity was an arms-length

---

[1] All misrepresentation claims against MetLife have been dismissed.

transaction between two insurance companies.  MetLife played no part in Mr. Dimon's claim against the Jenny C., Inc., was not a party to the Jenny C., Inc. suit, and was not involved in the settlement negotiations for the case <u>Dennis Jay Dimon v. Jenny C., Inc.</u>[2]  At the time that the Annuity was purchased, MetLife had no information or knowledge regarding the settlement between Kemper's insured and Mr. Dimon.

Therefore, before the Court considers the question of MetLife's liability, it should first decide <u>Kemper's</u> duties and responsibilities to Jenny C., Inc. (its insured) and Mr. Dimon.  <u>Kemper was charged with the duty to provide Mr. Dimon with a lifetime Annuity</u>.  This duty did not end when Kemper paid $175,000.00 to purchase a 20-year certain Annuity from MetLife.  As MetLife argued in its Sur-Reply to Kemper's Summary Judgment Motion, the General Release approved by the Court in <u>Dimon v. Jenny "C", Inc.</u> contained no dollar limitation.  The Settlement Agreement calls for Jenny C., Inc. to establish a fully paid Annuity contract for Mr. Dimon's benefit to be paid to him during the term of his life, and in no event for less than twenty (20) years.  <u>Thus, Kemper's duties did not end with its payment of $175,000.00.</u>

This case's complexity arises in part from Kemper's decision to contest its liability under the Settlement Agreement.  Had Kemper responded to Mr. Dimon's claims by admitting that it had a legal duty to provide a lifetime Annuity for Mr. Dimon, and then cross-claimed against MetLife for allegedly issuing the wrong product (even though Kemper applied for and only paid for a 20-year certain annuity), bifurcation of the trial would be unnecessary because the issue of liability would have been greatly simplified.  Instead, Kemper denied that it had a duty to provide the type of Annuity claimed.[3]  Because Kemper's defense calls into question the precise

---

[2] This case was settled in 1983.
[3] Had Kemper admitted liability to Plaintiff, assumed payment of the Annuity, and then, if it deemed necessary, bring suit against MetLife the parties would be in a vastly simplified suit regarding the relative duties of two

2

nature of what it agreed to provide Mr. Dimon through the Settlement Agreement, trial of the claim against MetLife is premature. Only if Kemper breached the Settlement Agreement must this Court determine whether Kemper may seek indemnification from MetLife, Morgan Stanley or Mr. Dimon's previous attorney, Latti & Anderson, LLP.

## II.    ARGUMENT

Federal Civil Procedure Rule 42(b) gives the Court "in furtherance of convenience or to avoid prejudice" the authority to order a separate trial of any claim or issue.

> "A Rule 42(b) motion is a matter peculiarly within the discretion of the trial court…." Gonzalez-Marin v. Equitable Life Assur. Soc'y, 845 F.2d 1140, 1145 (1st Cir. 1988). The Advisory Committee note to Rule 42(b) states that "while separation of issues for trial is not to be routinely ordered, it is important that it be encouraged where experience has demonstrated its worth." For example, a separate trial may be appropriate to avoid prejudice or where a single issue could be dispositive of the entire case. 9 Wright & Miller, Federal Practice & Procedure: Civ. 2d, § 2388 (1995).

Chapman v. Bernard's, Inc., 167 F. Supp. 2d 406, 417 (D. Mass. 2001).

The facts of this case lend themselves to bifurcation because Plaintiff has no direct claim against MetLife. MetLife's potential liability differs and depends on Plaintiff's claims against the other defendants. Plaintiff must first win in his claims against his former attorneys (Latti), Kemper and/or the broker (Morgan Stanley DW, Inc.) and establish that one of these defendants had a duty to obtain for Mr. Dimon a lifetime Annuity, before MetLife's contractual agreement with Kemper can be analyzed. The trial of Plaintiff's claims against the Latti Defendants, Kemper and Morgan Stanley DW, Inc. involves different evidence, testimony and witnesses, than the claim against MetLife. The issue of the other Defendants' liability to Mr. Dimon arises from the Settlement Agreement that was reached between Kemper, Home Insurance Company, Jenny C., Inc. and Mr. Dimon. MetLife was not a party, was not involved and had no knowledge

---

insurance companies. Instead, Kemper has attempted through smoke and mirrors to fashion this lawsuit as a claim between Plaintiff and MetLife.

3

of the negotiations that led to Plaintiff's Settlement Agreement with the other Defendants. To prove that Kemper has breached its duty under the Settlement Agreement, Plaintiff will need to demonstrate that 1.) the Jenny C., Inc. agreed to pay an Annuity pursuant to the Settlement Agreement, and 2.) Kemper and The Home Insurance Company were liable under both the terms of their respective policies and the Settlement Agreement. On the other hand, the evidence at trial of MetLife's potential liability would involve the correspondence between Kemper and Plaintiff's former Attorneys (Latti Associates), correspondence with the broker of the Annuity (Morgan Stanley) with MetLife, the Application for the Annuity <u>submitted by Kemper</u> (not Mr. Dimon), evidence regarding how the Application was filled out, transmitted and processed, and a determination of what contract, if any, resulted between <u>MetLife and Kemper</u>.

