UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

```
_____
DENNIS DIMON,                  )
       Plaintiff,              )
                               )
       v.                      )      Civil Action No. 05CV11073-NG
                               )
METROPOLITAN LIFE INS. CO.,    )
et al.,                        )
       Defendants.             )
_____)
```
GERTNER, D.J.:

## MEMORANDUM AND ORDER
January 31, 2008

On September 26, 2007, this Court issued an Electronic Order disposing of four cross-motions for summary judgment. It also ordered further briefing on several issues of law. Subsequently, defendant Metropolitan Life Insurance Co. ("MetLife") moved for reconsideration and for clarification of the Electronic Order. See Def. MetLife's Mot. for Reconsideration and/or for Clarification ("MetLife Mot. for Recon.") (document # 93). For the reasons stated herein, the Motion is **DENIED.**

I.    BACKGROUND

Because this case is currently at the summary judgment stage, the Court will "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995).

A.    Facts

In 1982, plaintiff Dennis Dimon ("Dimon") was working aboard F/V The Jenny C. when he suffered an injury that caused him to

lose an eye.  Represented by Latti & Associates, he sued the
owner of the vessel, The Jenny C., Inc., in federal district
court in Rhode Island, seeking compensation under the Jones Act.
Dimon was awarded $710,000.  Subsequently, the parties entered
into a settlement agreement.  The only parties to that agreement
were Dimon and The Jenny C., Inc.

      The stipulation called for two separate payments to Dimon.
The first, a lump sum of $250,000, was paid immediately and is no
longer part of this case.  The second required "the establishment
of a fully paid annuity contract for [Dimon's] benefit with
Charter Life Insurance Company, to pay [Dimon] One Thousand Four
Hundred Fifty . . . Dollars per month . . . to be paid to [Dimon]
during the term of [his] life, and in no event for less than
twenty years."  General Release, Exh. "B" to Dimon's Mem. in
Supp. of Mot. for Summ. J. ("Dimon MSJ Mem.") (document # 55).
Charter Life Insurance Co. ("Charter") is here represented by its
successor company, MetLife.  The annuity was to be established
with a single premium payment of $175,000, to be paid to Charter
(MetLife) by The Jenny C., Inc.'s excess insurer, American
Motorists Insurance Co. ("AMIC"), now Kemper Insurance Co.
("Kemper").

      On April 8, 1983, a company called Charter Life submitted a
"Proposal" which met the terms of the Release.  (MetLife disputes
whether this Charter Life was, in fact, its predecessor company.)
It was a proposal for a "life annuity 20 year certain . . . of

$1450.45 per month for the first year and it would increase 3% per year" thereafter. Proposal, Exh. "C" to Dimon MSJ Mem. (document # 55). The Proposal does not bear a quote number or other identifying characteristics, nor does it list the present value (as of April 1983) of the annuity. The proposal appears to be on the stationery of Dean Witter Reynolds, Inc., Charter's broker. <u>See</u> <u>id.</u>

Subsequently, through its agent John Noe, AMIC (Kemper) submitted an annuity application to Metlife. Precisely what was in the application as submitted is a disputed issue of fact, but as filled out, the application was clearly inconsistent with the General Release. The application was for a single premium deferred annuity, with the amount of the premium set at $175,000. Significantly, the application requested terms of "20 yr certain[,] 3% increases. $175,000 = 1450.45 per month first year," apparently not a life annuity. Annuity Application, Exh. "E" to Dimon MSJ Mem. (document # 55).[1] The application also incorporates quote number SO113.

On June 17, 1983, Charter/MetLife signed a "Single Premium Deferred Annuity," but noted that it was a life annuity, explained in detail the concept of lifetime payments, and apparently incorporated a "Supplementary Agreement." Exh. "H" to Dimon MSJ Mem. (document # 55). The "Supplementary Agreement" is

---

[1] Dimon and Kemper argue that this language is not inconsistent with a life annuity.

No. 5C112G.  Id. at 10.  Notwithstanding the terms on the application as filled out, the annuity that MetLife actually issued entitled Dimon to "Monthly payments . . . for a period of 240 months certain and life thereafter."  Id.

