UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DENNIS DIMON )<br>    Plaintiff )<br> )<br>v. )<br> )<br>METROPOLITAN LIFE )<br>INSURANCE COMPANY, KEMPER )<br>INSURANCE COMPANY, )<br>MORGAN STANLEY DW, INC., )<br>MICHAEL B. LATTI, LATTI )<br>ASSOCIATES, LATTI & ANDERSON )<br>LLP, )<br>    Defendants ) | Civil Action No. 05-11073-NG |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT KEMPER INSURANCE COMPANY'S MOTION FOR RECONSIDERATION OF THE COURT'S JANUARY 31, 2008 MEMORANDUM AND ORDER**

    Defendant, Kemper Insurance Company ("Kemper") hereby files this memorandum of law in support of its motion for reconsideration of the Court's January 31, 2008 Memorandum and Order (the "Order) insofar as the Order denies Kemper's motion for summary judgment on Plaintiff's breach of contract claim against Kemper.

    Kemper respectfully submits that the Order contains clear errors of law, and that there is no disputed issue of material fact that prevents the entry of summary judgment in Kemper's favor on Plaintiff's breach of contract claim, on each of two separate and independent grounds:

- Plaintiff's purported breach of contract claim against Kemper is barred by any potentially applicable statute of limitations, and the reasoning set forth in the Order for rejecting this defense is clearly in error; and

- Plaintiff cannot establish a breach of contract claim against Kemper, and no party has supported its purported arguments against Kemper with actual evidence, as is required to render an issue of fact "disputed" for summary judgment purposes.

## I. FACTS[1]

While not necessarily central to the instant motion for reconsideration, the following factual errors contained in the Order are hereby brought to the Court's attention, for the record.

Page 2 of the Order omits the uncontroverted fact that, during settlement of the Underlying Action, it was Plaintiff's lawyers who advised Kemper that Plaintiff's lawyers were able to purchase, for a premium of $175,000, an annuity that would pay out a stream of periodic payments as follows: $1,450 per month for life, with a 3 % increase compounded annually, and 20 years certain.[2] Plaintiff's lawyers said that they had obtained this annuity quote from MetLife, through Plaintiff's broker.[3] Thus, and contrary to the assertion on page 15 of the Order, the uncontroverted evidence is that it was Plaintiff's lawyers and broker, and not Kemper, that negotiated with MetLife. Further, and contrary to the suggestion on page 2 of the Order, these events preceded the signing of the General Release memorializing the terms of the settlement, which signing occurred on April 19, 1983. See Mensie Dep. at 220:13-221-9, and at ex. 10.

---

[1] For the sake of brevity, Kemper hereby incorporates by reference, as if set forth fully herein, the "Facts" Section of Kemper's Memorandum of Law in Support of Its Motion for Summary Judgment and the exhibits cited therein and attached thereto (at pp. 1 through 8), and the "Facts" Section of Kemper's Supplemental Brief in Support of its Motion for Summary Judgment (at pp. 3 through 7).

[2] See Mensie Dep. at ex. 5 (attached to Kemper's Memorandum of Law in Support of Its Motion for Summary Judgment as Exhibit D); Guardian Hrg. at 7:23-8:20 (attached to Kemper's Memorandum of Law in Support of Its Motion for Summary Judgment as Exhibit B).

[3] See Mensie Dep. at ex. 6; Latti Dep. at 71:2-11, and at ex. 3, p. 3 (attached to Kemper's Memorandum of Law in Support of Its Motion for Summary Judgment as Exhibit C).

In addition, on page 3 of the Order, it is erroneously stated that the annuity application submitted by Kemper "was clearly inconsistent with the General Release." See the Order, p. 3. To the contrary, the uncontroverted <u>evidence</u> (as opposed to assertion or argument, unsupported by any evidence) is that the application to which the Court refers is a modified application, and that this modified application is in any event consistent with a lifetime annuity.[4]

## III. <u>LEGAL ARGUMENT</u>

### A. <u>Legal Standard</u>

#### 1. **Motion for Reconsideration**

To obtain relief on a motion for reconsideration, the movant must demonstrate either that newly discovered evidence (not previously available) has come to light, or that the rendering court committed a manifest error of law. See <u>Marie v. Allied Home Mortg. Corp.</u>, 402 F.3d 1, 7

---

[4] Specifically, the uncontroverted evidence is that the handwriting on the modified application was added by MetLife after the original application had been submitted by Kemper; the original application signed by Kemper did not contain the handwriting. See Fasman Dep. at ex. 6; Mensie Dep. at 80:17-82:1, 85:19-22, and at ex. 2.

