UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DENNIS DIMON,<br><br>      Plaintiff,<br><br>v.<br><br>METROPOLITAN LIFE<br>INSURANCE COMPANY, KEMPER<br>INSURANCE COMPANY,<br>MICHAEL B. LATTI, LATTI<br>ASSOCIATES, and LATTI &<br>ANDERSON LLP,<br><br>      Defendants. | C. A. No: 05-11073 NG |

### METROPOLITAN LIFE INSURANCE COMPANY'S OPPOSITION TO KEMPER INSURANCE COMPANY'S MOTION FOR RECONSIDERATION OF THE COURT'S JANUARY 31, 2008 MEMORANDUM AND ORDER

Metropolitan Life Insurance Company ("MetLife") hereby opposes Kemper Insurance Company's ("Kemper") Motion for Reconsideration of this Court's January 31, 2008 Memorandum and Order, filed on January 31, 2008.

Kemper's Motion for Reconsideration is filed out of the time-frame allowed for filing and without leave of Court. Further and more importantly the Motion is based entirely on misdirection, misstatement and incorrect citations of law. Kemper also asks the Court to apply an inappropriate standard in considering its Motion. Further, Kemper argues factual conclusions that directly contradict the underlying undisputed evidence.

## FACTS

Kemper argues in its Brief:

> [O]n page 3 of the [January 31, 2008] Order, it is erroneously stated that the annuity application submitted by Kemper "was clearly inconsistent with the General Release". To the contrary the uncontroverted evidence (as opposed to assertion or argument, unsupported by any evidence) is that the application to which the Court refers is a modified application, and that this modified application is in any event consistent with a lifetime annuity.

Kemper's Memorandum at p. 3. Immediately following this passage, Kemper argues in a footnote:

> Specifically, the uncontroverted evidence is that the handwriting on the modified application was added by MetLife . . .

Id. at fn. 4. As Kemper and this Court knows, **there is no evidence from any source with knowledge to support the allegation that MetLife added the language in question.** This document <u>cannot</u> be considered as evidence on Summary Judgment or at Trial. Kemper's 30(b)(6) witness, Mr. Mensie's opinion on the handwriting is irrelevant and inadmissible as Mr. Mensie has never been identified as an expert on handwriting. Mr. Mensie's opinion is just <u>a guess</u>, and not even an educated guess. It benefits <u>every</u> party to this action to attribute the handwriting that appears on the Application to one of the <u>other</u> parties; <u>yet no party has been able to provide any direct evidence as to the origin of this writing</u>. Therefore, Kemper's representations to this Court that the writing is "uncontroverted evidence" and that MetLife added the handwriting on the application is a deliberate attempt to mislead this Court as to what the evidence will show at trial and is a deliberate misrepresentation of evidence to this Court.

## **ARGUMENT**

A.  <u>Legal Standard</u>

Kemper's Motion and Memorandum of Law identify one procedural standard for the Court to apply for Kemper's Motion for Reconsideration. Kemper argues that Reconsideration is appropriate where the Court has committed a "manifest error of law." Kemper's Memorandum at p.3. For support, Kemper cites to <u>Marie v. Allied Home Mortg. Corp.</u>, 402 F.3d 1 (1st Cir. 2005). Kemper's reliance on <u>Marie</u> is misplaced. The <u>Marie</u> case, which addresses issues related to arbitration of employment contracts, set forth the "Manifest Error of Law" standard in a Motion for Reconsideration that the Court reviewed under Rule 59, which deals with *Motions to Amend Judgments*. While it is true that the Motion for Reconsideration in <u>Marie</u> was an interlocutory Order, and not a Judgment, the Court treated it as a Rule 59 Motion, due to the unusual circumstances of that case. The Court treated the interlocutory Order as if it were a <u>Judgment</u>.

Kemper's Motion is <u>not</u> a motion to submit the case to arbitration, and Rule 59's "Manifest Error of Law" standard does not apply. The appropriate classification of Kemper's Motion is as a Rule 60(b)(1) Motion for Relief from Judgment or Order on the grounds of "(1) mistake, inadvertence, surprise, or excusable neglect." However, Kemper has failed to state special circumstances that would require the Court to reconsider its prior Order. As the First Circuit set forth in <u>Hoult v. Hoult</u>: "The gravamen of defendant's argument is that the district court wrongly decided a point of law. *This is not grounds for relief under Rule 60(b).*" 57 F.3d 1, 5 (1st Cir. 1995)(emphasis added). In <u>Silk v. Sandoval,</u> the First Circuit stated

> We neither understand the basis for this interpretation, nor sympathize with it. If the court merely wrongly decides a point of law, that is not inadvertence, surprise,

3

> or excusable neglect. Moreover, these words, in the context of the rule, seem addressed to some special situations justifying extraordinary relief. Plaintiff's motion is based on the broad ground that the court made an erroneous ruling, not that the mistake was attributable to special circumstances.

