UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DENNIS DIMON )<br>    Plaintiff )<br>)<br>v. )<br>)<br>METROPOLITAN LIFE )<br>INSURANCE COMPANY, KEMPER )<br>INSURANCE COMPANY, )<br>MORGAN STANLEY DW, INC., )<br>MICHAEL B. LATTI, LATTI )<br>ASSOCIATES, LATTI & ANDERSON )<br>LLP, )<br>    Defendants )<br>) | Civil Action No. 05-11073-NG |

**LEAVE TO FILE GRANTED ON MARCH 11, 2008**

**REPLY OF DEFENDANT KEMPER INSURANCE COMPANY
IN RESPONSE TO DEFENDANT METROPOLITAN LIFE INSURANCE COMPANY'S
AND PLAINTIFF'S OPPOSITIONS TO THE MOTION FOR RECONSIDERATION OF
THE COURT'S JANUARY 31, 2008 MEMORANDUM AND ORDER**

Kemper hereby files this brief Reply in response to MetLife's Opposition to Kemper's Motion for Reconsideration (the "Motion") of the Court's January 31, 2008 Memorandum and Order (the "Order"), and also in response to Plaintiff's Opposition to Kemper's Motion.

Kemper files this Reply primarily in order to bring to the Court's attention several of the more significant errors of law and logic contained in MetLife's Opposition, since Plaintiff's Opposition essentially relies on the Order (except as set forth in Section I, below).

I.  **Contrary To Plaintiff's Assertion In His Opposition, Kemper's Motion Is Timely.**

Contrary to Plaintiff's assertion in his Opposition, Kemper's Motion is indeed timely. The Order was entered on January 31, 2008. Rule 59(e) requires that motions for reconsideration be filed within 10 days of the entry of the order. See Fed. R. Civ. P. 59(e). Rule

6(a)(2) provides that intermediate Saturdays and Sundays are excluded when the time period specified by any rule is less than 11 days. See Fed. R. Civ. P. 6(a)(2). Excluding the four intermediate Saturdays and Sundays, Kemper was therefore required to file the Motion on or before February 14, 2008 – and on February 14, 2008, Kemper did in fact file the Motion. By virtue of his failure to take into account the provisions of Rule 6(a)(2), Plaintiff's argument that Kemper's Motion is untimely is simply incorrect.[1]

## II.  MetLife's Opposition Cites An Inapplicable Legal Standard.

In its Opposition, MetLife asserts that the Motion is governed by Fed. R. Civ. P. 60(b), rather than Fed. R. Civ. P. 59, and that Kemper has suggested application of an incorrect legal standard. Both of MetLife's assertions are flatly wrong.

First, it is well established that a motion for reconsideration should be construed as a motion to alter or amend a judgment under Rule 59(e) – not as a motion for relief from judgment or order under Rule 60(b), as MetLife incorrectly asserts in its Opposition. See Marie v. Allied Home Mortg. Corp., 402 F.3d 1, 7 (1st Cir. 2005) (citing United States v. $ 23,000 in U.S. Currency, 356 F.3d 157, 165 n.9 (1st Cir. 2004); Young v. Gordon, 330 F.3d 76, 80 (1st Cir. 2003); In re Sun Pipe Line Co., 831 F.2d 22, 24 (1st Cir. 1987) ("Notwithstanding that [appellant] did not denominate any particular rule as the springboard for its reconsideration motion, it is settled in this circuit that a motion which asked the court to modify its earlier

---

[1] It is noted that Plaintiff's Opposition repeatedly and inexplicably refers to Kemper's Motion as the "second" motion for reconsideration of the Order. That assertion, too, is demonstrably false. On February 14, 2008, Kemper filed its Motion, requesting that the court reconsider the Order insofar as the Order denies Kemper's motion for summary judgment on Plaintiff's breach of contract claim against Kemper. Kemper's Motion (in addition to being the only motion for reconsideration that Kemper has ever filed in this lawsuit) is the only motion for reconsideration of the Order that any party has filed. While MetLife had previously filed a motion for reconsideration of the Court's September 26, 2007 order, that motion (which was denied) obviously had nothing to do with Kemper's instant Motion.

disposition of a case because of an allegedly erroneous legal result is brought under Fed. R. Civ. P. 59(e).")).

