UNITES STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| DENNIS DIMON, <br> Plaintiff, | ) ) ) ) | |
| vs. | ) ) | CIVIL ACTION NO. 05-11073 NG |
| METROPOLITAN LIFE <br> INSURANCE COMPANY, KEMPER <br> INSURANCE COMPANY <br>     Defendants. | ) ) ) ) ) | |

**PLAINTIFF, DENNIS DIMON'S, SUR-REPLY IN RESPONSE TO DEFENDANT KEMPER INSURANCE COMPANY'S REPLY TO PLAINTIFF'S OPPOSITION TO KEMPER'S MOTION FOR RECONSIDERATION OF THIS COURT'S JANUARY 31. 2008 ORDER AND MEMORANDUM PURSUANT TO JUDGE GERTNER'S ORDER ON MARCH 11, 2008**

Plaintiff Dennis Dimon hereby files its Sur-Reply to Kemper's Reply to the Oppositions filed by Metlife and the plaintiff to Kemper's Motion for reconsideration of the Court's January 31, 2008 Memorandum and Order.  Based upon reasons stated herein and a review of the law cited by Kemper the plaintiff respectfully requests that this Court deny Kemper's Motion for Reconsideration.

The Court in its January 31 2008 Order correctly states that any "breach by Kemper was too uncertain to begin a running of the Statue [of Limitations]."  Kemper's liability in this matter will not be determined until adjudication of the terms of the annuity and the responsibilities of the remaining defendants.  A question of fact remains as to whether Kemper fulfilled its duties to Mr. Dimon.

In support of its position Kemper cites several different cases which for the below reasons are distinguishable from this matter.

**Gail Frances, Inc. v. Alaska Diesel Elec., Inc., 62 F.Supp.2d 511 (D.C.RI 1999):**

This case cites to R.I.Gen.Laws 1956, § 6A-2-725 for the claim that "The cause of action [for a breach of contract] accrues at the time of the breach itself regardless of whether or not either party is aware of the breach." Gail Frances, 62 F.Supp2d at 515. This statute does not apply to plaintiff's claim because, as stated in the opinion just prior to the above language – and in the statute itself – § 6A-2-725 is Rhode Island's adoption of U.C.C. § 2-725. Since the plaintiff's claim arises out of a securities agreement, Section 8 governs and Section 2, which only applies to contracts for "goods", is inapplicable.

Gail Frances is inapplicable for the same reason: Gail Frances, Inc. bought six engines from the defendant. When the engines started to break down (and one actually exploded) after only a few years, they brought suit for breach of contract and breach of warranty.

The opinion sets the stage for its application of the above statute by clarifying that:

> The Rhode Island Uniform Commercial Code governs transactions in goods. See R.I.Gen.Laws 1956, § 6A-9-105 (1992) [this is a typo and should read 6A-**8**-105]. Goods are defined as moveable, personal property. See Id. This case is governed by the Rhode Island UCC because engines are clearly "goods" under that statute. Gail Frances, 62 F.Supp2d at 514, 515.

R.I.Gen.Laws 1956, § 6A-2-105 defines "Goods" as follows:

> (1) "Goods" means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (chapter 8 of title 6A), and things in action. "Goods" also includes the unborn young of animals and growing

crops and other identified things attached to realty as described in the section on goods to be severed from realty (§ 6A-2-107).

**Ely-Cruikshank Co., Inc. v. Bank of Montreal, 81 N.Y.2d 399, 615 N.E.2d 985 (1993).**

This case is distinguishable on its face because it deals with the sale of real property and a suit for the collection of a commission rather than the sale of an investment security. The broad language of the decision however, requires further "drilling" in order to place it in the proper context.

The facts of Ely-Cruikshank differ substantially from the present case in that Ely-Cruikshank had an exclusive broker agreement with the defendant bank related to their property located on Wall Street that was properly terminated by the bank on November 30, 1983. The bank then sold the property themselves on February 1, 1984 and the brokerage filed their suit on January 26, 1990 alleging that the bank had secretly negotiated the sale prior to their termination of the agreement. *See* Ely-Cruikshank, 81 N.Y.2d at 401. The lower court dismissed the complaint because the agreement had terminated prior to the consummation of the sale. Id. The Appellate Division reinstated the breach of contract claim based upon its holding that the Statute of Limitations ran from the date the building had been sold and then granted to leave to appeal on a certified question. Id. at 402. The Court of Appeals of New York then answered the certified question in the negative and eliminated the breach of contract claim. Id. at 404.

Though Kemper relies on this case for the proposition that "The Statute runs from the time of the breach though no damage occurs until later" (Ely-Cruikshank, 81 N.Y.2d at 402), the majority opinion distinguishes our case and the minority opinion supports our case.

