UNITES STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

_____
                                      )
DENNIS DIMON,                         )
Plaintiff,                            )
                                      )
vs.                                   )     CIVIL ACTION NO. 05-11073 NG
                                      )
METROPOLITAN LIFE                     )
INSURANCE COMPANY and KEMPER)
INSURANCE COMPANY,                    )
                                      )
          Defendants.                 )
_____)

**JOINT PRETRIAL MEMORANDUM**

Now come the parties, in the above entitled action, by and through their undersigned counsel, and respectfully submit this Joint Pre-Trial Memorandum.

This Pre-Trial Memorandum is submitted despite the fact that there are outstanding motions, and due to the outstanding motions that have yet been ruled upon, issues of fact and law remain unknown and formal mediation has been on hold.

I.     **CONCISE SUMMARY OF PARTIES' POSITIONS**

A.     **The Plaintiff**

In or about 1981, the Plaintiff, Dennis Dimon, was severely injured while serving as a member of the crew of the F/V JENNY C, resulting in the loss of his eye.   On or about February 4, 1983, following a trial in the United States District Court for the District of Rhode

Island, a jury awarded the Plaintiff $710,000.00 for his injuries against the Defendant, F/V Jenny C, Inc.

Following the verdict the parties entered into a settlement agreement and appeared before the Honorable Judge Pettine for approval of the settlement. Judge Pettine became quite concerned that the Plaintiff, Dennis Dimon did not comprehend or understand the provisions of the settlement and discontinued the Settlement Conference. To protect Mr. Dimon, Judge Pettine appointed Leonard Decof as Guardian Ad Litem to represent the interests of Mr. Dimon and report to the court the particulars of the settlement agreement. On or about May 3, 1983, Mr. Decof reported to the Honorable Judge Pettine that the Plaintiff was to receive a total settlement of $425,000.00 consisting of a lump sum payment of $250,000.00 with the remaining $175,000.00 to be used to fund an annuity guaranteed for 20 years which would *continue for the life of the Plaintiff.* The annuity would pay the Plaintiff a set amount of $1,450.45 increasing per annum by 3%. The Plaintiff signed a General Release which fully set out the agreements reached in the underlying personal injury claim and contained a description of the annuity for the benefit of the Plaintiff.

The excess insurance carrier for the F/V JENNY C was the American Motorist Insurance Company now known as the Kemper Insurance Company. Kemper Insurance Company used $175.000.00 of the money it was paying for settlement of the underlying personal injury case to apply for an annuity contract with Charter Security Life (Metropolitan). American Motorist/Kemper Insurance was the applicant and owner of the annuity contract. The issuing company was the Defendant, Charter Security Life Insurance Company now known as Metropolitan Life Insurance Company. Mr. John Noe an agent for Kemper Insurance Company signed the original Annuity Application and in later correspondence denied that information

which materially altered the settlement agreement was present on the Application when he signed.

In response to the agreement entered into by the parties, on or about June 17, 1983, Charter Security Life/Metropolitan, through its Vice President Barbara Boehm, signed and dated its Single Premium Deferred Annuity for the benefit of Dennis Dimon. The annuity on its face was for lifetime monthly income. Attached to the Deferred Annuity was a Supplementary Agreement. The Supplementary Agreement provided in part that the primary payee, Dennis Dimon, shall receive "[m]onthly payments in the amount of $1450.45, increasing 3% annually, commencing on June 6, 1983, for a period of 240 months certain and *life thereafter*."

On or about July 14, 1983, Charter Security/Metropolitan Life through its Vice President, Barbara Boehm, informed the parties to the agreement that a clerical error had been made on the annuity contract and that the contract should have read for 240 months (20 years), rather than for life with a guarantee of 20 years. On or about August 12, 1983, Kemper Insurance Company, through its employee, John Noe, responded by indicating that the annuity applied for was to provide payments for 240 months certain (20 years), and life thereafter for a single premium of $175,000.00. Mr. Noe's August 12, 1983 correspondence indicated to all parties copied that there was a General Release and that the settlement was approved by Judge Pettine of the United States District Court District of Rhode Island.

During this period of time after the annuity was ratified by Judge Pettine of the District Court of Rhode Island, the Plaintiff, Dennis Dimon, was not advised of the proposed changes, nor was the Court or the Guardian Ad Litem.

In May of 2003 after 240 months (20 years), Metropolitan discontinued payments to Mr. Dimon.

**B.     Metropolitan Life Insurance Company**

The evidence at trial will show:

1.     Plaintiff, Dennis Dimon ("Dimon"), was injured in 1981while serving as a member of the crew aboard the F/V Jenny "C.".

2.     At the time of the injury, Dimon was employed by Jenny "C.", Inc., a company organized under the laws of the State of Rhode Island.

3.     At the time of Dimon's injury, Jenny "C.", Inc., owned, operated and controlled the F/V Jenny "C.".

4.     In 1981, Dimon brought a personal injury action against Jenny "C.", Inc. seeking compensation for his injuries.

5.     Home Insurance Company insured Jenny "C.", Inc. with a policy limit of $100,000 when Dimon was injured.

6.     American Motorists Insurance Company ("American Motorists") was the excess insurance carrier for Jenny "C.", Inc. with a policy limit of $400,000 when Dimon was injured.

7.     American Motorists was part of the Kemper Group, and is now Kemper Insurance Company.

8.     The case in which Dimon sued the vessel's owner was captioned: <u>Dimon v. Jenny "C.", Inc.</u>, C.A. 81-0063, and was filed in the United States District Court for the District of Rhode Island.

9.     In <u>Dimon v. Jenny "C.", Inc.</u>, Dimon was represented by counsel from the firm of Latti Associates.

10.     From 1982 through 1984, Attorney Michael Latti and Attorney Roger Hughes were partners at Latti Associates. Attorney Joseph Flannery also worked at Latti Associates.

11.     Attorney Joseph Flannery was primarily responsible for handling the <u>Dimon v. Jenny "C.", Inc.</u> litigation on behalf of Latti Associates.

12.     In 1983, the jury awarded Mr. Dimon $710,000.00.

13.     After the jury verdict was rendered in February of 1983, <u>Dimon v. Jenny "C.", Inc.</u> was reassigned within the firm of Latti Associates, to Attorney Roger Hughes.

14.    Attorney Roger Hughes of Latti Associates was Dimon's counsel of record in 1983.

15.    The parties to <u>Dimon v. Jenny "C.", Inc.</u> reached an agreement on settlement as follows:  Jenny "C.", Inc. and its insurance companies (American Motorists and Home Insurance Company) agreed to pay Plaintiff a lump sum of $250,000.00 in cash, and to purchase an annuity entitling Mr. Dimon to monthly payments guarantied for twenty years and continuing for his lifetime.

16.    Latti Associates contacted Dean Witter Reynolds (now Morgan Stanley D.W., Inc.) to obtain the annuity.  Subsequently, Attorney Roger Hughes of Latti Associates was identified in letters exchanged in 1983 as the person who provided information regarding proposed terms of the annuity.

17.    Dean Witter, the agent which sold the annuity product, provided Dimon's attorneys with several quotes including one from Charter Security Life Insurance Company (New York) ("Charter").

18.    Charter's quote was for a 20 year certain Annuity with no life term.

19.    At no time did Charter issue a quote for a life-time Annuity product.

20.    A quote that purported to be Charter's quote, but was not, was determined to be the most attractive.  It provided that, for a purchase price of $175,000.00, Plaintiff would receive payment of $1450.45 per month increasing by 3% per year for twenty years.

