UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **DENNIS DIMON,** | ) |
|     **Plaintiff,** | ) |
| | ) |
|     v. | ) Civil Action No. 05-CV-11073-NG |
| | ) |
| **METROPOLITAN LIFE INS. CO.,** | ) |
| **et al.,** | ) |
|     **Defendants.** | ) |

GERTNER, D.J.:

### ORDER DENYING MOTION TO RECONSIDER
April 17, 2008

On January 31, 2008, the Court entered a Memorandum and Order (document # 111) effectively denying defendant Kemper Insurance Company's ("Kemper's") Motion for Summary Judgment based on its statute of limitations defense and its contention that plaintiff Dennis Dimon ("Dimon") had failed to state a valid contract claim.  Kemper timely moved for reconsideration of the Order, see Mot. Reconsideration (document # 112), and both Dimon and defendant Metropolitan Life Insurance Company ("MetLife") opposed.  For the reasons that follow, Kemper's Motion to Reconsider is **DENIED**.

Dimon's case against Kemper turns on two contracts.  The first is the General Release between Dimon and The Jenny C.[1]  That contract states:

---

[1] The contractual relationship between Kemper and The Jenny C is not clear on this record.  Therefore, taking the facts in the light most favorable to the non-moving party, for the purposes of summary judgment Kemper stands in the shoes of The Jenny C as its excess insurer, and inherits all of the obligations The Jenny C incurred through the General Release.

> Dennis Jay Dimon . . . in consideration of . . . the establishment of a fully paid annuity with Charter Life Insurance Company, to pay me . . . $1450.00 dollars per month for one year following the execution of that contract and thereafter . . . to be paid to me during the term of my life, and in no event for less than twenty (20) years, the receipt whereof is hereby acknowledged, do hereby . . . release . . . all and any . . . claims [against The Jenny C].

General Release, Exh. B to Pl.'s Mot. Summ. J. (document # 55). And the second contract, of course, is the "fully paid annuity" mentioned in the General Release.

The language in the General Release regarding the annuity is a recital of consideration: the "receipt" of an annuity at the listed terms is "acknowledged." Id.[2]  Dimon's suit against Kemper is predicated on an argument that the recitation was, in fact, false, because the annuity actually received was not for the terms listed in the General Release.  The crux of Kemper's statute of limitations defense is that if Dimon is correct, and the annuity's terms did not match those required by the General Release, Kemper's breach must have taken place when the annuity was given to Dimon and he acknowledged its receipt. See, e.g., Mem. Supp. Kemper's Mot. Reconsideration at 4-8 (document # 113). By implication, Dimon should have brought a declaratory judgment suit soon after the dispute crystallized in 1983.  Dimon, by

---

[2] This fact is why Kemper and MetLife are not necessarily similarly situated with respect to statute of limitations defenses.  MetLife's annuity contract (allegedly) contains an executory promise to pay Dimon monthly for the term of his life.  Kemper's General Release, by contrast, does not expressly acknowledge any future obligations on Kemper's part.

contrast, argues that the breach of the General Release occurred, if at all, in 2003, when the payments ceased. See, e.g., Pl.'s Sur-Reply Resp. to Kemper's Mot. Reconsideration at 5 (document # 125).

Kemper's statute of limitations defense is straightforward. Because its last act under the contract was to tender the annuity -- a tender Dimon acknowledged in the terms of the contract -- it could not have committed a breach after that date. And because the cause of action accrues at the time of the breach, not the time damages are discovered, see Ely-Cruikshank Co., Inc. v. Bank of Montreal, 81 N.Y.2d 399, 402, 615 N.E.2d 985, 986-87 (N.Y. 1993); Int'l Mobiles Corp. v. Corroon & Black/Fairfield & Ellis, Inc., 29 Mass.App.Ct. 215, 221, 560 N.E.2d 122, 126 (1990), any cause of action against it expired six years (or ten years, under Rhode Island law) after the tender of annuity. See, e.g., Mem. Supp. Kemper's Mot. Reconsideration at 5 (document # 113).

But Kemper's position makes it difficult, if not impossible, for a contracting party to accept as consideration any instrument payable over a period of time longer than the applicable statute of limitations.[3] If the instrument fails after the statute of limitations has run, and the failure is caused by the tendering party's actions at or before the time of tender, the party

---

[3] Such an instrument might be, but need not be, an annuity; another possibility might be a bond with a sufficiently long maturity date.

accepting the instrument as consideration will have no recourse for breach of contract.[4]

Therefore, Kemper's position would force the obligee offered such consideration to choose among three unappealing alternatives.  First, the obligee could simply refuse it.  Second, the obligee could bargain for a higher price on the instrument to take account for the risk of failure.  But since the obligee is relying on the obligor to draft the instrument, that does nothing to force the obligor to draft the instrument correctly.[5]  Finally, and worst of all, the obligee could bring an immediate declaratory judgment suit to adjudicate the validity of the instrument, but it is surely inefficient always to require a court to examine and pass judgment on a settlement to which the two parties have agreed.  Nor will it always be clear that a real controversy exists for a court to try.  That is why the "actual indeterminacy" of the breach, see Memorandum & Order at 16 (Jan. 31, 2008) (document # 111), causes such problems, and why the

---

[4] In some situations, the plaintiff might be protected by a 'discovery rule' -- where he does not learn that the instrument is defective until it fails.  Cf. Boghossian v. Ferland Corp., 600 A.2d 288 (R.I. 1991) (discussing discovery rule in home-building context).  Kemper argues that cannot be the case here, since Dimon had actual notice that MetLife might refuse to make payments after 2003.  But as the Court has previously noted, that is not a showing that Kemper did breach the contract, only that it might have.

