UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|   |   |   |
|---|---|---|
| **DENNIS DIMON,** | ) | |
| Plaintiff, | ) | |
| VS. | ) | |
|   | ) | C. A. No: 05-11073 NG |
| **METROPOLITAN LIFE INSURANCE COMPANY, KEMPER INSURANCE COMPANY, MORGAN STANLEY DW, INC., MICHAEL B. LATTI, LATTI ASSOCIATES, and LATTI & ANDERSON LLP,** | ) | |
| Defendants. | ) | |

### METROPOLITAN LIFE INSURANCE COMPANY'S
### MOTION IN LIMINE TO PRECLUDE PRIOR RHODE ISLAND TRANSCRIPTS

### ORAL HEARING REQUESTED

Defendant, Metropolitan Life Insurance Company (hereinafter "MetLife"), moves for an Order excluding from evidence the Rhode Island Court hearing transcript dated May 3, 1983 (before Honorable Judge Raymond J. Petting in the United States District Court for the District of Rhode Island), in a matter captioned *Dennis J. Dimon v. Jenny "C"., Inc.* ("Transcript"). MetLife objects to this proposed exhibit because it is not relevant to the claim against MetLife and it contains inadmissible hearsay and "hearsay within hearsay." MetLife had no opportunity to participate or face and cross examine the witnesses who testified.

The hearing in question contains the May 3, 1983 testimony of Mr. Dimon's Guardian *Ad Litem*, Mr. Decof. The Guardian reported to the Court as to whether Mr. Dimon understood the terms of the proposed settlement. Mr. Decof made clear to the Court that he did not consider it

to be his duty to advise Mr. Dimon on whether he should accept the proposed settlement offer, only to ascertain whether Mr. Dimon understood it. (May 3, 1983 Transcript, pp. 9-10, Exhibit "A") Therefore, Mr. Decof's testimony <u>as to the adequacy of the settlement offer,</u> and <u>his opinion regarding the propriety of the parties' decisions</u> in the terms of that settlement, are all inadmissible opinion testimony from a non-expert witness, hearsay and must be excluded.

It is anticipated that Plaintiff or Kemper may use the Transcript to offer into evidence certain observations made by Mr. Decof (or the District Court Judge's apparent acceptance of those observations). For example, Kemper may value Decof's opinion regarding the adequacy of the structured settlement:

> I had determined what the present value of the structured settlement was by consultations with actuaries and I had also determined the availability of annuity policies. The settlement, as it was agreed upon, provided for a payment, a cash payment, of $250,000; and in addition to that, a structured settlement of $1450 per month guaranteed for twenty years but which would continue for the life of the plaintiff.
>
> \*    \*    \*
>
> And so, the opinion that I came to, after consulting with the experts, was that the $175,000 was the present value, a fair present value, of the settlement, the structured portion of the settlement, and that the annuity purchased for it was a good solid annuity with a good company at market rates.

Id. at 6, 8.  Yet MetLife maintains that opinions from non-experts in 1983, without a witness for MetLife to cross-examine, are entirely improper.  MetLife's 30(b)(6) witness testified that in 1983 it would not have sold a lifetime annuity on Mr. Dimon's life with those payment terms for only $175,000, testimony as to facts regarding rates, not opinions.  Mr. Decof's opinion (an opinion that did not render before the case settled), contradicts facts and testimony.  Further, this opinion was based upon discussions with others: e.g. actuaries and experts.  Id.  However, he never identified these actuaries and never disclosed what information was provided to those unidentified witnesses.

The Transcript of Mr. Decof's testimony lacks the "indicia of reliability" that might otherwise allow it to be considered.  Because Mr. Decof had no reason to believe that twenty-five years later his testimony might become evidence in a lawsuit, his testimony is understandably vague and conclusory.  It also was not offered as part of that lawsuit, but only after it settled, and then for the sole purpose of explaining the outline of the structured settlement they all agree to.

## ARGUMENT

The Transcript at issue does not fall within any recognized hearsay exception.  Rule 804(b)(1) makes admissible former testimony of a declarant taken at another hearing only if (1) the declarant is unavailable and (2) the party against whom the testimony is offered had an opportunity and similar motive to develop the testimony by direct, cross or re-direct examination. Fed. R. Evid. 804(b)(1).  In this case, however, Plaintiff cannot rely on Rule 804(b)(1) because Mr. Decof is available.  Plaintiff has named him as a witness to be called on his behalf and, as a result, MetLife may properly object to his testimony, and preclude his opinions as he was never identified as an expert witness.  Further, MetLife/Charter was not

present at the hearing at which the Transcript was created and had no opportunity to cross-examine Mr. Decof regarding his findings.

Likewise the Transcript does not fit into the category of "Public Records and Reports" set forth in Rule 803(8). That subsection allows a record, report or statement to come into evidence in a civil matter as long as the factual findings contained therein resulted from an investigation made pursuant to authority granted by law unless the sources of information or other circumstances indicate lack of trustworthiness. On page 19 of the Transcript, District Court Judge Pettine <u>admits that he is uncertain whether he had the authority to hold the hearing that was transcribed</u>.

Even if the Court did have such authority, which is questionable at best, the circumstances surrounding the hearing indicate a lack of trustworthiness. Although it appears that Attorney Decof performed in the role of GAL, the Transcript of the hearing is lacking with regards to important details. <u>Most notably, Mr. Decof never identified the insurance company that has offered the annuity product about which he testified.</u> Because his duty was to ascertain whether Mr. Dimon understood the proposed structured settlement he had already signed on April 19, 1983, it is likely that Mr. Decof was referring to the Annuity company named in that document. However, the Settlement Agreement calls for the purchase of an Annuity from **"Charter Life Insurance Company,"** not Charter Security Life Insurance Company (New York). This begs the question: When Mr. Decof consulted with his actuaries about the Annuity, which name did he use? Were the actuaries given the correct company or product? Also, since the annuity <u>applied</u> <u>for</u> here was only 20 years, how do we know Mr. Decof understood what product he allegedly discussed with others?

4

MetLife cannot cross-examine a transcript on these issues and, therefore, the transcript cannot be presented as evidence for any purpose.

*WHEREFORE*, Metropolitan Life Insurance Company prays that this Court issue an Order precluding from evidence the Transcript from the May 3, 1983 hearing before Judge Pettine of the United States District Court for the District of Rhode Island.

### REQUEST FOR ORAL ARGUMENT

MetLife respectfully requests that, pursuant to Local Rule 7.1(D), the Court schedule this matter for oral argument. Oral argument will assist the Court in making its decision on MetLife's Motion.

Respectfully submitted by

Defendant,

METROPOLITAN LIFE INSURANCE COMPANY,

By its Attorneys,

/s/ James J. Ciapciak
James J. Ciapciak, BBO # 552328
Peter M. LeBlanc, BBO # 645302
CIAPCIAK & ASSOCIATES, P.C.
99 Access Road
Norwood, MA  02062
Tel:  (781) 255-7401
Fax:  (781) 255-7402

## **CERTIFICATE OF SERVICE**

     I hereby certify that a true and accurate copy of the foregoing document was filed via the ECF system and will be served electronically through that system upon Counsel of Record on May 12, 2008.

                                            /s/ Peter M. LeBlanc_____
                                            Peter M. LeBlanc