**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

_____

|  |  |  |
|---|---|---|
| **DENNIS DIMON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **VS.** | ) | **C. A. No:  05-11073 NG** |
| | ) | |
| **METROPOLITAN LIFE** | ) | |
| **INSURANCE COMPANY, KEMPER** | ) | |
| **INSURANCE COMPANY,** | ) | |
| **MORGAN STANLEY DW, INC.,** | ) | |
| **MICHAEL B. LATTI, LATTI** | ) | |
| **ASSOCIATES, and LATTI &** | ) | |
| **ANDERSON LLP,** | ) | |
| | ) | |
| **Defendants.** | ) | |

_____)

**METROPOLITAN LIFE INSURANCE COMPANY'S**
**MOTION IN LIMINE**
**REGARDING THE DEAN WITTER REYNOLDS' QUOTATION**

**ORAL HEARING REQUESTED**

Defendant, Metropolitan Life Insurance Company (hereinafter "MetLife"), moves for an Order excluding as evidence at trial the document attached hereto as Exhibit "A" which purports to be a quotation from Dean Witter Reynolds for the cost of an Annuity from a company named "Charter Security Life Insurance Company, New Jersey."  (Hereinafter, this document will be referred to as the "Morgan Stanley Quote.")

It has been alleged that this price quotation was authored by MetLife's predecessor, Charter Security Life Insurance Company (New York)(Charter of New York).  The Court should preclude this document from being used at trial based on the Best Evidence rule, on the grounds

that it cannot be authenticated, and because it is inadmissible hearsay will confuse those jurors and is highly prejudicial.

MetLife moves for an Order barring any party from submitting evidence or testimony at Trial linking MetLife or its predecessor in interest, Charter of New York (New York), to this Morgan Stanley Quote.

## **FACTS**

Kemper's Rule 26 Disclosures include among the documents identified the following: "A copy of a proposal for a life annuity, dated April 8, 1983, prepared by Charter of Security Life Insurance Company. Kemper has claimed that this document constitutes an offer by Charter Insurance Company of New York, that Plaintiff accepted this offer, and that MetLife sold a lifetime Annuity to Plaintiff incorporating those terms." Contrary to Kemper's assertion, there has been no evidence that the Morgan Stanley Quote was prepared by Charter of New York (New York). It is written on Dean Witter Reynolds, Inc.'s stationary, is unsigned, bears no quotation number, seal or other marking that would assist the trier-of-fact in authenticating it, and provides a price quotation for an Annuity that differs from the one that Kemper applied for a month later.

Contrary to Kemper's conclusory assertions, there is no evidence that the Morgan Stanley Quote was prepared by Charter of New York. The author of this document is unknown, and no party or witness has been able to authenticate it. The document bears handwriting in the margin but the author of these notes also is unknown. The Morgan Stanley Quote is dated April 8, 1983, but it is impossible to tell whether it was ever delivered to its intended recipient, whether it is a final version or merely a draft, or whether it is the first page of a multi-page document.

Although the Morgan Stanley Quote purports to set forth a quotation for the price of an Annuity from Charter Security Life Insurance Company of New Jersey, that company is <u>not</u> Charter of New York.  Charter of New Jersey is not a party to this case and, therefore, the Quote has no relevance to this case.

The Charter of New York Annuity Application that was <u>signed</u> by Mr. Dimon and Kemper's representative refers to Quote Number SO113.  The Morgan Stanley Quote that Kemper seeks to admit into evidence <u>does not bear this number,</u> further proof that the Morgan Stanley Quote was <u>not</u> the document relied upon by Plaintiff when he purchased the Annuity, and that it is therefore irrelevant and will confuse the jury.  Unless Plaintiff or Kemper can establish that the document in question was authored by, or uses information obtained from, Charter of New York, the document has no probative value in this case and would be highly prejudicial to MetLife.

Because of the ambiguities appearing within the four corners of the document, authentication is highly unlikely.  Even if authenticated, the document remains inadmissible because it is hearsay and does not fall within any of the hearsay exceptions.

