# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| **DENNIS DIMON,** | ) | |
| Plaintiff, | ) ) ) | |
| VS. | ) ) | C. A. No: 05-11073 NG |
| **METROPOLITAN LIFE INSURANCE COMPANY, KEMPER INSURANCE COMPANY, MORGAN STANLEY DW, INC., MICHAEL B. LATTI, LATTI ASSOCIATES, and LATTI & ANDERSON LLP,** | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## METROPOLITAN LIFE INSURANCE COMPANY'S
## MOTION IN LIMINE
## TO PRECLUDE A DOCUMENT PURPORTED TO BE AN ANNUITY CONTRACT

### ORAL HEARING REQUESTED

Defendant, Metropolitan Life Insurance Company (hereinafter "MetLife"), moves for an Order excluding from evidence the incomplete version of the alleged Annuity Contract that Plaintiff has identified in the Joint Pre-Trial Memorandum as "A copy of a Single Premium Deferred Annuity, issued on or about June 17, 1983, by Charter Security Life." Plaintiff appears to be referring to a document produced by Kemper Insurance Company at its 30(b)(6) deposition, which appears to be several separate documents. (Exhibit "A", hereinafter referred to as "the alleged annuity.")

MetLife objects to the alleged annuity on the grounds that it cannot be authenticated as the actual Annuity Contract issued by MetLife's predecessor in interest, Charter Security Life

Insurance Company (New York), because the document does not identify who the owner or beneficiary of the Annuity Contract is and, based upon the pagination and partial Table of Contents contained therein, it is incomplete, and it has been altered.

It is not possible, based upon the information available to the parties, to determine if this is the authentic annuity contract issued by Charter and referred to in the 1983 exchange of correspondence between Charter, Kemper and Dean Witter Reynolds. There is no mention within this document of Dennis Dimon (the Annuitant) or Kemper/American Motorists (the Annuity owner). The only mention of Dennis Dimon's name relative to the annuity is on a document entitled "Supplementary Agreement," but this document does not appear in the Table of Contents page included in the Document and is dated more than a month before this alleged annuity. In fact, there are many indications within the four corners of the Document that it is <u>not</u> what Kemper and Plaintiff want it to be:

- The first page of the document is paginated "Page 1" at the lower right-hand corner. Also on that page is a notation "RA-104" above the notation "11/82" on the lower left-hand corner of the document. Yet the next page, titled "Table of Contents", does not include either the page number or the left-hand corner notation.

- Pages 3 and 4 are missing. The Table of Contents shows that page 3 contained the *Schedule Page* and page 4 contained the *Table of Guaranteed Contract Values*.

- The page following page 2 is numbered "Page 5" and includes the left-hand corner notation.

- The following pages, number 6-9, do not contain the left-hand corner notation. None of the remaining pages include pagination or the lower left-hand notation.[1]

- The two pages immediately following page number 9 contain smaller fonts, wider margins, and appear to contain individual sections <u>cut and pasted together in such a way that portions of the text are completely obscured</u>.

- The next page contains the "Supplementary Agreement." This page is dated May 5, 1983, <u>more than a month before the June 17, 1983 date shown on the preceding page</u>. The presence of this page within the Document calls into question the Document's authenticity, especially since Plaintiff has challenged the authenticity of the Supplementary Agreement in the Joint Pre-Trial Memorandum.

- The final page, titled "Endorsement'", includes a lower left-hand notation "RA-104E."

## **ARGUMENT**

When the question of the admissibility of contents of writings depends upon the fulfillment of a condition of fact, "the question whether the condition has been fulfilled is ordinarily for the court to determine in accordance with the provisions of Rule 104." Rule 1008. In showing the authenticity of a document, the proponent's initial burden is low.[2] However, the proponent must demonstrate a rational basis for its claim that the evidence is what the proponent asserts it to be. <u>United States v. Coohey</u>, 11 F.3d 97, 99 (8th Cir. 1993). And, in establishing this prima facie case, Kemper and Plaintiff may only rely on admissible evidence. <u>Zenith Radio</u>, 505 F. Supp. 1219-1220.

---

[1] The Supplementary Agreement <u>does</u> in fact contain a lower left-hand corner notation, but it is not the same as appears on the other pages of the Documents.
[2] There need be only a prima facie showing to the court of authenticity, not a full argument on admissibility. <u>Zenith Radio Corp. v. Matsushita Elec. Indus. Co.</u>, 505 F. Supp. 1190, 1219-1220 (D. Pa. 1980).

Neither Kemper nor Plaintiff can produce a witness who can identify the alleged annuity based upon first-hand knowledge.  It is believed that Kemper's witness can only testify that the document was found in a Kemper file.  However, no party can explain why the document is incomplete, why certain pages were removed, why others were substantially altered, and why it appears that some pages were inserted at a later date.  These alterations create such doubt about the authenticity of the alleged annuity that Plaintiff and Kemper cannot demonstrate a rational basis for this Court to find that the Document is what they claim it to be.

*WHEREFORE*, Metropolitan Life Insurance Company prays that this Court issue an Order excluding any evidence at Trial that the Document is the Annuity Contract issued by Charter Security Life Insurance Company (New York) to American Motorists Insurance Company.

