**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| DENNIS DIMON<br>Plaintiff<br><br>v.<br><br>METROPOLITAN LIFE INSURANCE COMPANY, KEMPER INSURANCE COMPANY, MORGAN STANLEY DW, INC., MICHAEL B. LATTI, LATTI ASSOCIATES, LATTI & ANDERSON LLP,<br>Defendants | ) | Civil Action No. 05-11073-NG |

**ORDER**

AND NOW, this ____ day of ______________, 2008, upon consideration of Defendant Kemper Insurance Company's Motion *in Limine* to preclude Defendant Metropolitan Life Insurance Company from offering any evidence in purported support of, or making any reference to "reformation" or "rescission" of the annuity contract, and any response thereto, it is hereby ORDERED that the Motion is GRANTED, and it is further ORDERED that Defendant Metropolitan Life Insurance Company may not introduce any evidence at trial in purported support of, or make any reference to "reformation" or "rescission" of the annuity contract.

BY THE COURT:

______________________________ J.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DENNIS DIMON
Plaintiff

v.

METROPOLITAN LIFE INSURANCE COMPANY, KEMPER INSURANCE COMPANY, MORGAN STANLEY DW, INC., MICHAEL B. LATTI, LATTI ASSOCIATES, LATTI & ANDERSON LLP,
Defendants

Civil Action No. 05-11073-NG

**DEFENDANT KEMPER INSURANCE COMPANY'S MOTION IN LIMINE TO PRECLUDE ANY EVIDENCE IN PURPORTED SUPPORT OF, OR ANY REFERENCE TO "REFORMATION" OR "RESCISSION" OF THE ANNUITY CONTRACT**

## I. Background

Based upon statements made in several memoranda filed recently by Defendant Metropolitan Life Insurance Company ("MetLife"), Defendant Kemper Insurance Company ("Kemper") has reason to believe that MetLife may attempt to introduce evidence in purported support of, or otherwise make reference to "reformation" or "rescission" of the lifetime annuity.

MetLife has filed no cross claim or counterclaim for reformation or rescission; Kemper does not consent to the trial of any such purported claim; and any attempted amendment to state such a claim would suffer fatally from undue delay and prejudice to Kemper and Plaintiff. Moreover, any such attempted claim would be utterly futile, for multiple legally dispositive reasons, including (among others) the bar of the statute of limitations, MetLife's failure to show mutual mistake or fraud, and the fact that MetLife did not return the annuity premium.

## II. Argument

### A. Choice of Law

In determining which state's laws applies, the question is resolved by using the choice of law analysis of the forum state. The Travelers Indem. Co. of Illinois v. Wolverine Corp., 2005 U.S. Dist. LEXIS 31651, at *2 (D. Mass. Dec. 8, 2005) (citing Reicher v. Berkshire Life Ins. Co. of Am., 360 F.3d 1, 4 (1st Cir. 2004)). Massachusetts courts look to consider what state has the most significant relationship to the issue at hand. The Travelers Indemnity Co., 2005 U.S. Dist. LEXIS 31651, at * 4 (citing Reicher, 360 F.3d at 5).

The state of New York clearly is the state that has the most significant relationship to the annuity. MetLife has its principal place of business in New York, New York. MetLife was the issuer of the annuity. MetLife is the entity that (1) signed the annuity contract, in New York, New York, (2) was responsible for making the annuity payments for 20 years, (3) was responsible for ceasing to make the annuity payments, and (4) is alleged to have breached the annuity. The state of New York is the situs of the annuity corpus. In addition, the annuity was brokered by and delivered to a New York broker (i.e., Dean Witter). The state of New York plainly is the state that has the most significant relationship to the annuity, and New York law therefore governs any issues relating to the annuity.

Kemper respectfully requests that the Court make a determination on this choice of law issue.

### B. MetLife Has Made No Claim For "Reformation" or "Rescission", And Any Attempt to Assert Such A Claim Would Suffer Fatally From Undue Delay and Prejudice to Kemper and Plaintiff

MetLife has made no cross-claim or counter-claim for "reformation" or "rescission," and Kemper does not consent to the trial of any such purported claim. In any event, any attempt by

MetLife to amend its answer to state a claim for "reformation" or "rescission" would suffer fatally from undue delay. The First Circuit has consistently held that undue delay is a basis for denying amendment of the pleadings, and under circumstances less compelling than those that would be present here.[1] Further, where there has been delay, as in the instant case, the party moving to amend has the burden of showing some valid reason or justification for the delay, and MetLife could show none.[2] In addition, any amendment at this time would prejudice both Kemper and Plaintiff.[3]

**C. Moreover, "Reformation" and "Rescission" Are Unavailable To MetLife as A Matter of Law**

Moreover, any attempt by MetLife to state a claim for "reformation" or "rescission" would be utterly futile, since reformation and rescission are unavailable to MetLife as a matter of law.[4]

While MetLife now appears to be attempting to suggest that there was no "meeting of the minds" and that no annuity contract therefore was ever formed, the undisputed evidence renders

---

[1] See, e.g., Grant v. News Group Boston, Inc., 55 F.3d 1, 5-6 (1st Cir. 1995) (motion to amend unduly delayed where discovery had closed and opposing party had nearly completed its motion for summary judgment); Hayes v. New England Millwork Distrib., Inc., 602 F.2d 15, 19-20 (1st Cir. 1979) (finding a motion to amend filed two years after initiation of suit, after the close of discovery, and after defendants had filed a motion for judgment on the pleadings to be untimely and potentially prejudicial); Tiernan v. Blyth, Eastman, Dillon & Co., 719 F.2d 1, 4 (1st Cir. 1983) (motion to amend filed one and one-half months before trial date was untimely even if no further discovery would be necessary).

[2] See Grant, supra, 55 F. 3d at 5-6 ("Under this circuit authority, it is incumbent upon [the moving party] to give a valid reason for having waited so long to file his motion."); Stepanischen v. Merch. Despatch Transp. Corp., 722 F.2d 922, 933 (1st Cir. 1983) ("Where … considerable time has elapsed between the filing of the complaint and the motion to amend, the movant has the burden of showing some 'valid reason for his neglect and delay.'") (quoting Hayes, supra, 602 F.2d at 19-20).

[3] See, e.g., Tiernan, supra, 719 F.2d at 4 (holding that plaintiff's belated request to add claims one and a half months before trial, even if factually similar to existing claims, would be unduly prejudicial in that they were legally distinct theories and might well affect defendant's planned trial strategy).