  An analysis of the facts supports the contention that this case should be bifurcated. It is anticipated that the evidence will show that Morgan Stanley was the broker contacted by Plaintiff's attorneys (Latti Defendants) to secure the Annuity called for by the Settlement Agreement. It was Morgan Stanley who received the Application and forwarded it to MetLife. It was Morgan Stanley that produced the document that Plaintiff and Kemper both have claimed was the "Charter" proposal but which was not from MetLife's predecessor (the "Charter" company that is the Defendant in this case). Morgan Stanley, which settled with the Plaintiff and was dismissed from this action over MetLife's objection, was the one party with whom all of the key players communicated. The following questions regarding Morgan Stanley's involvement must be answered before MetLife's liability can be determined: what did Morgan Stanley get paid to do? Or, what did Morgan Stanley do to earn its commission? The answers are that Morgan Stanley was expected to provide the product requested at the best price. It did not fulfill its responsibilities and, as a direct result, Mr. Dimon is looking to Kemper, his attorneys, and to

MetLife, the only party that was not liable to Plaintiff in the underlying action—to recover what Morgan Stanley failed to secure

The same or similar concerns apply to the Plaintiff's attorney, charged with protecting Mr. Dimon back in 1983, the Latti Defendants. Latti was Mr. Dimon's attorney, and <u>knew</u> in 1983 that Mr. Dimon had cognitive <u>and</u> literacy limitations. Roger Hughes noted on the General Release that he had read the Release to Mr. Dimon. Judge Pettine was concerned enough about Mr. Dimon's ability to understand his settlement that he appointed Mr. Decof as a guardian *ad litem* for Mr. Dimon. And, most importantly of all, Latti knew all of the above facts, <u>and that there was a dispute regarding the Annuity product that was purchased</u>. Armed with this knowledge, Latti's response was to do <u>nothing</u>.[4] Latti took <u>no</u> steps to protect their client even though they accepted the attorney's fees on a rather large settlement from Mr. Dimon

MetLife believes that with the parade of witnesses that will be put on the witness stand at the trial of Plaintiff's case against Kemper, a jury will become confused as to MetLife's involvement and come to believe that MetLife shares the blame for the errors made in the <u>Dimon v. Jenny C., Inc.</u> settlement.[5] What distinguishes MetLife form the rest of the defendants is that MetLife (or its predecessor, Charter Security) played no part in the <u>Dimon v. Jenny C., Inc.</u> trial or settlement negotiations. MetLife has never had <u>any</u> involvement with Mr. Dimon. Any relationship to Mr. Dimon was solely through the contract with Kemper, which was established through an intermediary - the Massachusetts' Office of broker Morgan Stanley (then Dean Witter).

---

[4] It should be noted that MetLife did not possess, with the exception of the dispute regarding the annuity, any of the knowledge that Kemper or Latti had.

[5] An example of the confusing nature of this case - American Motor Insurance Company (now known as Kemper) and Home Insurance Company negotiated the settlement that called for Kemper to purchase an annuity from Charter Security (now known as MetLife) through Dean Witter (now known as Morgan Stanley), which had been retained by Latti Associates (now known as Latti & Anderson LLP), Plaintiff's attorneys in the underlying Jenny C., Inc. case. In the September 26, 2007 Order issued by this Court, the confusion was clear – this Court believed that Charter Security was now Kemper. *See* <u>September 26, 2007 Order</u>.

5

> There is substantial case law in this jurisdiction supporting the proposition that bifurcation may be justified where separate counts are brought against separate defendants, as in an action in tort where the plaintiff sues the tortfeasor for negligence and the tortfeasor's insurer for G.L. c. 93A unfair and deceptive practices in failing to settle the claim on behalf of the insured. A Rule 42 motion may also be allowed to reduce the chance of jury confusion by preventing evidence probative of one claim from being heard on a separate claim as to which the evidence would be inadmissible.

Kimball v. Liberty Mut. Ins. Co., 1999 Mass. App. Div. 298 (Mass. App. Div. 1999).

Finally, this case is complicated by the fact that Plaintiff relies on his status as a disabled seaman for the proposition that he is protected by the Jones Act and entitled to deferential standards in this matter. Clearly, this Court owes Plaintiff such deference in his suit against Kemper. However, the Court may not apply any deferential standards in the sole remaining claim against MetLife. MetLife's only duties to Plaintiff arose from Kemper's purchase of an Annuity from MetLife, an arms-length transaction between two insurance companies, through a broker (Morgan Stanley). The fact that two different standards must be applied certainly will cause confusion for the trier of fact and potentially will prejudice MetLife. This confusion can be avoided by bifurcating the trial.

**WHEREFORE**, Metropolitan Life Insurance Company respectfully requests that this Court Order that separate trials be held on the issue of Kemper's liability and MetLife's liability.

## REQUEST FOR ORAL ARGUMENT

MetLife respectfully requests that, pursuant to Local Rule 7.1(D), the Court schedule this matter for oral argument. Oral argument will assist the Court in making its decision on MetLife's Motion to Bifurcate the Trial.

## LOCAL RULE 7.1(A)(2) CERTIFICATION

I hereby certify that on January 23, 2008, I contacted counsel or record and we conferred and attempted in good faith to resolve or narrow the issues pursuant to L.R. 7.1(A)(2).

      /s/ Peter M. LeBlanc

Respectfully submitted by      Defendant,

METROPOLITAN LIFE INSURANCE COMPANY,

By its Attorneys,

    /s/ James J. Ciapciak
James J. Ciapciak, BBO # 552328
Peter M. LeBlanc, BBO # 645302
CIAPCIAK & ASSOCIATES, P.C.
99 Access Road
Norwood, MA  02062
Tel:  (781) 255-7401
Fax:  (781) 255-7402

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing document was filed via the ECF system and will be served electronically through that system upon Counsel of Record on January 23, 2008.

/s/ James J. Ciapciak
James J. Ciapciak