On July 14, 1983, MetLife sent a letter to its broker, Dean Witter, stating that "due to a clerical error the option indicated on the above supplementary contract for Dennis Dimon was incorrectly typed as 240 months certain and life thereafter instead of 240 months only."  Letter from Barbara Boehm, Vice President, Charter Security Life, to Kurt Snyder, Dean Witter Reynolds (July 14, 1983), Exh. "I" to Dimon MSJ Mem. (document # 55).

MetLife then sent a second contract, which it contends was what the agreement was supposed to be, for a 20 year annuity:

> As outlined in our telephone conversation, due to a clerical error . . . [the] contract for Dennis Dimon was incorrectly typed as 240 months certain and life thereafter instead of 240 months only.  Enclosed is a new contract correctly stating the option elected.  Please be advised that the former contract mailed to Robert Foley [of Kemper] is null and void.

Letter from Barbara Boehm, Vice President, Charter Security Life, to Kurt Snyder, Dean Witter Reynolds (July 14, 1983), Exh. "I" to Dimon MSJ Mem. (document # 55).

A month later, Kemper rejected the attempted modification, announcing its position that MetLife was bound by the Supplementary Agreement.  Letter from John Noe, AMIC, to Robert

A. Foley, Dean Witter Reynolds, Exh. "J" to Dimon MSJ Mem.
(document # 55).  Dimon had notice of both parties' positions
through his lawyers.  See id. at 2 (copying the letter to Latti &
Associates).

In 2003, at the end of the 20-year period, the payments
ceased.  At that time, AMIC no longer existed; it had been
succeeded by Kemper.  Similarly, Charter has been succeeded by
MetLife.

**B.    Procedural History**

In May 2005, Dimon filed the instant suit against several
defendants.  He sued his former lawyers (Michael B. Latti, his
former firm Latti & Associates, and his current firm Latti &
Anderson LLP; collectively, "Latti & Anderson") for legal
malpractice, under theories of negligence, breach of fiduciary
duty, and breach of contract.  He also sued Kemper (as successors
in interest to AMIC) and MetLife (as successors in interest to
Charter).  He alleged negligent misrepresentation and breach of
contract as against each company.  Finally, Dimon sued Morgan
Stanley Dean Witter, Inc. (as successors in interest to Dean
Witter Reynolds).  He alleged breach of contract and breach of
fiduciary duty.

By stipulation with the plaintiffs and over the objection of
MetLife, Morgan Stanley Dean Witter was dismissed as a party from

the case in January 2007.  See Endorsement Order of Judge Lasker
(Jan. 25, 2007) (document # 69).

Each of the other parties filed cross-motions for summary
judgment.  On September 26, 2007, this Court disposed of the
Motions, but ordered further briefing on some issues.  Latti &
Anderson was dismissed without prejudice, because Dimon will not
be able to show that he suffered actual harm as a result of their
alleged negligence unless and until the Court enters judgment
against him in the instant case.  See Wehringer v. Powers & Hall,
P.C., 874 F.Supp. 425, 427-28 (D.Mass. 1995), aff'd, 65 F.3d 160
(table decision, text in Westlaw), 1995 WL 536047 (1st Cir.
1995); Colucci v. Rosen, Goldberg, Slavet, Levenson & Wekstein,
P.C., 25 Mass.App.Ct. 107, 113, 515 N.E.2d 891 (1987).

Kemper and MetLife each asserted the statute of limitations
in moving for summary judgment.  In ruling, the Court
differentiated between Dimon's claims of negligent
misrepresentation and his claims of breach of contract.  The
claims of negligent misrepresentation accrued, if at all, in
1983, when Charter/Metlife and AMIC/Kemper stated their positions
on the insurance contract.  Because Dimon had notice of the
positions in 1983, through his lawyers' receipt of correspondence
between Charter and AMIC, any applicable statute of limitations
had long since run in 2005.

In contrast, Dimon's breach of contract claims were arguably
best characterized as revolving around an anticipatory

-6-

repudiation of the contract in 1983, followed by an actual breach in 2003. Therefore, the statute of limitations on the contract claim did not begin to run until 2003, when the payments ceased.

Dimon's motion for summary judgment was denied in its entirety.

Finally, the Court ordered further briefing on several topics: (1) the proper characterization of Kemper's responsibilities to Dimon under the contract between Kemper (then AMIC) and The Jenny C. Co.; (2) whether those responsibilities were discharged by Kemper's issuance of a check for the annuity or whether Kemper's was obliged to secure the life annuity; (3) the legal effect of Charter's statements in 1983 that it did not intend to make payments after 20 years; and (4) the appropriate choice of law for the case.