In addition, and in any event, the uncontroverted evidence is that the handwriting on the modified application is entirely consistent with the lifetime Annuity that MetLife actually issued. In this regard, the Annuity speaks for itself. At the top of page one, centered and in bold print, the Annuity expressly provides that it has been issued under "**Option 2. Life Income**". See Mensie Dep. at ex. 11, p. 1 (emphasis in original). "**Option 2. Life Income**" is defined, on page eight of the Annuity, as falling into one of the following categories: "Life Annuity"; "<u>With Certain Period</u>"; or "With Installment Refund". Id. at ex. 11, p. 8 (emphasis added). "With Certain Period" is defined as follows: "Equal monthly payments for five, ten, or twenty years (the certain period), as elected, and thereafter for the remaining lifetime of the payee." Id. The handwriting inserted by MetLife in box 14 of the modified application says "20 yr certain." Id. at ex. 3. That handwriting is entirely consistent with the "With Certain Period" election under "**Option 2. Life Income**", which provides for an elective certain period of payments ("five, ten or twenty years"), to be followed by payments "for the remaining lifetime of the payee." Id. at ex. 11, p. 8.

Furthermore, while the Annuity speaks for itself in this regard, the uncontroverted testimonial evidence is to the same effect. For example, under questioning from Plaintiff's counsel, Mr. William Mensie (Kemper's witness under F.R.C.P. 30(b)(6)) testified that the Annuity was issued under "Option 2, Life Income" and "With Certain Period," which provides for a life income with certain period. See Mensie Dep. at 245:3-246:2. Under questioning from MetLife's counsel, Mr. Mensie testified that the modified application elected a certain period of 20 years and for life thereafter. Id. at 255:22-256:14. Likewise, under questioning from the Latti Defendants' counsel, Mr. Mensie testified that the modified application is consistent with the Annuity and was for a lifetime annuity with a 20 year certain period. Id. at 275:5-20.

n.2 (1st Cir. 2005). Here, it respectfully submitted that the Order contains manifest errors of law, as set forth in detail below.

### 2. Summary Judgment

It is well settled that on a motion for summary judgment, the nonmovant must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answer to interrogatories, and admissions on file, designate specific facts showing that there is some genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The nonmovant cannot rely upon mere allegations, but must "adduce specific, provable facts demonstrating that there is a triable issue." Rogers v. Fair, 902 F.2d 140, 143 (1st Cir. 1990) (quoting Brennan v. Hendrigran, 888 F.2d 189, 191 (1st Cir. 1989)). There must be "sufficient evidence" favoring the nonmoving party for a jury to find in its favor. Id. "If the evidence is merely colorable or not significantly probative, summary judgment may be granted." Id. (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 249-50 (1986)).

Finally, mere arguments of counsel do not make an issue of fact "disputed"; rather, there needs to be actual evidence adduced to support such arguments. See, e.g., Wilson v. Town of Mendon, 294 F.3d 1, 16 (1st Cir. 2002) (citing Brandt v. Wand Partners, 242 F.3d 6, 23 (1st Cir. 2001) (lawyer's arguments are not to be considered evidence).

### B. Plaintiff's Purported Breach of Contract Claim Against Kemper Is Time-Barred.

While stating that "some law appears to support" Kemper's argument that Plaintiff's claim against Kemper is barred by the statute of limitations, the Order – without citing to any supporting authority to the contrary – rejects Kemper's statute of limitations defense. See the Order at pp. 16-17, 20. This rejection constitutes a clear error of law. The key to understanding

this lies in understanding that Kemper's statute of limitations defense presents entirely different issues than does MetLife's statute of limitations defense.

As the Court well knows, there are two contracts at issue in this case: the General Release and the Annuity. Plaintiff does not and cannot claim that Kemper breached the Annuity. Plaintiff does claim that Kemper breached the General Release, by allegedly failing to "establish[] a fully paid lifetime annuity for Plaintiff's benefit." See the Order, p. 15. Plaintiff has not argued and cannot argue that Kemper anticipatorily repudiated the General Release, since Kemper never renounced the General Release (or the Annuity either, of course). To the contrary, Kemper has always taken the position that Plaintiff is entitled to a lifetime annuity and that the Annuity that Kemper established is payable for life. MetLife, on the other hand, did in fact renounce the Annuity, and MetLife's actions may therefore be subject to the doctrine of anticipatory repudiation. See the Order, pp. 11-12.