435 F.2d 1266, 1267-1968 (1st Cir. 1971), *cert. denied*, 402 U.S. 1012, 91 S. Ct. 2189, 29 L. Ed. 2d 435, 1971 U.S. LEXIS 1858 (1971). Kemper's desperate Motion is nothing more than a regurgitation of its previous arguments. It presents no special circumstances that would suggest that the Court should reconsider its ruling.

B.   Merits

Even if the Court decides that reconsideration of the January 31, 2008 Order is appropriate, the merits of Kemper's arguments are spurious, repetitive and baseless. MetLife further notes that Kemper's brief urges the Court to recognize a new and unusual definition of the word "uncontroverted" (or at times, "incontrovertible" or "indisputable"): to wit, it may be used to describe evidence and testimony that is "highly disputed" or "ambiguous" or "without any factual basis whatsoever." Without listing all nine questions of fact that Kemper argues are uncontroverted, the most glaring examples of Kemper's misuse of the English language include:

- That it is uncontroverted that the handwriting on the Annuity Application was added by MetLife after the original application had been submitted to Kemper. In support of this "fact", Kemper cites to the deposition of its own witness Mr. William Mensie. (Kemper Memorandum, P.3 fn. 4.) Yet, in the two pages of testimony cited by Kemper for this proposition, pages 80 and 85, the only testimony given by Mr. Mensie relating to the handwriting is the following:

  > There are certainly similarities in 2. Again now, Exhibit 4 is not legible as respects to sections 6, 8, nor the underlying date area. Section 14 seems to have been modified from Exhibit 2. It is not legible in Exhibit 14 after it

4

> says immediate annuity the remaining handwritten notes are not legible in 4; whereas in 3 it is. And in section 15 on Exhibit 4 the handwritten note or indicator on 15 that you can see on Exhibit 3 you cannot see on Exhibit 4.

When called upon to compare two versions of the Annuity application that were found in Kemper's files, Mr. Mensie notes that one contains handwritten notes not contained in the other version, but much of it is illegible. Contrary to Kemper's assertion, however, Mr. Mensie does not give an opinion or explanation as to the source of the handwriting.

- Next, Kemper states that the uncontroverted testimony is that the modified application elected a certain period of 20 years <u>and for life thereafter</u>. (Kemper Memorandum, p.3, fn. 4.) Again, the only evidence (as opposed to argument) cited by Kemper is Mr. Mensie's testimony. But when one reads the portion of Mr. Mensie's testimony cited by Kemper, it is as clear as mud:

> The certain period as signified by definition of the contract is outlined in a previous question that had been asked of me where I think it was one of the exhibits that, titled settlement options, I think the company defines certain period to the extent that it talks about a specific period of time which that 20 year would be as elected and thereafter for the remaining lifetime of the payee.

(Deposition at 256.) Yet, two pages prior to this testimony cited by Kemper, Mr. Mensie's testimony on the same issue is bell clear:

> Q:   No, on the application, 20 year certain, does that mean lifetime?
>
> THE WITNESS: Certain -- go ahead. I'm sorry.
>
> MR. O'DRISCOLL: Well, to the extent that you can answer.
>
> THE WITNESS: To the extent that I can answer this is that the certain signifies a specified period.

>BY MR. LeBLANC: And what on the application in Exhibit 3 is the specified period?
>
>A: In the handwritten document are you speaking of in section 14?
>
>Q: I'm speaking of Exhibit 3, what is the certain period represented in that application?
>
>A: The application in section 14 is handwritten immediate annuity 20 year certain...

(Id. at 254-255.)

Other examples of Kemper's "uncontroverted" evidence abound throughout its Memorandum.