Second, as Kemper correctly stated in its Motion, it is well established that the general rule in the First Circuit is that, on a motion for reconsideration, "the moving party must 'either clearly establish a manifest error of law or must present newly discovered evidence.'" Marie, supra, 402 F.3d at 7 n. 2 (citing Pomerleau v. W. Springfield Pub. Sch., 362 F.3d 143, 146 n.2 (1st Cir. 2004) (quoting FDIC v. World Univ. Inc., 978 F.2d 10, 16 (1st Cir. 1992)), and 11 C. Wright et al., Federal Practice & Procedure § 2810.1 (2d ed. 1995)).

### III. MetLife's Opposition Fails To Refute Kemper's Argument That The Court Should Reconsider The Order As It Relates To Kemper's Statute Of Limitations Defense.

MetLife's Opposition fails to refute Kemper's argument that the Court should reconsider the Order as it relates to Kemper's statute of limitations defense. Indeed, MetLife's Opposition actually unintentionally demonstrates an important proposition set forth by Kemper in its Motion: namely, that the key to understanding that the Order's rejection of Kemper's defense constitutes a clear error of law lies in understanding that Kemper's defense presents entirely different issues than does MetLife's defense.

Preliminarily, MetLife's Opposition does not dispute that, as to Kemper, the only question with respect to the statute of limitations issue is when Plaintiff's cause of action for alleged breach of the General Release accrued. MetLife's Opposition also does not dispute that the law of all potentially relevant jurisdictions is very clear that a cause of action for breach of contract accrues at the time of breach itself, even if damages do not occur until later, and

regardless of whether or not either party is aware of the breach.[2] Further, MetLife's Opposition does not dispute that the Order was manifestly incorrect in stating that the above-cited caselaw should not be applied in this case because (1) "whether or not Kemper even arguably breached the contract is actually indeterminate until adjudication of the terms of the Annuity," and (2) "[h]olding Dimon to a statute of limitations on the general release would force him to forego his option of waiting for an actual breach of the annuity contract." See Motion, at 6-8.

MetLife's Opposition does not and cannot dispute any of this. What MetLife argues instead is very telling. MetLife argues as follows:

> By focusing on the date of the release agreement as the time when the Statute of Limitations begins to run, Kemper is in effect arguing that there could never be a contract for a period longer than the Statute of Limitations <u>because the parties would only have to perform their duties until the Statute had run</u> at which time it would no longer be enforceable.

Opposition at 8 (emphasis added). However, this argument is entirely inapplicable as to Kemper's statute of limitation defense, since Kemper's only duty was to establish the Annuity in 1983, and Kemper had no "duties" to "perform" after 1983. Rather, Metlife's argument only militates against the conclusion that Plaintiff's cause of action against MetLife accrued in 1983, since MetLife was the only party that had any "duties" to "perform" after 1983 (i.e., making the monthly payments to Plaintiff). Because Kemper – unlike MetLife – had no "duties" to "perform" after 1983, MetLife's argument is entirely inapplicable as to Kemper's statute of limitations defense.

MetLife continues to pursue its argument, as follows:

---

[2] See e.g., Gail Frances, Inc. v. Alaska Diesel Elec., Inc., 62 F. Supp. 2d 511, 515 (D.R.I. 1999) (citing Blue Ribbon Beef Co., Inc. v. Napolitano, 696 A.2d 1225 (R.I. 1997) (cause of action for breach of contract occurs at the time of breach, even if damages do not occur until later, and regardless of whether or not either party is aware of the breach); Ely-Cruikshank Co., Inc. v. Bank of Montreal, 615 N.E.2d 985, 986 (N.Y. 1993) (cause of action for breach of contract occurs at the time of the breach itself, even if damages do not occur until later) (citations omitted).