The Court of Appeals decision has two sides and is centered upon a determination of *when* a breach occurs and therefore accrues. Id. Though it also involves a dispute regarding the

damages element necessary for a claim for breach of contract to survive a motion to dismiss (Id.), that dispute is inapposite to our issues with the Ely-Cruikshank case and the manner in which the defense seeks to employ it.

The majority places the "time of breach", not at the date of sale, but at the time of the "secret negotiations." Id. *and* at 403. The court states that "[the broker] did not, and could not, allege that the bank breached the contract by selling the building after it had properly terminated the contract." Id. The court also points out that the broker/bank agreement "explicitly limited [the broker's] right to a commission '[u]pon and after termination of [the] agreement' to 'any pending negotiation for a *lease*,' not a sale." Id.

No matter how our court receives the majority opinion's treatment of the statute of limitations, if we follow the Ely-Cruikshank majority's application, Dimon's action did not occur and therefore accrue until his benefits were stopped. Though Kemper may be arguing that the four letters in 1983 were the equivalent or parallel to the "secret negotiations" in Ely-Cruikshank, they are not because, as this court has held, Kemper's reply to MetLife's "attempted modification" was a "rejection" of their "attempted modification." Therefore, the prior "secret dealings" are absent in Dimon where a "rejection" does not a "deal" make.

The Ely-Cruikshank dissent argues that the cause of action for breach of contract cannot accrue until the time for performance has passed, or, in Ely-Cruikshank, the time the commission would have been due but not paid – or the time of sale. Id. at 407, 408. The dissent further states that "Under the general rule that a cause of action accrues when there is some right to relief, the cause of action could not have accrued solely as a consequence of defendant's conduct in conducting the secret negotiations . . . and illicitly terminating the management agreement." Id. at 407 *citing to* 1 Weinstein-Korn-Miller, N.Y.Civ.Prac. ¶ 201.02, at 2-10.

In <u>Dimon</u>, none of the agreed-to terms were "crossed" or breached until the payments stopped. As discussed earlier, no matter which "agreement" you choose to go with: Kemper and the "Life Annuity" or MetLife and the "20-year Only", BOTH were perfectly performed until the payments were stopped after the 20-year period that existed in both versions of the contract had run its proper course.

Therefore, where Kemper's "rejection" does not equate to a "secret deal" and where both versions of the agreement in <u>Dimon</u> were perfectly performed until payments stopped after the agreed-to 20-year period had expired, <u>Dimon</u> is distinguished from the <u>Ely-Cruikshank</u> court's application of the Statute of Limitations to its very different facts.

**<u>Blue Ribbon Beef Company, Inc. v. Nappolitano</u>, 696 A.2d 1225 (1997)**

<u>Blue Ribbon</u> was a former tenant of city property who brought an action against the city treasurer to recover damages after city sold its property. The Superior Court dismissed on Statute of Limitation grounds and was reversed and remanded by the Supreme Court of Rhode Island (585 A.2d 67). The tenant won on remand and the City Treasurer appealed <u>the calculation of damages</u> which brings us to the instant case cited by Kemper.

Kemper's citation of this case is of particular interest because it only provides support for their argument by way of pure *dicta* – it is not a holding. Further reading echoes the findings of the <u>Ely-Cruikshank</u> majority and reveals support for plaintiff's argument that Dimon could not have sued until he had actual support for the element of damages.

The case cites to a sub-cite of <u>Gail Frances</u>. *See* <u>Gail Frances, Inc. v. Alaska Diesel Elec., Inc.</u>, 62 F.Supp.2d 511, 515 (D.C.RI 1999) *citing to* <u>Blue Ribbon</u>, 696 A.2d at 1229. Though the sub-cite is to the *second* <u>Blue Ribbon</u> appeal, 1229 does refer to the first appellate

decision (<u>Blue Ribbon</u>, 585 AA.2d 67, 69 (1991)) where the Supreme Court of Rhode Island in reversing and remanding a lower court decision held that "Blue's action accrued for statute-of-limitations purposes" on the date that it was actually damaged, or "the date when Blue's lawful possession of the premises terminated under its original lease with [the city], and when the lease extension was to begin." *See* <u>Id</u>. The court reached this holding by reasoning that neither party's argument regarding the proper time of accrual was accurate because neither provided a date by which "Blue" could "assert any claim for damages." *See* <u>Id</u>. at 68.

Based upon a review of the forgoing, Kemper's Motion should be denied.

WHEREFORE, Dennis Dimon respectfully requests that this Court deny Kemper's Motion for Reconsideration.

Respectfully submitted,

 /s/Brian Keane_____
DAVID B. KAPLAN, B.B.O. No. 258540
BRIAN KEANE, B.B.O. No. 656717
THE KAPLAN/BOND GROUP
88 Black Falcon Avenue, Suite 301
Boston, MA 02210
(617) 261-0080

Dated: March 25, 2008

> I hereby certify that a true copy of the above document was served upon each attorney of record by ECF on March 25, 2008.
>
>  /s/Brian Keane_____