21.    Charter's quote was for a twenty-year certain Annuity, and nothing more.

22.    John Noe, of Kemper, in a memorandum he authored dated April 18, 1983, admitted that he "checked with two brokers and was unable to come anywhere near this pay-out for $175,000 cost."

23.    Charter was neither a party to, nor involved in the trial, settlement or post-trial proceedings of <u>Dimon v. Jenny "C.", Inc.</u>

24.    Charter is now Metropolitan Life Insurance Company ("MetLife").

25.    MetLife was neither a party to, nor involved in the trial, settlement or post-trial proceedings of <u>Dimon v. Jenny "C.", Inc.</u>

26.    Dean Witter Reynolds, Inc. ("Dean Witter") was the agency that took the application for Mr. Dimon's Annuity.

27.    An Annuity Application was submitted to Charter dated May 4, 1983.

28.    American Motorists (Kemper) was the Applicant on the Annuity Application submitted to Dean Witter Reynolds.

29.    The Annuity Application was signed by Mr. Dimon as the Annuitant.

30.    The Annuity Application was signed by John Noe on behalf of American Motorists as the Owner of the annuity.

31.    The Annuity Application was signed by Kurt Snyder on behalf of Dean Witter as the agent.

32.    On May 5, 1983, Charter allegedly issued an Annuity Contract, yet no complete contract has been produced in discovery to date.

33.    The Supplementary Agreement issued by Charter was the product of a clerical error.

34.    The Supplementary Agreement was corrected to reflect the product that was sold, i.e. a 20 year certain Annuity without a life component.

35.    In a letter dated July 14, 1983, Barbara Boehm of Charter wrote to Kurt Snyder of Dean Witter asserting that a clerical error had been made in that the term of the annuity had been "incorrectly typed as 240 months certain and life thereafter instead of 240 months only."

36.    The July 14, 1983 letter from Barbara Boehm to Kurt Snyder indicates that there had been at least one phone conversation regarding the clerical error prior to July 14, 1983.

37.    On August 12, 1983, John Noe, on behalf of American Motorists, sent a letter to Robert Foley of Dean Witter.  John Noe's August 12, 1983 letter was carbon copied to Barbara Boehm of Charter and Roger Hughes of Latti Associates.   The letter speaks for itself.

38.    In September of 1999, Katherine ("Mrs. Dimon"), on behalf of her husband, Mr. Dimon, contacted MetLife seeking information on the terms of the Annuity.

39.    On September 24, 1999, MetLife wrote a letter to Mr. Dimon in response to Mrs. Dimon's inquiry confirming that Mr. Dimon would receive "monthly payments until the final payment on 5/5/2003."

40. In 1999, the Dimon's bank notified them that the Annuity was only for twenty years certain, not for life.

41. All Annuity payments were tendered to Mr. Dimon for the term of 240 months under the corrected Supplementary Agreement.

42. MetLife paid Mr. Dimon the final payment on the Annuity on or about May 5, 2003.

43. Kemper has represented in open Court as fact that it stands in the place of the Jenny "C.", Inc.

44. No complete Annuity Contract has been produced to date that contains the terms of the Annuity applied for by American Motorists, as the only document produced is missing critical pages including the table of contents, does not identify the annuitant and it cannot be authenticated.

45. The General Release executed by Mr. Dimon names the company who was responsible for issuing the Annuity as "Charter Life Insurance Company" and not "Charter Security Life Insurance Company (New York)". There is a South African insurance company who conducts business under the name "Charter Life Insurance Company".

## C.    Kemper Insurance Company

Kemper was the excess insurer for The Jenny C., the defendant in the Underlying Action

brought by Plaintiff in 1981. In April 1983, settlement discussions commenced between

Plaintiff's lawyers and Kemper (along with The Jenny C.'s primary insurer).

In mid-April, 1983, Plaintiff's lawyers advised Kemper that they had secured from

MetLife (through Plaintiff's broker, Morgan Stanley) a $175,000 premium quote for an annuity

that would provide the following payments: $1,450.45 per month, increasing 3% annually,

guaranteed for 20 years and then for life. Plaintiff's lawyers requested that, in settlement of the

Underlying Action (along with a separate lump sum payment in the amount of $250,000),

Kemper pay them a lump sum in the amount of $175,000 so that Plaintiff's lawyers could obtain

this annuity. Kemper agreed.

On or about May 4, 1983, Kemper signed MetLife's annuity application, issued a check in the amount of $175,000, and delivered same to Plaintiff's lawyers. MetLife issued the requisite lifetime annuity (the "Annuity"). The Annuity itself specifies that it is a lifetime annuity, and that MetLife will pay Plaintiff monthly payments of $1,450.45 each, increasing 3% annually, commencing June 6, 1983, for a period of 20 years certain and life thereafter. MetLife delivered the Annuity and began making payments to plaintiff in accordance therewith.

MetLife subsequently attempted to unilaterally change the terms of the Annuity, but Kemper refused to agree to this. At that time, Kemper further took the affirmative step of advising plaintiff (through his lawyers) of MetLife's unilateral attempt to change the terms of the Annuity. MetLife did not at any time attempt to return the premium that Kemper paid for the Annuity.

After paying the premium to establish the Annuity in May 1983, Kemper had no further obligations in connection with the Annuity, and indeed, under the terms of the Annuity, the only obligation to be fulfilled after 1983 was MetLife's obligation to make the required lifetime monthly payments to plaintiff. MetLife did so until 2003, and then stopped. After November 1983, the next time that Kemper had any involvement whatsoever with the Annuity or anything else related to the subject matter of this lawsuit was when this lawsuit was filed in May 2005.

II.     <u>THE FACTS ESTABLISHED BY PLEADINGS OR BY STIPULATIONS OR ADMISSIONS OF COUNSEL</u>:

A.     **Metropolitan Life Insurance Company**

1. Neither MetLife nor Charter participated in the <u>Dimon v. Jenny "C.", Inc.</u> trial.

2. That Charter (MetLife) notified Kemper, Morgan Stanley and Latti Associates that it had made a clerical error in issuing the Supplementary Agreement to Mr. Dimon.

3.    That Dimon received 240 monthly payments from MetLife.

4.    That American Motorists Insurance Company stood in the place of the Jenny "C.", Inc.

5.    That Morgan Stanley was the agent who sold the Annuity in question.

**B.    Kemper Insurance Company**

1.    At page 17 of his motion for Summary Judgment, plaintiff admits that "[a]pplication of the [First Circuit's] analysis in <u>Salois</u> analysis places Dimon's cause of action against all Defendants except MetLife at the time he signed the General Release, April 19, 1983…."

2.    Plaintiff admits that this "controversy involved an actual breach of the contract in 1983." <u>See</u> plaintiff's Expert Witness Disclosures and attached report at p. 6.

3.    The law firm of Latti Associates (including partners Michael Latti and Roger Hughes) were plaintiff's lawyers in connection with the Underlying Action, and in 1983, Latti Associates were located at 30-31 Union Wharf, Boston, MA 02109. <u>See</u> plaintiff's Complaint at ¶¶ 5, 27-62; Kemper Statement of Undisputed Facts in support of its Motion for Summary Judgment at ¶ 3 and plaintiff's response thereto.

4.    The brokerage firm of Dean Witter Reynolds n/k/a Morgan Stanley (including individual brokers Robert Foley and Kurt Snyder) were plaintiff's brokers in connection with the purchase of the annuity. <u>See</u> plaintiff's Complaint at ¶¶ 84-86; Kemper's Statement of Undisputed Facts in Support of its Motion for Summary Judgment at ¶¶ 8, 22-23, and plaintiff's response thereto.