[5] The Court leaves aside for the moment Kemper's argument that Dimon, through his attorneys, negotiated the terms of the annuity, and that Kemper's payment of the check for the annuity satisfied its obligation to Dimon.  For the reasons explained presently, the interpretation of the language in the General Release and whether Kemper has satisfied its obligations are matters best left for trial.

Court previously emphasized that implication of Kemper's position.

One alternative is to treat the recitation of consideration not as a pure statement of fact, but as a promise to pay combined with some evidence that the payment was in fact made. At least one jurisdiction does so. See Thomas Mote Trucking, Inc. v. PCL Const., Inc., 246 Ga.App. 306, 310 & n.15 (2000) (citing Keheley v. Lawrence, 172 Ga.App. 533, 534-535 (1984)). See also Restatement (Second) of Contracts § 218 cmt. e (discussing incorrect recitals of consideration, and noting that in some cases the acceptance of a contract with an incorrect recitation may create an implied promise to pay the recited amount). It is, essentially, the position Dimon takes in this case.

If that position is accepted, an obligee's recitation of an instrument's terms as consideration would not mean simply, "I have received full payment, and it is Instrument X." Rather, the recitation would mean "I agree to accept Payments Y in consideration of my performance, and I have received Instrument X, which entitles me to Payments Y."[6] If the instrument failed due to the fault of the obligor, the obligee could arguably

---

[6] This approach is entirely consistent with the widely accepted approach in which the recitation of consideration in the contract is prima facie evidence that the consideration was paid. See, e.g., Keane v. Keane, 8 N.Y.3d 115, 119 n.* (N.Y. 2006); Knott v. Racicot, 442 Mass. 314, 324 (2004) (quoting Restatement (Second) of Contracts § 87 cmt. c). And it is also consistent with allowing recited consideration to be attacked as a disputed fact, not subject to the parol evidence rule. See, e.g., Diamond v. Scudder, 45 A.D.3d 630, 632 (N.Y. App. Div. 2007).

recover on either of two theories.  First, and more straightforwardly, the obligee could argue that Instrument X was not really Instrument X, and that the obligor breached because it was defective.  But, as explained above, such a suit is possible only before the statute of limitations has run.

Second, the obligee might contend that the obligor breached by failing to make Payments Y -- essentially, a claim that when Payments Y stopped prematurely, the obligor breached the aspect of the recitation that is a promise to pay.[7]  Such a suit would not accrue until the payments actually failed to arrive.  It would, however, be vulnerable to several defenses -- here, most notably, an argument that the obligee and not the obligor was at fault for the failure of the instrument.  If the obligee was at fault, then the tender of the instrument might constitute a satisfaction of the contract.

---

[7] This principle is also what distinguishes Dimon's situation from that in, for example, Ely-Cruikshank, 81 N.Y.2d 399.  In that case, the plaintiff and the defendant had a contract in which the plaintiff would have the sole ability to seek to sell the defendant's property.  Either party could terminate the agreement with 30 days' notice; the defendant did so, making the termination effective November 30, 1983.  It sold its real estate directly on February 1, 1984.  The plaintiff sued in January 1990, arguing that it was not barred by the six-year statute of limitations because the cause of action began to run when the building was sold.  The New York Court of Appeals rejected that argument, holding that on the facts of that case, the breach of contract occurred when the defendant failed to disclose its alleged secret negotiations with the buyer of the real estate.  Id. at 403.  After a certain point -- November 30, 1983 -- the relationship between the Ely-Cruikshank plaintiff and defendant was entirely severed.  But in this case, if the principle that a recited consideration is a promised payment is accepted, Kemper remained bound to Dimon by the payments it promised him when it tendered the annuity contract.

The same theory explains why Dimon has stated a contract claim against Kemper. If this reading of the recitation clause is accurate, Kemper made a promise to pay which can be breached independently of the instrument it tendered to ensure those payments.

For these reasons, the Court is unwilling to rule out the possibility that Dimon negotiated for and received from Kemper a stream of payments, not an instrument. Dimon has presented some evidence to support his claim. He proffers the hearing testimony of Leonard Decof, which arguably demonstrates that Dimon's position at the time the contract was formed was that Kemper would owe him a stream of payments. See Transcript at 6-7, Ex. A to Pl.'s Stmt. Facts Supp. Mot. Summ. J. (document # 55). On the other hand, Kemper may prevail in demonstrating that Dimon really did negotiate for, and receive, a particular instrument rather than a stream of payments. If that is the case, Kemper would be entitled to judgment as a matter of law on statute of limitations grounds.

The issues for trial are clear. First, a jury must determine whether the annuity was, in fact, a life annuity, or only for twenty years certain; what the terms of the agreement were is a contested issue of material fact. If the terms of the annuity were for Dimon's life, judgment will enter against MetLife. If, on the other hand, the terms of the annuity were

for twenty years only, Dimon and Kemper must litigate the issue of whether they negotiated and contracted for an instrument or for a stream of payments; they may also need to litigate whose fault it was that the instrument failed.

Kemper's Motion for Reconsideration is **DENIED** (document # 112). Because the issues were exhaustively covered in the papers the parties have already presented -- their summary judgment papers, the supplemental briefing following the Court's Electronic Order of September 30, 2007, and the first two rounds of briefing on Kemper's Motion -- Kemper's Motion to File a Response to Sur-Replies (document # 126) and MetLife's Motion to File a Reply to that Response (document # 127) are **DENIED.** Kemper's Motion for Oral Argument (document # 123) is likewise **DENIED.**

The parties have a firm trial date of May 19, 2008.

**SO ORDERED.**

**Date: April 17, 2008**         /s/Nancy Gertner
                                 **NANCY GERTNER, U.S.D.C.**