## <u>ARGUMENT</u>

a.     <u>The document is inadmissible under the Best-Evidence rule</u>

Setting aside concerns regarding relevance, hearsay, confusion and prejudice for the moment, the Morgan Stanley Quote also is admissible under the Best Evidence Rule,

To prove the content of a writing, recording, or photograph, the <u>original</u> is required, except as otherwise provided in the rules of evidence or by Act of Congress.  (RULE 1002).  A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the

duplicate in lieu of the original.  (RULE 1003.)[1]  Yet MetLife has challenged the Authenticity of the Morgan Stanley Quote.

When considering whether to apply the Best Evidence rule to a proffered document, the Court should first consider whether it is the content of the document, or merely its existence, about which a witness intends to testify.  In this case, Plaintiff might testify as to the existence of this Morgan Stanley Quote when he is called upon to testify about how he received the Morgan Stanley Quote from his attorneys, Defendant Latti Associates, while they were in the process of negotiating the settlement of his lawsuit against The Jenny C., Inc. in 1983.  However, he, or any other witnesses, cannot then go on to testify regarding the contents of the Morgan Stanley Quote or attribute it to MetLife.  Doing so would violate the Best Evidence rule.

> [T]he following factors are appropriately considered when distinguishing between whether it is the content of the document or merely its existence that a witness intends to testify concerning: (a) the relative importance of content in the case, (b) the simplicity or complexity of content and consequent risk of error in admitting a testimonial account, (c) the strength of the proffered evidence of content, taking into account corroborative witnesses or evidence and the presence or absence of bias or self-interest on the part of the witnesses, (d) the breadth of the margin for error within which mistake in a testimonial account would not undermine the point to be proved, (e) the presence or absence of an actual dispute as to content, (f) the ease or difficulty of producing the writing, and (g) the reasons why the proponent of other proof of its content does not have or offer the writing itself.

R.R. Mgmt. Co. LLC v. CFS La. Midstream Co., 428 F.3d 214, 218-219 (5th Cir. 2005)(quoting CHRISTOPHER B. MUELLER & LAIRD C. KIRKPATRICK, FEDERAL EVIDENCE § 570 (2d ed. 1994)).

---

[1] Although a copy of the Quote may be admissible if the proponents show that the original has been lost or destroyed, to date there has been no evidence that this was the case.  Although Morgan Stanley has asserted that some or all of its documents relating to this matter were lost on 9/11, the Court should not assume that Kemper ever had possession of the original Quote.  It was Mr. Dimon's attorneys who sought the Annuity.  Yet Mr. Dimon's attorney has testified that he had no recollection of seeing the Quote until nine months before he was deposed in this matter.  (Hughes Deposition, pp. 30–31, Exhibit 3.)

Here, Plaintiff and Kemper may attempt to use the document to prove the terms of the annuity that was offered, the key issue in this case.  Mr. Dimon cannot be relied upon to testify regarding the content of this document.  Mr. Dimon's own attorneys felt it necessary for a Guardian Ad Litem to render an opinion as to the adequacy of the settlement, and the fact that there are no witnesses who have a clear recollection of the events that occurred twenty-five years ago, there is a high risk of error in allowing such testimony.  There are no other corroborative witnesses who will testify that this document reflects a proposal made by MetLife, and MetLife has repeatedly denied that it made such a proposal because Charter New Jersey is a different company and this document was no where to be found in Charter of New York's files.  Nor can Plaintiff or Kemper convincingly explain why, when it became evident in 1983 that it was MetLife's position that the annuity it issued was a 20-year certain, Kemper or Plaintiff (through his counsel) did not preserve the original Quote.[2]  The only explanation is that the document was not preserved because the original document, in its entirety, did not support the position that Plaintiff and Kemper have taken.

The sole purpose for which Plaintiff or Kemper should be allowed to use this document is to inform the trier of fact that Mr. Dimon was given an annuity quotation from Dean Witter Reynolds for an annuity issued by a New Jersey company, that he understood this Quote to set forth the terms of the annuity that was actually purchased on his behalf, but that, unbeknownst to him, a *different Annuit*y was purchased from a *different company with a different Quote number*.  No party should be allowed to represent that the Morgan Stanley Quote has any connection to MetLife or that its terms in any way memorialize the terms of the annuity provided by MetLife.