## REQUEST FOR ORAL ARGUMENT

MetLife respectfully requests that, pursuant to Local Rule 7.1(D), the Court schedule this matter for oral argument.

Respectfully submitted by

Defendant,

METROPOLITAN LIFE INSURANCE COMPANY,

By its Attorneys,

____/s/ James J. Ciapciak_____
James J. Ciapciak, BBO # 552328
Peter M. LeBlanc, BBO # 645302
CIAPCIAK & ASSOCIATES, P.C.
99 Access Road
Norwood, MA  02062
Tel:  (781) 255-7401
Fax:  (781) 255-7402

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing document was filed via the ECF system and will be served electronically through that system upon Counsel of Record on May 12, 2008.

___/s/ Peter M. LeBlanc_____
Peter M. LeBlanc

A



NY

Charter Security Life Insurance Company (New York)
720 Fifth Avenue • New York, New York 10019

| .975 | 14 | 7.49 | 19 | 5.97 | 24 |
| .983 | 15 | 7.10 | 20 | 5.75 | 25 |

OPTION 2. LIFE INCOME*

We will pay a lifetime monthly income to the Annuitant if living on the Annuity Date. The basis for this amount of income is explained in this contract.

Unless you make an alternate election, we will make the first monthly payment on the Annuity Date; payments after the first will be on that same date of the month as long as the Annuitant lives. Unless you make an alternate election, we guarantee 120 monthly payments; they will be continued to the Beneficiary if the Annuitant dies before receiving them. Payments will be made by check to the Annuitant or Beneficiary. We reserve the right to require proof that the payee is living on payment dates.

We will pay the benefit explained in this contract if the Annuitant dies before the Annuity Date. It will be paid to the Beneficiary when we receive acceptable proof of death.

The Beneficiary and Owner are as named in the application if not later changed.

Notice of ten-day right to examine contract: This contract may be cancelled within ten days after its receipt. The steps to follow are:

Return the contract with a written notice to us or to the agent through whom you purchased the contract. If you return the contract directly to us, use the address of our Home Office shown on the top of this page. If return is through the agent, obtain a receipt.

We will return all payments made for this contract after we receive it. As soon as the contract is delivered or mailed to us, it will be deemed void from its beginning.

Read this contract carefully. It is a legal contract between you and us.

_signature_  
Secretary

_signature_  
President

## SINGLE PREMIUM DEFERRED ANNUITY

Monthly Life Annuity With Ten Years Certain Payable At Annuity Date  
Benefit in Event of Death is Payable Prior To Annuity Date  
Optional Life Annuities at Annuity Date—Optional Annuity Date  
Non-Participating



RA-104  
11/82

K-0010  
Page 1

# TABLE OF CONTENTS

| Item | Page No. |
|---|---|
| Face Page | 1 |
| Schedule Page | 3 |
| Table of Guaranteed Contract Values | 4 |
| Definitions | 5 |
| General Provisions | |
|   Basis of Contract | 5 |
|   Entire contract; changes | 5 |
|   Premium payment | 5 |
|   Issue date | 5 |
|   Incontestability | 5 |
|   Misstatement of age or sex | 5 |
|   Ownership | 6 |
|   Change of ownership | 6 |
|   Assignment | 6 |
|   Beneficiary | 6 |
|   Conformance to statutes | 6 |
| Interest Rates | |
|   Declared Interest Rate | 6 |
|   Guaranteed Interest Rates | 6 |
| Joint Annuitant | |
|   Definition | 6 |
|   Annuity Date | 6 |
|   Deferral of Annuity Date | 6 |
|   Benefit In Event of Death | 6 |
|   Separate Annuities | 6 |
| Non-Forfeiture Provisions | |
|   Accumulation Value | 7 |
|   Cash surrenders | 7 |
|   Benefit in Event of Death | 7 |
|   Annual statement of values | 7 |
|   Normal settlement; annuity date | 7 |
|   Change in annuity option or date | 7 |
|   Benefits payable to beneficiary | 7 |
|   Minimum payments | 7 |



| Settlement Options | |
|---|---|
|   Option 1, limited payments | 8 |
|   Option 2, life income | 8 |
|   Option 3, joint life income with two-thirds to survivor | 8 |
|   Rate basis | 8 |
|   Settlement option tables | 9 |

NY

## DEFINITIONS

This is what we mean when we use these words or phrases:

"We," "us" and "our" refer to Charter Security Life Insurance Company (New York).

"You" and "yours" refer to the Owner named in the application.

The "Accumulation Interest Rate" is the annual effective interest rate which we use to credit interest to the Single Premium less any Partial Surrenders.

The "Accumulation Value" is the value of the contract before the charge, if any, for withdrawing funds.

The "Annuitant" is the person who is to receive annuity payments.

The "Beneficiary" receives the benefits, if any, due at the Annuitant's death.

A "Contingent Owner," if named, becomes the Owner if the Annuitant survives the Owner.

"Contract Years" are measured from the Issue Date.

The "Declared Interest Rate" is the Accumulation Interest Rate which we declare and guarantee for the Effective Period.

The "Effective Period" is the period during which the Accumulation Value will accrue interest at the Declared Interest Rate.