[4] See Debreceni v. Bru-Jell Leasing Corp., 710 F. Supp. 15, 22-23 (D. Mass. 1989) (denying leave to amend where amendment would be futile).

this suggestion absurd. This is not a case where it possibly could be found that no contract ever existed. Preliminarily, MetLife actually issued an unambiguous life annuity.[5] Because the annuity is unambiguous, a contract was formed, whatever unexpressed intention MetLife may have had. See Hunt, Ltd. v. Lifschultz Fast Freight, Inc., 889 F.2d 1274, 1278 (2nd Cir. 1989). Moreover, MetLife retained the $175,000 consideration that it was paid, and MetLife made payments to plaintiff for 20 years. That a contract was formed, there can be no question.

In any event, the remedy for an alleged lack of a "meeting of minds" on a contract would be a claim for rescission. See, e.g., Schultz v. Hourihan, 656 N.Y.S.2d 526 (N.Y. App. Div. 1997); Melia v. Riina, 612 N.Y.S.2d 506, 508 (N.Y. App. Div. 1994), *appeal dismissed*, 648 N.E.2d 795 (N.Y. 1995); Brauer v. Central Trust Co., 433 N.Y.S.2d 304, 307 (N.Y. App. Div. 1980), *appeal denied*, 52 N.Y.2d 703 (N.Y. 1981). And rescission is legally unavailable to MetLife as a matter of law, for a number of separate and independent reasons, including the following:

- Any claim for rescission would be long time-barred. See Zavaglia v. Gardner, 666 N.Y.2d 671 (N.Y. App. Div. 1997). Under CPLR 213(6), MetLife had 6 years from 1983 to file any claim for rescission, and MetLife did not do so.[6]

- MetLife has proffered no competent evidence of any mistake on even its own part. Moreover, not only is there no evidence that Kemper or plaintiff intended an annuity that would pay for 20 years only, but all of the evidence is directly contrary – i.e., that Kemper and Plaintiff plainly intended the annuity to be for life. And MetLife has not pled, nor is there any evidence of fraud, as would be required to rescind a contract for unilateral mistake. Travelers Indem. Co. v. CDL Hotels, 322 F. Supp. 2d 482, 498 (S.D.N.Y. 2004); Sudul v. Computer Outsourcing Serv., 917 F.Supp. 1033, 1044 (S.D.N.Y. 1996); D'Antoni v. Goff, 383 N.Y.S.2d 117, 118 (N.Y. App. Div. 1976) ("Unilateral mistake as a gravamen for rescission or reformation requires a showing of

[5] See the Annuity, a true and correct copy of which is attached hereto as Exhibit "A", at p. 1, and at Supplementary Agreement.

[6] The 6 year statute of limitations under CPLR 213 governs breach of contract actions as well as actions in equity. See U.S. v. Schmitt, 999 F.Supp. 317, 364 (E.D.N.Y. 1998), *aff'd*, 28 Fed. Appx. 63 (2d Cir. 2002).

fraud"); see also Federal Jury Practice and Instructions, 5th Ed., § 126.05 (rescission requires showing of fraud).

- MetLife never returned the annuity premium, and there is no right to rescission unless the consideration is returned. See, e.g., Ladenburg Thalmann & Co. v. Imaging Diagnostic Sys., 176 F. Supp. 2d 199, 204 (S.D.N.Y. 2001); In re: Domestic Fuel Corp., 79 B.R. 184, 193 (S.D.N.Y. 1987) (even if the right of rescission exists it cannot be exercised without a return or an offer to return all benefits).

- MetLife could not possibly demonstrate as part of its prima facie case that it made any rescission claim promptly, as it would be required to do in order to rescind. Banque Arabe Et Internationale D'Investissement v. Maryland Nat'l Bank, 850 F. Supp. 1199, 1211 (S.D.N.Y. 1994), *aff'd*, 57 F.3d 146 (2d Cir. 1995); see also Federal Jury Practice and Instructions, 5th Ed., § 126.05 (rescission requires showing that claim was brought within a reasonable time of learning of the fraud).

- MetLife ratified the contract by both retaining the premium, and exercising dominium over the annuity corpus by making annuity payments for decades. Banque Arabe Et Internationale D'Investissement, 850 F. Supp. at 1212 (where a party engages in acts inconsistent with disaffirmance, such as acceptance of benefits under the contract or the exercise of dominion over the subject matter of the transaction, he will lose the right to rescind); Brown v. City of S. Burlington, 393 F.3d 337, 344-45 (2d Cir. 2004) (in order to avoid a finding of ratification where consideration has been paid, it is essential that the consideration be tendered back within a reasonable time).

- MetLife would be estopped from rescinding the contract, for the reason (among others) that MetLife retained the premium. See In re New York, 436 N.Y.S.2d 52, 53-54 (N.Y. App. Div. 1981) (having accepted the agreement's benefits, and never having challenged the agreement by appropriate legal proceedings, plaintiff was estopped from attacking the validity of the agreement).

- It would be impossible to place the parties back in the status quo circa April 1983, as would be required to effect a rescission. See Banque Arabe Et Internationale D'Investissement, 850 F. Supp. at 1212 ("rescission is a remedy through which a party seeks to disaffirm the contract and return to the status that existed before the transaction was executed.").

- Furthermore, MetLife would need to prove its entitlement to rescission by "clear, positive, and convincing evidence." "Reformation and rescission have both been limited both substantively and procedurally to avoid the danger that a party, having agreed to a written contract that turns out to be disadvantageous, will falsely claim the existence of a different contract. Procedurally, there is a heavy presumption that a deliberately prepared and executed written instrument manifests the true intention of the parties, and a correspondingly high order of evidence is required to overcome that presumption" and attempt to reform or rescind a contract - i.e., "clear, positive, and convincing evidence."

Travelers Indem. Co., 322 F.Supp.2d at 495-496; Winmar Co. v. Teachers Ins. & Annuity Ass'n of Am., 870 F. Supp. 524, 535-536 (S.D.N.Y. 1994).

Therefore, for each of the above reasons and more, "rescission" of the annuity contract is not a viable option for MetLife, as a matter of law.