Subsequently, MetLife moved for a reconsideration and clarification of this Court's Electronic Order.

## II.  <u>METLIFE'S MOTION FOR RECONSIDERATION AND CLARIFICATION</u>

MetLife sought clarification on three areas of the Court's endorsement: "1) the Court's understanding of the relationship between Kemper and Charter Security; 2) the theory, under which the Court granted Summary Judgment on Count XI of Plaintiff's Complaint, i.e. the Negligent Misrepresentation Claim; and 3) whether the Court considered the Statute of Repose of § 181." MetLife's Mot. for Recon. at 2 (document # 93).

First, the association of Kemper with Charter in the endorsement was a misstatement, not an analytical error, and does not change the Court's holding.  It should have read, Kemper's responsibilities to Dimon under the Kemper and Jenny C contract. The Court assumes that Dimon is a third-party beneficiary to the Kemper-Jenny C contract of insurance, and simply wanted clarification of that fact.

The other two issues are addressed in turn.  Further, for convenience's sake, Kemper's Motion for Summary Judgment is also addressed below.

**A.    The Differences Between Dimon's Negligent Misrepresentation Claim and His Breach of Contract Claim**

Dimon sued MetLife and Kemper under two different theories. The first is negligent misrepresentation; the second, breach of contract.  The two claims did not accrue at the same instant.

**1.    Negligent Misrepresentation**

Presumably, the misrepresentation Dimon alleges is that Kemper represented to Dimon that it was obtaining a life annuity from MetLife when it had not or alternatively, that MetLife represented the nature of the annuity.

Negligent misrepresentation is a tort for which the statute of limitations differs under different choice of law theories. Under Massachusetts law, the cause of action generally accrues when the plaintiff knew or reasonably should have known of the

misrepresentations, <u>Friedman v. Jablonski</u>, 371 Mass. 482, 484-86 (1976), and the suit must generally be filed within three years, Mass. Gen. Laws ch. 260, § 2A.  If the defendant is an insurance company, a statute of repose requires the action to be brought within two years of the date of the alleged misrepresentations. Mass. Gen. Laws ch. 175, § 181.  Similarly, under New York law, the cause of action begins to run at the time of the alleged misrepresentation.  <u>See, e.g.</u>, <u>Fandy Corp. v. Lung-Fong Chen</u>, 262 A.D.2d 352 (N.Y. App. Div. 1999).  The statute of limitations is six years.  N.Y. C.P.L.R. 213[1].  Finally, under Rhode Island law, negligent misrepresentation accrues on "'the date that the plaintiffs knew or should have known of the wrongful act that is the basis of their lawsuit.'"  <u>Hanson v. Singsen</u>, 898 A.2d 1244, 1249 (R.I. 2006) (quoting <u>Ashey v. Kupchan</u>, 618 A.2d 1268, 1269 (R.I. 1993) (internal quotation marks omitted)) (discussing general rules in tort).  The applicable statute of limitations is not clear, but it is at most 10 years.  <u>See</u> R.I. Gen. Laws § 9-1-13(a).

It is well established that knowledge held by the lawyer is imputed to the client.  <u>See, e.g.</u>, <u>McGee v. Stone</u>, 522 A.2d 211, 215 (R.I. 1987); <u>Center v. Hampton Affiliates, Inc.</u>, 66 N.Y.2d 782, 784 (1985); <u>Quinn v. Hintlian</u>, 4 Mass.App.Ct. 805, 805 (1976); <u>Levin v. Berley</u>, 728 F.2d 551, 553 (1st Cir. 1984). Latti & Associates received correspondence placing them on notice of Charter's (MetLife's) position as to the annuity.  <u>See</u> Letter

-9-

from John Noe, AMIC, to Barbara Boehm, Charter, 10/12/1983, Exh.
"K" to MetLife Mem. in Supp. of Mot. for Summ. J. ("MetLife MSJ
Mem.") (document # 60) (noting that Roger Hughes of Latti &
Anderson was to receive a carbon copy); see also Memorandum from
John Noe, AMIC, to Klaus Lemhoefer, AMIC, 11/11/1983, Exh. "P" to
MetLife MSJ Mem. (document # 60) (representing that Mr. Hughes,
Dimon's attorney at Latti & Associates, was contemplating filing
an errors and omissions claim or a suit for declaratory
judgment).