Therefore, as to Kemper, the only question with respect to the statute of limitations issue is this: when did Plaintiff's cause of action against Kemper for alleged breach of the General Release accrue? The answer is that the law of all potentially relevant jurisdictions is very clear that a cause of action for breach of contract accrues <u>at the time of breach itself, even if damages do not occur until later</u>, and <u>regardless of whether or not either party is aware of the breach</u>. See, e.g., Gail Frances, Inc. v. Alaska Diesel Elec., Inc., 62 F. Supp. 2d 511, 515 (D.R.I. 1999) (citing Blue Ribbon Beef Co., Inc. v. Napolitano, 696 A.2d 1225 (R.I. 1997) (cause of action for breach of contract occurs at the time of breach, even if damages do not occur until later, and regardless of whether or not either party is aware of the breach).[5] Here, assuming that Kemper breached the

---

[5] See also, e.g., Ely-Cruikshank Co., Inc. v. Bank of Montreal, 615 N.E.2d 985, 986 (N.Y. Ct. App. 1993) (cause of action for breach of contract occurs at the time of the breach itself, even if damages do not occur until later) (citations omitted).

General Release, such breach could only have occurred in 1983. This is <u>not</u> due to the fact that Plaintiff "received the annuity in 1983," as the Order mischaracterizes Kemper's argument. See the Order, p. 16. <u>Rather, it is due to the fact that the last time that Kemper had any involvement whatsoever with any person or entity relating to the General Release, or the Annuity or its establishment, was in 1983</u>. After paying the premium to establish the Annuity in May 1983, Kemper had no further obligations in connection with the Annuity, and after rejecting MetLife's attempt to change the terms of the Annuity in October 1983, Kemper did not receive any communications relating to the Annuity until this lawsuit was filed 22 years later. Indeed, under the terms of the Annuity, the only obligation to be fulfilled after 1983 was MetLife's obligation to make the required lifetime monthly payments to Plaintiff. Therefore, even if one assumes (all evidence to the contrary) that Kemper failed to establish a lifetime annuity, any failure on the part of Kemper could <u>only</u> have occurred in 1983. See, e.g., St. George Hotel Assocs. v. Shurkin, 786 N.Y.S.2d 56 (N.Y. App. Div. 2004) (ruling that breach of contract action accrued at time of insurance policy's procurement and issuance, not when damages allegedly occurred, and was therefore barred by statute of limitations).

The Order distinguishes the controlling caselaw by stating that "[t]his is not the case where the breach merely went undiscovered for a time. <u>Rather, whether or not Kemper even arguably breached the contract is actually indeterminate until adjudication of the terms of the Annuity. Holding Dimon to a statute of limitations on the general release would force him to forego his option of waiting for an actual breach of the annuity contract</u>." See Order, p. 16 (emphasis added).

It is respectfully submitted that these statements in the Order are manifestly incorrect, and do not in any way support the proposition that the controlling caselaw should not be applied in this case. This is so for at least two reasons.

First, the time of the adjudication of a contract's terms (or of any other substantive issue relating to the contract) does not and cannot determine the time that the cause of action for breach of contract accrued. Rather, in any given case, the cause of action accrues when the alleged breach occurs, and this necessarily occurs at a set point in time, regardless of when the substantive contract issues are adjudicated. In this case, the law compels the conclusion that, in no matter what year the terms of the Annuity are adjudicated, Kemper's alleged breach still necessarily must have occurred in 1983, and Plaintiff's cause of action against Kemper therefore must have accrued in 1983. By way of example, if Plaintiff had filed suit against Kemper and MetLife in 1988, then Kemper's alleged breach still would have occurred in 1983, and Plaintiff's cause of action against Kemper still would have accrued in 1983 - not in 2003, or in any other year. The difference under that scenario, of course, is that if Plaintiff had filed suit in 1988, then Kemper could not have availed itself of the statute of limitations defense (although Kemper's substantive defense would have been the same as it is now).