Kemper's Memorandum strains to distance itself from the process that lead to the purchase of the Annuity. For instance, Kemper claims that the broker that purchased the Annuity was Plaintiff's broker, not Kemper's.[1] (See Memorandum at 2.) However, the broker generally owes a fiduciary duty to its customer, the purchaser of its services. See Patsos at 332-333 (citing Hill v. Bache Halsey Stuart Shields, Inc., 790 F.2d 817, 824 (10th Cir. 1986). In fact, Kemper claims that its only involvement in the Annuity purchase was to provide a check for $175,000.00. At the same time that Kemper attempts to minimize its involvement, however, it is quite confident in stating what it had accomplished: '[T]he documentary and testimonial evidence unequivocally demonstrates that Kemper established a lifetime annuity." (Memorandum, p. 8, Sec. C.) Were that the

---

[1] It is odd that Kemper chooses to advance this argument, since it undercuts Kemper's ability to recover against Morgan Stanley for indemnification should Kemper lose at trial. Where as here the purchaser is not directing the Broker to purchase certain instruments, but is instead relying on the broker's skill and knowledge, a fiduciary relationship will be found. See Patsos v. First Albany Corp., 433 Mass. 323, 332-333 (Mass. 2001).

6

case, this matter would not be in suit.  Kemper's duties under the General Release were not to pay $175,000.00 toward the purchase of an Annuity, then fly from further responsibility.  The General Release calls for "the establishment of a fully paid annuity contract for [Mr. Dimon's] benefit. . . "  The key to this passage is the use of the word "establishment" instead of the word "purchase" <u>and the fact that the cost of the annuity was not a term of the agreement</u>, as one would expect it to be if mere payment was all that was expected of Kemper.

Next Kemper argues that the Statute of Limitations has run on Plaintiff's claims against it because any failure on the part of Kemper to establish a lifetime Annuity could only have occurred in 1983.  (Memorandum at p. 7.)  Kemper relies on the <u>St. George Hotel Assocs. v. Shurkin</u> case in which a broker was sued for failing to procure as agreed insurance coverage for a building on a replacement cost basis, instead providing an actual cash value policy.  786 N.Y.S.2d 56 (N.Y. App.Div. 2004).  The Plaintiff's case was dismissed when the Court found that Plaintiff commenced the suit (to recover for a loss) more than six years after the policy issued and, therefore, beyond the Statute of Limitations.  Kemper argues that, in the same way, the Statute of Limitations on Plaintiff's claims against it began to run when the policy was procured.  But Kemper fails to identify why, when it has repeatedly denied any duty to Plaintiff under the Annuity, the <u>St. George</u> case has any relevance to its contract with Mr. Dimon.  Kemper's duties arise from the General Release.  The date that the Annuity issued is, therefore, a *non sequitor*.  (For MetLife, however, the holding of <u>St. George</u> further supports the arguments it has set forth to the Court that Plaintiff's claims against it are prohibited by the Statute of Limitations.)

7

Finally, Kemper argues that it cannot be found liable for a breach of the settlement agreement between Kemper and Dimon because any breach of that agreement would have occurred in 1983 and the Statute of Limitations has since run. By focusing on the date of the release agreement as the time when the Statute of Limitations begins to run, Kemper is in effect arguing that there could *never* be a contract for a period longer than the Statute of Limitations because the parties would only have to perform their duties until the Statute had run at which time it would no longer be enforceable. Clearly, that interpretation would be abused by the unscrupulous. A party could continue to proclaim that the contract was binding throughout the contract's term, then, once the statutory period had passed, reverse its position. Kemper appears to have been operating pursuant to that plan when it continued to refuse to acknowledge that any mistake had been made (by any party) back in 1983 until after the statutory period had run. Instead, it waited for the Annuity payments to end, then raised for the first time the argument that Mr. Dimon should have sued Kemper back in 1983. The Court should not reward such conduct with a judgment in Kemper's favor.

**WHEREFORE**, MetLife respectfully requests that this Honorable Court deny

Kemper's Motion for Reconsideration of the January 31, 2008 Memorandum and Order.

                                Defendant,
                                Metropolitan Life Insurance Company,
                                By its Attorneys,

                                /s/ James J. Ciapciak
                                James J. Ciapciak, BBO # 552328
                                Peter LeBlanc, BBO # 645305
                                CIAPCIAK & ASSOCIATES, P.C.
                                99 Access Road
                                Norwood, MA 02062
                                (781) 255-7401

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing document was filed via the ECF system and will be served electronically through that system upon Counsel of Record on February 27, 2008.

                                /s/ James J. Ciapciak
                                James J. Ciapciak