> Clearly, that interpretation would be abused by the unscrupulous. A party could continue to proclaim that the contract was binding throughout the contract's term, <u>then, once the statutory period had passed, reverse its position</u>. Kemper appears to have been operating pursuant to that plan when it continued to refuse to acknowledge that any mistake had been made (by any party) back in 1983 until after the statutory period had run. Instead, it waited for the Annuity payments to end, <u>then raised for the first time the argument that Mr. Dimon should have sued Kemper back in 1983</u>.

Opposition at 8 (emphasis added). To the extent that these statements make any sense at all, they are – again – entirely inapplicable as to <u>Kemper</u>. Most importantly, Kemper has never "reverse[d] its position" in connection with the General Release or the Annuity. Indeed, in 1983, it was Kemper that refused <u>MetLife's</u> attempt to change the terms of the Annuity, and advised Plaintiff of same. The next time that <u>Kemper</u> had any communications whatsoever in connection with the General Release or the Annuity was 22 years later, in 2005, when Kemper was sued after MetLife had ceased making payments to Plaintiff. No one can dispute that Kemper holds exactly the same position now as Kemper did in 1983. As for MetLife's suggestion that Kemper somehow "waited" to raise the statute of limitations defense, it ought to be obvious that, before Kemper was sued, Kemper had no ability or reason to raise a statute of limitations defense; MetLife's suggestion to the contrary is simply nonsensical.[3]

---

[3] Further, contrary to MetLife's assertion at page 7 of its Opposition, <u>St. George Hotel Assocs. v. Shurkin</u>, 786 N.Y.S.2d 56 (N.Y. App. Div. 2004) fully supports Kemper's statute of limitations defense. In <u>St. George Hotel</u>, the defendant had a contract with the plaintiff to secure a certain type of insurance policy from a third party issuer for the benefit of the plaintiff. See <u>St. George Hotel</u>, 786 N.Y.S.2d at 57. Seven years later, the plaintiff made a claim to the issuer under the subject policy, consequently learned that the policy allegedly was not of the correct type, and thereupon sued the defendant for breach of contract for failure to secure the correct type of policy. <u>Id</u>. The <u>St. George Hotel</u> court granted the defendant's motion for summary judgment and dismissed the plaintiff's suit on statute of limitations grounds, holding that the plaintiff's cause of action against the defendant accrued when the allegedly incorrect policy was procured and issued, more than six years earlier. <u>Id</u>. In the instant case, as in <u>St. George Hotel</u>, Plaintiff has claimed that Kemper breached a contract (i.e., the General Release) by allegedly failing to establish the correct type of annuity policy. Under <u>St. George Hotel</u>, Plaintiff's purported breach of contract claim against Kemper therefore accrued when the allegedly incorrect annuity policy was procured and issued, which was in 1983.

Because MetLife's Opposition fails to refute Kemper's argument that the Court should reconsider the Order as it relates to Kemper's statute of limitations defense – and indeed, actually further demonstrates the all-important fact that Kemper's defense presents entirely different issues than does MetLife's defense – Kemper's Motion should be granted.

### IV. MetLife's Opposition Fails To Refute Kemper's Argument That The Court Should Reconsider The Order As It Relates To The Substantive Elements Of Plaintiff's Purported Breach of Contract Claim Against Kemper.

MetLife's Opposition also fails to refute Kemper's argument that the Court should reconsider the Order as it relates to the substantive elements of Plaintiff's purported breach of contract claim against Kemper, and Kemper's Motion should be granted on this separate and independent ground as well.