5.      Home Insurance Company was the primary insurance carrier for The Jenny C. in connection with the Underlying Action, with a policy limit of $100,000.

6.      Kemper was the excess insurance carrier for The Jenny C. in connection with the Underlying Action, with a policy limit of $400,000.

7.      In April 1983, plaintiff's lawyers advised Kemper that they had secured from Charter Security Life, through Dean Witter Reynolds, a $175,000 premium quote for an annuity that would provide the following payments:  $1,450.45 per month, increasing 3% annually, guaranteed for 20 years and then for life.  See Kemper's Statement of Undisputed Facts in Support of its Motion for Summary Judgment at ¶ 8 and plaintiff's response thereto.

8.      In April 1983, plaintiff's lawyers requested that, in settlement of the Underlying Action, Kemper and Home Insurance Company pay a lump sum in the amount of $250,000, and a separate lump sum in the amount of $175,000 so that plaintiff's lawyers could obtain the lifetime annuity from Charter Security Life.  See Kemper's Statement of Undisputed Facts in Support of its Motion for Summary Judgment at ¶¶ 5-8 and plaintiff's response thereto.

9.      In April 1983, Kemper issued two checks, one payable to Charter Security Life in the amount of $175,000, and one payable to plaintiff and his lawyers in the amount of $176,326.33.


10.      On or about May 3, 1983, Kemper delivered to plaintiff's lawyers the check payable to Charter Security Life in the amount of $175,000.

11.      On or about May 4, 1983, Kemper signed Charter Security Life's annuity application, which required a premium in the amount of $175,000.  See Kemper's Statement of

Undisputed Facts in Support of its Motion for Summary Judgment at ¶¶ 15-16 and plaintiff's response thereto.

12.    On or about June 17, 1983, Charter Security Life issued an annuity (the "Annuity"). The Annuity provides that the "Single Premium payment for this contract was paid in advance." The Annuity provides that it is issued under "Option 2: Life Income," that Charter Security Life will pay plaintiff a "lifetime monthly income," that monthly payments will continue "as long as [plaintiff] lives," and that Charter Security Life will pay plaintiff "monthly payments of $1,450.45 each, increasing 3% annually, commencing June 6, 1983, for a period of 20 years certain and life thereafter." See Kemper's Statement of Undisputed Facts in Support of its Motion for Summary Judgment at ¶¶ 18-21 and plaintiff's response thereto.

13.    On or about June 6, 1983, Charter Security Life began making monthly payments to plaintiff under the Annuity.

14.    After 1983, the next time that Kemper had any involvement with the Annuity or anything else related to the subject matter of this lawsuit was when this lawsuit was filed in May 2005. See Kemper's Statement of Undisputed Facts in Support of its Motion for Summary Judgment at ¶ 29 and plaintiff's response thereto.

15.    Charter Security Life has never attempted to return the premium that Kemper paid for the Annuity.

## III.    CONTESTED ISSUES OF FACT

### A.    The Plaintiff

All issues of fact are contested at this time.

### B.    Kemper Insurance Company

No genuine issue exists as to any material fact.

**C.    Metropolitan Life Insurance Company**

All issues of material fact are contested at this time.

**IV.    <u>JURISDICTIONAL QUESTIONS</u>**

This court has stated that it will address choice of law issues as the need arises at trial.

**V.    <u>QUESTIONS RAISED BY PENDING MOTIONS</u>**

**A.    Metropolitan Life Insurance Company**

There is one pending Motion before the Court:

1.    Kemper's Motion for Reconsideration of the Court's January 31, 2008 Memorandum and Order.  MetLife's position is set out in the multiple pleadings filed by it in opposition to Kemper's Request for Reconsideration.  There are genuine issues of material fact that preclude entry of Summary Judgment in Kemper's favor.  At the fore is the question: What were Kemper's obligations under the General Release?  Because Kemper failed to apply for and obtain a lifetime Annuity, as it was obligated to do,  under the Contract (General Release), it is not entitled to Summary Judgment.

Regarding the Annuity referenced by Kemper in its pleading and below, and contrary to its assertion made in Section I(C), *supra*, the Annuity does not contain any monthly payment amount, the amount that payments would increase at, or even the name of the person to be paid.  Also, the document in question is missing pages, is illegible at parts and does not contain any identifying information regarding the owner or annuitant.

Kemper's Motion for Reconsideration should be denied.

**B.    Kemper Insurance Company**

Kemper has filed a motion for reconsideration of the Court's January 31, 2008 Memorandum and Order insofar as it denies Kemper's motion for summary judgment on

Plaintiff's breach of contract claim against Kemper.  Kemper's motion is based on two separate

and independent grounds:

(A)    Plaintiff's alleged cause of action against Kemper cannot be
deemed "indeterminate" until the resolution of whether Kemper actually breached.  The very
purpose of the statute of limitations is to protect litigants from defending on the merits against
alleged causes of action that accrued prior to the limitation period.  If the question of when
plaintiff's alleged cause of action against Kemper accrued were dependant upon a determination
as to whether Kemper actually breached, then the statute of limitations would be rendered
purposeless, and Kemper would be unjustifiably deprived of the statute's protection.  Rather, any
alleged wrongful conduct on the part of Kemper could only have occurred in 1983, since that
was the last time (prior to the filing of this lawsuit in 2005) that Kemper had any involvement
whatsoever with the Annuity or anything else related to the subject matter of this lawsuit.

(B)    The Annuity is a lifetime annuity as a matter of law.  The interpretation of
insurance contracts is a question of law for the trial judge.  The plain terms of the Annuity issued
by MetLife demonstrate that it is a lifetime annuity; indeed, if the Annuity were not a lifetime
annuity, MetLife would have had no reason to attempt to change the Annuity's terms in 1983.
Because the terms of the Annuity are clear, reference to extrinsic evidence regarding MetLife's
alleged intent when it issued the Annuity is impermissible.  Further, even assuming (contrary to
fact) that the terms of the Annuity were not clear, any ambiguity would have to be interpreted
against MetLife and in favor of plaintiff.  Finally, MetLife cannot now attempt to "reform" the
Annuity, because reformation is a legal impossibility at this point.


**VI.    ISSUES OF LAW**

**A.    The Plaintiff**

This court has stated that it will address choice of law issues as the need arises at

trial.

The Annuity in question which was issued on June 17, 1983 and signed by Barbara

Boehm of Metropolitan Life Insurance Company was not ambiguous.  As a general matter, the

objective of contract interpretation is to give effect to the expressed intentions of the parties. *See*,

e.g., *Hartford Accident & Indemnity Co. v. Wesolowski*, 33 N.Y.2d 169, 171-72, 350 N.Y.S.2d

895, 898, 305 N.E.2d 907, 909 (1973); *Morlee Sales Corp. v. Manufacturers Trust Co.*, 9 N.Y.2d

16, 19, 210 N.Y.S.2d 516, 518, 172 N.E.2d 280, 282 (1961); 4 S. Williston, Williston on

Contracts § 600, at 280 (3d ed. 1961). "Where the language of the contract is unambiguous, and reasonable persons could not differ as to its meaning, the question of interpretation is one of law to be answered by the court." *Rothenberg v. Lincoln Farm Camp, Inc.*, 755 F.2d 1017, 1019 (2d Cir.1985); see *United States Naval Institute v. Charter Communications, Inc.*, 875 F.2d 1044, 1048 (2d Cir.1989); *Sutton v. East River Savings Bank*, 55 N.Y.2d 550, 554, 450 N.Y.S.2d 460, 462, 435 N.E.2d 1075, 1077 (1982); 3 A. Corbin, Corbin on Contracts § 554, at 222 (1960).