---

[2] One would think that they have exchanged multiple copies of it in correspondence and guarded the original for use in litigation.  To the contrary, no reference was made of the Quote when the dispute first came to light.  Why not?  Even if they had this Quote at the time the dispute arose, it is obvious that neither Plaintiff's counsel nor Kemper thought it had any weight or relevance.

<u>The document speaks for itself</u>: it is a fragment of information conveyed to Plaintiff by <u>Dean Witter Reynolds</u> (now Morgan Stanley) regarding an Annuity offered by a company that is not a party to this suit.  It is not a proposal from Charter of New York.

The best evidence rule is not an exception to the general rule excluding the admission of hearsay. Even if the document in question passes the Best Evidence Rule analysis, satisfying Rule 1002 does not mean that the evidence in question is necessarily admissible. The evidence remains subject to other admissibility objections, including hearsay and authentication.  <u>McInnis v. Fairfield Cmtys., Inc.</u> 458 F.3d 1129 (10th Cir. 2006).

b.      <u>The Quote Is Inadmissible Hearsay</u>

If the Morgan Stanley Quote is offered as evidence of the truth of Plaintiff/Kemper's claim that Dean Witter Reynolds quoted the cost of an annuity to Mr. Dimon consistent with the terms set forth therein, it is hearsay.  Further, if the document is offered to prove that Charter of New York provided the figures to Dean Witter Reynolds, it is *hearsay within hearsay* unless it can be shown that Dean Witter Reynolds was acting as that company's agent.

Because Dean Witter Reynolds/Morgan Stanley has been dismissed from this action, the Morgan Stanley Quote is not an admission by a party opponent.  See Rule 801(d)(2).  The contents of this document alone are insufficient to establish that Dean Witter Reynolds was acting as MetLife's agent at the time this document was transmitted.  <u>Id</u>.[3]

Nor does the document fall within any of the other hearsay exceptions.  It is not a data compilation kept in the ordinary course of business.  Rule 803(6).  And, although it meets the age

---

[3] Federal Rule of Evidence 801(d)(2)(D) defines as admissible non-hearsay "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship."

requirement to be considered an ancient document (Rule 803(16)), Plaintiff and Kemper cannot rely on this exception because the document's authenticity cannot be established.

   c.  <u>The Document is Inadmissible Because it Cannot Be Authenticated</u>

  The Morgan Stanley quote is not a proposal from Charter of New York.  The proponent's initial burden in showing the authenticity of a document is low.[4]  However, the proponent must demonstrate a rational basis for its claim that the evidence is what the proponent asserts it to be.  <u>United States v. Coohey</u>, 11 F.3d 97, 99 (8th Cir. 1993).   And, in establishing this prima facie case, Kemper and Plaintiff may only rely on admissible evidence.  <u>Zenith Radio,</u> 505 F. Supp. 1219-1220.

  Kemper and Plaintiff cannot meet the burden of a prima facie case regarding the authenticity of the Morgan Stanley Quote.   There is no rational basis to believe that this Morgan Stanley Quote is a proposal by MetLife's predecessor Charter of New York.  It is not on Charter of New York stationary, is unsigned and bears no identifying seals that would indicate that Charter of New York was involved in creating it.  To the contrary, it clearly indicates that it sets forth terms of an Annuity offered by Charter of New Jersey.  Further, there appears to be no one who can testify that the Morgan Stanley Quote was intended to memorialize the terms of an Annuity offered by MetLife's predecessor:

  1. On September 7-8, 2006, MetLife deposed William Mensie, Kemper's Liability Claims Specialist.  Mr. Mensie stated during his testimony that Kemper had no involvement in securing the Morgan Stanley Quote for the Annuity purchased on behalf of Mr. Dimon. (Mensie Deposition, p. 133, at 18, Exhibit "B")  Further, he recalled seeing no evidence

---

[4] There need be only a prima facie showing to the court of authenticity, not a full argument on admissibility. <u>Zenith Radio Corp. v. Matsushita Elec. Indus. Co.</u>, 505 F. Supp. 1190, 1219-1220 (D. Pa. 1980).

in Kemper's files that anyone from Kemper had negotiated directly with Charter Security

regarding the Annuity.  (Day 2, p. 199, at 13.)