The "Owner" owns and controls this contract.

A "Partial Surrender" is a surrender of part of the Accumulation Value.

The "Surrender Charge" is the charge for withdrawing funds. It is equal to the Surrender Charge Percentage times the amount of Accumulation Value surrendered. The Surrender Charge Percentages are shown on the Schedule Page. Refer to NONFORFEITURE PROVISIONS; the Surrender Charge applies only under certain conditions.

The "Surrender Interest Rate" is the Declared Interest Rate below which the Surrender Charge is waived for 60 days. Refer to NONFORFEITURE PROVISIONS.

The "Surrender Value" is the Accumulation Value less the Surrender Charge.

"Survive" refers to the continued life of a person or legal existence of an entity other than a person.

## GENERAL PROVISIONS

BASIS OF CONTRACT: This contract is issued on the basis of the application and receipt of the Single Premium payment in advance.

ENTIRE CONTRACT; CHANGES: This contract, the attached application, and any endorsements make up the entire contract. All statements in the application are representations and not warranties.

No agent can change this contract or waive any of its terms. Changes can be made only by written endorsement signed by one of our officers.

PREMIUM PAYMENT: The Single Premium payment for this contract was paid in advance. If the check or other instrument is not honored for payment, this contract is deemed void from the beginning.

ISSUE DATE: This contract takes effect on its Issue Date which is shown on the Schedule Page.

INCONTESTABILITY: This contract is incontestable from its issue date.

MISSTATEMENT OF AGE OR SEX: We will require proof of age before we make payments to the Annuitant or any Beneficiary. If age or sex is misstated, we will pay the amount due at the true age or sex. In case of age or sex correction after payments start, we will:

(1) In case of underpayment, pay the full amount due the payee with the next payment due.

(2) In case of overpayment, deduct the amount due us from future payments; deductions will be spread over the payment period.

RA-104
11/82

K-0012
Page 5

GI·· ·        PROVISIONS
(Continued)

OWNERSHIP: You have all rights under this contract during the Annuitant's lifetime, subject to:

(1) the rights of any assignee of record with us;

(2) the rights of any irrevocable Beneficiary;

(3) any restricted ownership endorsement;

(4) the change of ownership provision.

CHANGE OF OWNERSHIP: During the Annuitant's lifetime, you may name a new Owner. If you are a natural person other than the Annuitant, you may name or change a Contingent Owner. A Contingent Owner becomes Owner only by surviving you.

Notice of the change must be sent to our Home Office; it must be signed and dated by you. We are not liable for any actions we take before we receive and file the notice at our Home Office.

Change of ownership:

(1) voids any Contingent Ownership;

(2) does not affect the Beneficiary.

ASSIGNMENT: You may assign all rights, privileges and benefits provided by this contract. We are not bound by an assignment until we receive and file a signed copy at our Home Office. We are not responsible for the validity of assignments.

BENEFICIARY: You may change the Beneficiary during the Annuitant's lifetime; an irrevocable Beneficiary may be changed only by that Beneficiary's written consent. Notice of the change must be sent to our Home Office; it must be signed and dated by you. It takes effect on the date it is signed. We are not liable for any actions we take before we receive and file the notice at our Home Office.

A Beneficiary's interest is effective if that Beneficiary:

(1) survives the Annuitant by 15 days; or

(2) survives until we receive proof of the Annuitant's death.

We will pay the proceeds in this order unless this contract is assigned at the time of the Annuitant's death:

(1) We will pay the designated Beneficiaries who survive the Annuitant.

(2) If no Beneficiary survives, we will pay the Annuitant's estate.

No Beneficiary can change your previous choice of a settlement option.

To the extent permitted by law, no payment we make will be subject to the claims of any creditors.

CONFORMANCE TO STATUTES: Any annuity, Surrender Value or benefit in event of death payable under this contract is not less than the minimum benefit required by any statute of the state in which this contract is delivered.

INTEREST RATES

DECLARED INTEREST RATE. We declare an Accumulation Interest Rate, and Effective Period, on the Issue Date. They are shown on the Schedule Page. Prior to the expiration of the Effective Period, we will declare a new Accumulation Interest Rate and Effective Period. We will notify you of declared Accumulation Interest Rates and effective periods in writing.

GUARANTEED INTEREST RATES: We guarantee that the Accumulation Interest Rates will be at least as great as the Guaranteed Interest Rates shown on the Schedule Page.

JOINT ANNUITANT

If you designate two persons as joint annuitants in the application, these rules will be in effect:

Definition: The term "Annuitant" means the joint annuitants or the survivor of them, as the case may be.

Annuity Date: The Annuity Date will be:

(1) the Contract Anniversary following the 65th birthday of the older joint annuitant; or

(2) ten years from the Issue Date if the issue age of the older joint annuitant is more than 55 Years; or

(3) the date specified in the application.

Deferral of Annuity Date: The Annuity Date may not be deferred to a date beyond the 85th birthday of the older joint annuitant.