MetLife also had suggested that it is entitled to "reformation" of the annuity, on the grounds that an unidentified person at MetLife allegedly made some sort of mistake that somehow caused MetLife to issue a life annuity. However, reformation also would be legally unavailable to MetLife for many of the same reasons that rescission would be legally unavailable (as well as additional reasons), including the following:

- Any claim for reformation would be long time-barred. See Wallace v. 600 Partners Co., 658 N.E.2d 715, 717 (N.Y. 1995). Under CPLR 213(6), MetLife had 6 years from 1983 to file any action for reformation, and MetLife did not do so.[7]

- Reformation may be granted only in two circumstances: "where there has been a (1) mutual mistake; or (2) unilateral mistake coupled with fraudulent concealment by the knowing party." Mina Inv. Holdings Ltd. v. Lefkowitz, 16 F. Supp. 2d 355, 363 (S.D.N.Y. 1998) (citations omitted). First, MetLife has proffered no competent evidence of any mistake on even its own part. Moreover, not only is there no evidence that Kemper or plaintiff intended an annuity that would pay for 20 years only, but all of the evidence is directly contrary – i.e., that Kemper and plaintiff plainly intended the annuity to be for life. And MetLife has not pled, nor is there any evidence of fraud, as would be required to reform a contract for unilateral mistake. Travelers Indem. Co., 322 F.Supp.2d at 498; Sudul, 917 F.Supp. at 1044; D'Antoni, 383 N.Y.S.2d at 118 ("unilateral mistake as a gravamen for rescission or reformation requires a showing of fraud").

- "The proponent of a reformation claim must demonstrate in no uncertain terms, not only that that mutual mistake or fraud exists, but also exactly what was really agreed upon between the parties." See Winmar, 870 F.Supp. at 535 (emphasis added). Here, as set forth above, there is no competent evidence that MetLife itself made a mistake, let alone

[7] It is noted that, in the absence of a claim for reformation, courts "may as a matter of interpretation carry out the intention of a contract by transposing, rejecting or supplying words to make the meaning of the contract more clear. However, such an approach is appropriate only in those limited instances where some absurdity has been identified or the contract would otherwise be unenforceable…." See Wallace, 86 N.Y.2d at 547-48, 658 N.E.2d at 717 (internal citations omitted). In this case, reforming the contract to MetLife's preference obviously would involve not merely "as a matter of interpretation…supplying certain words to make meaning of the contract more clear"; rather, it would involve re-writing the contract so as to completely change the parties' rights and obligations to MetLife's benefit. Moreover, the contract as written is obviously not "absurd" or "unenforceable."

evidence of any mutual mistake or fraud. Moreover, not only is there no evidence that Kemper or plaintiff agreed to an annuity that would pay for 20 years only, but all of the evidence is directly contrary – i.e., that Kemper and plaintiff unequivocally intended the annuity to be for life.

- MetLife would be estopped from reforming the contract, for the reason (among others) that MetLife retained the consideration for the contract. See In re New York, 436 N.Y.S.2d at 53-54 (having accepted the agreement's benefits, and never having challenged the agreement by appropriate legal proceedings, plaintiff was estopped from attacking the validity of the agreement).

For each of these reasons and more, the remedies of reformation and rescission are unavailable to MetLife as a matter of law.

## III. Conclusion

For the reasons set forth above, Kemper respectfully requests that the Court preclude any evidence in purported support of, or any reference to "reformation" or "rescission" of the annuity contract.

Respectfully submitted,

KEMPER INSURANCE COMPANY

by its attorneys,

/s/ Kevin L. Golden

DRINKER BIDDLE & REATH LLP
Timothy O'Driscoll (Admitted Pro Hac Vice)
Kevin L. Golden (Admitted Pro Hac Vice)
DRINKER BIDDLE & REATH LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103-6996
(215) 988-2700

Local Counsel
Kevin S. Murphy (BBO #638335)
Anthony B. Fioravanti (BBO #664823)
YURKO SALVESEN & REMZ, P.C.
One Washington Mall, 11th Floor
Boston, MA 02108-2603

(617) 723-6900

Dated: May 14, 2008

**Certification of Service**

I hereby certify that a true and accurate copy of the foregoing document was filed via the ECF system and will be served electronically through that system upon Counsel of Record on May 14, 2008.

/s/ Kevin L. Golden
Kevin L. Golden

NY



**Charter Security Life Insurance Company (New York)**
720 Fifth Avenue • New York, New York 10019

| | | | | | |
|---|---|---|---|---|---|
| .0 75 | 14 | 7 49 | 19 | 5.97 | 24 |
| 9 83 | 15 | 7.10 | 20 | 5.75 | 25 |

**OPTION 2. LIFE INCOME***

We will pay a lifetime monthly income to the Annuitant if living on the Annuity Date. The basis for this amount of income is explained in this contract.

Unless you make an alternate election, we will make the first monthly payment on the Annuity Date; payments after the first will be on that same date of the month as long as the Annuitant lives. Unless you make an alternate election, we guarantee 120 monthly payments; they will be continued to the Beneficiary if the Annuitant dies before receiving them. Payments will be made by check to the Annuitant or Beneficiary. We reserve the right to require proof that the payee is living on payment dates.

We will pay the benefit explained in this contract if the Annuitant dies before the Annuity Date. It will be paid to the Beneficiary when we receive acceptable proof of death.

The Beneficiary and Owner are as named in the application if not later changed.

Notice of ten-day right to examine contract: This contract may be cancelled within ten days after its receipt. The steps to follow are:

> Return the contract with a written notice to us or to the agent through whom you purchased the contract. If you return the contract directly to us, use the address of our Home Office shown on the top of this page. If return is through the agent, obtain a receipt.

We will return all payments made for this contract after we receive it. As soon as the contract is delivered or mailed to us, it will be deemed void from its beginning.

Read this contract carefully. It is a legal contract between you and us.

Secretary President

# SINGLE PREMIUM DEFERRED ANNUITY

Monthly Life Annuity With Ten Years Certain Payable At Annuity Date
Benefit in Event of Death is Payable Prior To Annuity Date
Optional Life Annuities at Annuity Date—Optional Annuity Date
Non-Participating

RA-104
11/82

# TABLE OF CONTENTS


| Item | Page No. |
|---|---|
| Face Page | 1 |
| Schedule Page | 3 |
| Table of Guaranteed Contract Values | 4 |
| Definitions | 5 |
| General Provisions | |
| Basis of Contract | 5 |
| Entire contract; changes | 5 |
| Premium payment | 5 |
| Issue date | 5 |
| Incontestability | 5 |
| Misstatement of age or sex | 5 |
| Ownership | 6 |
| Change of ownership | 6 |
| Assignment | 6 |
| Beneficiary | 6 |
| Conformance to statutes | 6 |
| Interest Rates | |
| Declared Interest Rate | 6 |
| Guaranteed Interest Rates | 6 |
| Joint Annuitant | |
| Definition | 6 |
| Annuity Date | 6 |
| Deferral of Annuity Date | 6 |
| Benefit In Event of Death | 6 |
| Separate Annuities | 6 |
| Non-Forfeiture Provisions | |
| Accumulation Value | 7 |
| Cash surrenders | 7 |
| Benefit in Event of Death | 7 |
| Annual statement of values | 7 |
| Normal settlement; annuity date | 7 |
| Change in annuity option or date | 7 |
| Benefits payable to beneficiary | 7 |
| Minimum payments | 7 |





| Item | Page No. |
|---|---|
| Settlement Options | |
| Option 1, limited payments | 8 |
| Option 2, life income | 8 |
| Option 3, joint life income with two-thirds to survivor | 8 |
| Rate basis | 8 |
| Settlement option tables | 9 |

# DEFINITIONS

This is what we mean when we use these words or phrases:

"**We**," "**us**" and "**our**" refer to Charter Security Life Insurance Company (New York).