Those letters sufficed to start the running of a tort cause
of action under the law of any state, and they were received in
1983 but no suit was brought until 2005.  As such, the negligent
misrepresentation claim is clearly barred by the statute of
limitations, no matter which state's laws apply.

### 2.  Breach of Contract

Dimon also asserted breach of contract claims, claiming that
the defendants "fail[ed] to perform the contract."  See Compl. at
10-11 (MetLife), 12 (Kemper).  He alleges that MetLife breached
by failing to make payments in 2003 and that Kemper breached by
failing to secure an annuity that would make life payments.  See
id. at 4.  If Kemper was contractually obligated to obtain a life
annuity, and did not, it would be liable to Dimon in breach of
contract.  If MetLife was contractually obligated to provide a
life annuity and it reneged, it would likewise be liable to
Dimon.

The question is therefore when the cause of action accrued on the contract claims -- and that inquiry is, in turn, controlled by the date of the breach.  The MetLife annuity contract is addressed first, then the General Release.

### a.    Breach of the Annuity Contract

In 1983, Charter/MetLife announced that, notwithstanding the language of the annuity it had signed, it would make payments on the annuity for 20 years and no more.  It argues that if there was a breach, it occurred in 1983.  MetLife MSJ Mem. at 16 (document # 60).  Dimon argues that the actual breach occurred in 2003, when MetLife failed to make its 241st payment on the annuity.  Dimon MSJ Mem. at 13 (document # 54).

When an obligor renounces a duty under a contract before the time fixed for performance, the renunciation is not a breach, but a repudiation.[2]  See, e.g., Franconia Assoc. v. United States, 536 U.S. 129, 142-43 (2002) (discussing general contract law).  The repudiation only ripens into a breach if the obligee elects to treat it as a breach.  See id. at 143-44; Ramey v. Int'l Ass'n

---

[2] Some courts have held that the doctrine of anticipatory breach does not apply in unilateral contracts where a payee is merely awaiting payment.  See Cent. States, S.E. & S.W. Areas Pension Fund v. Basic American Indus., Inc., 252 F.3d 911, 915 (7th Cir. 2001) (collecting cases); Medaris v. Lionel Corp., 268 N.Y.S.2d 936, 936-37 (N.Y. A.D. 1966); Restatement (Second) of Contracts § 253 cmt. c ("However, it is one of the established limits on the doctrine of 'anticipatory breach' that an obligor's repudiation alone . . . gives rise to no claim for damages at all if he [the obligor] has already received all of the agreed exchange for it.").  Other courts have rejected the distinction between unilateral contracts and all others.  In any case, however, whether the doctrine applies would only affect whether Dimon had the option of treating the repudiation as a breach and suing immediately upon Charter's renunciation.  As explained below, Dimon retained the option of waiting until the actual breach occurred.

of Machinists & Aerospace Workers, 378 F.3d 269, 279 (2d Cir.
2004); Rachmani Corp. v. 9 East 96th Street Apartment Corp., 629
N.Y.S.2d 382, 384-85 (N.Y. A.D. 1995); Winegar v. Earle, 108 R.I.
464, 470 (1971).

In this case, it is without dispute that Charter/MetLife
tendered, and Dimon accepted, 240 monthly payments on the
annuity.  In 1983, Charter renounced its obligation as to the
241st and subsequent payments, but when it did so, that
obligation was still some distance in the future.  In any event,
Kemper rejected MetLife's interpretation and the new contract it
proffered.

By not suing immediately upon the renunciation, Dimon
elected not to treat it as a breach.  He was within his rights to
do so.  The statute of limitations did not begin to run until a
reasonable time had elapsed after the 241st payment was allegedly
due.  Cf. Rachmani Corp., 629 N.Y.S.2d at 384 (noting that where
the plaintiff elects to treat the repudiation as a breach, the
statute of limitations begins to run from the repudiation).