Second, the Order's assertion that "[h]olding Dimon to a statute of limitations on the general release would force him to forego his option of waiting for an actual breach of the annuity contract" is entirely incorrect. To the contrary, regardless of whether or not Plaintiff were held to the statute of limitations on the General Release, Plaintiff in any event would be permitted to wait to sue <u>MetLife</u> for actual breach of the Annuity. Because the doctrine of anticipatory repudiation can only be applied to MetLife, and not to Kemper, the Court's belief that Plaintiff must be entitled to maintain the "option of waiting for an actual breach of the

annuity contract" has no application whatsoever to Plaintiff's claim against Kemper. Therefore, the Order's assertion that holding Plaintiff to the statute of limitations on the General Release would deprive Plaintiff of his rights under the doctrine of anticipatory repudiation is entirely unfounded, because Plaintiff will have maintained, in any event, all of his rights under that doctrine (i.e., his right to proceed against MetLife on the Annuity).

In short, the law requires that Plaintiff be held to the statute of limitations on the General Release, and doing so will in no way limit Plaintiff's rights under the doctrine of anticipatory repudiation. Because Plaintiff commenced this action on May 23, 2005 – 22 years after Kemper's last involvement with the General Release, or with the Annuity or its establishment – Plaintiff's breach of contract claim against Kemper is clearly barred by any potentially applicable statute of limitations.

### C.   Plaintiff Has Not Established A Breach of Contract Claim Against Kemper.

Kemper is also entitled to summary judgment on the separate and independent ground that Plaintiff cannot establish a breach of contract claim against Kemper.

The Order repeatedly states that there is a "dispute" over the terms of the Annuity that requires a trial to determine whether Kemper in fact established a lifetime annuity. This statement is clearly erroneous. To the contrary, the documentary and testimonial evidence unequivocally demonstrates that Kemper established a lifetime annuity. There simply has been no evidence adduced that demonstrates otherwise, and arguments and assertions to the contrary, unsupported by any evidence, do not create a disputed issue of fact for summary judgment purposes.

The uncontroverted facts (in addition to those facts set forth above) are that on May 4, 1983, an annuity application from MetLife was signed by Kemper; the annuity application

required an annuity premium in the amount of $175,000.  See Mensie Dep. at ex. 2.  As payment for the annuity premium and in settlement of the Underlying Action, Kemper issued the Settlement Check, made payable to MetLife in the amount of $175,000, and Kemper's counsel delivered the Settlement Check to Plaintiff's lawyer.[6]  MetLife accepted the annuity premium, and on June 17, 1983, MetLife signed, issued, and delivered the Annuity.  See Mensie Dep. at ex. 11.  On June 6, 1983, MetLife began making monthly payments to Plaintiff in accordance with the terms of the Annuity.[7]

It is indisputable that MetLife issued a lifetime annuity.  On this incontrovertible point, the Annuity speaks for itself.  At the top of page one, centered and in bold print, the Annuity expressly provides that it has been issued under "**Option 2.  Life Income**."  See Mensie Dep. at ex. 11, p. 1 (emphasis in original).  In the first paragraph on page one, the Annuity further provides that "[MetLife] will pay a lifetime monthly income to the Annuitant if living on the Annuity Date."  Id. (emphasis added).  In the second paragraph on page one, the Annuity further provides that "[MetLife] will make the first monthly payment on the Annuity Date; payments after the first will be on that same date of the month as long as the Annuitant lives."  Id. (emphasis added).  The Annuity further provides, as its second to last page, a "Supplementary Agreement" that confirms the exact monthly payments to be made to Plaintiff.  Id. at ex. 11, Supplementary Agreement.  Under the column heading entitled "Manner of Payment," MetLife specifies that MetLife will make monthly payments to Plaintiff in the amount of "$1,450.45

---

[6] See the Settlement Check (attached to Kemper's Memorandum of Law in Support of Its Motion for Summary Judgment as Exhibit E); May 3, 1983 Correspondence (attached to Kemper's Memorandum of Law in Support of Its Motion for Summary Judgment as Exhibit F).

[7] This process was consistent with the typical annuity application process, wherein the annuity issuer relays a quote based upon a given premium cost, the annuity issuer's application reflecting the premium cost is signed by the annuity owner, the premium check and the application are submitted to the annuity issuer (directly or through a broker), and the annuity issuer issues the annuity.  See Mensie Dep. at 90:18-91:5.

each, increasing 3% annually, commencing June 6, 1983, <u>for a period of 240 months certain and life thereafter.</u>" <u>Id.</u> (emphasis added). Indeed, MetLife admitted that it had issued a lifetime annuity when it subsequently attempted to change the terms of the Annuity to provide for less than lifetime payments.[8]

Put simply, there has been no actual evidence adduced to support the assertion that Kemper did not establish a lifetime annuity. To the contrary, the clear, uncontroverted record evidence is that Kemper did exactly that. For this reason, Kemper is entitled to summary judgment on Plaintiff's breach of contract claim.[9]

## IV. <u>CONCLUSION</u>

---

[8] <u>See</u> Fasman Dep. at ex. 3, 5 and 8 (attached to Kemper's Memorandum of Law in Support of Its Motion for Summary Judgment as Exhibit G).