MetLife's Opposition offers no evidence to support the notion that the Annuity was somehow not a lifetime annuity – which is not surprising, given that no such evidence has been produced. The best that MetLife can do is to assert that "this matter would not be in suit" if Kemper did in fact establish a lifetime annuity. See Opposition at 6-7. That assertion, of course, simply begs the question before the Court, which is whether Plaintiff's claim against Kemper is supported by actual evidence. The fact that this matter is "in suit" is probative of nothing; that Plaintiff has chosen to file a lawsuit against Kemper and MetLife, as opposed to filing a lawsuit only against MetLife, is obviously not itself evidence in support of Plaintiff's claim against Kemper.[4]

### V. MetLife's Opposition Fails To Refute That The Modified Annuity Application Is Entirely Consistent With A Lifetime Annuity.

---

[4] Further, MetLife's Opposition does not dispute that MetLife's theory of "contract reformation" lacks any merit as a matter of law. See Motion at 10 n. 9.

As to the modification of the Annuity application, the uncontroverted documentary and testimonial evidence is that the original application (i.e., without any handwriting) was the application signed by Mr. John Noe of Kemper, and that the handwriting on the modified application was added by MetLife after the original application had been submitted by Mr. Noe.[5] All of the evidence is to this effect, and there is no evidence to the contrary. Further, the absence of handwriting on the original application submitted by Kemper and the fact that MetLife later added it are plainly facts that do not require the opinion of "an expert in handwriting," as MetLife erroneously suggests in its Opposition.

In any event, the modified application is entirely consistent with a lifetime annuity. In its Opposition, MetLife does not even attempt to contest the fact that the documents speak for themselves in this regard.[6] Further, Mr. William Mensie (Kemper's witness under Fed. R. Civ. P. 30(b)(6)) testified to this point at his deposition not once, but during three separate exchanges, and under questioning from counsel for an opposing party during each exchange.[7]

## VI.  Conclusion

For the foregoing reasons, and those set forth in Kemper's Motion, Kemper respectfully requests that the Court (1) reconsider its Order insofar as the Order denies Kemper's motion for

---

[5] See Fasman Dep. at ex. 6 (Mr. Noe stating that "…Sections 14 and 15 of the application that I signed were blank. The entries now appearing were filled in after I returned the signed application."); see also Mensie Dep. at 80:17-82:1, 85:19-22, and at ex. 2 (the original application - not the modified application – was the only application signed by Mr. Noe).

[6] See Motion at 3, n. 4.

[7] Id. In its Opposition, MetLife cites to several lines of Mr. Mensie's deposition transcript from the beginning of one of these three exchanges, in an apparent attempt to suggest an inconsistency. See Opposition at 5-6. However, a review of the entirety of that exchange readily demonstrates that the lines cited by MetLife are consistent with – and indeed, of a piece with – that exchange, and fully support the conclusion that the modified application is entirely consistent with a lifetime annuity. See Mensie Dep. at 254:22-256:14.

summary judgment on Plaintiff's breach of contract claim against Kemper, and (2) grant Kemper's motion for summary judgment on Plaintiff's breach of contract claim against Kemper.

          Respectfully submitted,

          KEMPER INSURANCE COMPANY

          by its attorneys,

          /s/ Anthony B. Fioravanti
          Kevin S. Murphy (BBO #638335)
          Anthony B. Fioravanti (BBO #664823)
          YURKO SALVESEN & REMZ, P.C.
          One Washington Mall, 11th Floor
          Boston, MA 02108-2603
          (617) 723-6900

          <u>Of Counsel</u>
          DRINKER BIDDLE & REATH LLP
          Timothy O'Driscoll (Admitted Pro Hac Vice)
          Kevin L. Golden (Admitted Pro Hac Vice)
          DRINKER BIDDLE & REATH LLP
          One Logan Square
          18th & Cherry Streets
          Philadelphia, PA 19103-6996
          (215) 988-2700

Dated: March 11, 2008

**Certification of Service**

I hereby certify that a true and accurate copy of the foregoing document was filed via the ECF system and will be served electronically through that system upon Counsel of Record on March 11, 2008.

                                                    /s/ Anthony B. Fioravanti
                                                      Anthony B. Fioravanti