Contract language is not ambiguous if it has "a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion." *Breed v. Insurance Company of North America*, 46 N.Y.2d 351, 355, 413 N.Y.S.2d 352, 355, 385 N.E.2d 1280, 1282 (1978). Language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation. The court is not required to find the language ambiguous where the interpretation urged by one party would "strain[ ] the contract language beyond its reasonable and ordinary meaning." *Bethlehem Steel Co. v. Turner Construction Co.*, 2 N.Y.2d 456, 459, 161 N.Y.S.2d 90, 93, 141 N.E.2d 590, 593 (1957).

If the terms of a contract are unambiguous, the obligations it imposes are to be determined without reference to extrinsic evidence, *See Teitelbaum Holdings, Ltd. v. Gold*, 48 N.Y.2d 51, 56, 421 N.Y.S.2d 556, 559, 396 N.E.2d 1029, 1031 (1979); *West, Weir & Bartel, Inc. v. Mary Carter Paint Co.*, 25 N.Y.2d 535, 540, 307 N.Y.S.2d 449, 452, 255 N.E.2d 709, 712 (1969), modified on other grounds, 26 N.Y.2d 969, 311 N.Y.S.2d 13, 259 N.E.2d 483 (1970), and trade custom and usage is not admissible to contradict or qualify its provisions, *See Armour*

*& Co. v. Celic*, 294 F.2d 432, 438 (2d Cir.1961); Matter of Western Union Telegraph Co., 299 N.Y. 177, 184, 86 N.E.2d 162 (1949). Metlife's use of intent is extrinsic in nature and at this stage is a substantive impossibility. *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277-1278 (2d Cir. 1989).

Plaintiff expects to introduce documents which have been produced in discovery and disclosed in his F.R.C.P. 26(a)(3) filing. The plaintiff believes that these documents are admissible pursuant to the Federal Rules of Evidence and would welcome the ability to brief the matter of admissibility should the need arise.

### B.    Metropolitan Life Insurance Company

The issues of law are as follows:

1.    Is there a contract at all as no contract has been produced?

2.    If there is a contract with MetLife, what were the terms of the contract?

3.    Was there a meeting of the minds such that a contract with MetLife was formed?

4.    What were Kemper's duties under the General Release Agreement?

5.    Did Kemper breach the General Release Agreement by failing to procure a life time Annuity for Mr. Dimon?

6.    What were the terms of the Supplementary Agreement purchased for the $175,000.00?

7.    If there a contact with MetLife, who were the parties, was there a third party beneficiary and was it breached by MetLife?"

8.    If there was a contract, to whom was the obligation of performance owed?

9.    What was the contractual relationship between MetLife and Mr. Dimon, if any?

10.    If MetLife did breach a contract, when did the breach occur?

11.     Although styled a breach of contract, was the wrong complained of really a misrepresentation?

12.     Did Mr. Dimon bring his action within the applicable Statute of Limitations and Statute of Repose periods?

13.     Is Kemper, and Kemper only, strictly liable to Mr. Dimon due to his status as a seamen under the Jones Act, as Kemper has admitted that it stands in the shoes of the Jenny "C.", Inc.?

14.     Should the Latti Defendants be defending at the trial in light of Kemper's arguments in its Motion for Reconsideration and supplemental briefs as to the breach, liability and Statute of Limitations issues.

### C.     Kemper Insurance Company

(1)     Kemper's contractual obligation was to indemnify The Jenny C. for the loss incurred in the settlement of the Underlying Action.  If Kemper allegedly breached that obligation, the alleged cause of action for breach necessarily accrued at the time of settlement, on April 19, 1983, and is therefore time-barred.  See, e.g., Ely-Cruikshank Co., Inc. v. Bank of Montreal, 81 N.Y.2d 399, 402, 615 N.E.2d 985, 986 (N.Y. 1993) (cause of action for breach of contract occurs at the time of the breach itself, even if damages do not occur until later).

(2)     Indeed, any alleged wrongful conduct on the part of Kemper could only have occurred in 1983, since that was the last time (prior to the filing of this lawsuit in 2005) that Kemper had any involvement whatsoever with the Annuity or anything else related to the subject matter of this lawsuit.  Plaintiff's alleged cause of action for breach is therefore time-barred.  See T&N PLC v. Fred S. James & Co., 29 F.3d 57, 58-60 (2nd Cir. 1994); St. George Hotel Assocs. v. Shurkin, 12 A.D.3d 359, 786 N.Y.S.2d 56, 57 (N.Y. App. Div. 2004); Int'l Mobiles Corp. v. Corroon & Black/Fairfield & Ellis, Inc., 29 Mass. App. Ct. 215, 221-23, 560 N.E.2d 122, 126-27 (1990).

(3)     The terms of the General Release bar plaintiff's claim against Kemper.  See Westchester

Fire Ins. Co. v. Utica First Ins. Co., 2007 NY Slip Op 4482, 2 (N.Y. App. Div. 2007) (a release

discharging an insured from liability relieves the insurer from the duty of

indemnification) (citing McDonough v. Dryden Mut. Ins. Co., 276 A.D.2d 817, 818, 713

N.Y.S.2d 787 (N.Y. App. Div. 2000)).


(4)     Plaintiff cannot establish a breach of contract claim against Kemper, because Kemper

was not a party to any contract with plaintiff, and there is no legal basis for a finding that

plaintiff was an intended third party beneficiary to The Jenny C.'s excess policy with Kemper.

Clauson v. New Eng. Ins. Co., 83 F. Supp. 2d 278, 280 (D.R.I. 2000), aff'd in relevant part 254

F.3d 331 (1st Cir. 2001) ("Because a liability insurance policy is a contract between the insurer

and the insured, third parties, ordinarily, lack standing to compel payment under the policy.");

see also Forcier v. Cardello, 173 B.R. 973, 984-87 (D.R.I. 1994) (applying Rhode Island law)

(because "[t]here is a presumption that parties contract only for the benefit of themselves….[t]he

intent to benefit the third party must be clearly expressed in the contract"); Providence Teachers

Union, Local 958 v. Blue Cross, 2001 R.I. Super. LEXIS 152, *10 (2001) (same); State v. Med.

Malpractice Joint Underwriting Ass'n, 2005 R.I. Super. LEXIS 97, *5-10 (2005) (same).

(5)     Kemper satisfied its obligation to indemnify The Jenny C. by paying the premium for the

Annuity that was negotiated and purchased by plaintiff's lawyers.

(6)     The Annuity issued by MetLife is clearly a lifetime annuity.  Indeed, this should be

decided by the court as a matter of law.  See Fed. Ins. Co. v. Raytheon Co., 426 F.3d 491, 497

(1st Cir. 2005).

(7)    Because the terms of the Annuity issued by MetLife are clear, any extrinsic evidence regarding MetLife's alleged state of mind when it issued the Annuity is impermissible.  See Hunt, Ltd. v. Lifschultz Fast Freight, Inc., 889 F.2d 1274, 1277-78 (2nd Cir. 1989).

(8)    Even assuming (contrary to fact) that the terms of the Annuity issued by MetLife were not clear, any ambiguity is to be interpreted against MetLife and in favor of plaintiff.  See 67 Wall Street Co. v. Franklin Nat'l Bank, 333 N.E.2d 184, 187 (N.Y. 1975) (stating that "in cases of doubt or ambiguity, a contract must be construed most strongly against the party who had no voice in the selection of its language" citing 4 Williston, Contracts, §621; 10 NY Jur, Contracts, § 233); see also Fed. Ins. Co. v. Raytheon Co., 426 F.3d 491, 497 (1st Cir. 2005).