2.  Roger E. Hughes of Latti Associates testified at his deposition that he had no recollection

of seeing the Morgan Stanley Quote before nine months prior to the deposition.  (Hughes

Deposition, pp.  30–31, Exhibit "C") He had no idea who produced the document or

whether it was produced by Charter.  (Id. at 44-45).

3.  Morgan Stanley's 30(b)(6) representative testified that a search was conducted of the

Boston office for documents relating to this matter, including the Morgan Stanley Quote,

and none could be found.  (Schmitt Deposition, pp. 58-59, Exhibit "D")

4.  At his deposition, the only document that Mr. Dimon recognized was the document

entitled "Proposal by Charter Security Life Insurance Company of New Jersey." (Dimon

Deposition, pp. 68-69, Exhibit "E")  However, it is clear from his testimony that Mr.

Dimon knows little about the origin of this document.  Mr. Dimon thought he got the

document, which was a copy, from Mr. Latti.  (Id. at 89.)

**WHEREFORE**, Metropolitan Life Insurance Company prays that this Court:

1.  Prohibit any evidence or testimony at trial submitted for the purpose of

establishing that the Morgan Stanley Quote sets forth the terms of an offer made

by MetLife or its predecessor; and

2.  Issue an Order excluding as evidence at Trial the document attached hereto as

Exhibit "A"

## REQUEST FOR ORAL ARGUMENT

MetLife respectfully requests that, pursuant to Local Rule 7.1(D), the Court schedule this matter for oral argument.  Oral argument will assist the Court in making its decision on MetLife's Motion.

Respectfully submitted by:                    Defendant,

                                                            METROPOLITAN LIFE INSURANCE COMPANY,

                                                            By its Attorneys,

                                                            /s/ James J. Ciapciak_____
                                                            James J. Ciapciak, BBO # 552328
                                                            Peter M. LeBlanc, BBO # 645302
                                                            CIAPCIAK & ASSOCIATES, P.C.
                                                            99 Access Road
                                                            Norwood, MA  02062
                                                            Tel:  (781) 255-7401
                                                            Fax:  (781) 255-7402

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing document was filed via the ECF system and will be served electronically through that system upon Counsel of Record on May 12, 2008.

                                                          __/s/ Peter M. LeBlanc_____
                                                            Peter M. LeBlanc

A



*DEAN WITTER REYNOLDS INC.*
*One Boston Place, Boston, MA 02108    Telephone (617) 722-3500*

April 8, 1983

PROPOSAL BY

CHARTER SECURITY LIFE INSURANCE COMPANY

OF NEW JERSEY

FOR A

LIFE ANNUITY 20 YEAR CERTAIN

UNDER A STRUCTURED ANNUITY SETTLEMENT

OF $1,450.45 PER MONTH FOR THE FIRST

YEAR AND IT WOULD INCREASE 3%

PER YEAR AS FOLLOWS:

| | |
|---|---|
| 2ND YEAR | $1,493.96 |
| 3RD YEAR | $1,538.78 |
| 4TH YEAR | $1,584.95 |
| 5TH YEAR | $1,632.49 |
| 6TH YEAR | $1,681.47 |
| 7TH YEAR | $1,731.91 |
| 8TH YEAR | $1,783.87 |
| 9TH YEAR | $1,837.39 |
| 10TH YEAR | $1,892.51 |
| 20TH YEAR | $2,543.37 |
| 30TH YEAR | $3,418.08 |
| 40TH YEAR | $4,593.61 |
| 50TH YEAR | $6,173.43 |

B

133

1    dated July 14, 1983.  It's in the premarked exhibits.