BENEFIT IN EVENT OF DEATH: We will not pay any benefit upon the death, before the Annuity Date, of the first of the joint annuitants to die. Instead, the contract will remain in force as to the surviving joint annuitant. If one joint annuitant dies before the Annuity Date, the latest permitted Annuity Date will become the 85th birthday of the remaining joint annuitant or, if later, ten years after the Issue Date. If both joint annuitants die before the Annuity Date, we will pay the benefit to the Beneficiary.

Separate annuities: At your request, we will apply the Accumulation Value to provide separate annuities for each joint annuitant, if both are living on the Annuity Date. You must make this request in writing at least 30 days before the Annuity Date. For this purpose, you must specify a division of the Accumulation Value into two portions. These portions may but need not be of equal size. You must specify the annuity option for each joint annuitant. You are not required to choose the same annuity option for both joint annuitants.

In addition to these three options, you may choose any other form of annuity agreed upon by us.

Except with our consent, settlement options will not be available to:

(1) an assignee; or

(2) any other than a natural person receiving proceeds in his or her own right

Page 6

K-0013

ACCUMULATION VALUE: The Accumulation Value at any time is the Single Premium you paid, less any Partial Surrenders and Surrender Charges, accumulated at the Accumulation Interest Rates.

CASH SURRENDERS: You may surrender all or part of the Accumulation Value before annuity payments begin.

We have a Surrender Charge in effect for the first seven years after the Issue Date, but only if:

(1) there is more than one surrender within a Contract Year, or

(2) the surrender exceeds the Allowable Portion of the Accumulation Value. The Allowable Portion is shown on the Schedule Page.

On the first surrender in a Contract Year, the Surrender Charge applies only to the amount in excess of the Allowable Portion of the Accumulation Value.

If an Accumulation Interest Rate is less than the Surrender Interest Rate, you may surrender this contract without a Surrender Charge provided you notify us within 60 days of the effective date of the Accumulation Interest Rate. After 60 days, any Surrender Charge in effect will be reinstated. However, you will not forfeit your right to surrender this contract without a Surrender Charge should a future Accumulation Interest Rate be below the Surrender Interest Rate.

If you surrender the entire Accumulation Value, the amount we pay you, added to any prior amounts we paid you for Partial Surrenders, will not be less than the Single Premium you paid us.

We may defer payment of cash surrenders for not more than six months.

BENEFIT IN EVENT OF DEATH: We will pay the Accumulation Value to the Beneficiary if:

(1) the Annuitant dies before the Annuity Date; and

(2) you have not specified a settlement option.

The amount paid will be the Accumulation Value as of the date of death accumulated at the Accumulation Interest Rate to the date of payment by us. It will be paid when we receive acceptable proof of death. No Surrender Charge will apply.

ANNUAL STATEMENT OF VALUES: As of each contract anniversary on or before the Annuity Date, we will send you a statement which shows the:

(1) Accumulation Value; and

(2) Surrender Value; and

(3) Monthly life annuity with ten years certain which can be provided on the Annuity Date by the current Accumulation Value; and

(4) Declared Interest Rate.

NORMAL SETTLEMENT; ANNUITY DATE: The Accumulation Value will be used to provide a life annuity as shown on the Schedule Page if:

(1) the Annuitant is living on the Annuity Date; and

(2) you have not made an alternate election.

The Annuity Date will be:

(1) the contract anniversary following the Annuitant's 65th birthday; or

(2) ten years from the Issue Date if the Issue Age is more than 55 years; or

(3) the date specified in the application.

CHANGE IN ANNUITY OPTION OR DATE: You may defer the Annuity Date; deferral may not be to a date beyond the Annuitant's 85th birthday. After five years from the Issue Date, you may:

(1) Advance the Annuity Date (but not to a date earlier than the date of the request); or

(2) elect to begin payments under a settlement option.

Written request must be made:

(1) during the Annuitant's lifetime;

(2) at least 30 days before the Annuity Date; and

(3) at least 30 days before any settlement option date.

BENEFITS PAYABLE TO BENEFICIARY: During the Annuitant's lifetime, you may choose a settlement option rather than a lump sum death benefit. The Beneficiary may make this choice after the Annuitant's death if:

(1) you have not done so; and

(2) payments have not begun.

MINIMUM PAYMENTS: We will not make periodic payments of less than $20.00; for lesser amounts due, we will change the frequency of payments. This provision applies to payments we make to the Annuitant or to any Beneficiary.

## SETTLEMENT OPTIONS

If you elect an annuity option by death, surrender or annuitization, the Accumulation Value of this contract may be applied under any of the options set forth below, provided that:

(1) In the event of surrender, the option is elected on or prior to the surrender date.

(2) In the event of death, the option is elected within 30 days of the date on which we notify the Beneficiary that proceeds are payable.

At the time payments under a settlement option begin, we will pay the greater of

(1) the amount guaranteed under this contract; or

(2) the amount that would be provided by the application of the Accumulation Value to purchase a single premium immediate annuity offered by us to the same class of annuitants, or

(3) an amount determined by more favorable rates which we then offer.

**OPTION 1, LIMITED PAYMENTS:** Equal payments for a set time, not more than 30 years. Any excess interest we declare will be paid yearly.

**OPTION 2, LIFE INCOME:**
**LIFE ANNUITY.** Equal monthly payments as long as the payee lives.

**WITH CERTAIN PERIOD.** Equal monthly payments for five, ten, or twenty years (the certain period), as elected, and thereafter for the remaining lifetime of the payee.