"**You**" and "**yours**" refer to the Owner named in the application.

The "**Accumulation Interest Rate**" is the annual effective interest rate which we use to credit interest to the Single Premium less any Partial Surrenders.

The "**Accumulation Value**" is the value of the contract before the charge, if any, for withdrawing funds.

The "**Annuitant**" is the person who is to receive annuity payments.

The "**Beneficiary**" receives the benefits, if any, due at the Annuitant's death.

A "**Contingent Owner**," if named, becomes the Owner if the Annuitant survives the Owner.

"**Contract Years**" are measured from the Issue Date.

The "**Declared Interest Rate**" is the Accumulation Interest Rate which we declare and guarantee for the Effective Period.

The "**Effective Period**" is the period during which the Accumulation Value will accrue interest at the Declared Interest Rate.

The "**Owner**" owns and controls this contract.

A "**Partial Surrender**" is a surrender of part of the Accumulation Value.

The "**Surrender Charge**" is the charge for withdrawing funds. It is equal to the Surrender Charge Percentage times the amount of Accumulation Value surrendered. The Surrender Charge Percentages are shown on the Schedule Page. Refer to NONFORFEITURE PROVISIONS; the Surrender Charge applies only under certain conditions.

The "**Surrender Interest Rate**" is the Declared Interest Rate below which the Surrender Charge is waived for 60 days. Refer to NONFORFEITURE PROVISIONS.

The **Surrender Value**" is the Accumulation Value less the Surrender Charge.

"**Survive**" refers to the continued life of a person or legal existence of an entity other than a person.

# GENERAL PROVISIONS

**BASIS OF CONTRACT:** This contract is issued on the basis of the application and receipt of the Single Premium payment in advance.

**ENTIRE CONTRACT; CHANGES:** This contract, the attached application, and any endorsements make up the entire contract. All statements in the application are representations and not warranties.

No agent can change this contract or waive any of its terms. Changes can be made only by written endorsement signed by one of our officers.

**PREMIUM PAYMENT:** The Single Premium payment for this contract was paid in advance. If the check or other instrument is not honored for payment, this contract is deemed void from the beginning.

**ISSUE DATE:** This contract takes effect on its Issue Date which is shown on the Schedule Page.

**INCONTESTABILITY:** This contract is incontestable from its issue date.

**MISSTATEMENT OF AGE OR SEX:** We will require proof of age before we make payments to the Annuitant or any Beneficiary. If age or sex is misstated, we will pay the amount due at the true age or sex. In case of age or sex correction after payments start, we will:

(1) In case of underpayment, pay the full amount due the payee with the next payment due.

(2) in case of overpayment, deduct the amount due us from future payments; deductions will be spread over the payment period.

**OWNERSHIP:** You have all rights under this contract during the Annuitant's lifetime, subject to:

(1) the rights of any assignee of record with us;

(2) the rights of any irrevocable Beneficiary;

(3) any restricted ownership endorsement;

(4) the change of ownership provision.

**CHANGE OF OWNERSHIP:** During the Annuitant's lifetime, you may name a new Owner. If you are a natural person other than the Annuitant, you may name or change a Contingent Owner. A Contingent Owner becomes Owner only by surviving you.

Notice of the change must be sent to our Home Office; it must be signed and dated by you. We are not liable for any actions we take before we receive and file the notice at our Home Office.

Change of ownership:

(1) voids any Contingent Ownership;

(2) does not affect the Beneficiary.

**ASSIGNMENT:** You may assign all rights, privileges and benefits provided by this contract. We are not bound by an assignment until we receive and file a signed copy at our Home Office. We are not responsible for the validity of assignments.

**BENEFICIARY:** You may change the Beneficiary during the Annuitant's lifetime; an irrevocable Beneficiary may be changed only by that Beneficiary's written consent. Notice of the change must be sent to our Home Office; it must be signed and dated by you. It takes effect on the date it is signed. We are not liable for any actions we take before we receive and file the notice at our Home Office.

A Beneficiary's interest is effective if that Beneficiary:

(1) survives the Annuitant by 15 days; or

(2) survives until we receive proof of the Annuitant's death.

We will pay the proceeds in this order unless this contract is assigned at the time of the Annuitant's death:

(1) We will pay the designated Beneficiaries who survive the Annuitant.

(2) If no Beneficiary survives, we will pay the Annuitant's estate.

No Beneficiary can change your previous choice of a settlement option.

To the extent permitted by law, no payment we make will be subject to the claims of any creditors.

**CONFORMANCE TO STATUTES:** Any annuity, Surrender Value or benefit in event of death payable under this contract is not less than the minimum benefit required by any statute of the state in which this contract is delivered.

## INTEREST RATES

**DECLARED INTEREST RATE.** We declare an Accumulation Interest Rate, and Effective Period, on the Issue Date. They are shown on the Schedule Page. Prior to the expiration of the Effective Period, we will declare a new Accumulation Interest Rate and Effective Period. We will notify you of declared Accumulation Interest Rates and effective periods in writing.

**GUARANTEED INTEREST RATES:** We guarantee that the Accumulation Interest Rates will be at least as great as the Guaranteed Interest Rates shown on the Schedule Page.

## JOINT ANNUITANT

If you designate two persons as joint annuitants in the application, these rules will be in effect:

**Definition:** The term "Annuitant" means the joint annuitants or the survivor of them, as the case may be.

**Annuity Date:** The Annuity Date will be:

(1) the Contract Anniversary following the 65th birthday of the older joint annuitant; or

(2) ten years from the Issue Date if the issue age of the older joint annuitant is more than 55 Years; or

(3) the date specified in the application.