Similarly, Massachusetts does not recognize anticipatory
repudiation at all.  See, e.g., Cavanagh v. Cavanagh, 33
Mass.App.Ct. 240, 243-44, 598 N.E.2d 677, 679 (1992) (citing
Daniels v. Newton, 114 Mass. 530 (1874)).  The Massachusetts
Supreme Judicial Court has held that it is "settled in this
Commonwealth that where a contract is to be performed at a
certain time, or on the happening of a certain event, a

declaration by one party that he will not perform it when the time comes does not give a present right of action." <u>Porter v. American Legion of Honor</u>, 183 Mass. 326, 328 (1903).  That holding has never been overruled.  Therefore, if Massachusetts law applies, as MetLife argues that it does, Suppl. Br. in Supp. of MetLife's Mot. for Summ. J. at 4 (document # 96), Dimon was <u>required</u> to wait until 2003 to sue.[3]

Dimon's suit against MetLife was brought in 2005, alleging an actual breach of the annuity contract in 2003, when the payments on the annuity ceased.  The suit is thus comfortably within the statute of limitations in Massachusetts (six years, Mass. Gen. Laws ch. 260, § 2), New York (six years, N.Y. C.P.L.R.

---

[3] This principle throws some doubt on the plaintiff's expert, who claimed that the "controversy involved an actual breach of the contract in 1983."  Letter from Hans Hailey, Esq. to Brian Keane, Esq. ("Hailey Letter") at 6 (Nov. 10, 2006), Exh. "T" to MetLife MSJ Mem. (document # 60).  It is not clear why the expert believes there had been an "actual breach" in 1983, since MetLife continued making the payments until 2003.  <u>Cf.</u> Restatement (Second) of Contracts § 253, cmt. a (contrasting "breach by anticipatory repudiation" and "breach by non-performance").  While the plaintiff's expert cites Mass. Gen. Laws ch. 106, § 2-610, that section is part of Massachusetts' codification of the Uniform Commercial Code and applies only to commercial transactions.  <u>See Cavanagh v. Cavanagh</u>, 33 Mass.App.Ct. 240, 243 & n.5, 598 N.E.2d 677, 679 & n.5 (1992).  Finally, it may be the case that the "breach was enforceable in 1983."  Hailey Letter at 6, Exh. "T" to MetLife MSJ Mem. (document # 60).  But "[i]t warrants emphasis that resort to the doctrine is generally at the plaintiff's option."  <u>Rachmani Corp.</u>, 629 N.Y.S.2d at 384.  <u>See also</u> Mass. Gen. Laws ch. 106, § 2-610(a) (allowing the non-repudiating party to elect to "for a commercially reasonable time await performance by the repudiating party"); <u>id.</u> § 2-611(1) ("Until the repudiating party's next performance is due he can retract his repudiation unless the aggrieved party has . . . indicated that he considers the repudiation final.").

213[2]), or Rhode Island (ten years, R.I. Gen. Laws § 9-1-13(a)).[4]

Moreover, the Court finds that a genuine issue of material fact existed as to the terms of the contract.  And as MetLife notes, it is possible that there was no "meeting of the minds," perhaps requiring this Court to reform the contract based on equitable principles.  Def. MetLife's Sur-Reply at 7-10 (document # 103).  However, that too is a contested issue of fact.  Summary judgment is therefore inappropriate.

If the annuity contract is determined to be one for life payments, MetLife is responsible and Kemper owes Dimon no further relief.  If the annuity contract was not for lifetime payments, but only for a certain term of 20 years, then the annuity contract has been discharged, and no future obligations are owed on it by any party, but Kemper may have obligations under the General Release, to which the Court now turns.[5]

_____

[4] Maritime law does not apply to the annuity contract.  It is a negotiated annuity bearing only coincidental and attenuated relation to any maritime issue.  See Norfolk Southern Railway Co. v. Kirby, 543 U.S. 14, 24 (2004).