[9] The Order suggests that "it is possible that there was no 'meeting of the minds,' perhaps requiring this Court to reform the contract based on equitable principles," as MetLife posited in its Sur-Reply. <u>See</u> the Order, p. 14. Preliminarily, it is noted that MetLife first posited its "contract reformation" theory in its Sur-Reply, filed on December 12, 2007, and Kemper has not had the opportunity to respond to MetLife's Sur-Reply. In any event, MetLife's theory of contract reformation lacks any merit whatsoever as a matter of law, on a number of separate and independent grounds, including the following: (1) any action by MetLife against Kemper for contract reformation would be long time-barred, since any alleged cause of action would have accrued in 1983 (<u>see, e.g.</u>, <u>Wallace v. 600 Partners Co.</u>, 618 N.Y.S.2d 298, 300 (N.Y. App. Div. 1994) ("An action for reformation is governed by a six-year Statute of Limitations which accrues at the time of the alleged scrivener's error....")); (2) MetLife never attempted to return the premium in connection with the Annuity, as MetLife certainly would have been required to do in order to attempt to reform the contract; and (3) the caselaw that MetLife cites in its Sur-Reply in purported support of its theory of contract reformation is strikingly inapposite.

More specifically as to point (3), above, <u>none</u> of the cases cited by MetLife in its Sur-Reply is a case in which the court ruled in favor of contract reformation. Rather, <u>Riley v. Stafford</u>, 896 A.2d 701 (R.I. 2006), <u>Superior Glass Co., Inc. v. East Greenwich Savings Fund & Loan</u>, 92 R.I. 409 (1961), and <u>Nelson v. Rebello</u>, 26 Mass. App. Ct. 270 (1988) are all cases where the court simply found that no express written contract existed. For example, in <u>Nelsen</u>, in connection with a real estate sale, a preliminary offer form had been signed by the seller, but when the final agreement was presented to the seller, the seller refused to sign the agreement and returned the deposit to the buyer. Even if <u>Nelsen</u> involved a case of contract reformation – which it does not – its facts would in no way support contract reformation in the instant case, where a final agreement was signed by MetLife, performance was effected by MetLife, and MetLife returned no premium. In addition, <u>Vitale, Inc. v. Parker's Grille, Inc.</u>, 803 N.Y.S. 2d 871 (N.Y. App. Div. 2006), also cited by MetLife in its Sur-Reply, is equally inapposite. In <u>Vitale</u>, in connection with an alleged oral contract for construction services, the trial court had ruled that the cost of services had not been determined and awarded plaintiff damages on a quantum merit theory. The sole issue on appeal in <u>Vitale</u> was whether the amount that had been awarded by the trial court constituted the fair and reasonable value of the services rendered, and <u>Vitale</u>, therefore, has no possible application to the instant case.

For the foregoing reasons, Kemper respectfully requests that the Court (1) reconsider its Order insofar as the Order denies Kemper's motion for summary judgment on Plaintiff's breach of contract claim against Kemper, and (2) grant Kemper's motion for summary judgment on Plaintiff's breach of contract claim against Kemper.

Respectfully submitted,

KEMPER INSURANCE COMPANY

by its attorneys,

_____/s/ Anthony B. Fioravanti_____
Kevin S. Murphy (BBO #638335)
Anthony B. Fioravanti (BBO #664823)
YURKO SALVESEN & REMZ, P.C.
One Washington Mall, 11th Floor
Boston, MA 02108-2603
(617) 723-6900

<u>Of Counsel</u>
DRINKER BIDDLE & REATH LLP
Timothy O'Driscoll (Admitted Pro Hac Vice)
Kevin L. Golden (Admitted Pro Hac Vice)
DRINKER BIDDLE & REATH LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103-6996
(215) 988-2700

Dated: February 14, 2008

## Certification of Service

    I hereby certify that a true and accurate copy of the foregoing document was filed via the ECF system and will be served electronically through that system upon Counsel of Record on February 14, 2008.

                                                   /s/ Anthony B. Fioravanti
                                                      Anthony B. Fioravanti