(9)    Any claim for "reformation" of the Annuity is legally impossible at this point.  See Wallace v. 600 Partners Co., 86 N.Y.2d 543, 547, 658 N.E.2d 715, 717 (N.Y. 1995).

(10)    In any event, any damages against Kemper necessarily would be limited to the amount of the remainder of the limits of The Jenny C.'s excess policy with Kemper, which amount is $48,673.67.  Clauson v. New Eng. Ins. Co., 254 F.3d 331, 339 (1st Cir. 2001) (under Rhode Island law, "the insurance policy governs the obligations the insurer owes to its insured, thus limiting an insurer's total liability on a judgment against its insured to the contractual limits contained in that policy"); Factory Mut. Liab. Ins. Co. v. Cooper, 262 A.2d 370, 372 (R.I. 1970) (liability of insurer to personal injury claimant that had obtained judgment against insurer's tortfeasor-insured was restricted to policy limits).

## VII.    REQUESTED AMENDMENTS

The parties do not anticipate any amendments to the pleadings except as noted below.

### A.  Metropolitan Life Insurance Company

MetLife requests that the Court amend the pleadings to add the Jenny "C.", Inc. as a party to this action.  As grounds for this amendment MetLife cites to Kemper's recent assertion, made within a few business day of the filing of this Memorandum, that its liability is limited by the remainder of the limits on the policy it issued to the Jenny "C.", Inc.  This position contradicts Kemper's counsel's statement that Kemper stands in the place of the Jenny "C.", Inc.

MetLife will be severely prejudiced if Kemper is allowed to escape liability based upon this recent limitations argument.

### VIII. ADDITIONAL MATTERS

There are no additional matters raised by either party at this time.

### IX.    LENGTH OF TRIAL

#### A.      The Plaintiff

The plaintiff anticipates that this case will take approximately three (3) to five (5) days, including jury empanelment, argument and charge (assuming a 9:00 a.m. to 1:00 p.m. schedule).

#### B.      Metropolitan Life Insurance Company

Metropolitan anticipates that this case will take approximately five (5) full trial days, including jury empanelment, argument and charge.

#### C.      Kemper Insurance Company

Kemper anticipates that this case will take approximately three (3) to five (5) days, including jury empanelment, argument and charge (assuming a 9:00 a.m. to 1:00 p.m. schedule).

### X.     WITNESSES

A.     **The Plaintiff**

(A)     Dennis Dimon
        151 Holly Ridge Rd.
        W. Kingston, RI  02892

(B)     Katherine Dimon
        151 Holly Ridge Rd.
        W. Kingston, RI  02892

(C)     Mrs. Dimon
        Curtis Corner Rd.
        Peacedale, RI

(D)     Michael B. Latti, Esquire
        26 Surfpoint Rd.
        York, ME  03909

(E)     Barbara Fasman
        200 Park Avenue
        New York, NY 10166-0188

(F)     William M. Mensie
        1 Kemper Drive K-8
        Long Grove IL 60049-0001

(G)     John L. Noe
        73 Old Stonehouse Rd.
        Bedminster, NJ 07921

(H)     Roger E. Hughes, Jr., Esquire
        Hughes & Associates
        46 Accord Park Drive
        Norwell, MA 02061

(I)     Leonard Decof, Esquire
        One Smith Hill
        Providence, RI 02903

(J)     W. Slater Allen, Jr., Esquire
        Address and Telephone Number Unknown at the Present Time.

(K)     Keeper of Record Kemper Insurance Company.

(L)    Keeper of Record MetLife Insurance Company.

The plaintiff reserves the right to supplement prior to trial and to call any witnesses listed by either of the defendants.


**B.    Metropolitan Life Insurance Company**


(1)    Dennis J. Dimon
Plaintiff
c/o  David Kaplan, Esquire

(2)    Barbara Fasman
c/o James Ciapciak, Esquire

(3)    Katherine Dimon
c/o  David Kaplan, Esquire

(4)    Michael Latti
c/o Jed DeWick, Esquire

(5)    Roger Hughes, Esq.
Hughes & Associates
46 Accord Park Drive
Norwell, MA  02061

(6)    Hans Hailey, Esq.
c/o  David Kaplan, Esquire

(7)    William Mensie
c/o Timothy O'Driscoll, Esq.


MetLife reserves the right to supplement prior to trial and to call any witnesses listed by the Plaintiff or Defendant Kemper.  Further, MetLife reserves the right to object to any witness called by either Plaintiff or Defendant Kemper.  MetLife will supplement prior to trial.

**C.    Kemper Insurance Company**

Kemper submits that all of the evidence necessary to decide this matter is already before the Court, in the form of documentary and testimonial evidence.  Nevertheless, Kemper would reserve the right to call the following witnesses at trial:

> (1)    Dennis Dimon
> 151 Holly Ridge Road
> W. Kingston, RI 02892

> (2)    William Mensie
> 1 Kemper Drive K-8
> Long Grove IL 60049-0001

> (3)    Michael B. Latti, Esquire
> 26 Surfpoint Road
> York, ME 03909

Kemper also reserves the right to call any witnesses listed by plaintiff or MetLife, and to supplement prior to trial.

## XI.    <u>EXHIBITS</u>

### A.    <u>Plaintiff's Exhibits</u>

> (1)    A copy of a general release, dated April 19, 1983, signed by Dennis Jay Dimon;

> (2)    A copy of check number 250-0-008-585, issued by the Kemper Group, in the amount of $175,000.00;

> (3)    A copy of portions of the transcript of proceedings held on May 3, 1983 before the Honorable Judge Raymond J. Pettine, in the United States District Court for the District of Rhode Island, in a matter captioned Dennis J. Dimon v. Jenny C., Inc.;

> (4)    A copy of a settlement sheet prepared on or about April 19, 1983, by Latti & Associates;

> (5)    A copy of a proposal for a life annuity, dated April 8, 1983, prepared by Charter Security Life Insurance Company;

(6)    Two copies of an annuity application signed by John L. Noe on or about May 4, 1983;

(7)    A copy of a Single Premium Deferred Annuity, issued on or about June 17, 1983, by Charter Security Life;

(8)    A copy of correspondence, dated July 14, 1983, from Barbara Boehm to Mr. Kurt Snyder;

(9)    A copy of correspondence, dated August 12, 1983, from John L. Noe to Mr. Robert A. Foley;

(10)    A copy of correspondence, dated September 26, 1983, from Robert Ligouri to Mr. John L. Noe;

(11)    A copy of correspondence, dated October 10, 1983, from John L. Noe to Mr. Robert Liguori;

(12)    A copy of correspondence, dated October 12, 1983, from John L. Noe to Ms. Barbara Boehm;

(13)    A copy of correspondence, dated October 14, 1983, from Barbara Boehm to Mr. John L. Noe;

(14)    Copy of New York Times article from April 10, 1984 entitled "State Inquiry on Charter Annuities."

(15)    Copy of New York Times article from November 4, 1983 entitled "Redemption Rate Jumps for Charter's Annuities."

Plaintiff may use additional documents as need arises or for rebuttal.


The plaintiff reserves the right to supplement prior to trial and to use any and all exhibits listed by defendant.