2              MR. O'DRISCOLL:  I have it, July 14, 1983.

3              THE WITNESS:  I've reviewed it.

4    BY MR. LeBLANC:

5         Q    Was Mr. Snyder an employee of Kemper?

6         A    No.

7         Q    What do you understand Mr. Snyder's role in the

8    annuity application to be?

9         A    He was the broker for the plaintiff's attorney.

10        Q    And what do you mean he was the broker for the

11   plaintiff's attorney?

12        A    There was communication that through Dean

13   Witter, the plaintiff's attorney had been able to secure

14   a quote for 240 months certain and life thereafter

15   through Dean Witter.

16        Q    Did Kemper have any involvement in securing

17   that quote?

18        A    No.

19        Q    I'd ask that you look at a letter dated August

20   12, 1983.

21             MR. O'DRISCOLL:  August 12, 1983.  Mr. Mensie

22   has it in front of him.

23   BY MR. LeBLANC:

24        Q    For the record this is a letter dated August

C

Roger E. Hughes, Jr.
Volume 1 - May 10, 2006

Page 30

1      Q.   That may have been the last time?

2      A.   That may have been the last time.

3      Q.   But it was your practice back at this

4    period of time in the year 1983 time frame to

5    consult with Professor Weckstein regarding what kind

6    of stream of payments could be achieved for a

7    certain amount of money?

8      A.   Correct.

9      Q.   I show you what has been marked as Exhibit

10   24.

11            MS. McQUAY:   Tim, for your information,

12   it is the document entitled Proposal by Charter

13   Security Life Insurance Company.

14     Q.   Is this one of the documents that

15   Mr. Kaplan provided to you for your review?

16     A.   Yes.

17     Q.   And do you have any recollection of this

18   document?

19     A.   Well, I have a recollection that I've seen

20   it in the last six to nine months.  Before that I

21   had no recollection of this document.

22     Q.   So when you say you've seen it, you've seen

23   it because Mr. Kaplan gave it to you.

24     A.   Correct.

Roger E. Hughes, Jr.
Volume 1 - May 10, 2006

Page 31

1      Q.  But prior to the time that he gave it to

2  you, you don't remember seeing it?

3      A.  I don't remember seeing it.  It doesn't

4  mean I didn't see it.

5      Q.  It doesn't ring any bells with you.  It

6  doesn't refresh your memory?

7      A.  It doesn't refresh my memory.

8      Q.  Do you have any recollection of having

9  talked with anyone at Dean Witter about getting a

10  proposal for annuity in the Dimon matter?

11      A.  I don't.

12      Q.  Do you have any recollection of having

13  obtained proposals from any source regarding an

14  annuity in the Dimon matter?

15      A.  I have no independent recollection.

16      Q.  I'm going to show you what has previously

17  been marked as Exhibit 4 in this case, which I will

18  represent to you is a copy of a letter that was

19  produced from the files of Metropolitan Life, and

20  ask you if you have seen Exhibit 4 before.

21      A.  No.

22      Q.  This was not one of the documents that

23  Mr. Kaplan gave to you?

24      A.  I don't believe so.  It is not.

D

Page 58

1                          Schmitt

2        Q.    Okay.   The Dean Witter Reynolds

3    document that was -- that you reviewed

4    earlier, the proposal I'll call it if you

5    don't mind, I think it's Exhibit 24?

6        A.    Yes.

7        Q.    Has Dean Witter or Morgan Stanley,

8    I guess, determined to your knowledge who

9    might have prepared this?

10       A.    To my knowledge, no.

11       Q.    Okay.   Has anybody to your

12   knowledge made any efforts to determine why

13   this proposal -- this Charter Security Life

14   Insurance Company in New Jersey as opposed to

15   New York as indicated on Exhibit 1, the

16   application?

17       A.    I'm sorry?   Can you repeat that

18   question?

19             MR. CIAPCIAK:   I'm not sure I can.

20       Court reporter, could you read that

21       back, please?

22             (Record read.)

23       A.    You're picking up New Jersey from

24   where?