**WITH INSTALLMENT REFUND.** Equal monthly payments until the sum of such payments equals the proceeds settled under this option (at which time the installment refund period ends) and thereafter for the remaining lifetime of the payee.

**OPTION 3, JOINT LIFE INCOME WITH TWO-THIRDS TO SURVIVOR:** Payment of equal monthly (or less frequent) installments during the joint lifetime of the payee and another person. After the death of either the payee or the joint payee, the amount of each installment shall be reduced to two-thirds of the original amount and payments shall continue during the entire remaining lifetime of the survivor.

Rate basis: The monthly installments guaranteed under this contract are based on:

(1) the 1937 Standard Annuity Table,

(2) 3½% interest, and

(3) age nearest birthday.

## SETTLEMENT OPTION TABLES

### GUARANTEED MONTHLY INSTALLMENTS UNDER OPTIONS 1, 2 OR 3
(Monthly installments are shown for each $1,000 of net proceeds applied.
The ages shown are ages nearest birthday when the first monthly installment is payable.)

#### OPTION 1. INSTALLMENTS FOR A SPECIFIED PERIOD

| Years | Installment | Years | Installment | Years | Installment | Years | Installment | Years | Installment | Years | Installment |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | $84.65 | 6 | $15.35 | 11 | $9.09 | 16 | $6.76 | 21 | $5.56 | 26 | $4.84 |
| 2 | 43.05 | 7 | 13.38 | 12 | 8.46 | 17 | 6.47 | 22 | 5.39 | 27 | 4.73 |
| 3 | 29.19 | 8 | 11.90 | 13 | 7.94 | 18 | 6.20 | 23 | 5.24 | 28 | 4.63 |
| 4 | 22.27 | 9 | 10.75 | 14 | 7.49 | 19 | 5.97 | 24 | 5.09 | 29 | 4.53 |
| 5 | 18.12 | 10 | 9.83 | 15 | 7.10 | 20 | 5.75 | 25 | 4.96 | 30 | 4.45 |

#### OPTION 2. LIFE INCOME*

| Issue Age | | Life | 5 Years Certain | 10 Years Certain | 20 Years Certain | Installment Refund | Issue Age | | Life | 5 Years Certain | 10 Years Certain | 20 Years Certain | Installment Refund |
| Male | Female | | | | | | Male | Female | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 34 | 39 | 4.11 | 4.10 | 4.08 | 4.00 | 3.95 | 59 | 64 | 6.56 | 6.45 | 6.15 | 5.28 | 5.78 |
| 35 | 40 | 4.16 | 4.15 | 4.13 | 4.04 | 4.03 | 60 | 65 | 6.74 | 6.62 | 6.28 | 5.31 | 5.90 |
| 36 | 41 | 4.21 | 4.20 | 4.18 | 4.08 | 4.07 | 61 | 66 | 6.93 | 6.79 | 6.41 | 5.35 | 6.03 |
| 37 | 42 | 4.27 | 4.26 | 4.23 | 4.12 | 4.12 | 62 | 67 | 7.13 | 6.97 | 6.55 | 5.39 | 6.16 |
| 38 | 43 | 4.33 | 4.32 | 4.29 | 4.16 | 4.16 | 63 | 68 | 7.35 | 7.16 | 6.69 | 5.43 | 6.29 |
| 39 | 44 | 4.39 | 4.38 | 4.34 | 4.21 | 4.21 | 64 | 69 | 7.57 | 7.36 | 6.83 | 5.47 | 6.44 |
| 40 | 45 | 4.45 | 4.44 | 4.40 | 4.26 | 4.27 | 65 | 70 | 7.81 | 7.58 | 6.98 | 5.51 | 6.59 |
| 41 | 46 | 4.52 | 4.51 | 4.47 | 4.30 | 4.32 | 66 | 71 | 8.06 | 7.79 | 7.12 | 5.54 | 6.75 |
| 42 | 47 | 4.59 | 4.58 | 4.53 | 4.35 | 4.37 | 67 | 72 | 8.33 | 8.03 | 7.27 | 5.57 | 6.91 |
| 43 | 48 | 4.67 | 4.65 | 4.60 | 4.40 | 4.43 | 68 | 73 | 8.62 | 8.26 | 7.42 | 5.60 | 7.08 |
| 44 | 49 | 4.75 | 4.73 | 4.67 | 4.45 | 4.49 | 69 | 74 | 8.92 | 8.52 | 7.58 | 5.63 | 7.26 |
| 45 | 50 | 4.83 | 4.81 | 4.75 | 4.50 | 4.56 | 70 | 75 | 9.24 | 8.78 | 7.73 | 5.65 | 7.45 |
| 46 | 51 | 4.92 | 4.89 | 4.82 | 4.56 | 4.62 | 71 | 76 | 9.59 | 9.06 | 7.88 | 5.67 | 7.66 |
| 47 | 52 | 5.01 | 4.98 | 4.90 | 4.61 | 4.69 | 72 | 77 | 9.95 | 9.34 | 8.03 | 5.69 | 7.86 |
| 48 | 53 | 5.10 | 5.07 | 4.99 | 4.66 | 4.76 | 73 | 78 | 10.33 | 9.63 | 8.16 | 5.70 | 8.05 |
| 49 | 54 | 5.20 | 5.17 | 5.07 | 4.72 | 4.84 | 74 | 79 | 10.74 | 9.94 | 8.32 | 5.71 | 8.32 |
| 50 | 55 | 5.31 | 5.27 | 5.17 | 4.77 | 4.91 | 75 | 80 | 11.19 | 10.27 | 8.46 | 5.72 | 9.56 |
| 51 | 56 | 5.42 | 5.38 | 5.26 | 4.83 | 4.99 | 76 | 81 | 11.66 | 10.59 | 8.60 | 5.73 | 8.81 |
| 52 | 57 | 5.54 | 5.49 | 5.36 | 4.89 | 5.08 | 77 | 82 | 12.15 | 10.93 | 8.73 | 5.73 | 9.09 |
| 53 | 58 | 5.66 | 5.61 | 5.46 | 4.94 | 5.17 | 78 | 83 | 12.67 | 11.27 | 8.86 | 5.74 | 9.37 |
| 54 | 59 | 5.79 | 5.73 | 5.56 | 5.00 | 5.26 | 79 | 84 | 13.25 | 11.63 | 8.97 | 5.74 | 9.67 |
| 55 | 60 | 5.93 | 5.87 | 5.67 | 5.05 | 5.35 | 80 | 85 | 13.85 | 11.99 | 9.08 | 5.75 | 9.98 |
| 56 | 61 | 6.08 | 6.00 | 5.79 | 5.10 | 5.45 | 81 | 86 | 14.49 | 12.36 | 9.18 | 5.75 | 10.32 |
| 57 | 62 | 6.23 | 6.14 | 5.90 | 5.15 | 5.56 | 82 | 87 | 15.17 | 12.74 | 9.28 | 5.75 | 10.66 |
| 58 | 63 | 6.39 | 6.29 | 6.02 | 5.21 | 5.67 | 83 | 88 | 15.92 | 13.11 | 9.36 | 5.75 | 11.03 |