**Deferral of Annuity Date:** The Annuity Date may not be deferred to a date beyond the 85th birthday of the older joint annuitant.

**BENEFIT IN EVENT OF DEATH:** We will not pay any benefit upon the death, before the Annuity Date, of the first of the joint annuitants to die. Instead, the contract will remain in force as to the surviving joint annuitant. If one joint annuitant dies before the Annuity Date, the latest permitted Annuity Date will become the 85th birthday of the remaining joint annuitant or, if later, ten years after the Issue Date. If both joint annuitants die before the Annuity Date, we will pay the benefit to the Beneficiary.

**Separate annuities:** At your request, we will apply the Accumulation Value to provide separate annuities for each joint annuitant, if both are living on the Annuity Date. You must make this request in writing at least 30 days before the Annuity Date. For this purpose, you must specify a division of the Accumulation Value into two portions. These portions may but need not be of equal size. You must specify the annuity option for each joint annuitant. You are not required to choose the same annuity option for both joint annuitants.

In addition to these three options, you may choose any other form of annuity agreed upon by us.

Except with our consent, settlement options will not be available to:

(1) an assignee; or

(2) any other than a natural person receiving proceeds in his or her own right.

**ACCUMULATION VALUE:** The Accumulation Value at any time is the Single Premium you paid, less any Partial Surrenders and Surrender Charges, accumulated at the Accumulation Interest Rates.

**CASH SURRENDERS:** You may surrender all or part of the Accumulation Value before annuity payments begin.

We have a Surrender Charge in effect for the first seven years after the Issue Date, but only if:

(1) there is more than one surrender within a Contract Year, or

(2) the surrender exceeds the Allowable Portion of the Accumulation Value. The Allowable Portion is shown on the Schedule Page.

On the first surrender in a Contract Year, the Surrender Charge applies only to the amount in excess of the Allowable Portion of the Accumulation Value.

If an Accumulation Interest Rate is less than the Surrender Interest Rate, you may surrender this contract without a Surrender Charge provided you notify us within 60 days of the effective date of the Accumulation Interest Rate. After 60 days, any Surrender Charge in effect will be reinstated. However, you will not forfeit your right to surrender this contract without a Surrender Charge should a future Accumulation Interest Rate be below the Surrender Interest Rate.

If you surrender the entire Accumulation Value, the amount we pay you, added to any prior amounts we paid you for Partial Surrenders, will not be less than the Single Premium you paid us.

We may defer payment of cash surrenders for not more than six months.

**BENEFIT IN EVENT OF DEATH:** We will pay the Accumulation Value to the Beneficiary if:

(1) the Annuitant dies before the Annuity Date; and

(2) you have not specified a settlement option.

The amount paid will be the Accumulation Value as of the date of death accumulated at the Accumulation Interest Rate to the date of payment by us. It will be paid when we receive acceptable proof of death. No Surrender Charge will apply.

**ANNUAL STATEMENT OF VALUES:** As of each contract anniversary on or before the Annuity Date, we will send you a statement which shows the:

(1) Accumulation Value; and

(2) Surrender Value; and

(3) Monthly life annuity with ten years certain which can be provided on the Annuity Date by the current Accumulation Value; and

(4) Declared Interest Rate.

**NORMAL SETTLEMENT; ANNUITY DATE:** The Accumulation Value will be used to provide a life annuity as shown on the Schedule Page if:

(1) the Annuitant is living on the Annuity Date; and

(2) you have not made an alternate election.

The Annuity Date will be:

(1) the contract anniversary following the Annuitant's 65th birthday; or

(2) ten years from the Issue Date if the Issue Age is more than 55 years; or

(3) the date specified in the application.

**CHANGE IN ANNUITY OPTION OR DATE:** You may defer the Annuity Date; deferral may not be to a date beyond the Annuitant's 85th birthday. After five years from the Issue Date, you may:

(1) Advance the Annuity Date (but not to a date earlier than the date of the request); or

(2) elect to begin payments under a settlement option.

Written request must be made:

(1) during the Annuitant's lifetime;

(2) at least 30 days before the Annuity Date; and

(3) at least 30 days before any settlement option date.

**BENEFITS PAYABLE TO BENEFICIARY:** During the Annuitant's lifetime, you may choose a settlement option rather than a lump sum death benefit. The Beneficiary may make this choice after the Annuitant's death if:

(1) you have not done so; and

(2) payments have not begun.

**MINIMUM PAYMENTS:** We will not make periodic payments of less than $20.00; for lesser amounts due, we will change the frequency of payments. This provision applies to payments we make to the Annuitant or to any Beneficiary.

## SETTLEMENT OPTIONS

If you elect an annuity option by death, surrender or annuitization, the Accumulation Value of this contract may be applied under any of the options set forth below, provided that:

(1) In the event of surrender, the option is elected on or prior to the surrender date.

(2) In the event of death, the option is elected within 30 days of the date on which we notify the Beneficiary that proceeds are payable.

At the time payments under a settlement option begin, we will pay the greater of

(1) the amount guaranteed under this contract; or

(2) the amount that would be provided by the application of the Accumulation Value to purchase a single premium immediate annuity offered by us to the same class of annuitants, or

(3) an amount determined by more favorable rates which we then offer.

**OPTION 1, LIMITED PAYMENTS:** Equal payments for a set time, not more than 30 years. Any excess interest we declare will be paid yearly.

**OPTION 2, LIFE INCOME:**
**LIFE ANNUITY.** Equal monthly payments as long as the payee lives.

**WITH CERTAIN PERIOD.** Equal monthly payments for five, ten, or twenty years (the certain period), as elected, and thereafter for the remaining lifetime of the payee.

**WITH INSTALLMENT REFUND.** Equal monthly payments until the sum of such payments equals the proceeds settled under this option (at which time the installment refund period ends) and thereafter for the remaining lifetime of the payee.

**OPTION 3, JOINT LIFE INCOME WITH TWO-THIRDS TO SURVIVOR:** Payment of equal monthly (or less frequent) installments during the joint lifetime of the payee and another person. After the death of either the payee or the joint payee, the amount of each installment shall be reduced to two-thirds of the original amount and payments shall continue during the entire remaining lifetime of the survivor.

**Rate basis:** The monthly installments guaranteed under this contract are based on:

(1) the 1937 Standard Annuity Table,

(2) 3½% interest, and

(3) age nearest birthday.