[5] Maritime law does not control this contract either.  While the General Release is a seaman's release and arguably subject to maritime law, Kemper's satisfaction of that release is based on an insurance contract, not a maritime contract.  There is no direct connection to maritime commerce.  As the Supreme Court has noted in passing, "an agreement to pay damages for another's breach of a maritime charter is not [itself a maritime contract]."  Kossick v. United Fruit Co., 365 U.S. 731, 735 (1961) (citing Pacific Surety Co. v. Leatham & Smith Towing & Wrecking Co., 151 F. 440 (7th Cir. 1907)).  See also Fednav, Ltd. v. Isoramar, S.A., 925 F.2d 599, 601 (2d Cir. 1991) (holding that an "agreement to contribute to the settlement of [a] charter claim is not a maritime contract"); Consolidated Bathurst, Ltd. v. Rederiaktiebolaget Gustaf Erikson, 645 F.Supp. 884, 886 (S.D.Fla. 1986) ("An agreement to satisfy an obligation arising from a maritime tort or contract is not a maritime

**b.    Breach of the General Release**

The General Release entitled Dimon to a lifetime annuity as partial payment for relinquishing his claims against The Jenny C. Co.  See General Release at 1, Exh. "B" to Dimon MSJ Mem. (document # 55).  Kemper's predecessor company, AMIC, was The Jenny C. Co.'s excess insurer.  It negotiated with Charter/MetLife and tendered the payment with which the disputed annuity was established.

The General Release states, in pertinent part, that Dimon is owed

> the establishment of a fully paid annuity contract for [his] benefit with Charter Life Insurance Company, to pay [him] One Thousand Four Hundred Fifty and No/100 ($1,450.00) per month for one year . . . such monthly sum increased at the rate of three (3%) percent per year, compounded annually, to be paid to me during the term of my life, and in no event for less than twenty (20) years, the receipt of which is hereby acknowledged.

General Release, Exh. "B" to Dimon MSJ (document # 55).  Notably, under the terms of the release, Dimon is owed the establishment of an annuity, not the receipt of payments.  Moreover, he acknowledged the receipt of the annuity as established. Therefore, whether or not Kemper breached the General Release turns on whether or not the terms of the annuity it secured -- as

---

contract, and an action for breach of such a contract is not an admiralty claim."); Mulvaney v. Dalzell Towing Co., Inc., 90 F.Supp. 259 (S.D.N.Y.1950) (holding that action for breach of contract to compromise and settle an admiralty claim is not itself an admiralty claim).

received by Dimon -- complied with the requirements of the
Release.  The issue is very similar to whether MetLife breached
the terms of the annuity contract.

Kemper argues that because Dimon received the annuity in
1983, the latest it could have breached the General Release was
1983.  There is some law that appears to support its argument; a
cause of action for breach of contract accrues at the time of the
breach itself, even if damages are unascertainable until some
later point.  Int'l Mobiles Corp. v. Corroon & Black/Fairfield &
Ellis, Inc., 29 Mass.App.Ct. 215, 221, 560 N.E.2d 122, 126
(1990); Ely-Cruikshank Co., Inc. v. Bank of Montreal, 81 N.Y.2d
399, 402, 615 N.E.2d 985, 986-87 (N.Y. 1993).  Moreover,
"[k]nowledge of the occurrence of the wrong on the part of the
plaintiff is not necessary to start the Statute of Limitations
running in . . . contract." Varga v. Credit-Suisse, 171 N.Y.S.2d
647, 677 (N.Y. A.D. 1958).

However, those situations are distinguishable from this one.
This is not the case where a breach merely went undiscovered for
a time.  Rather, whether or not Kemper even arguably breached the
contract is actually indeterminate until adjudication of the
terms of the annuity.  Holding Dimon to a statute of limitations
on the general release would force him to forego his option of
waiting for an actual breach of the annuity contract.  This is
particularly the case where Kemper rejected MetLife's position,
and rejected the successor agreement it offered.  On the unusual

facts of this case, the Court finds that the "breach" Kemper points to was too uncertain to begin the running of the statute. Instead, Kemper's liability at trial will be contingent on MetLife's liability and on other factors.  Kemper will only be liable if MetLife is not -- because a showing that MetLife is liable on the annuity contract will be equivalent to a showing that Kemper did not breach.

### B.    The Massachusetts Statute of Repose

MetLife further argues that a special Massachusetts statute of repose, Mass. Gen. Laws ch. 175, § 181, operates to bar all of Dimon's claims against it.  Assuming arguendo that Massachusetts law applies,[6] the statute does not operate to bar Dimon's contract claim because it only applies to suits brought for misrepresentation.