**B.    Metropolitan Life Insurance Company's Exhibits**

a.    A copy of correspondence, dated July, 14,1983, from Barbara Boehm to Mr. Kurt Snyder;

b.   A copy of correspondence, dated August 12, 1983, from John L. Noe to Mr. Robert A. Foley;

c.   A copy of correspondence, dated September 26, 1983, from Robert Liguori to Mr. John L. Noe;

d.   A copy of correspondence, dated October 10, 1983, from John L. Noe to Robert Liguori;

e.   A copy of correspondence, dated October 14, 1983, from Barbara Boehm to Mr. John Noe;

f.   A copy of correspondence, dated October 12, 1983, from John L. Noe to Ms. Barbara Boehm;

g.   A copy of an annuity application signed by John L. Noe and Dennis Dimon on or about May 4, 1983;

h.   A copy of the Supplementary Agreement issued by Charter Security Life Insurance Company to Dennis Dimon indicating a "240 Month" Term;

i.   A copy of correspondence, dated September 24, 1999, from Teresa Thorp to Dennis Dimon;

j.   A copy of correspondence, dated July 9, 2003, from Sandy Franklin to Dennis Dimon; and

k.   A copy of an additional correspondence, dated July 9, 2003, from Sandy Franklin to Dennis Dimon.

l.   Any pleadings filed in the present case, deposition testimony from any witness as well as admissions or statements of counsel in open Court.


MetLife may use additional documents and/or exhibits as need arises, in rebuttal, and/or depending upon the outcome of the outstanding Motions that the Court has yet to rule upon.

MetLife reserves the right to supplement prior to trial and to use any and all exhibits listed by plaintiff or Defendant Kemper Insurance Company.

**C.     Kemper Insurance Company's Exhibits**

Kemper reserves the right to use the following exhibits at trial:

(1)     A copy of a proposal for a life annuity, dated April 8, 1983, prepared by Charter Security Life Insurance Company;

(2)     A copy of a memorandum, dated April 18, 1983, from John L. Noe to Klaus Lemhoefer;

(3)     A copy of a general release, dated April 19, 1983, signed by Dennis Jay Dimon;

(4)     A copy of a settlement sheet prepared on or about April 19, 1983, by Latti & Associates;

(5)     A copy of check number 250-0-008-584, issued by the Kemper Group, in the amount of $176,326.33;

(6)     A copy of check number 250-0-008-585, issued by the Kemper Group, in the amount of $175,000.00;

(7)     A copy of correspondence, dated May 3, 1983, from W. Slater Allen, Jr., to Mr. Jesus LaTorre;

(8)     A copy of the transcript of proceedings held on May 3, 1983 before the Honorable Judge Raymond J. Pettine, in the United States District Court for the District of Rhode Island, in a matter captioned *Dennis J. Dimon v. Jenny C., Inc.*;

(9)     A copy of an annuity application signed by John L. Noe on or about May 4, 1983;

(10)     A copy of a court-ordered Stipulation of Dismissal with Prejudice, signed on June 6, 1983 by the Honorable Judge Raymond J. Pettine, in the United States District Court for the District of Rhode Island, in a matter captioned *Dennis J. Dimon v. Jenny C., Inc.*;

(11)     A copy of a Single Premium Deferred Annuity, issued on or about June 17, 1983, by Charter Security Life;

(12)     A copy of a memorandum, dated August 26, 1983, from Mary Graci to R.W. Bonoher;

(13)     A copy of a memorandum, dated November 8, 1983, from John L. Noe to Klaus Lemhoefer; and

(14)    Any pleadings that have been filed by any current or former party to this lawsuit (including but not limited to Plaintiff's Expert Witness Disclosures and attached report, filed on Nov. 22, 2006).

Kemper may use additional documents as need arises or for rebuttal.

Kemper also reserves the right to use any and all exhibits listed by plaintiff or MetLife, and to supplement prior to trial.

## XII.   <u>OBJECTIONS TO EVIDENCE</u>

### A.   **The Plaintiff**

The plaintiff asserts the following admissions and objections to evidence:

1.    During the deposition of Barbara Fasman MetLife's 30(b)(6) witness, counsel for Metropolitan Life Insurance Company admitted that "Metlife is responsible legally for anything that Charter Security Life may have done or didn't do in this case, Metlife is responsible." Fasman Deposition pg. 20 lines 7-10. Plaintiff believes that Metlife will make an issue as to plaintiff's proposed exhibit of a Proposal by Charter Security Life Insurance Company. The proposal indicates monthly amounts to be paid for a period of fifty years. (At the time of the settlement of this matter in 1983, Mr. Dimon had a life expectancy of 49.7 years.) On the proposal the name Charter Security of New Jersey appears. The application for the annuity has the name Charter Security of New York. The admission by counsel renders any argument of Metropolitan Life Insurance Company's standing as successor in interest with regard to Charter Security New York or New Jersey moot.

2.    The plaintiff objects to the document identified as a "Supplementary Agreement issued by Charter Security Life Insurance Company" for the following reasons:

The name of the document indicates that it is a supplementation of some other document which has not been produced in this matter.  The stand alone document was not and can not be authenticated by Metropolitan Life Insurance Company and therefore is not admissible pursuant to Fed. R. Evid. 901.

3.    The plaintiff objects to the admissibility of the purported letters identified by MetLife as Exhibits "I", "J" and "K", on the grounds that they constitute inadmissible hearsay, and are also irrelevant and immaterial and could only serve to mislead the jury.

First, these three purported letters constitute hearsay under Rule 801, and are therefore inadmissible under Rule 802.  See Fed. R. Evid. R. 801 and 802.  These letters were purportedly written by MetLife employees Teresa Thorp and Sandy Franklin, in 1999 and 2003, respectively. The plaintiff believes that MetLife intends to offer these letters to prove the truth of the matter asserted therein; namely, that the Annuity was allegedly only payable for twenty years certain and not for life.  As such, the letters are clearly hearsay and should be precluded.

4.    The plaintiff objects to the copy of the annuity application identified by MetLife as Exhibit "G" on the grounds of authenticity, the best evidence rule, and relevance/materiality.

First, this document completely fails to meet the standards applicable to authentication under Fed. R. Evid. 901.  This document presents as a copy of a modified version of the MetLife annuity application signed and submitted by Kemper, with the primary modifications being handwriting in boxes 14 and 15 of the application.

The plaintiff reserves the right to supplement these admissions and objections and to file Motions in Limine addressing future evidentiary issues.

B.     **Metropolitan Life Insurance Company**

MetLife asserts the following objections to the evidence identified by Mr. Dimon and Kemper:

1.     MetLife objects to the document identified as "A copy of a proposal for a life annuity, dated April 8, 1983, prepared by Charter Security Life Insurance Company" by both Mr. Dimon and Kemper (proposed Kemper Exhibit "1"; Dimon Exhibit "5").

Objection:  The proposed Exhibit is misleading, prejudicial, lacks authentication, is not relevant and cannot be presented as being "prepared" by Charter.  The document is printed on Dean Witter Reynolds letter head, identifies the proposal as one from Charter Security Life Insurance Company of **New Jersey**, which is not even the same company as Charter Security Life Insurance Company (New York) and contains unexplained hand writing in the lower right hand corner of the document that appears to be a calculation of the values for certain points in time assuming that the payments are made as set forth on the document.

The name of the document indicates that it is a proposal.  This document was not and cannot be authenticated by Plaintiff or Kemper and therefore is not admissible pursuant to Fed. R. Evid. 901.

2.     MetLife objects to the document identified as "A copy of a Single Premium Deferred Annuity, issued on or about June 17, 1983, by Charter Security Life" by both Mr. Dimon and Kemper (proposed Kemper Exhibit "11" and Dimon Exhibit "7").

Objection:  The proposed Exhibit is objectionable for several reasons.  First, the document has not been authenticated as the actual Annuity issued in this case.  Second, the document does not identify who the owner or beneficiary of the Contract is.  Third, the document, based upon the pagination and partial Table of Contents, is incomplete. Fourth, the document presented at the Kemper 30(b)(6) deposition appears to be several separate documents.