25       Q.    Exhibit 24 it says Charter Security

Page 59

1                        Schmitt

2    Life Company of New Jersey.

3         A.    Okay.   No, I'm not aware of why

4    there would be a difference there.

5         Q.    To your knowledge has anybody from

6    Morgan Stanley looked into that in any way?

7         A.    Not that I'm aware of.

8         Q.    Exhibit 24 also says Dean Witter

9    Reynolds, Inc., One Boston Place.   Do you

10   know if anybody searched for documents in the

11   Dean Witter -- old Dean Witter Boston office?

12        A.    My understanding is that Paul

13   Thomas inquired.

14        Q.    And could you tell me what resulted

15   of that inquiry was?

16        A.    The -- and the result was that no

17   documents were able to be found.

18        Q.    Thank you.

19              Now, earlier you testified, and

20   correct me if I'm wrong, that normally in

21   these types of transactions Morgan Stanley

22   would act as the agents of the insurance

23   company; is that an accurate summation of

24   your testimony?

25              MS. McQUAY:   Objection as to form.

E

```
00068
  1    MR. KEANE:  I'M SORRY, THAT'S NOT
  2    WHAT WE HAVE.
  3    MS. MCQUAY:  THAT'S NOT WHAT I HAVE.
  4    MR. KEANE:  IT'S A COPY OF A FAX TO
  5    LATTI.
  6    MR. LEBLANC:  YES, AND THEN THE
  7    JUNE 9TH, 2003 LETTER, PROPOSAL SHEET AND
  8    JUNE 12TH, 2003 LETTER FROM DENNIS DIMON.
  9    MR. KEANE:  THANK YOU.
 10    MR. LEBLANC:  DOES EVERYONE HAVE
 11    THAT?
 12    MR. DEWICK:  YES.
 13    MS. MCQUAY:  YES.
 14    MR. LEBLANC:  OKAY.
 15    BY MR. LEBLANC:
 16    Q.   MR. DIMON, I'LL HAND YOU WHAT WAS MARKED
 17    AS EXHIBIT 15.  CAN YOU TAKE A LOOK AT THOSE
 18    DOCUMENTS FOR ME, PLEASE?
 19    MR. KEANE:  CAN WE GO OFF THE RECORD
 20    FOR ONE SECOND?
 21    MR. LEBLANC:  SURE.
 22    (OFF THE RECORD.)
 23    MR. LEBLANC:  BACK ON RECORD.
 24    MR. KEANE:  YES.
```

```
00069
 1   BY MR. LEBLANC:
 2   Q.    MR. DIMON, DO YOU RECOGNIZE THESE
 3   DOCUMENTS WE HAVE MARKED AS EXHIBIT 15?
 4   A.    ONLY ONE OF THEM.
 5   Q.    AND WHICH ONE OF THEM DID YOU RECOGNIZE?
 6   A.    STATING ON HOW MUCH I WAS GOING TO GET
 7   PER MONTH AND THE POLICY, SUPPOSEDLY THE POLICY
 8   ITSELF ON WHAT I WAS GOING TO RECEIVE.
 9   Q.    AND RIGHT NOW FOR THE RECORD, YOU'RE
10   LOOKING AT THE DOCUMENT ENTITLED "PROPOSAL BY
11   CHARTER SECURITY LIFE INSURANCE COMPANY OF NEW
12   JERSEY"?
13   A.    RIGHT.
14   Q.    THE DOCUMENT THAT'S ON THE DEAN WITTER
15   REYNOLDS LETTERHEAD OR WHAT APPEARS TO BE?
16   A.    RIGHT.
17   Q.    SO, YOU RECOGNIZE THAT DOCUMENT?
18   A.    RIGHT.
19   Q.    PAGE 3 OF EXHIBIT 15?
20   A.    I THINK THAT'S WHAT IT IS, YES.
21   Q.    OKAY.  YOU DON'T RECOGNIZE ANY OF THE
22   OTHER DOCUMENTS IN THAT PACKET?
23   A.    NOT RIGHT OFF.
24   Q.    AND I'LL JUST READ A PORTION OF EXHIBIT
```