#### OPTION 3. JOINT AND TWO-THIRDS TO SURVIVOR*

Age of Other Payee. Age of Annuitant (Male, age on first line, Female age on second line).

| M | | 55 | 56 | 57 | 58 | 59 | 60 | 61 | 62 | 63 | 64 | 65 | 66 | 67 | 68 | 69 | 70 |
| | F | 60 | 61 | 62 | 63 | 64 | 65 | 66 | 67 | 68 | 69 | 70 | 71 | 72 | 73 | 74 | 75 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 55 | 60 | $5.53 | $5.59 | $5.65 | $5.71 | $5.78 | $5.84 | $5.91 | $5.98 | $6.05 | $6.11 | $6.18 | $6.25 | $6.32 | $6.39 | $6.46 | $6.53 |
| 56 | 61 | 5.59 | 5.65 | 5.72 | 5.78 | 5.85 | 5.92 | 5.99 | 6.06 | 6.13 | 6.20 | 6.27 | 6.34 | 6.42 | 6.49 | 6.56 | 6.64 |
| 57 | 62 | 5.65 | 5.72 | 5.78 | 5.85 | 5.92 | 5.99 | 6.07 | 6.14 | 6.21 | 6.29 | 6.36 | 6.44 | 6.51 | 6.59 | 6.67 | 6.74 |
| 58 | 63 | 5.71 | 5.78 | 5.85 | 5.92 | 6.00 | 6.07 | 6.14 | 6.22 | 6.30 | 6.37 | 6.45 | 6.53 | 6.61 | 6.69 | 6.77 | 6.85 |
| 59 | 64 | 5.78 | 5.85 | 5.92 | 6.00 | 6.07 | 6.15 | 6.23 | 6.30 | 6.38 | 6.47 | 6.55 | 6.63 | 6.71 | 6.80 | 6.88 | 6.96 |
| 60 | 65 | 5.84 | 5.92 | 5.99 | 6.07 | 6.15 | 6.23 | 6.31 | 6.39 | 6.47 | 6.56 | 6.64 | 6.73 | 6.82 | 6.90 | 6.99 | 7.08 |
| 61 | 66 | 5.91 | 5.99 | 6.07 | 6.14 | 6.23 | 6.31 | 6.39 | 6.48 | 6.56 | 6.65 | 6.74 | 6.83 | 6.92 | 7.01 | 7.11 | 7.20 |
| 62 | 67 | 5.98 | 6.06 | 6.14 | 6.22 | 6.30 | 6.39 | 6.48 | 6.57 | 6.66 | 6.75 | 6.84 | 6.94 | 7.03 | 7.13 | 7.22 | 7.32 |
| 63 | 68 | 6.05 | 6.13 | 6.21 | 6.30 | 6.38 | 6.47 | 6.56 | 6.66 | 6.75 | 6.85 | 6.94 | 7.04 | 7.14 | 7.24 | 7.34 | 7.44 |
| 64 | 69 | 6.11 | 6.20 | 6.29 | 6.37 | 6.47 | 6.56 | 6.65 | 6.75 | 6.85 | 6.95 | 7.05 | 7.15 | 7.25 | 7.36 | 7.47 | 7.57 |
| 65 | 70 | 6.18 | 6.27 | 6.36 | 6.45 | 6.55 | 6.64 | 6.74 | 6.84 | 6.94 | 7.05 | 7.15 | 7.26 | 7.37 | 7.48 | 7.59 | 7.70 |
| 66 | 71 | 6.25 | 6.34 | 6.44 | 6.53 | 6.63 | 6.73 | 6.83 | 6.94 | 7.04 | 7.15 | 7.26 | 7.37 | 7.49 | 7.60 | 7.72 | 7.84 |
| 67 | 72 | 6.32 | 6.42 | 6.51 | 6.61 | 6.71 | 6.82 | 6.92 | 7.03 | 7.14 | 7.25 | 7.37 | 7.49 | 7.61 | 7.73 | 7.85 | 7.97 |
| 68 | 73 | 6.39 | 6.49 | 6.59 | 6.69 | 6.80 | 6.90 | 7.01 | 7.13 | 7.24 | 7.36 | 7.48 | 7.60 | 7.73 | 7.85 | 7.98 | 8.11 |
| 69 | 74 | 6.46 | 6.56 | 6.67 | 6.77 | 6.88 | 6.99 | 7.11 | 7.22 | 7.34 | 7.47 | 7.59 | 7.72 | 7.85 | 7.98 | 8.11 | 8.25 |
| 70 | 75 | 6.53 | 6.64 | 6.74 | 6.85 | 6.96 | 7.08 | 7.20 | 7.32 | 7.44 | 7.57 | 7.70 | 7.84 | 7.97 | 8.11 | 8.25 | 8.39 |