## SETTLEMENT OPTION TABLES

### GUARANTEED MONTHLY INSTALLMENTS UNDER OPTIONS 1, 2 OR 3

**(Monthly installments are shown for each $1,000 of net proceeds applied. The ages shown are ages nearest birthday when the first monthly installment is payable.)**

#### OPTION 1. INSTALLMENTS FOR A SPECIFIED PERIOD

| Years | Installment | Years | Installment | Years | Installment | Years | Installment | Years | Installment | Years | Installment |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | $84.65 | 6 | $15.35 | 11 | $9.09 | 16 | $6.76 | 21 | $5.56 | 26 | $4.84 |
| 2 | 43.05 | 7 | 13.38 | 12 | 8.46 | 17 | 6.47 | 22 | 5.39 | 27 | 4.73 |
| 3 | 29.19 | 8 | 11.90 | 13 | 7.94 | 18 | 6.20 | 23 | 5.24 | 28 | 4.63 |
| 4 | 22.27 | 9 | 10.75 | 14 | 7.49 | 19 | 5.97 | 24 | 5.09 | 29 | 4.53 |
| 5 | 18.12 | 10 | 9.83 | 15 | 7.10 | 20 | 5.75 | 25 | 4.96 | 30 | 4.45 |

#### OPTION 2. LIFE INCOME*

| Issue Age Male | Issue Age Female | Life | 5 Years Certain | 10 Years Certain | 20 Years Certain | Installment Refund | Issue Age Male | Issue Age Female | Life | 5 Years Certain | 10 Years Certain | 20 Years Certain | Installment Refund |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 34 | 39 | 4.11 | 4.10 | 4.08 | 4.00 | 3.98 | 59 | 64 | 6.56 | 6.45 | 6.15 | 5.28 | 5.78 |
| 35 | 40 | 4.16 | 4.15 | 4.13 | 4.04 | 4.03 | 60 | 65 | 6.74 | 6.62 | 6.28 | 5.31 | 5.90 |
| 36 | 41 | 4.21 | 4.20 | 4.18 | 4.08 | 4.07 | 61 | 66 | 6.93 | 6.79 | 6.41 | 5.35 | 6.03 |
| 37 | 42 | 4.27 | 4.26 | 4.23 | 4.12 | 4.12 | 62 | 67 | 7.13 | 6.97 | 6.55 | 5.39 | 6.16 |
| 38 | 43 | 4.33 | 4.32 | 4.29 | 4.16 | 4.16 | 63 | 68 | 7.35 | 7.16 | 6.69 | 5.43 | 6.29 |
| 39 | 44 | 4.39 | 4.38 | 4.34 | 4.21 | 4.21 | 64 | 69 | 7.57 | 7.36 | 6.83 | 5.47 | 6.44 |
| 40 | 45 | 4.45 | 4.44 | 4.40 | 4.26 | 4.27 | 65 | 70 | 7.81 | 7.58 | 6.98 | 5.51 | 6.59 |
| 41 | 46 | 4.52 | 4.51 | 4.47 | 4.30 | 4.32 | 66 | 71 | 8.06 | 7.79 | 7.12 | 5.54 | 6.75 |
| 42 | 47 | 4.59 | 4.58 | 4.53 | 4.35 | 4.37 | 67 | 72 | 8.33 | 8.03 | 7.27 | 5.57 | 6.91 |
| 43 | 48 | 4.67 | 4.65 | 4.60 | 4.40 | 4.43 | 68 | 73 | 8.62 | 8.26 | 7.42 | 5.60 | 7.08 |
| 44 | 49 | 4.75 | 4.73 | 4.67 | 4.45 | 4.49 | 69 | 74 | 8.92 | 8.52 | 7.58 | 5.63 | 7.26 |
| 45 | 50 | 4.83 | 4.81 | 4.75 | 4.50 | 4.56 | 70 | 75 | 9.24 | 8.78 | 7.73 | 5.65 | 7.46 |
| 46 | 51 | 4.92 | 4.89 | 4.82 | 4.56 | 4.62 | 71 | 76 | 9.59 | 9.06 | 7.88 | 5.67 | 7.66 |
| 47 | 52 | 5.01 | 4.98 | 4.90 | 4.61 | 4.69 | 72 | 77 | 9.95 | 9.34 | 8.03 | 5.69 | 7.86 |
| 48 | 53 | 5.10 | 5.07 | 4.99 | 4.66 | 4.76 | 73 | 78 | 10.33 | 9.63 | 8.18 | 5.70 | 8.08 |
| 49 | 54 | 5.20 | 5.17 | 5.07 | 4.72 | 4.84 | 74 | 79 | 10.74 | 9.94 | 8.32 | 5.71 | 8.32 |
| 50 | 55 | 5.31 | 5.27 | 5.17 | 4.77 | 4.91 | 75 | 80 | 11.19 | 10.27 | 8.46 | 5.72 | 8.56 |
| 51 | 56 | 5.42 | 5.38 | 5.26 | 4.83 | 4.99 | 76 | 81 | 11.66 | 10.59 | 8.60 | 5.73 | 8.81 |
| 52 | 57 | 5.54 | 5.49 | 5.36 | 4.89 | 5.08 | 77 | 82 | 12.15 | 10.93 | 8.73 | 5.73 | 9.09 |
| 53 | 58 | 5.66 | 5.61 | 5.46 | 4.94 | 5.17 | 78 | 83 | 12.67 | 11.27 | 8.86 | 5.74 | 9.37 |
| 54 | 59 | 5.79 | 5.73 | 5.56 | 5.00 | 5.26 | 79 | 84 | 13.25 | 11.63 | 8.97 | 5.74 | 9.67 |
| 55 | 60 | 5.93 | 5.87 | 5.67 | 5.05 | 5.35 | 80 | 85 | 13.85 | 11.99 | 9.08 | 5.75 | 9.98 |
| 56 | 61 | 6.08 | 6.00 | 5.79 | 5.10 | 5.45 | 81 | 86 | 14.49 | 12.36 | 9.18 | 5.75 | 10.32 |
| 57 | 62 | 6.23 | 6.14 | 5.90 | 5.15 | 5.56 | 82 | 87 | 15.17 | 12.74 | 9.28 | 5.75 | 10.66 |
| 58 | 63 | 6.39 | 6.29 | 6.02 | 5.21 | 5.67 | 83 | 88 | 15.92 | 13.11 | 9.36 | 5.75 | 11.03 |