MetLife is correct in characterizing the statute as a statute of repose, rather than of limitations.  The statute plainly states:  "the holder of any annuity . . . who was induced to procure it by any action in violation of this section . . . may recover from such company all premiums paid on such policy or contract . . . in an action brought within two years after the date of issue thereof."  Id. ¶ 3.  But the text simultaneously

---

[6] MetLife's argument that there is no choice of law issue is effectively contradicted by the other parties' arguments as to choice of law and its own surreply, in which it states:  "Rhode Island law must be applied to interpret and enforce the settlement terms between Plaintiff and Kemper."  Def. MetLife's Sur-Reply at 3 (document # 103).  However, as explained below, there is no need to resolve choice of law issues at the moment.

limits the applicability of the statute of repose to "actions in violation of this section." Those violations are ones in which a company or its agent "misrepresent[s] the terms of . . . any annuity . . . or the benefits or privileges promised thereunder." Id. ¶ 1.

As noted above, Dimon asserts two separate claims with respect to MetLife's conduct as to the annuity. One is a negligent misrepresentation claim; as discussed above, it is time-barred under the longer statute of limitations, as well as § 181. The other is a purely contractual claim. It is not time-barred.

Dimon's complaint alleges that a contract existed and that MetLife breached it. See Compl. at 10 (document # 1). The claim regards MetLife's conduct after the formation of the contract, not before. Cf. Loquidice v. Metropolitan Life Ins. Co., 336 F.3d 1, 6 (1st Cir. 2003) (noting the distinction between pre-purchase and post-purchase allegations); Sullivan v. Southland Life Ins. Co., 67 Mass.App.Ct. 439, 441 n.3, 854 N.E.2d 138, 141 n.3 (2006) (rejecting defendant's attempt to recharacterize a claim for breach of contract as one for misrepresentation). According to Dimon, MetLife had a continuing obligation to pay him in 2003, which it failed to fulfill. Therefore, looking to the "gist of the action," Hendrickson v. Sears, 365 Mass. 83, 310 N.E.2d 131, 132 (1974), the claim is one of contract.

The sole case MetLife cites for the applicability of § 181, Grande v. PFL Ins. Co., No. 9663, 2000 Mass.App.Div. 261, 2000 WL 1476676 (Sept. 27, 2000), is inapposite. In that case, the plaintiff's claim "arose solely out of the alleged misrepresentations by [the defendant's] agent who supposedly advised her of the terms of an annuity in selling her a life insurance policy." Id. at *2. It thus pertained to a claim of misrepresentation in the inducement to form the contract, not a breach of contract. Put otherwise, the cases under § 181 are typically cases in which the defendant says one thing, but in fact does another -- for example, issues a different kind of insurance than what had been represented. In this case, the defendant executed the "right" annuity, a lifetime annuity, but then said it was wrong to have done so; it arguably entered into a contract and then reneged. As such, Section 181 does not apply; the claim is breach of contract.

## III. CHOICE OF LAW

The Court does not currently find it necessary to decide the choice of law issue, finding the law substantially universal. It will therefore **RESERVE** until an issue arises for which choice of law might be outcome-determinative. See Lexington Fire Ins. Con. v. General Accident Ins. Co. of America, 338 F.3d 42, 46 (1st Cir. 2003) (stating that where a case is unaffected by the choice of law, the court may prudently bypass the question).

IV.   **CONCLUSIONS**

The Court finds that there are no statute of limitations defenses that apply to the remaining contract claims.

The Court further finds that material issues of fact exist as to what the terms of the annuity contract were.  By extension, there are material issues of fact as to both MetLife's and Kemper's potential liability to Dimon.  Summary judgment is therefore inappropriate.

MetLife's Motion for Reconsideration (document # 93) is therefore **DENIED**.  In addition, the Court no longer requires further briefing on the issues described in its original endorsement.[7]  The Court notes that a firm trial date is currently set for February 18, 2008.

**SO ORDERED.**

Date:   **January 31, 2008**        /s/Nancy Gertner
                                     **NANCY GERTNER, U.S.D.C.**

_____

[7] Neither party contests that Dimon is a third party beneficiary to the contract between Kemper (then AMIC) and The Jenny C. Co.  It seems clear that Kemper's responsibilities under that agreement involved more than issuing a check; it was obligated to secure the life annuity itself.  And the Court has resolved the legal effect of Charter's statements in 1983 that it did not intend to make payments after 20 years insofar as those statements impacted on the statute of limitations issues.