The document has not been authenticated as the Annuity Contract issued in this case.  It is not possible, based upon the information available to the parties, to determine if this is the authentic Annuity Contract issued by Charter, referred to in the 1983 exchange of correspondence between Charter, Kemper and Dean Witter Reynolds.  Allowing introduction of this document would imbue it with significance that it should not have.

There is no mention, within the alleged Annuity, of Dennis Dimon, Kemper or American Motorists.  The only mention of Dennis Dimon's name is on a document entitled Supplementary Agreement.  The Supplementary Agreement is not listed in the Table of Contents page included with the document.

The document is an incomplete version of an Annuity Contract.  The first page of the document is paginated "Page 1" at the lower right hand corner of the document.  Also on that page is the notation "RA-104" above the notation "11/82" on the lower left hand corner of the document.  The next page, titled "Table of Contents" does not include either the page number or the left hand corner notation.  The next page, "Page 5" is numbered and includes the left hand corner notation.  The following pages, numbered 6-9, do not contain the left hand corner notation.  None of the remaining pages include pagination or the lower left hand notation.  Interestingly, the Supplementary Agreement does contain a lower left hand corner notation, but it is not the same as on the other documents.  The remaining page, titled "Endorsement," includes

the lower left hand notation "RA-104E". Taken as a whole, it is impossible, based upon the information available now to determine what the proposed Exhibit is and which pages it should and should not include.

The best evidence rule precludes the admission of this document.

3.    MetLife objects to the document identified as "A copy of the transcript of the proceedings held on May 3, 1983" by both Mr. Dimon and Kemper (proposed Kemper Exhibit "8" and Dimon Exhibit "3").

Objection:  MetLife objects to this proposed exhibit as it is not relevant to the claim against MetLife, is not authenticated and contains inadmissible hearsay.

MetLife reserves the right to assert further objections and to file Motions in Limine addressing evidentiary issues.

4.    MetLife objects to the document identified as "Copy of New York Times article from April 10, 1984 entitled 'State Inquiry on Charter Annuities'" by Mr. Dimon (proposed Dimon Exhibit "14").

This document contains inadmissible hearsay, is not authenticated and has not been identified in the Plaintiff's pretrial disclosures. This document was first disclosed on or about April 8, 2008. Additionally, the document is immaterial and irrelevant.

5.    MetLife objects to the document identified as "Copy of New York Times article from November 4, 1983 entitled 'Redemption Rate Jumps for Charter's Annuities'" by Mr. Dimon (proposed Dimon Exhibit "15").

This document contains inadmissible hearsay, is not authenticated and has not been identified in the Plaintiff's pretrial disclosures.  This document was first disclosed on or about April 8, 2008. Additionally, the document is immaterial and irrelevant.

6.      MetLife objects to the testimony of William Mensie on any subject regarding which he asserted a lack of knowledge or memory.  Further, MetLife objects to his testimony on any subject regarding which he refused to answer questions.

Further, MetLife objects to any testimony regarding the subject of handwriting, comparison of handwriting or document authenticity.  Mr. Mensie has never been offered or qualified as an expert in these areas and Kemper has never disclosed him as an expert in handwriting or documents analysis and he has never produced a report regarding any examination of any document at issue in this case.

7.      MetLife objects to the document identified as "A copy of a memorandum, dated August 26, 1983, from Mary Graci to R.W. Bonoher" by Kemper (proposed Kemper Exhibit "12").

This document has not been produced during discovery in this matter.   No document to or from R.W. Bonoher has been produced by any party to this matter.   MetLife reserves the right to assert further objection if and when the document is produced.

8.      MetLife objects to the document identified as "A copy of a memorandum, dated November 8, 1983, from John Noe to Klaus Lemhoefer" by Kemper (proposed Kemper Exhibit "13").

This document is hearsay and has not been authenticated.


9.      MetLife objects to the documents identified by Plaintiff as correspondence exchange between Charter, Kemper and Morgan Stanley D.W., Inc. (proposed Dimon Exhibits "8", "9", "10", "11", "12", and "13").

These letters constitute hearsay under Rule 801, and are inadmissible under Rule 802. See Fed. R. Evid. R. 801 and 802.


### C.      Kemper Insurance Company

Kemper asserts the following evidentiary objections at this time:

**1.**      Kemper objects to the admissibility of a purported "copy of a Supplementary Agreement" identified as Exhibit "H" by MetLife, on the grounds of both authenticity and relevance.

First, this stray, one-page document does not even approach meeting the standards applicable to authentication under Fed. R. Evid. 901, for at least the following reasons:  (a) it presents on its face as a fragment of a document; (b) it is not signed by anyone; (c) it is not dated; (d) even MetLife's own 30(b)(6) witness, Barbara Fasman, couldn't vouch for it - she admitted that she had no idea either who filled it out, or when it was filled out (see Fasman Dep. at pp. 31-32); (e) it purports to call itself a "Supplementary Agreement," but it is not even

attached to any contract that it would purport to supplement; and (f) whatever it is, it certainly is not a contract in itself, bereft as it is of any general provisions, signature, date, or other indicia of a contract.  Rule 901(a) provides that "[t]he requirement of authentication or identification as condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."  See Fed. R. Evid. 901(a).  Whatever MetLife is claiming that this extraordinarily suspicious document is, it falls woefully short of meeting the standards applicable to authentication under the Federal Rules.

Second, and in any event, this document is not relevant to any issue in the case.  See Fed. R. Evid. 401.  For what purpose is it offered?  It certainly does not show that MetLife issued an annuity contract that was payable for twenty years only, because it is manifestly not an annuity contract.  Its introduction into evidence therefore could only serve to mislead the jury.  See Fed. R. Evid. 403.

2.       Kemper objects to any evidence introduced for the attempted purpose of demonstrating MetLife's intent or "state of mind" when it issued the Annuity, for two separate and independent reasons.  First, because the terms of the Annuity issued by MetLife are clear, any extrinsic evidence regarding MetLife's alleged state of mind when it issued the Annuity is impermissible.  See Hunt, Ltd. v. Lifschultz Fast Freight, Inc., 889 F.2d 1274, 1277-78 (2nd Cir. 1989).  Second, because the contract in any event cannot be "reformed" (see Wallace v. 600 Partners Co., 86 N.Y.2d 543, 547, 658 N.E.2d 715, 717 (N.Y. 1995), any evidence introduced for the attempted purpose of showing that MetLife did not intend to issue the Annuity is irrelevant and immaterial to any issue in the case.  See Fed. R. Evid. 401.  Such evidence could only operate to unfairly prejudice Kemper, confuse the issues, and mislead the jury.  See Fed. R.

Evid. 402.  Of the documents identified as exhibits by MetLife in the joint pre-trial memorandum, the copies of the correspondence from MetLife dated July 14, September 26, and October 14, 1983 regarding the "scrivener's error" alleged by MetLife (MetLife's Exhibits "A", "C", and "E"), all constitute impermissible evidence of MetLife's intent or state of mind when it issued the Annuity, and therefore should be precluded.  For the same reason, the copy of the annuity application identified by MetLife as Exhibit "G" is inadmissible for the attempted purpose of showing that MetLife allegedly did not intend to issue the Annuity.

3.      Kemper objects to any testimony from Barbara Fasman, MetLife's 30(b)(6) witness (identified as Witness "2" by MetLife), on the issue of the pricing and underwriting of annuities in the 1983 insurance marketplace, for three separate and independent reasons:

First, the rates that life insurance companies would have charged for annuities in 1983 is completely irrelevant to the issue of whether the Annuity that MetLife in fact issued is a lifetime annuity.  Any such testimony therefore would be irrelevant and immaterial to any issue in the case, and could only operate to prejudice Kemper, confuse the issues, and mislead the jury.  See Fed. R. Evid. 401, 402 and 403.