Figures for ages not shown will be furnished on request.

Page 9

X-3610

## GENERAL PROVISIONS

### 1. DEFINITIONS:

The following terms are defined solely for the purpose of interpreting and administering this Agreement:

TERMINATION, shall mean maturity of a policy as a result of, (a) the death of the Insured, or (b) endowment, or (c) surrender of such policy for its cash value, or (d) final amount payable after termination of Family Income payments.

NET PROCEEDS, when applicable to the termination date, shall be the net amount payable under a policy on the termination date, excluding, however, any unearned premiums paid in advance thereunder.

NET PROCEEDS, when applicable to any time other than the termination date, shall be the single sum which equals (a) the then commuted value of the remainder of the death benefit of a policy containing a Family Income provision, or (b) the then commuted value of any installments certain not yet due under Options A or B, or (c) the amount then held under Options C or D, including any unpaid accrued interest thereon, as the case may be.

CHILDREN, if not designated by name, shall include only the lawful and legally adopted sons and daughters of the primary payee and not grandchildren or other descendants. This classification is available only [if] the primary payee was the Insured borrower.

BY REPRESENTATION shall mean succeeding, by reason of the death of a parent, to net proceeds which would have been apportioned to or further held for such parent, had he lived.

ESTATE OF SURVIVOR shall mean the executors or administrators of the last survivor of the payees designated in preceding Sections of the same Table.

OPTION shall mean the corresponding Option appearing in the policy under the heading "Optional Modes of Settlement" to be attached hereto. If the policy does not contain said "Optional Modes of Settlement", this Agreement shall constitute a request to add hereto "Optional Modes of Settlement" corresponding to that contained in policies which the Company is now issuing.

POLICY shall mean annuity contract when such meaning is applicable, and masculine pronouns shall include the feminine.

### 2. PAYMENTS UNDER A TABLE:

(a) If there is more than one Table, each Table shall be considered separately in construing the provisions of this Agreement.

(b) Payment of the net proceeds under a Table shall be in accordance with the first Section thereof in which there is a payee surviving, and at the death of the last survivor of the payees designated in such Section, payment of any remaining net proceeds shall be in accordance with the next succeeding Section in which there is a then surviving payee, and so on from Section to Section until payment shall have been made of the entire net proceeds under such Table.

(c) In order to be entitled to receive payments provided for him under a Section, a payee must be living on their respective due dates.

(d) If a Section of a Table designates [as payees] the [living] payees but does not designate as payees by representation the children of deceased children of the primary payee, payment of proceeds under such Section shall be as follows:

If such Section does not provide for division of net proceeds into separate shares, such payees who are living at the time of each payment shall share the payments under such Section and such shares shall be equal unless otherwise expressly provided therein;

If such Section provides for division of net proceeds into separate shares, one such share, payable as provided in such Section, shall be for each such payee who is living at the death of the last survivor of the payees designated in preceding Sections, and such shares shall be equal unless otherwise expressly provided therein. At the subsequent death of a payee designated in such Section, any net proceeds then held for such payee shall be paid to any then surviving payees of such Section in single sums proportionate to their original shares.