#### OPTION 3. JOINT AND TWO-THIRDS TO SURVIVOR*

**Age of Other Payee. Age of Annuitant (Male, age on first line. Female age on second line).**

| M | F | 55<br>60 | 56<br>61 | 57<br>62 | 58<br>63 | 59<br>64 | 60<br>65 | 61<br>66 | 62<br>67 | 63<br>68 | 64<br>69 | 65<br>70 | 66<br>71 | 67<br>72 | 68<br>73 | 69<br>74 | 70<br>75 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 55 | 60 | $5.53 | $5.59 | $5.65 | $5.71 | $5.78 | $5.84 | $5.91 | $5.98 | $6.05 | $6.11 | $6.18 | $6.25 | $6.32 | $6.39 | $6.46 | $6.53 |
| 56 | 61 | 5.59 | 5.65 | 5.72 | 5.78 | 5.85 | 5.92 | 5.99 | 6.06 | 6.13 | 6.20 | 6.27 | 6.34 | 6.42 | 6.49 | 5.56 | 6.64 |
| 57 | 62 | 5.65 | 5.72 | 5.78 | 5.85 | 5.92 | 5.99 | 6.07 | 6.14 | 6.21 | 6.29 | 6.36 | 6.44 | 6.51 | 6.59 | 6.67 | 6.74 |
| 58 | 63 | 5.71 | 5.78 | 5.85 | 5.92 | 6.00 | 6.07 | 6.14 | 6.22 | 6.30 | 6.37 | 6.45 | 6.53 | 6.61 | 6.69 | 6.77 | 6.85 |
| 59 | 64 | 5.78 | 5.85 | 5.92 | 6.00 | 6.07 | 6.15 | 6.23 | 6.30 | 6.38 | 6.47 | 6.55 | 6.63 | 6.71 | 6.80 | 6.88 | 6.96 |
| 60 | 65 | 5.84 | 5.92 | 5.99 | 6.07 | 6.15 | 6.23 | 6.31 | 6.39 | 6.47 | 6.56 | 6.64 | 6.73 | 6.82 | 6.90 | 6.99 | 7.08 |
| 61 | 66 | 5.91 | 5.99 | 6.07 | 6.14 | 6.23 | 6.31 | 6.39 | 6.48 | 6.56 | 6.65 | 6.74 | 6.83 | 6.92 | 7.01 | 7.11 | 7.20 |
| 62 | 67 | 5.98 | 6.06 | 6.14 | 6.22 | 6.30 | 6.39 | 6.48 | 6.57 | 6.66 | 6.75 | 6.84 | 6.94 | 7.03 | 7.13 | 7.22 | 7.32 |
| 63 | 68 | 6.05 | 6.13 | 6.21 | 6.30 | 6.38 | 6.47 | 6.56 | 6.66 | 6.75 | 6.85 | 6.94 | 7.04 | 7.14 | 7.24 | 7.34 | 7.44 |
| 64 | 69 | 6.11 | 6.20 | 6.29 | 6.37 | 6.47 | 6.56 | 6.65 | 6.75 | 6.85 | 6.95 | 7.05 | 7.15 | 7.25 | 7.36 | 7.47 | 7.57 |
| 65 | 70 | 6.18 | 6.27 | 6.36 | 6.45 | 6.55 | 6.64 | 6.74 | 6.84 | 6.94 | 7.05 | 7.15 | 7.26 | 7.37 | 7.48 | 7.59 | 7.70 |
| 66 | 71 | 6.25 | 6.34 | 6.44 | 6.53 | 6.63 | 6.73 | 6.83 | 6.94 | 7.04 | 7.15 | 7.26 | 7.37 | 7.49 | 7.60 | 7.72 | 7.84 |
| 67 | 72 | 6.32 | 6.42 | 6.51 | 6.61 | 6.71 | 6.82 | 6.92 | 7.03 | 7.14 | 7.25 | 7.37 | 7.49 | 7.61 | 7.73 | 7.85 | 7.97 |
| 68 | 73 | 6.39 | 6.49 | 6.59 | 6.69 | 6.80 | 6.90 | 7.01 | 7.13 | 7.24 | 7.36 | 7.48 | 7.60 | 7.73 | 7.85 | 7.98 | 8.11 |
| 69 | 74 | 6.46 | 6.56 | 6.67 | 6.77 | 6.88 | 6.99 | 7.11 | 7.22 | 7.34 | 7.47 | 7.59 | 7.72 | 7.85 | 7.98 | 8.11 | 8.25 |
| 70 | 75 | 6.53 | 6.64 | 6.74 | 6.85 | 6.96 | 7.08 | 7.20 | 7.32 | 7.44 | 7.57 | 7.70 | 7.84 | 7.97 | 8.11 | 8.25 | 8.39 |

*Figures for ages not shown will be furnished on request.

# GENERAL PROVISIONS

## 1. DEFINITIONS:

The following terms are defined solely for the purpose of interpreting and administering this Agreement:

TERMINATION, shall mean maturity of a policy as a result of, (a) the death of the Insured, or (b) endowment, or (c) surrender of such policy for its cash value, or (d) final amounts payable after termination of Family Income payments.

NET PROCEEDS, when applicable to the termination date, shall be the net amount payable under a policy on the termination date, excluding, however, any unearned premiums paid in advance thereunder.

NET PROCEEDS, when applicable to any time other than the termination date, shall be the single sum which equals (a) the then commuted value of the remainder of the death benefit of a policy containing a Family Income provision, or (b) the then commuted value of any installments certain not yet due under Options A or B, or (c) the amount then held under Options C or D, including any unpaid accrued interest thereon, as the case may be.

CHILDREN, if not designated by name, shall include only the lawful and legally ado d sons and daughters of the primary payee and not grandchildren or other descendants. This classification is available only the primary payee was the Insured hereunder.

BY REPRESENTATION shall mean succeeding, by reason of the death of a parent, tc net proceeds which would have been apportioned to or further held for such parent, had he lived.

ESTATE OF SURVIVOR shall mean the executors or administrators of the last survivor of the payees designated in preceding Sections of the same Table.

OPTION shall mean the corresponding Option appearing in the policy under the heading "Optional Modes of Settlement" to be attached hereto. If the policy does not contain said "Optional Modes of Settlement", this Agreement shall constitute a request to add hereto "Optional Modes of Settlement" corresponding to that contained in policies which the Company is now issuing.

POLICY shall mean annuity contract when such meaning is applicable;. and masculine pronouns shall include the feminine.

## 2. PAYMENTS UNDER A TABLE:

(a) If there is more than one Table, each Table shall be considered separately in construing the provisions of this Agreement.