Second, Ms. Fasman was never identified as an expert, and no expert opinion from Ms. Fasman was ever provided by MetLife.  Clearly the pricing and underwriting of annuities in the 1983 marketplace constitutes "technical or other specialized knowledge" under Rule 702 such that MetLife would have had to designate her as a purported expert during the course of discovery, and provide an expert opinion in accordance with the Federal Rules and this Court's Orders.

Third, even assuming (contrary to fact) that MetLife had otherwise complied with the Rules and Court Orders applicable to expert witnesses, the requirements of Rule 702 plainly would not be met by Ms. Fasman's testimony.  Rule 702 requires that "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."  <u>See</u> Fed. R. Evid. 702.  In Ms. Fasman's case, it is clear that none of these requirements has been met.  In the brief portions of her deposition in which she testified regarding alleged annuity pricing in 1983, Ms. Fasman admitted, for example, that she did not even know and therefore could not take into account Mr. Dimon's life expectancy, which is the key factor in accurately pricing lifetime annuities.  <u>See</u> Fasman Dep. at p. 82.  (In fact, Mr. Dimon's life expectancy in 1983 was only 49.7 years.)  Ms. Fasman also admitted, for example, that she did not even know what the annuity rates charged by Charter Security Life were in 1983, and therefore could not attempt to price any annuity that was issued by Charter Security Life.  <u>See</u> Fasman Dep. at 87-88.  Clearly, Ms. Fasman's testimony would not be based on sufficient facts, and would not be based on reliable principles or methods.

4.     Kemper objects to the admissibility of the purported letters identified by MetLife as Exhibits "I", "J" and "K", on the grounds that they constitute inadmissible hearsay, and are also irrelevant and immaterial and could only serve to mislead the jury.

First, these three purported letters constitute hearsay under Rule 801, and are therefore inadmissible under Rule 802.  <u>See</u> Fed. R. Evid. R. 801 and 802.  These letters were purportedly written by MetLife employees Teresa Thorp and Sandy Franklin, in 1999 and 2003, respectively.  Kemper believes that MetLife intends to offer these letters to prove the truth of the matter

asserted therein; namely, that the Annuity was allegedly only payable for twenty years certain

and not for life.  As such, the letters are clearly hearsay and should be precluded.

Second, and in any event, these three purported letters are irrelevant and immaterial

under Rules 401 and 402.  Of what relevance to any material fact is a MetLife employee's

purported description of the terms of the Annuity twenty years after the Annuity was issued?

The question in this case is whether the Annuity was in fact a lifetime annuity, and the answer to

that question lies in the terms of the 1983 contract itself.  A MetLife employee's bare assertions

that the Annuity was payable only for twenty years – accompanied by multiple admissions

within the letters themselves that MetLife did not even have a copy of the contract to provide to

Plaintiff – are irrelevant and immaterial to any issue in the case, and could only serve to

prejudice Kemper, confuse the issues, and mislead the jury.  See Fed. R. Evid. 401, 402, and 403.

5.    Kemper objects to the copy of the annuity application identified by MetLife as

Exhibit "G" on the grounds of authenticity, the best evidence rule, and relevance/materiality.

First, this document completely fails to meet the standards applicable to authentication

under Fed. R. Evid. 901.  This document presents as a copy of a modified version of the MetLife

annuity application signed and submitted by Kemper, with the primary modifications being

handwriting in boxes 14 and 15 of the application.  MetLife's own 30(b)(6) witness, Barbara

Fasman, cannot vouch for the authenticity of this document, and admits as follows:  (a) she has

no idea who typed the typewritten information contained in this document, when that

information was typed, or who provided that information; (b) she has no idea who inserted the

handwriting contained in this document; (c) she has no idea whose handwriting it is; (d) she has

no idea when the handwriting was inserted; (e) she has no idea if the handwriting was there when

the application was signed; and (f) she has no idea what document the handwritten reference to "Quote Number SO113" refers to.  See Fasman Dep. at pp. 22-27.  Further, in the face of Ms. Fasman's "blank slate" testimony and the extreme suspicions regarding authenticity that it engenders, Kemper has offered uncontroverted documentary and testimonial evidence that the original application (i.e., without any handwriting) was the application signed by Mr. John Noe of Kemper, and that the handwriting on the modified application was added after the original application had been submitted by Mr. Noe.  See Fasman Dep. at ex. 6 (Mr. Noe stating that "…Sections 14 and 15 of the application that I signed were blank.  The entries now appearing were filled in after I returned the signed application."); see also Mensie Dep. at 80:17-82:1, 85:19-22, and at ex. 2.  Because MetLife's 30(b)(6) witness could not vouch for this document, and because MetLife has admitted that it has no idea from where the handwriting on this document came (and Kemper's uncontroverted evidence demonstrates that the handwriting was not present on the original application that it signed), MetLife's proferred document utterly fails to meet the standards applicable to authentication.

Second, admission into evidence of the purported modified application would violate Rule 1002's requirement that "[t]o prove the content of a writing…the original writing…is required…."  See Fed. R. Evid. 1002.  Under Rule 1003, a duplicate is admissible to the same extent as an original unless a genuine question is raised as to its authenticity.  See Fed. R. Evid. 1003.  As set forth above, the testimony of MetLife's own 30(b)(6) witness discredits the authenticity of the purported modified application, to say nothing of the undisputed evidence set forth by Kemper.

Third, this document is, in any event, not relevant or material to any issue in the case. See Fed. R. Evid. 401.  Its existence certainly does not tend to show that MetLife actually issued

an annuity contract that was payable for twenty years only.  Further, the uncontroverted

documentary and testimonial evidence is that even this modified application is entirely consistent

with a lifetime annuity.  <u>See</u> Mensie Dep. at ex. 11, p. 1, 8; Mensie Dep. at 245:3-246:2, 255:22-

256:14, 275:5-20.   This document's introduction into evidence therefore could only serve to

confuse the issues and the jury.  <u>See</u> Fed. R. Evid. 403.

   Kemper reserves that right to supplement these evidentiary objections, assert further

evidentiary objections, and to file motions in limine addressing evidentiary issues.

Respectfully submitted,


 _/s/Brian Keane_____
DAVID B. KAPLAN, B.B.O. No. 258540
BRIAN KEANE, B.B.O. No. 656717
Counsel for Plaintiff
THE KAPLAN/BOND GROUP
88 Black Falcon Avenue, Suite 301
Boston, MA 02210
(617) 261-0080


 _/s/Timothy J. O'Driscoll_____
Timothy J. O'Driscoll (Admitted Pro Hac Vice)
Kevin L. Golden (Admitted Pro Hac Vice)

Counsel for Kemper Insurance Company
Drinker Biddle & Reath LLP
18th & Cherry Streets
Philadelphia, PA  19103
telephone:  (215)  988-2865

/s/ Kevin S. Murphy_____
Kevin S. Murphy, B.B.O No. 638335
Anthony B. Fioravanti, B.B.O No. 664823
Local Counsel for Kemper Insurance Company
Yurko Salvesen & Remz, P.C.
One Washington Mall, 11th Floor
Boston, MA 02108
(617)723-6900

/s/James J. Ciapciak_____
James J. Ciapciak
Peter M. LeBlanc
Counsel for Metropolitan Life Insurance Company
CIAPCIAK & ASSOCIATES, P.C.
99 Access Road
Norwood, MA (USA) 02062
Tel:  781.255.7401