(e) If a Section of a Table designates as payees by representation the children of deceased children of the primary payee, payment of net proceeds under such Section shall be as follows:

• Net proceeds at the death of the last survivor of the payees designated in preceding Sections shall be divided into equal separate shares, one share, payable as provided in such Section, for each then surviving designated child of the primary payee, if any, and one share, payable in equal single sums, to the then surviving children, if any, of each deceased designated child of the primary payee;

At the subsequent death of a child of the primary payee, any net proceeds then held for such child shall be paid in equal single sums to his then surviving children, if any, otherwise such net proceeds shall be divided into equal separate shares, one share, payable in one sum, to each then surviving designated child of the primary payee, if any, and one share, payable

### 3. PRIVILEGES:

(a) If a payee designated in a Section of a Table is given in such Section a privilege of withdrawal or commutation, such payee may, subject to any limitations with respect thereto stated in such Section and upon written notice to the Insurance Company accompanied by this Agreement, make withdrawals in amounts of not less than $100.00 each from any net proceeds held for him in such Section under Options C or D, or, as the case may be, elect to receive the commuted value of any installments certain or share therein payable to him in such Section under Options A or B, but under Option B only if the right to installments for life has expired with the primary payee.

Wherever the following appear herein............... they shall be read as:
Option A                                Option 3
Option B                                Option 4
Option C                                Option 1
Option D                                Option 2

K-0017

(b) If a primary payee designated in Section 1 of a Table is given in such Section the privilege of substituting payment under another Option:

The amount to be applied under such other Option shall be the net proceeds held for such payee in Section 1 at the time such privilege is exercised, but such privilege shall not be available when such net proceeds are less than $1000.

A primary payee may make only one such substitution and must be by written notice accompanied by this Agreement.

4. OPTION PAYMENTS ALTERED OR TERMINATED:

After thirty full years following the termination date of a policy, no Option payments shall be made under any Section of a Table. [illegible] of the proceeds at the death of the last survivor of the primary payees designated in Section 1 shall be less than $1,000, then such share shall be immediately paid in one sum. If net proceeds held for a payee under Option C be reduced by withdrawals to less than $1,000, then such net proceeds shall be immediately paid in one sum.

If the Option payments for the fractional part of a year shall amount to less than $10.00 each, the Company will pay at such intervals as will make each payment amount to at least $10.00. If a Section of a Table provides for Option D installments and the sum of one year's tabular installments shall be less than 2% of the net proceeds applied under that Option, then the Company shall increase each such tabular installment by the amount necessary to achieve such percentage, any provision of said Option for a different percentage notwithstanding.

5. RELIANCE ON AFFIDAVITS:

Before permitting or taking any action provided by this Agreement which is contingent upon the death or survival of any payee, the Company shall be furnished with due proof thereof. As to any facts relating to any payees, including dates of birth and death, and identity, the Company may rely upon any affidavit or other written evidence deemed satisfactory to it, and is hereby released from all liability in relying and acting upon the statements contained therein.

6. EFFECT OF CHANGES OF BENEFICIARY AND EXERCISE OF PRIVILEGES UNDER THIS AGREEMENT:

If allowed by the statutes of the state of residence, the primary payee may, without the consent of a secondary payee, (a) change the designation of contingent beneficiaries, and (b) freely exercise the privileges contained in Section 1 of any Table herein. In the absence of an enabling statute, the consent of the secondary payee (s) shall be required for the exercise of all such rights.

7. PAYMENT TO MINORS:

Any proceeds due and payable to any minor payee hereunder shall be paid to the legally appointed guardian of such minor except to the extent that provision is made by statute for payment directly to a minor.

Dated CHARTER SECURITY LIFE INSURANCE COMPANY (NY) this SEVENTEENTH day of JUNE, 1983.

CHARTER SECURITY LIFE INSURANCE COMPANY (NEW YORK)

_____
REGISTRAR
VICE PRESIDENT

K-0018

## SUPPLEMENTARY AGREEMENT
(No. SC1126)

Due to termination, as of May 5, 19 83, of Policy No(s) 83A00153 issued by Charter Security Life Insurance Company (New York) on the life of Dennis J. Dimon, the undersigned hereby requests that the aggregate net proceeds payable under said policy(s) as of the termination date be paid to the payees designated in, and in the order and manner provided in, the following Table Tables and in the General Provisions of this Agreement.

The undersigned surrenders said policy(s) to the Insurance Company and, concurrently herewith, revokes any beneficiary designation and any election of settlement heretofore made under the said policy(s).

| PAYEES | MANNER OF PAYMENT | PRIVILEGES |
|---|---|---|
| **TABLE I** | | |
| **SECTION ONE – PRIMARY PAYEE** | | |
| Dennis Dimon<br>Laurel Lane<br>West Kingston, RI 02892 | Monthly payments in the amount of $1,450.45, increasing 3% annually, commencing on June 6, 1983, for a period of 240 months certain and life thereafter. | |
| **SECTION TWO – CONTINGENT PAYEE** | | |
| Katherine T. Dimon, Wife | In the same manner as the Primary Payee, for the period certain. | |

(SEE OTHER SIDE FOR ANY COMPANY ENDORSEMENTS)

SUP-100

K-0019

# Charter Security Life Insurance Company (New York)

ENDORSEMENT

This amendment is attached to and forms part of the policy.

The Annual Statement of Values provision on Page 7 is hereby amended as follows:

The words "As of each contract anniversary" are replaced with the words "At least once each year".


President

RA-104E

K-0020