(b) Payment of the net proceeds under a Table shall be in accordance with the first Section thereof in which there is a payee surviving, and at the death of the last survivor of the payees designated in such Section, payment of any remaining net proceeds shall be in accordance with the next succeeding Section in which there is a then surviving payee, and so on from Section to Section until payment shall have been made of the entire net proceeds under such Table.

(c) In order to be entitled to receive payments provided for him under a Section, a payee must be living on their respective due dates.

(d) If a Section of a Table designates two or more payees but does not designate as payees by representation the children of deceased children of the primary payee, payment of net proceeds under such Section shall be as follows:

If such Section does not provide for division of net proceeds into separate shares, such payees who are living at the time of each payment shall share the payments under such Section and such shares shall be equal unless otherwise expressly provided therein;

If such Section provides for division of net proceeds into separate shares, one such share, payable as provided in such Section, shall be for each such payee who is living at the death of the last survivor of the payees designated in preceding Sections, and such shares shall be equal unless otherwise expressly provided therein. At the subsequent death of a payee designated in such Section, any net proceeds then held for such payee shall be paid to any then surviving payees of such Section in single sums proportionate to their original shares.

(e) If a Section of a Table designates as payees by representation the children of deceased children of the primary payee, payment of net proceeds under such Section shall be as follows:

Net proceeds at the death of the last survivor of the payees designated in preceding Sections shall be divided into equal separate shares, one share, payable as provided in such Section, for each then surviving designated child of the primary payee, if any, and one share, payable in equal single sums, to the then surviving children, if any, of each deceased designated child of the primary payee;

At the subsequent death of a child of the primary payee, any net proceeds then held for such child shall be paid in equal single sums to his then surviving children, if any, otherwise such net proceeds shall be divided into equal separate shares, one share, payable in one sum, to each then surviving designated child of the primary payee, if any, and one share, payable

## 3. PRIVILEGES:

(a) If a payee designated in a Section of a Table is given in such Section a privilege of withdrawal or commutation, such payee may, subject to any limitations with respect thereto stated in such Section and upon written notice to the Insurance Company accompanied by this Agreement, make withdrawals in amounts of not less than $100.00 each from any net proceeds held for him in such Section under Options C or D, or, as the case may be, elect to receive the commuted value of any installments certain or share therein payable to him in such Section under Options A or B, but under Option B only if the right to installments for life has expired with the primary payee.

Wherever the following appear herein............ they shall be read as:

| | |
|---|---|
| Option A | Option 3 |
| Option B | Option 4 |
| Option C | Option 1 |
| Option D | Option 2 |

# SUPPLEMENTARY AGREEMENT

(No. SC1126 )

Due to termination, as of May 5, 1983, of Policy No(s) 83A08153 issued by Charter Security Life Insurance Company (New York) on the life [illegible] Dennis J. Dimon, the undersigned hereby requests that the aggregate net proceeds payable under said pol[illegible]s) as of the termination date be paid to the payees designated in, and in the order and manner provided in, the following Tab[illegible] Tables and in the General Provisions of this Agreement.

The undersigned surrenders said policy(s) to the Insurance Company and, concurrently herewith, revokes any beneficiary designation and any election of settlement heretofore made under the said policy(s).

| PAYEES | MANNER OF PAYMENT | PRIVILEGES |
|---|---|---|
| **TABLE I** | | |
| SECTION ONE - PRIMARY PAYEE | | |
| Dennis Dimon<br>Laurel Lane<br>West Kingston, RI 02892 | Monthly payments in the amount of $1,450.45, increasing 3% annually, commencing on June 6, 1983, for a period of 240 months certain and life thereafter. | |
| SECTION TWO-CONTINGENT PAYEE | | |
| Katherine I. Dimon, Wife | In the same manner as the Primary Payee, for the period certain. | |

(SEE OTHER SIDE FOR ANY COMPANY ENDORSEMENTS)

SUP-100

(b) If a primary payee designated in Section 1 of a Table is given in such Section the privilege of substituting payment under another Option:

The amount to be applied under such other Option shall be the net proceeds held for such payee in Section 1 at the time such privilege is exercised, but such privilege shall not be available when such net proceeds are less than $1000.

A primary payee may make only one such substitution and must be by written notice accompanied by this Agreement.

## 4. OPTION PAYMENTS ALTERED OR TERMINATED:

After thirty full years following the termination date of a policy, no Option payments shall be made under any Section of a [illegible] separate share of net proceeds at the death of the last survivor of the primary payees designated in Section 1 shall be less than $1,000, then such share shall be immediately paid in one sum. If net proceeds held for a payee under Option C be reduced by withdrawals to less than $1,000, then such net proceeds shall be immediately paid in one sum.

If the Option payments for the fractional part of a year shall amount to less than $10.00 each, the Company will pay at such intervals as will make each payment amount to at least $10.00. If a Section of a Table provides for Option D installments and the sum of one year's tabular installments shall be less than 5% of the net proceeds applied under that Option, then the Company shall increase each such tabular installment by the amount necessary to achieve such percentage, any provision of said Option for a different percentage notwithstanding.

## 5. RELIANCE ON AFFIDAVITS:

Before permitting or taking any action provided by this Agreement which is contingent upon the death or survival of any payee, the Company shall be furnished with due proof thereof. As to any facts relating to any payees, including dates of birth and death, and identity, the Company may rely upon any affidavit or other written evidence deemed satisfactory to it, and is hereby released from all liability in relying and acting upon the statements contained therein.

## 6. EFFECT OF CHANGES OF BENEFICIARY AND EXERCISE OF PRIVILEGES UNDER THIS AGREEMENT:

If allowed by the statutes of the state of residence, the primary payee may, without the consent of a secondary payee, (a) change the designation of contingent beneficiaries, and (b) freely exercise the privileges contained in Section 1 of any Table herein. In the absence of an enabling statute, the consent of the secondary payee (s) shall be required for the exercise of all such rights.

## 7. PAYMENT TO MINORS:

Any proceeds due and payable to any minor payee hereunder shall be paid to the legally appointed guardian of such minor except to the extent that provision is made by statute for payment directly to a minor.

Dated CHARTER SECURITY LIFE INSURANCE COMPANY (NY) this SEVENTEENTH

day of JUNE , 1983

CHARTER SECURITY LIFE INSURANCE COMPANY
(NEW YORK)

[signature]
REGISTRAR
VICE PRESIDENT

# Charter Security Life Insurance Company (New York)

## ENDORSEMENT

This amendment is attached to and forms part of the policy.

The Annual Statement of Values provision on Page 7 is hereby amended as follows:

The words "As of each contract anniversary" are replaced with the words "At least once each year".



President